**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| **BRENNAN M. GILMORE,** | **CASE NO.: 3:18-cv-00017-GEC** |
| **Plaintiff** | |
| **v.** | |
| **ALEXANDER JONES, et al.,** | **BRIEF IN SUPPORT OF THE JOINT MOTION TO DISMISS AND MOTION FOR ATTORNEY FEES AND COSTS OF DEFENDANTS HOFT AND STRANAHAN** |
| **Defendants** | |

# **TABLE OF CONTENTS**

Table of Authorities .................................................................................................... iv

Introduction and Summary of Argument ........................................................................ 1

Facts ............................................................................................................................ 2

I.      This Court Lacks Subject Matter Jurisdiction ...................................................... 7

        A.      There Is Not Actual Diversity between the Plaintiff and the Defendants and the Plaintiff Has Failed to Allege Such Diversity Exists ................................ 9

        B.      The Plaintiff Has Failed to Allege That the Amount in Controversy Exceeds $75,000 ............................................................................................... 10

                1.      The Plaintiff Has Inappropriately Attempted to Aggregate the Amount in Controversy among the Defendants ................................... 10

                2.      The Plaintiff Has Inappropriately Included Harm by Third Parties in His Calculation of Damages ........................................................ 12

II.     This Court Cannot Exercise Personal Jurisdiction over Mr. Hoft in the Instant Case ..... 17

        A.      Mr. Hoft Has Not Engaged in Any Conduct That Meets the Requirements of Virginia's Long-Arm Statute ........................................................... 17

        B.      The Plaintiff's Proposed Assertion of Jurisdiction Would Violate the Due Process Clause of the Fourteenth Amendment ..................................... 19

                1.      This Court Cannot Exercise Specific Personal Jurisdiction over Mr. Hoft Under *Young v. New Haven Advocate* ................................. 19

                2.      This Court Cannot Exercise General Personal Jurisdiction over Mr. Hoft Under *Collier v. Land & Sea Rest. Co.* ................................. 20

III.    The Complaint Fails to State a Claim upon Which Relief Can Be Granted .................. 21

        A.      The Complaint Has Failed to State a Claim against Messrs. Stranahan or Hoft for Defamation ....................................................................... 22

                1.      The Complaint Repeatedly Fails to Allege Falsity ................... 22

                2.      The Allegedly Defamatory Statements are Protected Opinion ........ 25

3.     The Complaint Fails to Properly Allege Malice ........................... 29

    (a)    The Plaintiff Is a Limited-Purpose Public Figure ................... 29

    (b)    The Complaint's Allegations of Malice are Conclusory ............ 33

4.     The Complaint Fails to Properly Allege Negligence ..................... 34

5.     The Complaint Fails to Properly Plead Damages ....................... 34

    (a)    None of the Statements by Messrs. Hoft or Stranahan Could Constitute Defamation per se ......................................... 35

    (b)    The Complaint Serially Fails to Allege Special Damages Caused by Messrs. Hoft and Stranahan ..................................... 38

B.    The Complaint Has Failed to State a Claim for Intentional Infliction of Emotional Distress against Messrs. Stranahan or Hoft ................................ 42

1.     Once again, the Complaint Fails to Properly Plead Malice ................. 43

2.     The Complaint Improperly Attempts to Blame Messrs. Hoft and Stranahan for the Independent Actions of Third Parties ......................... 44

3.     The Complaint Fails to Properly Plead Outrageous or Intolerable Conduct ........................................................................... 46

4.     The Complaint Fails to Properly Plead That the Plaintiff Felt Severe Emotional Distress ..................................................... 48

IV.    Messrs. Hoft and Stranahan Should Be Granted Immunity and Attorney's Fees and Costs under VA. CODE § 8.01-223.2 ............................................. 51

Conclusion ............................................................................................. 53

# TABLE OF AUTHORITIES

## CASES

*Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982) ............................................................ 8 and 14

*ALS Scan, Inc. v. Digital Serv. Consultants*, *Inc.*, 293 F.3d 707 (4th Cir. 2002) .............. 19-20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................ 14, 22, 33 and 40

*Bates v. Strawbridge Studios, Inc*., No. 7:11-cv-33 (W.D. Va. May 17, 2011) ............... 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 21-22

*Bennett v. OmniSOURCE Corp.*, No. 7:14CV00309 (W.D. Va. Nov. 4, 2015) ............... 17

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ......................... 15, 37, 39, 44-45 and 54

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir. 2003) ........... 21

*Chapin v. Knight-Ridder, Inc.*, 993 F. 2d 1087 (4th Cir. 1993) ................................ 27

*Chitty v. Liberty Univ.*, No. 6:13CV00043 (W.D. Va. July 25, 2013) ............................ 40

*City of Greenwood, Mississippi v. Peacock*, 384 U.S. 808 (1966) ................................ 1

*Coles v. Carilion Clinic*, 894 F. Supp. 2d 783 (W.D. Va. 2012) ................................ 47-48

*Collier v. Land & Sea Rest. Co.*, No. 7:13-cv-00104 (W.D. Va. Oct. 15, 2014) ............... 20-21

*Diamos v. Specialized Loan Servicing LLC*, No. 13-cv-04997 NC (N.D. Cal. July 7, 2014) ...... 15

*Elitharp-Martin v. Pulaski Cnty. Sch. Bd.*, 62 F. Supp. 3d 515 (W.D. Va. 2014) ............... 21

*Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862 (W.D. Va. 2016) ............................ 29-32

*Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666 (4th Cir. 1982) ............................ 30

*Foretich v. Capital Cities/ABC*, 37 F.3d 1541 (4th Cir. 1994) ................................ 29-30

*Fleming v. Moore*, 221 Va. 884 (1981) .................................................... 35 and 38

*Gazette, Inc. v. Harris*, 229 Va. 1 (1985) .................................................. 34 and 39

*Gertz v. Robert Welch*, 418 U.S. 323 (1974) .............................................. 34 and 39

*Gilbert v. David*, 235 U.S. 561 (1915) ................................................................. 9

*Goad v. Goad*, No. 5:10CV00139 (W.D. Va. Jan. 5, 2011) ................................. 7

*Griffin v. Dir. of Vatterott*, No. 4:17-CV-2632 DDN (E.D. Mo. Oct. 27, 2017) ............ 15

*Gunsberg v. Roseland Corp.*, 225 N.Y.S.2d 1020 (1962) ..................................... 38

*Gypsum Storage Dev. LLC v. W. Reed Edgel & Assocs. Inc.*, No. 10-cv-02760-MSK (D. Colo.

Nov. 15, 2010) .................................................................................................. 15

*Harris v. Kreutzer*, 271 Va. 188, 624 S.E.2d 24 (2006) .......................... 42, 48 and 51

*Hayes v. Shelby Cnty. Tr.*, 971 F. Supp. 2d 717 (W.D. Tenn. 2013) ........................ 15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ................... 19

*Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564 (5th Cir. 2011) ........................ 9

*Howell by Goerdt v. Tribune Entertainment Co.*, 106 F.3d 215 (7th Cir. 1997) ............ 10

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) ...................................... 43

*Int'l Shoe v. Washington*, 326 U.S. 310 (1945) ............................................... 19

*Jackson v. Fletcher*, No. 7:09CV00408 (W.D. Va. Jan. 18, 2011) ............... 42, 48 and 50-51

*Jewell v. Grain Dealers Mutual Insurance Co.*, 290 F.2d 11 (5th Cir. 1961) ................. 11

*Kokkonen v. Guardian Life Ins. Co. of Am.*. 511 U.S. 375 (1994) ........................... 8

*Krantz v. Air Line Pilots Ass'n, Intern.*, 245 Va. 202 (1993) ............................... 17

*Lady Windsor Hairdressers, Inc. v. Calvo*, 231 N.Y.S.2d 221 (1962) ........................ 38

*Law v. Autozone Stores, Inc.*, 2009 WL 4349165 (W.D. Va. Nov. 25, 2009) ................. 48

*Liberty Mut. Fire. Ins. v. Hayes*, No. 96-2384 (4th Cir. Sept. 15, 1997) ................. 10-12

*Levy v. Ryan Seacrest Prods.*, No. 2:13-cv-0070 at *6 (E.D. Cal., Jan. 29, 2013) ........... 15

*M. Rosenberg & Sons v. Craft*, 182 Va. 512 (1944) ................................. 39 and 41

*McCauley v. Hospira, Inc.*, No. 11-CV-108 (M.D.N.C. 2011) ............................... 22

*McCollum v. CBS, Inc.*, 202 Cal. App. 3d 989 (Cal. App. 2 Dist. 1988) ............................... 45-46

*Meng v. Schwartz*, 305 F. Supp. 2d 49 (D.D.C. 2004) ............................................... 10

*Menzies v. Doe*, 194 F.3d 174 (D.C. Cir. 1999) ..................................................... 10

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ............................................... 25

*Mims v. Kemp*, 516 F.2d 21 (4th Cir.1975) .......................................................... 8

*Modla v. Parker*, 17 Ariz. App. 54 (Ariz. App., 1972) ............................................ 38

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330 (11th Cir. 2011) ..................... 9

*Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56 (4th Cir. 1993) ...................................... 18

*Naz, LLC v. Philips Healthcare*, No. 17-2882 (E.D. La. July 26, 2017) ............................ 15

*New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290 (4th Cir. 2005) .......... 18

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ...................................... 29, 34 and 43

*Nichols v. G.G. Searle & Co.*, 991 F.2d 1195 (4th Cir. 1993) ..................................... 17

*Nowell v. Kumer*, No. 7:15cv00461 (W.D. Va. Nov. 17, 2015) ....................................... 40

*Oved v. Weiner*, No. 17-CV-1348 (DRH)(GRB) (E.D.N.Y. Dec. 21, 2017) .............................. 15

*Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006) ................................ 21

*Russo v. White*, 241 Va. 23, 400 S.E.2d 160 (1991) ....................................... 48 and 50-51

*Salahuddin v. Cuomo*, 861 F.2d 40 (2nd Cir. 1988) ................................................ 40

*Saleh v. Florida*, No. 3:17-cv-1465-J-34PDB (M.D. Fla. Jan. 5, 2018) ............................. 15

*Schaecher v. Bouffault*, 290 Va. 83 (2015) ...................................................... 25

*Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012) ................. 33 and 43

*Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009) ................................... 9-10

*SuperValu. Inc. v. Johnson*, 666 S.E.2d 335 (Va. 2008) ........................................... 42

*Tatoian v. Andrews*, 100 F. Supp. 3d 549 (W.D. Va. 2015) ......................................... 19

*Time, Inc. v. Hill*, 385 U. S. 374 (1967) .............................................................. 43

*Tinsley v. Streich*, 143 F. Supp. 3d 450 (W.D. Va. 2015) ................................... 9

*Walter v. Northeastern R. Co.*, 147 U.S. 370 (1893) ......................................... 11

*Webb v. Baxter Healthcare Corp.*, 57 F.3d 1067, 1995 WL 352485 (4th Cir. 1995) ........... 47

*Wells v. Liddy*, 186 F.3d 505 (4th Cir. 1999) ...................................................... 29

*Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167 (D. Conn. 2002) ............ 15 and 44-45

*Virginia v. Black*, 538 U.S. 343 (2003) ............................................................. 40

*Young v. New Haven Advocate,* 315 F.3d 256 (4th Cir. 2002) ......................... 19-20

## FEDERAL AND STATE STATUTES AND RULES

28 U.S.C. § 1331 ...................................................................................................... 8

28 U.S.C. § 1332 .......................................................................................... 8-9 and 17

42 U.S.C. § 1981 ..................................................................................................... 47

42 U.S.C. §§ 2000e, et seq. ..................................................................................... 47

Va. Code § 8.01-328.1 ........................................................................................ 17-18

Va. Code § 8.01-223.2 ..................................................................................... 1-2 and 51-53

Fed. R. Civ. P. 8 ...................................................................................................... 21

Fed. R. Civ. P. 11 .................................................................................................... 53

Fed. R. Civ. P. 12 ............................................................................................. passim

Fourth Circuit Local Rule 32.1 ............................................................................. 11

## ARTICLES AND BOOKS

*Coup d'état*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/coup%20d'%C3%A9tat (last visited April 8, 2018) ..................................................... 38

*Involved*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/involved (last visited April 8, 2018) ..................................................................... 28

James Wm. Moore et al., MOORE'S FEDERAL PRACTICE (3d ed. 1997) ......................... 11

*Shill*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/shill (last visited April 8, 2018) ..................................................................... 37

*What is a SLAPP?*, PUBLIC PARTICIPATION PROJECT, https://anti-slapp.org/what-is-a-slapp/ (last visited April 12, 2018) ..................................................... 52

Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS (2d ed. 1984) ....................................................... 10

## INTRODUCTION AND SUMMARY OF ARGUMENT

Fundamentally, this case is about the Plaintiff's desire to blame journalists for the independent, immoral, and often illegal conduct of third parties. Although the Complaint alleges a few instances of harm allegedly caused by the Defendants' own actions, they are perfunctory, conclusory, chronically vague and speculative, and lifeless. However, the Complaint truly comes alive when discussing the myriad ways third parties who are not defendants in this case have allegedly harmed the Plaintiff and his family—without alleging facts that would allow this Court to believe that any Defendant incited such misconduct. In doing so, the Plaintiff has attempted to undermine the fundamental civil right[1] of Freedom of Expression.

Fortunately for the cause of civil rights in America, this case will fail. Defendants Jim Hoft and Lee Stranahan now come before this Court seeking dismissal of the case based on lack of jurisdiction and failure to state a claim, as well as dismissal and attorney fees and costs based on VA. CODE § 8.01-223.2.

First, this Court lacks jurisdiction over this subject matter or Mr. Hoft. With respect to subject matter jurisdiction, actual diversity of citizenship is not properly alleged and not actually present. Further, when alleging that the claims in this case exceed $75,000, the Plaintiff inappropriately aggregated damages with respect to all claims against all Defendants and included harms caused by third parties without asserting any valid theory within the bounds of the First Amendment that would make the Defendants liable for the actions of those third parties, a further reason to find that subject matter jurisdiction is not present. Additionally, this Court lacks personal jurisdiction over Mr. Hoft because writing on the Internet to a general audience is not sufficient to

---

[1] *City of Greenwood, Mississippi v. Peacock*, 384 U.S. 808, 825 (1966) ("The First Amendment is a great charter of American freedom, and the precious rights of personal liberty it protects are undoubtedly comprehended in the concept of 'civil rights'").

subject a person to jurisdiction in every state in which that writing might be accessed.

Second, the Plaintiff has failed to state a claim for which relief can be granted. With respect to defamation, the failures are myriad: The Plaintiff often fails to allege falsity, the allegedly false statements are actually protected opinion, the Plaintiff fails to properly allege malice or negligence, and the Plaintiff serially fails to allege special damages. Likewise, the Plaintiff's failures with respect to intentional infliction of emotional distress ("IIED") are legion: The Plaintiff fails to properly allege malice, the Plaintiff inappropriately blames Messrs. Hoft and Stranahan for the wrongful actions of third parties, and the Plaintiff fails to properly allege outrageous or intolerable conduct or that the emotional distress is severe.

Third, VA. CODE § 8.01-223.2 provides a unique immunity from defamation suits and, under this statute, this Court should grant attorney fees and costs to the Defendants.

For all of these reasons, and in order to protect Freedom of Expression, this Court should dismiss the instant case for lack of subject matter jurisdiction, for lack of personal jurisdiction in relation to Mr. Hoft, for failure to state a claim for which relief can be granted and pursuant to the immunity granted under VA. CODE § 8.01-223.2. Further, this Court should grant Messrs. Hoft and Stranahan attorney fees and costs.

## **FACTS**

Unless otherwise noted, the following facts are alleged to be true in the Complaint (ECF No. 1) and will be treated as true for purposes of this brief.

According to the Complaint, the Plaintiff is a resident of Virginia, presently on long-term unpaid leave from the United States State Department, where he is employed as a Foreign Service Officer. Compl. ¶ 12. The Plaintiff also serves as Vice President for Operations of Wize Solutions, LLC, an information technology company. *Id.*

2

Defendant James Hoft is a resident of Missouri and owner of a website called *The Gateway Pundit*, located at http://www.thegatewaypundit.com/. *Id.* ¶ 19. This website is viewed approximately 15 million times every month. *Id.* ¶ 38. Defendant Lee Stranahan is domiciled in Arlington, Virginia. See Exhibit A, ¶¶ 1-2. [2] For employment, Mr. Stranahan primarily engages in a number of journalistic activities. Compl. ¶ 16. Further, while this brief and its accompanying motion are only filed on behalf of Messrs. Hoft and Stranahan, it is also noted that the Complaint states that Defendant McAdoo is a resident of Texas in the beginning of paragraph 17, while at the end of the same paragraph, the Complaint states that "Upon information and belief, Defendant McAdoo may currently reside in the state of Florida."

Prior to the events relevant to this case, the Charlottesville City Council decided to remove a statue honoring Confederate General Robert E. Lee and to change the name of the park in which the statue resided from "Lee Park" to "Emancipation Park." *Id.* ¶ 22. On August 12, 2017, a number of people came to protest those decisions, and others came as counter-protesters to support the City Council's decisions. *Id.* ¶¶ 22-24. The Plaintiff counted himself among those counter-protesters. *Id.* ¶ 24. At some point, there was rioting related to these protests. *Id.* ¶ 25. That afternoon, James Fields drove a car into a group of counter-protesters, injuring 36 persons and killing one, Heather Heyer. *Id.* ¶ 26. That incident occurred very close to the Plaintiff, and because he was already filming the counter-protesters with his smartphone, the Plaintiff was able to capture much of the incident on video. *Id.* ¶ 27.

The Plaintiff chose to share this video on social media through his Twitter account, in part to correct media accounts suggesting it might not have been a deliberate attack. *Id.* ¶ 28. The

---

[2] This declaration is signed electronically as is Mr. Hoft's. A copy with an ordinary signature is available if this Court believes it is necessary to examine it.

3

Plaintiff referred to Ms. Heyer on his Twitter page as a martyr. *Id.* ¶ 153. The Plaintiff also "spoke with multiple television news networks and other news media on August 12 and 13, 2017," *id.* ¶ 12, and did at least one interview on August 14, 2017, *id.* ¶ 67.

On August 14, 2017, Mr. Hoft wrote and published a piece called "*Random Man at Protests Interviewed by MSNBC, Ny Times Is Deep State Shill Linked to George Soros." Id.* ¶ 38. The article stated in part that

> The random Charlottesville observer who was interviewed by MSNBC and liberal outlets turns out to be a deep state shill with links to George Soros.
>
> It looks like the State Department was involved in Charlottesville rioting and is trying to cover it up.
>
> But after Deep State got caught they are trying to erase this guy from their records....
>
> The State Department is very familiar with [the Plaintiff]. He was involved in the Kony 2012 operation....
>
> The State Department later removed any reference of [the Plaintiff].
>
> Why would the State Department react in such a way?
>
> Why would the State Department scrub that?
>
> This weekend [the Plaintiff] happened to be in Charlottesville with the rioters. The media knows exactly who he is yet played it off like a casual observer.

Compl. Exhibit E, ECF 1-5, pp. 2-8. Mr. Hoft shared a link to this article on Twitter, and his followers in turn re-posted and shared the article over one hundred times. Compl. ¶ 40. Mr. Hoft was in Missouri when he published this article, and he did not target that publication in any sense toward the Commonwealth of Virginia. Exhibit B, ¶ 2. Further, he does not regularly do business in Virginia, solicit business in Virginia, engage in any persistent course of conduct in Virginia, or derive any revenue from goods used or consumed or services rendered, in this Commonwealth. *Id.* ¶¶ 3-4.

On August 15, 2017, a video was published in which Ms. McAdoo interviewed Mr. Stranahan. Compl. ¶ 41. During that interview, Mr. Stranahan made the following statements:

STRANAHAN:       If you go to [the Plaintiff's] page, his Twitter page, you'll see he has a picture of the young woman who was murdered, and you know what is says? "Martyr." . . . Literally it says "martyr." You can't be more explicit than this. So here's what I'm saying. I'm not a conspiracy theorist, I'm a fact-based journalist. The facts are enough. However, the Democrats have investigated Trump for a lot less. For a lot less. They have called for investigations, and secret meetings, they have convened the FBI. When you have this many things going on, I think someone really needs to investigate...

[MCADOO scrolls through [the Plaintiff's] Twitter page]

Yeah, if you scroll...keep scrolling...this is the guy, [the Plaintiff], and if you scroll down, keep going, it's not too far, you'll see the photo of the young woman...this is abs [sic]...when I saw this, uh, I was shocked...by the way, his bio, if you look at this guy's bio, it says he's with the State Department, and the fact that he called her a 'martyr'... I [STRANAHAN looks knowingly at the camera, eyebrows raised, arm raised, MCADOO nods comprehendingly, laughs] don't know, but this is clearly, the way she's being used is she's a martyr to the cause....

And let me point out what's happening. They, uh, they win no matter what they do. Are they trying to get a coup? I think clearly they are. But if they can't get a coup, they'll settle for impeachment. And if they can't get impeachment, they'll settle for smearing Trump and his supporters so much that they'll be able to elect another elitists. Does that make sense?

MCADOO:       Absolutely.

*Id.* ¶ 41. Additionally, the Plaintiff alleges that third parties engaged in a large range of immoral, harassing, and threatening behavior directed toward the Plaintiff and his family following the publication of Messrs. Stranahan's and Hoft's statements. *Id.* ¶¶ 59-72. However, there is no instance in which the Plaintiff alleges that Messrs. Stranahan or Hoft advocated that any person

5

engage in any violence or unlawful activity with the intent to imminently produce such conduct and that they made such statements at a time when such advocacy was likely to imminently produce or incite violence or unlawful behavior. Indeed, the Complaint never alleges that Messrs. Stranahan and Hoft advocate that anyone do anything at all, let alone anything illegal or violent.

The Plaintiff claims the following is the truth in relation to those statements by the Messrs. Hoft and Stranahan. First, he denies "being 'a deep state shill.'" *Id.* ¶ 140. Second, he denies being "part of a government conspiracy to incite violence at Charlottesville, resulting in the death of Heather Heyer and the injury of countless others." *Id.* ¶ 141. Finally, he also denies that he was "involved in a conspiracy to exploit Heather Heyer's death to stage a coup resulting in the removal of Donald Trump as President." *Id.* ¶ 153.

Additionally, the Plaintiff claims that prior to the publication of some or all of the Defendants' "attacks," *id.* ¶ 83, the Plaintiff had a reputation for patriotism and honor, *id.* He claims that he has suffered extreme emotional distress because of some or all of the Defendants' alleged defamation as well as the "harassment, and threats to his safety" committed by third parties but allegedly inspired by some or all of the Defendants. *Id.* ¶ 89. The Plaintiff claims in paragraph 6, that

> as a result [of the Defendants allegedly defamatory statements], Plaintiff... has experienced irreversible personal and professional damage in Virginia, including the loss of business opportunities in Virginia, irreparable damage to his career as a Foreign Service Officer, and the loss of friendships with individuals in Virginia.

However, somewhat contradictorily, the Plaintiff also says in paragraph 89 that he merely *fears* that because of some or all of the Defendants' alleged defamation that he will "los[e] friends or romantic interests" but does not allege that he has actually suffered such loss. The Plaintiff also complains about being "questioned by professional contacts about the derogatory information published" on some or all of the Defendants' websites and claims it is "nearly certain" that Wize

6

Solutions, LLC has lost business as a result of some or all of the Defendants' alleged defamation, *Id.* ¶ 90, which contradicts the claims of absolute certainty in paragraph 6. The Plaintiff has also alleged that he "may need" to remove himself altogether from the company's client-facing work" for the good of the business. *Id.*

Further, the Plaintiff claims in a conclusory fashion that his "illustrious diplomatic career is irreparably damaged" because of some or all of the Defendants' the alleged defamation. *Id.* ¶ 91. This conclusory allegation is only fleshed out when he claims that he cannot be dispatched to another country because people in that country might falsely believe that he was in the CIA—a claim never made by Messrs. Stranahan or Hoft. *Id.* The Plaintiff also fears that the allegation that he is part of the "deep state" might motivate his dismissal from the State Department at some unknown point in the future. *Id.* ¶ 92.

Finally, as a result of some or all of the Defendants' publications, the Plaintiff "has had to rely on the assistance of a therapist to address the substantial emotional stress of being the target of a deluge of threats as well as his ongoing fear of vile online and in-person harassment." *Id.* ¶ 89.

Based on these alleged facts, the Plaintiff sued Messrs. Stranahan and Hoft and seven other Defendants for defamation and IIED under Virginia law. The Plaintiff asserts no claims based on federal law. He also claims that the damages he has suffered from all nine Defendants' alleged defamation exceeds $75,000, Compl. ¶ 114, and the damages he has suffered from all nine Defendants' alleged IIED also exceeds $75,000, Compl. ¶ 198. In both cases, those calculations include the alleged harm caused by third parties not named in this suit. Compl. ¶¶ 73, 84-85, 111, 143, 154, 195 and 197.

## I.
## <u>THIS COURT LACKS SUBJECT MATTER JURISDICTION</u>

As this Court stated in *Goad v. Goad,* No. 5:10CV00139, at *3 (W.D. Va. Jan. 5, 2011):

> Federal courts are courts of limited jurisdiction. "They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Generally, a case can be originally filed in a federal district court if there is federal question jurisdiction under 28 U.S.C. § 1331 or diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

Further, "It is to be presumed that a cause lies outside this limited jurisdiction..., and the burden of establishing the contrary rests upon the party asserting jurisdiction," *Kokkonen*, 511 U.S. at 377 (internal citation omitted). As stated in *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982):

> There are two critically different ways in which to present a motion to dismiss for lack of subject matter jurisdiction. First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. Second, it may be contended that the jurisdictional allegations of the complaint were not true. A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations. This was the subject matter jurisdictional attack made in the case sub judice.

> In judging this evidentiary attack, the trial court necessarily assumes a different role than in a proceeding to resolve a 12(b)(1) motion based on contentions that the complaint was jurisdictionally deficient on its face. The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction. A trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment. See *Mims v. Kemp*, 516 F.2d 21 (4th Cir.1975). Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction.

(Footnote omitted). In the instant case, there is no allegation that a federal question is involved. That leaves diversity of citizenship as the only possible basis of subject matter jurisdiction. Under 28 U.S.C. 1332, then, it is the Plaintiff's burden to show 1) complete diversity between the parties and 2) that the amount in controversy exceeds $75,000. The Plaintiff has failed on both counts. There is not complete diversity, and the Plaintiff has failed to allege that such diversity exists. Further, the Plaintiff has failed to allege a sufficient amount in controversy because he

8

inappropriately aggregated the alleged damages caused by all nine Defendants and included damages caused by third parties for which the Defendants are not responsible as a matter of law. For all of these reasons, this Court should dismiss this case for lack of subject matter jurisdiction.

## A.   There Is Not Actual Diversity between the Plaintiff and the Defendants and the Plaintiff Has Failed to Allege Such Diversity Exists.

First, Messrs. Hoft and Stranahan present an evidence-based attack on the Plaintiff's assertion of diversity jurisdiction. As noted by this Court in *Tinsley v. Streich*, 143 F. Supp. 3d 450, 455 (W.D. Va. 2015), "Diversity jurisdiction under § 1332 requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." However, as indicated by the attached Declaration of Lee Stranahan, Mr. Stranahan is domiciled in Virginia. Exhibit A, ¶¶ 1-2; see also *Gilbert v. David*, 235 U.S. 561, 569-570 (1915). Because the Plaintiff is also presumptively domiciled in Virginia,[3] complete diversity is lacking.

Further, the Complaint on its face fails to *allege* complete diversity. As noted *supra* p. 3, at the beginning of paragraph 17 the Complaint claims that co-Defendant Lee Ann McAdoo is a resident of Texas. However, at the end of the same paragraph the Complaint states that she "may currently reside in the state of Florida." This indicates that the Plaintiff does not actually know where Ms. McAdoo lives. Because it is the Plaintiff's burden to establish jurisdiction, Federal Courts will not accept jurisdiction in diversity cases if the actual state of domicile is unknown. For instance, in *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009), a plaintiff brought suit against a number of anonymous Internet users. The *Sinclair* court held that under those

---

[3] Federal courts have repeatedly held that residence creates a rebuttable presumption of domicile. *See, e.g., Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1342 (11th Cir. 2011) and *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011).

circumstances, diversity jurisdiction would not lie as follows:

> First, it is obvious that, as presented, the Court has no subject-matter jurisdiction over Sinclair's complaint. He has alleged only state-law causes of action, and jurisdiction rests on diversity of citizenship. But the citizenship of the defendants—all anonymous "Does"—is not known. Instead, Sinclair, a citizen of Minnesota, urges that after reasonable discovery, he will establish that defendants are citizens of other states. See Compl. ¶ 2. The law is clear, however, that a diversity action cannot be brought against Doe defendants in hopes of later discovering that the requisite diversity of citizenship actually exists. See, e.g., *Menzies v. Doe*, 194 F.3d 174 (D.C. Cir. 1999) (unpublished table decision); *Howell by Goerdt v. Tribune Entertainment Co.*, 106 F.3d 215, 218 (7th Cir. 1997); *Meng v. Schwartz*, 305 F. Supp. 2d 49, 55-56 (D.D.C. 2004); see also 13B Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 3602, at 372 (2d ed. 1984) ("the essential elements of diversity jurisdiction must be alleged in the pleadings").

*Id.* at 132-33. If the Plaintiff does not know where all of the Defendants are domiciled or if this Court finds that Lee Stranahan is domiciled in Virginia, then diversity of citizenship has not been established, and this Court should dismiss this case for lack of subject matter jurisdiction.

**B.     The Plaintiff Has Failed to Allege That the Amount in Controversy Exceeds $75,000.**

The fundamental problem with respect to the amount in controversy requirement is that the Plaintiff inappropriately combines damages that do not belong together. First, the Plaintiff inappropriately attempts to aggregate his claims against all nine Defendants without any showing that they are jointly liable. Second, the Plaintiff includes in his calculations damages caused by third parties for which Messrs. Stranahan and Hoft cannot, as a matter of constitutional law, be held responsible. For both of these reasons, this Court should hold that the Plaintiff has failed to properly plead the amount in controversy and dismiss this case for lack of subject matter jurisdiction.

1.     The Plaintiff Has Inappropriately Attempted to Aggregate the Amount in Controversy among the Defendants.

As the Fourth Circuit said in *Liberty Mut. Fire. Ins. v. Hayes*, No. 96-2384, at *4 (4th Cir.

Sept. 15, 1997):[4]

> The rules of aggregation can be stated fairly simply. If a single plaintiff sues a single defendant, the plaintiff may aggregate the value of all claims to satisfy the jurisdictional amount, regardless of whether the claims have any factual connection. In the case of multiparty litigation, however, claims by or against co-parties generally may not be aggregated to meet the jurisdictional amount. If several plaintiffs join together to sue a single defendant, aggregation is allowed only if the plaintiffs' claims arise from a common and undivided interest. Likewise, if a single plaintiff joins several parties as defendants, the plaintiff may not aggregate the various claims unless the defendants' liability is common, undivided or joint. 15 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE §§ 102.108(1)-102.108(3) (3d ed. 1997).

See also *Jewell v. Grain Dealers Mutual Insurance Co.*, 290 F.2d 11, 13 (5th Cir. 1961) and *Walter v. Northeastern R. Co.*, 147 U.S. 370, 373-74 (1893).

In the instant case, the Plaintiff has alleged that the amount in controversy has been met only three times in the Complaint. First, paragraph 2 of the Complaint states that "The amount in controversy exceeds $75,000, exclusive of interests and costs." Second, in relation to defamation, the Complaint states in paragraph 114 that

> Defendants' defamatory statements harmed and continue to harm [the Plaintiff] both personally and professionally. Defendants are liable to [the Plaintiff] for the personal and professional harm they caused by defaming [the Plaintiff] in an amount greater than $75,000 to be determined at trial.

Finally, paragraph 198 of the Complaint states that "Defendants are liable to [the Plaintiff] for the emotional distress they caused in an amount greater than $75,000 to be determined at trial."

In other words, every time the Plaintiff pleads that the $75,000 threshold has been met, the amount is aggregated and this Court is left with no idea how much any specific Defendant is

---

[4] This is an "unpublished disposition," but Fourth Circuit Local Rule 32.1 states that while citation of such opinions are "disfavored" they can be cited when "no published opinion… would serve as well." Because undersigned counsel could find no published case that serves as binding precedent on this Court within the past century, that condition has been satisfied. A copy of that opinion has been attached as Exhibit C.

allegedly liable. For all this Court knows, the Plaintiff could believe that each of these nine Defendants are liable for $10,000 of damage, so the claims against that no single Defendant meets the jurisdictional minimum unless their claims are added together. As noted in *Liberty Mut. Fire. Ins.* above, such aggregation is not permitted unless liability is common, undivided or joint, and the Complaint alleges no facts that allow this Court to find such common, undivided or joint liability that would encompass all nine Defendants. For this reason alone, the Complaint fails to properly allege that the amount in controversy exceeds $75,000, and therefore, this Court should dismiss this case under Fed. R. Civ. P. 12(b)(1).

    2.    <u>The Plaintiff Has Inappropriately Included Harm by Third Parties in His Calculation of Damages.</u>

An additional problem with the Plaintiff's assertion that this case meets the jurisdictional minimum is that this calculation includes the independent acts of third parties that cannot, as a matter of constitutional law, be impugned to Messrs. Stranahan or Hoft.

Over and over, the Complaint claims that the Defendants generally, or Messrs. Stranahan or Hoft specifically, were somehow responsible for the misconduct of third parties. For instance, in paragraph 73 the Complaint alleges that:

> All Defendants knew or should have known from recent, publicized experiences that their defamatory publications about [the Plaintiff] would incite harassing and threatening messages against him in Virginia. Defendants' audience routinely answers calls to action with violence and anger.

Likewise, in paragraphs 84-85 the Complaint states that

> Defendant Jim Hoft has an extensive history of inciting harassment by spreading misinformation through his website Gateway Pundit. To take but one example: on or around January 11, 2017, Gateway Pundit falsely claimed that an editor for the Washington Post was secretly taking photos of Secretary of State Rex Tillerson's notes during his confirmation hearing. The editor has been subjected to intense online harassment as a result of this publication....

> In light of the aforementioned highly publicized events, all Defendants knew or

should have known that their defamatory statements about [the Plaintiff] would incite their reading and viewing audiences to direct further harm toward [the Plaintiff] in Virginia. The harassment, threats and intimidation that ensued were entirely foreseeable and caused by Defendants' lies about [the Plaintiff].

Similarly, paragraph 111 states that

The Defendants' defamatory statements were designed to (1) injure [the Plaintiff's] reputation, (2) subject [the Plaintiff] to contempt and disgrace, and (3) incite harassment of and threats directed at [the Plaintiff].

Paragraph 143 focuses specifically on Mr. Hoft:

Defendant Hoft's statements were designed to injure [the Plaintiff's] reputation, subject [the Plaintiff] to contempt and disgrace, and incite harassment and threats directed at [the Plaintiff]; indeed, Defendant Hoft's statements had their intended effect.

Meanwhile, paragraph 154 partially focuses on Mr. Stranahan:

Defendants Jones, InfoWars, Free Speech Systems, Stranahan, and McAdoo's statements were designed to injure [the Plaintiff's] reputation, subject [the Plaintiff] to contempt and disgrace, and incite harassment and threats directed at [the Plaintiff]; indeed, Defendants Jones, InfoWars, Free Speech Systems, Stranahan, and McAdoo's statements had their intended effect.

Finally, the claims that Messrs. Stranahan and Hoft intentionally inflicted emotional distress is equally linked to the theory that they somehow caused third parties who are not parties to this suit to engage in illegal and/or immoral behavior. For instance, the allegations of harm in paragraph 195 are laced with such claims:

Defendants knew or should have known that their publications about [the Plaintiff] would cause him to be the subject of harassment and threats and thereby cause severe emotional distress.

Thus, the emotional distress complained of was not caused by the publications themselves but by the alleged incitement of third parties to engage in harassment and threats. Yet in paragraph 197, the Complaint makes the contradictory claim the Defendants' writings inflicted severe emotional distress by causing reputational harm in addition to the harm directly caused by people Messrs.

Hoft and Stranahan allegedly incited:

> [the Plaintiff] has experienced serious and severe emotional distress as a direct and proximate result of Defendants' actions. Defendants' publication of baseless false allegations have caused [sic] [the Plaintiff] extensive personal suffering in the wake of the slew of threats and harassment that has been directed at him, as well as the irreparable damage to his professional reputation as a diplomat in the State Department and his ability to conduct business in his current company.

Thus, the damage being asserted is being caused in part by the harassment and threats inflicted by third parties.

However, the Plaintiff never properly alleges that Messrs. Hoft or Stranahan are liable for the behavior of those third-party actors. The Plaintiff's theory is that Messrs. Hoft and Stranahan committed incitement. Compl. ¶¶ 73, 76, 85, 111, 143, 154, 172 and 185. Even if one assumes arguendo that in a defamation or IIED case that a person can be held liable for the misconduct of third parties if that defendant incites that misconduct, the Complaint never makes any proper allegation of incitement.

First, although the Complaint repeatedly uses variations of the word "incite," that term is purely conclusory. Compl. ¶¶ 73, 76, 85, 111, 143, 154, 172 and 185. As noted above, *supra* pp. 7-9, when jurisdiction is challenged based on the sufficiency of allegations, the analysis is treated identically to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Adams,* 697 F.2d at 1219 ("all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration"). This includes the guidance in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) that conclusory allegations must be disregarded:

> the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.... In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they

14

must be supported by factual allegations.

(Internal citations omitted.) Applied here, the claim that Messrs. Stranahan or Hoft incited any of the deplorable conduct committed by third parties is simply a conclusion[5] and entitled to no presumption of truth. Instead, the Complaint must allege facts that, if true, would amount to incitement.

The test for incitement was established in *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), in which the Supreme Court said that

> the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.

Thus, in order for a plaintiff to successfully plead incitement, he or she must plead facts that establish that the defendant 1) advocated 2) for imminent violence or lawless action, 3) in circumstances where it was likely to produce or incite imminent violence or lawless action. See *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167 (D. Conn. 2002) (holding that makers of the video game *Mortal Kombat* cannot be held liable under an IIED theory because the expression at issue failed the *Brandenburg* test). The instant Complaint fails every part of this test, but one need look no further than the fact that the Complaint never alleges that Messrs. Hoft and Stranahan advocated any violence or lawless action.

---

[5] Other district courts have repeatedly held that a complaint must go beyond conclusory allegations to establish diversity jurisdiction. See, e.g. *Hayes v. Shelby Cnty. Tr.*, 971 F. Supp. 2d 717, 726 (W.D. Tenn. 2013), *Griffin v. Dir. of Vatterott*, No. 4:17-CV-2632 DDN, at * 3 (E.D. Mo. Oct. 27, 2017), *Naz, LLC v. Philips Healthcare*, No. 17-2882, at * 16 (E.D. La. July 26, 2017), *Diamos v. Specialized Loan Servicing LLC*, No. 13-cv-04997 NC, at * 4 (N.D. Cal. July 7, 2014), *Oved v. Weiner*, No. 17-CV-1348 (DRH)(GRB), at *10 (E.D.N.Y. Dec. 21, 2017), *Gypsum Storage Dev. LLC v. W. Reed Edgel & Assocs. Inc.*, No. 10-cv-02760-MSK, at *2 (D. Colo. Nov. 15, 2010), *Levy v. Ryan Seacrest Prods.*, No. 2:13-cv-0070 KJM KJN PS, at *6 (E.D. Cal., Jan. 29, 2013), and *Saleh v. Florida*, No. 3:17-cv-1465-J-34PDB, at *11 (M.D. Fla. Jan. 5, 2018).

Therefore, the Plaintiff cannot recover, as a matter of law, any damages from Messrs. Hoft or Stranahan for any harm caused by third persons who allegedly committed illegal or immoral acts against the Plaintiff. So, when considering whether or not the Plaintiff has alleged the jurisdictional minimum, this Court cannot consider damages caused by alleged incitement—because as a matter of law, no incitement is properly alleged. Yet, because the Plaintiff chose to lump his damages caused by third parties who are not named as defendants in with the harms that he alleged to have been caused by the nine Defendants, there is no way this Court can determine whether the Complaint meets the jurisdiction minimum without those claims based on third-party misconduct. In other words, because the Plaintiff failed to allege that Messrs. Hoft and Stranahan met the jurisdictional minimum without including the improperly pled incitement, there is no way for this Court to know if the Plaintiff *can* plead the jurisdictional minimum without the improperly pled claim for incitement.

In summary, this Court lacks subject matter over this case for four reasons. First, there is no actual diversity between the Plaintiff and Mr. Stranahan. Second, the Complaint fails to properly allege that there is diversity between the Plaintiff and Ms. McAdoo. Third, the Complaint fails to allege that more than $75,000 is in controversy, because it inappropriately aggregates the damages of all nine Defendants. Finally, the Complaint fails to allege the jurisdictional minimum because it includes in its calculation of damages harms caused by third parties not named as defendants in this case without properly alleging any theory that would make Messrs. Hoft and Stranahan responsible for their conduct. For all of those reasons, or any single one of them in isolation, this Court does not have subject matter jurisdiction and should dismiss this case under Fed. R. Civ. P. 12(b)(1).

**II.**

**THIS COURT CANNOT EXERCISE PERSONAL JURISDICTION OVER MR. HOFT**
**IN THE INSTANT CASE**

Given that this is alleged to be a diversity of citizenship case under 28 U.S.C. § 1332, the question of whether this Court can exercise personal jurisdiction over Mr. Hoft is determined by the same standards that would apply in any Virginia state court. Therefore, Virginia state law controls so long as it is consistent with the Federal Constitution. "[A] federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of jurisdiction is consistent with constitutional due process." *Nichols v. G.G. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (internal quotation marks omitted). In this instance the Plaintiff has failed to allege conduct by Mr. Hoft that either meets the requirements of (1) Virginia's long-arm statute or (2) the Due Process Clause of the Fourteenth Amendment. For those reasons alone, this Court should dismiss this case with respect to Mr. Hoft under Fed. R. Civ. P. 12(b)(2).

**A.    Mr. Hoft Has Not Engaged in Any Conduct That Meets the Requirements of Virginia's Long-Arm Statute.**

First, although it is correct to say that "the function of [Virginia's] long-arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in Virginia, to the extent permissible under the Due Process Clause" of the Fourteenth Amendment, *Krantz v. Air Line Pilots Ass'n, Intern.*, 245 Va. 202, 205 (1993), it is incorrect to say that this Court can simply pretend that Virginia's long-arm statute (VA. CODE § 8.01-328.1) does not exist. Even in *Krantz* where jurisdiction was found to lie, the Virginia Supreme Court first determined whether or not the conduct at issue met the language of the statute and then determined whether such an assertion of jurisdiction would comport with due process.

Further, as this Court stated in *Bennett v. OmniSOURCE Corp.*, No. 7:14CV00309, at *3-

17

4 (W.D. Va, Nov. 4, 2015):

> When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving the existence of jurisdiction over the defendant by a preponderance of the evidence. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). When, as here, the court decides such motion without an evidentiary hearing, "the plaintiff need prove only a prima facie case of personal jurisdiction." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). In deciding whether the plaintiff has made the requisite showing, the court must draw all reasonable inferences arising from the evidence, and resolve all factual disputes, in the plaintiff's favor. *Id.*

With respect to Virginia's Long-Arm statute, the Plaintiff appears to rest the current assertion of jurisdiction on VA. CODE § 8.01-328.1(A)(4), which states in relevant part that:

> A.   A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:...
>
> 4.   Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;

The Complaint attempts to invoke this provision by writing in paragraph 4 of the Complaint that "Defendants injured Plaintiff... in the Commonwealth of Virginia by their conduct outside of Virginia" and by stating in paragraph 6 that "Upon information and belief, Defendants regularly do and/or solicit business in the Commonwealth, engage in other persistent courses of conduct, or derive substantial revenue from goods used or consumed or services rendered in the Commonwealth," closely echoing the language found in subsection (A)(4). However, as noted above, *supra* p. 4, the Declaration submitted by Mr. Hoft indicates that he 1) wrote the allegedly defamatory article in Missouri, 2) does not do or solicit business in Virginia, 3) has not engaged in any persistent course of conduct in Virginia, 4) has not derived any revenue from goods used or consumed in Virginia, or 5) derived any revenue from any services performed in the Commonwealth. Exhibit B, ¶¶ 1-4. Therefore, Mr. Hoft's conduct does not trigger any part of the

18

Virginia long-arm statute, and for this reason alone, he should be dismissed from the case.

**B.    The Plaintiff's Proposed Assertion of Jurisdiction Would Violate the Due Process Clause of the Fourteenth Amendment.**

Even if Virginia's long-arm statute was satisfied that is only half of the analysis. The second question is whether the assertion of jurisdiction would be permitted under the Due Process Clause of the Fourteenth Amendment. This, in turn, is a two-part analysis:

> Two types of personal jurisdiction satisfy constitutional due process. Both require a nonresident defendant to have "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316... (1945) (internal quotation marks omitted). First, a court may exercise general jurisdiction over a nonresident defendant who has "continuous and systematic" contacts with the forum state. *ALS Scan, Inc. v. Digital Serv. Consultants*, *Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414... (1984)). Second, a court may assert specific jurisdiction based on the nonresident defendant's "conduct connected to the suit." [*ALS Scan,* 293 F.3d] at 711.

*Tatoian v. Andrews*, 100 F. Supp. 3d 549, 553 (W.D. Va. 2015). Neither general nor specific jurisdiction can be exercised in this case.

> 1.    This Court Cannot Exercise Specific Personal Jurisdiction over Mr. Hoft Under *Young v. New Haven Advocate.*

The leading case in this circuit on the question of specific personal jurisdiction in the Internet age is *Young v. New Haven Advocate,* 315 F.3d 256 (4th Cir. 2002), and that case presents facts similar to the instant case in nearly every relevant respect. That case involved two Connecticut newspapers (and members of their respective staffs) and their associated websites which published articles allegedly defamatory of a Virginia prison warden. Mr. Young attempted to argue that Virginia could exercise personal jurisdiction over those defendants as follows:

> (1) the [Defendants], knowing that [the plaintiff, the warden of a Virginia prison] was a Virginia resident, intentionally discussed and defamed him in their [newspaper] articles, (2) the newspapers posted the articles on their websites, which were accessible in Virginia, and (3) the primary effects of the defamatory

19

statements on [the plaintiff's] reputation were felt in Virginia.

*Id.* at 261-62. However, the *Young* court found this to be insufficient because there is no allegation that there was an intent to target a Virginia audience:

> As we recognized in *ALS Scan*, "a person's act of placing information on the Internet" is not sufficient by itself to "subject[] that person to personal jurisdiction in each State in which the information is accessed." [293 F.3d] at 712. Otherwise, a "person placing information on the Internet would be subject to personal jurisdiction in every State," and the traditional due process principles governing a State's jurisdiction over persons outside of its borders would be subverted. *Id.*

315 F.3d at 263. By the *Young* standard, there is nothing before this Court allowing it to determine that the lone article written by Mr. Hoft cited in the Complaint was meant specifically for a Virginia audience instead of a national or even a global audience. Therefore, under *Young*, this Court cannot assert specific personal jurisdiction over Mr. Hoft.

> 2.   This Court Cannot Exercise General Personal Jurisdiction over Mr. Hoft Under *Collier v. Land & Sea Rest. Co.*

Turning to the question of general personal jurisdiction, the Plaintiff fares little better. Beside the writings to the world at large, Mr. Hoft's Declaration states that he allows donations to come from anywhere in the world. Exhibit B, ¶ 3. If one likens donations to sales, then this bears some resemblance to the facts in *Collier v. Land & Sea Rest. Co.*, No. 7:13-cv-00104 (W.D. Va. Oct. 15, 2014). In that case, the plaintiff attempted to assert general jurisdiction, in part, based on the fact that one defendant, Norm Bloom and Son, LLC, ran a website that allowed Virginians to purchase their products online and that Virginians did purchase those products on their website. This Court brushed that argument aside as follows:

> Sales through a website alone are insufficient to confer general jurisdiction if that website is focused generally on customers located throughout the United States and does not focus on or target customers in the forum state. See *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 401 (4th Cir. 2003). Based on the information provided to the court, the website here falls within that category. That is, it allows customers located anywhere to purchase Norm Bloom's products

through the website, but does not focus specifically on Virginia as a target market.

*Id.* at *6. Accordingly, the *Collier* court found that general jurisdiction did not lie in Virginia. Indeed, an examination of *Carefirst* verifies the correctness of this conclusion. In that case, the Fourth Circuit found that an interactive website that might be accessed in Maryland was not sufficient to confer jurisdiction in Maryland:

> when CPC set up its generally accessible, semi-interactive Internet website, it did not thereby direct electronic activity into Maryland with the manifest intent of engaging in business or other interactions within that state in particular.... Consequently, the website fails to furnish a Maryland contact adequate to support personal jurisdiction over CPC in the Maryland courts.

334 F.3d at 401. Applied here, Mr. Hoft's Declaration establishes that any solicitation of donations does not target Virginia, but instead targets the world as a whole. Therefore, this Court cannot exercise general or specific jurisdiction, justifying dismissal of Mr. Hoft under Fed. R. Civ. P. 12(b)(1), and he should be dismissed from this case.

## III.
## THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if this Court had jurisdiction, the Plaintiff has failed to state a claim for which relief can be granted, justifying dismissal under Fed. R. Civ. P. 12(b)(6). As this Court stated in *Elitharp-Martin v. Pulaski Cnty. Sch. Bd.*, 62 F. Supp. 3d 515 (W.D. Va. 2014):

> A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). When considering a motion to dismiss, the court must accept the well-pled facts in the complaint as true and make all reasonable inferences in the plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570... (2007).

Further, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim" as "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

21

do not suffice," *Iqbal*, 556 U.S. at 678–79. This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. Additionally, on a motion to dismiss "a court may apply common sense and reject fantastic allegations." *McCauley v. Hospira, Inc.*, No. 11-CV-108, at *4 (M.D.N.C. 2011).

In *Iqbal*, the Supreme Court wrote that "We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." 556 U.S. at 681. It might be useful to this Court to do the same, actually taking a copy of the Complaint, crossing out every allegation that is not entitled to a presumption of truth and then seeing if there is anything left that would support any claim for relief. In the instant case, the Plaintiff has failed to make sufficient non-conclusory allegations that, if true, would allow this Court to find that Messrs. Stranahan or Hoft had committed either defamation or IIED.

**A.     The Complaint Has Failed to State a Claim against Messrs. Stranahan or Hoft for Defamation.**

The Complaint fails to plead defamation for four reasons. First, the Complaint repeatedly fails to properly plead falsity. Second, the allegedly defamatory statements are protected opinion. Third, the Plaintiff fails to properly plead malice or negligence. Finally, the Complaint fails to properly plead damages. For all of these reasons, the Complaint fails to state a claim for which relief can be granted, and to the extent that Counts I, VI and VII apply to Messrs. Hoft and Stranahan, those counts should be dismissed.

<u>1.     The Complaint Repeatedly Fails to Allege Falsity.</u>

One of the most basic requirements in pleading defamation is to actually allege that the statements were false. There are six times that the Plaintiff attempts to plead what the actual or

allegedly implied meaning of Messrs. Stranahan and Hoft's statements were, but the Complaint only says that this meaning is false four times, leaving two instances where the Plaintiff did not claim that the alleged meaning was false.

> For instance, in paragraph 154, the Complaint states that
>
> The plain and natural meaning of these statements are that [the Plaintiff], because of his employment with the State Department, and because he posted a photo of Heather Heyer that referred to her as a "martyr" on his Twitter page, was involved in a conspiracy to exploit Heather Heyer's death to stage a coup resulting in the removal of Donald Trump as President. This is false[.]

First, the Complaint does not claim it is false to say he was an employee of the State Department or that he called Ms. Heyer a martyr. Instead the Complaint only alleges that it is false to claim the Plaintiff was "involved in a conspiracy to exploit Heather Heyer's death to stage a coup resulting in the removal of Donald Trump as President." To the extent that the Complaint denies involvement in such a conspiracy it properly pleads falsity.

> However, in paragraph 157, the Complaint assigns a slightly different meaning to Mr. Stranahan's comments (which they also impute to several other Defendants):
>
> Defendants Jones, InfoWars, Free Speech Systems, Stranahan, and McAdoo's statements are defamatory per se because they impute to [the Plaintiff] the commission of some criminal offense involving moral turpitude—in this instance, that [the Plaintiff] planned or participated in James Alex Fields, Jr.'s car attack in Charlottesville on August 12, 2017, which killed one person and injured many others, as part of a conspiracy to stage a "coup" and overthrow a sitting president. If true, these allegations would cause [the Plaintiff] to be indicted and punished.

Although the Complaint states that this meaning would be disparaging, the Complaint does not state that such allegations (if they were made by Mr. Stranahan) are false. Further, the prior allegations of falsehood do not apply to this passage. Previously, the Plaintiff claimed it was false to allege that the Plaintiff was "involved in a conspiracy to exploit Heather Heyer's death." That is not a denial that he planned and/or participated in her killing.

With respect to Mr. Hoft, the Complaint makes several attempts to plead what the actual or allegedly implied meaning of Mr. Hoft's words are. First in paragraph 140, the Complaint quotes Mr. Hoft as calling the Plaintiff a "deep state shill" and states that the Plaintiff "denies being a 'deep state shill,' and this statement is false[.]" Meanwhile, in paragraphs 141 and 142, the Complaint states that

> The plain and natural meaning of this statement is that [the Plaintiff] was part of a government conspiracy to incite violence at Charlottesville, resulting in the death of Heather Heyer, and the injury of countless others. This is false[.]

In those instances, falsity was properly pled. However, in paragraph 148, the Complaint assigns a different meaning to Mr. Hoft's words:

> Defendant Hoft's statements are defamatory per se because they impute to [the Plaintiff] the commission of some criminal offense involving moral turpitude—in this instance, that [the Plaintiff], as part of some "deep-state" conspiracy, planned or participated in James Alex Fields, Jr.'s car attack in Charlottesville on August 12, 2017, which killed one person and injured many others. If true, these allegations would cause [the Plaintiff] to be indicted and punished.

Putting aside that Mr. Hoft did not allege all that the Complaint imagines, there is no claim by the Plaintiff that these allegations are false,

As with Mr. Stranahan, the prior allegations of falsity do not aid the Plaintiff. Previously, in paragraph 140, the Plaintiff denied that he was a "deep state shill." He did not deny that he was part of a "deep-state conspiracy." Previously, in paragraph 141-42, the Plaintiff denied that he was in a conspiracy to incite a riot. The Plaintiff did not deny that he was part of a conspiracy that "planned or participated in James Alex Fields, Jr.'s car attack in Charlottesville on August 12, 2017." Compl. ¶ 148.

Furthermore, this Court has shown in the past it was unwilling to imply falsity when it was not stated. In *Bates v. Strawbridge Studios, Inc*., No. 7:11-cv-33, at *4 (W.D. Va. May 17, 2011), this Court was confronted with a complaint for defamation where "the complaint nowhere alleges

that the statements were false." On that basis alone, this Court dismissed Mr. Bates' claims for defamation and, to the extent that the instant Complaint relies on claims that Messrs. Hoft and Stranahan made accusations that the Plaintiff does not allege are false, those allegations of defamatory meaning should be disregarded.

      2.      The Allegedly Defamatory Statements are Protected Opinion.

Courts have regularly held that defamation claims cannot lie for expressions of opinion. See, e.g., *Schaecher v. Bouffault*, 290 Va. 83, 103 (2015). One particular brand of opinions that are protected, are best described as "conclusions based on disclosed facts." As stated in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 27 n. 3 (1990):

> The Restatement (Second) of Torts § 566, Comment c (1977) ... explains that a statement that "I think C must be an alcoholic" is potentially libelous because a jury might find that it implies the speaker knew undisclosed facts to justify the statement. In contrast, it finds that the following statement could not be found to imply any defamatory facts:
>
> > "A writes to B about his neighbor C: `He moved in six months ago. He works downtown, and I have seen him during that time only twice, in his backyard around 5:30 seated in a deck chair with a portable radio listening to a news broadcast, and with a drink in his hand. I think he must be an alcoholic.'"
>
> Yet even though clear disclosure of a comment's factual predicate precludes a finding that the comment implies other defamatory facts, this does not signify that a statement, preceded by only a partial factual predicate or none at all, necessarily implies other facts. The operative question remains whether reasonable readers would have actually interpreted the statement as implying defamatory facts.

All of the allegedly defamatory statements made by Messrs. Hoft or Stranahan are nothing more than conclusions from stated facts, and therefore, are opinions that cannot support a claim for defamation as a matter of law.

This is most clear with regard to Mr. Stranahan's allegedly false statement. After quoting Mr. Stranahan very selectively in paragraph 153, the Complaint describes what is supposedly false

in that statement as follows:

> The plain and natural meaning of these statements are that [the Plaintiff], because of his employment with the State Department, and because he posted a photo of Heather Heyer that referred to her as a "martyr" on his Twitter page, was involved in a conspiracy to exploit Heather Heyer's death to stage a coup resulting in the removal of Donald Trump as President.

*Id.* ¶ 154. By the very language of the Complaint, then, the assertions that the Plaintiff was employed by the State Department, posted a photo of Ms. Heyer, and called Ms. Heyer a martyr are true. What the Complaint is claiming is false is the *conclusion* that Mr. Stranahan allegedly draws from those disclosed facts. However, that conclusion would be an opinion based on disclosed facts and, therefore, speech protected by the First Amendment. This is true whether this Court agrees with Mr. Stranahan's logic or not. Since the quoted passage in paragraph 153 is the only statement by Mr. Stranahan alleged to be both false and defamatory, defamation cannot lie against Mr. Stranahan.

Meanwhile, in paragraph 140, the Complaint claims that this sub-headline by Mr. Hoft is also defamatory: "The random Charlottesville observer who was interviewed by MSNBC and liberal outlets [the Plaintiff] turns out to be a deep state shill with links to George Soros." The Complaint claims in the same paragraph that calling [the Plaintiff] a "deep state shill" is defamatory. Putting aside the fact that it's not certain that any of those terms have a defamatory meaning, the language of that quoted passage indicates that this is another conclusion drawn from the facts presented in the article as a whole, as evidenced by the words "turns out." That language, found in a sub-headline to the article, implies that this article will provide the evidence of the Plaintiff's status as a "deep state shill." Taken as a whole, the allegation that the Plaintiff is a "deep state shill," is a conclusion based on disclosed facts and, therefore, protected opinion.

The tenor of the next quoted statement from Mr. Hoft, found in paragraph 142 of the

Complaint, modifies the pattern slightly. Rather than claiming that a stated conclusion from disclosed facts is defamatory, the complained-of conclusion is left unstated, but the Complaint alleges that Mr. Hoft is urging his readers to draw a conclusion that is itself defamatory. Specifically, the Complaint quotes Mr. Hoft as saying the following: "This weekend [the Plaintiff] happened to be in Charlottesville with the rioters. The media knows exactly who he is yet played it off like a casual observer." *Id.* The Complaint does not allege either one of those two sentences are defamatory or false, but instead believes a person reading them will draw a defamatory conclusion:

> The plain and natural meaning of this statement is that [the Plaintiff] was part of a government conspiracy to incite violence at Charlottesville, resulting in the death of Heather Heyer, and the injury of countless others. This is false and defamatory as an assertion of fact and/or by implication.

So, the Plaintiff seeks not to declare defamatory Mr. Hoft's *stated* conclusions from disclosed facts, but also his *unstated* conclusions from disclosed facts. However, such conclusions would be matters of opinion and, therefore, cannot support a claim for defamation.[6]

Similarly, in paragraph 141, the Complaint selectively quotes Mr. Hoft as saying the following:

> It looks like the State Department was involved in Charlottesville rioting and is trying to cover it up. But after [the] Deep State got caught they are trying to erase this guy from their records . . . The State Department is very familiar with [the Plaintiff]. He was involved in the Kony 2012 operation. The State Department later removed any reference of [the Plaintiff]. Why would the State Department react in such a way?

From that, the Complaint makes a massive leap of logic when explaining what that allegedly means, writing in the same paragraph that

---

[6] Furthermore, "A defamatory implication must be present in the plain and natural meaning of the words used." *Chapin v. Knight-Ridder, Inc.*, 993 F. 2d 1087, 1092 (4th Cir. 1993). The Plaintiff's imagined meanings fail this test.

> The plain and natural meaning of this statement is that [the Plaintiff] was part of a government conspiracy to incite violence at Charlottesville, resulting in the death of Heather Heyer, and the injury of countless others. This is false and defamatory as an assertion of fact and/or by implication.

The first problem with this assertion of defamatory meaning, is that it is not even clear that the comments about the State Department are of and concerning the Plaintiff in the first place. Second, even if it is, being "involved" in rioting is arguably true by the allegations in the Complaint. There was rioting in the general area: As stated in paragraph 25, "pockets of each side engaged in physical altercations." Further, the term "involved" does not necessarily imply any guilty involvement, such as by incitement or actually engaging in violence. According to Webster's dictionary[7] being "involved" can merely include "having a part in something" or being "included in something," with Webster giving the example of saying "She was *involved* in a lawsuit." Taking that use of the word as an example, one can be involved in a lawsuit as a plaintiff, defendant, attorney, judge, juror or witness. Only some of those roles are even voluntary, let alone blameworthy.

However, what is most clear is that the Plaintiff is trying to imply from Mr. Hoft's words something he does not actually say. The Complaint does not assert that any sentence in the quoted passage is untrue, but it instead imagines that presenting those facts would make the reader draw a *conclusion* that the Plaintiff considers defamatory. However, once again, conclusions from disclosed facts cannot be defamatory.

Since there is no other instance where the Complaint alleges that one of Mr. Hoft's statements is both false and defamatory, the Complaint fails to meet one of the most basic requirements in a defamation case with respect to Messrs. Hoft and Stranahan: Pleading that the

---

[7] *Involved*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/involved (last visited April 8, 2018).

defendant actually made a false assertion of fact, rather than expressing an opinion that the Plaintiff disputes. For this reason alone, the Complaint fails to state a claim for which relief can be granted in relation to defamation.

3.      The Complaint Fails to Properly Allege Malice.

Even if the Complaint properly alleged that Messrs. Hoft or Stranahan made false statements of fact (instead of stating opinions the Plaintiff disagreed with), the Plaintiff has failed to properly plead the correct state of mind: Constitutional malice. Going solely by the allegations in the Complaint and without converting this into a motion for summary judgment, this Court should determine that the Plaintiff is a limited-purpose public figure, triggering the requirement that he plead constitutional malice. However, although the Plaintiff has made conclusory allegations of malice, the Complaint fails to allege facts that could lead this Court to believe that such malice exists. For this reason, this Court should dismiss all counts related to defamation for failure to state a claim.

(a)      The Plaintiff Is a Limited-Purpose Public Figure.

This Court laid out the doctrine and legal significance of limited-purpose public figures in *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 869 (W.D. Va. 2016) so thoroughly it is worth quoting extensively:

> If Eramo was a... limited-purpose public figure at the time of publication, as part of her defamation case, she must prove by clear and convincing evidence that defendants acted with actual malice. *New York Times Co. v. Sullivan*, 376 U.S. 254... (1964); *Gertz v. Robert Welch*, 418 U.S. 323... (1974). The issue of whether Eramo was a ... limited-purpose public figure is a question of law to be resolved by the court. *Wells v. Liddy*, 186 F.3d 505, 531 (4th Cir. 1999). The court starts with a presumption that Eramo was a private individual at the time of publication, subject to defendants' burden of proving that plaintiff was a ... limited-purpose public figure. *Foretich v. Capital Cities/ABC*, 37 F.3d 1541, 1553 (4th Cir. 1994).
>
> A limited-purpose public figure is one who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a

29

limited range of issues." *Gertz*, 418 U.S. at 361.... Importantly, these individuals are subject to the actual malice standard for two reasons: (1) because of "their ability to resort to the `self-help' remedy of rebuttal" as these individuals "usually enjoy significantly greater access [to the media] than private individuals"; and (2) because they have "voluntarily exposed themselves to increased risk of injury from defamatory falsehood." *Foretich*, 37 F.3d at 1552. To determine whether a plaintiff is a private person or a limited-purpose public figure in relation to a particular public controversy, defendants must prove the following:

> "(1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation."

> *Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 668 (4th Cir. 1982); *Foretich*, 37 F.3d at 1553 (noting defendant's burden of proof). The second and third factors are often combined and are the heart of the inquiry: "whether the plaintiff had voluntarily assumed a role of special prominence in a public controversy by attempting to influence the outcome." *Foretich*, 37 F.3d at 1553.

Often, it is difficult to show that a person is a limited-purpose public figure without presenting evidence and therefore, it is often impossible as a practical matter for a court to determine whether or not a person is a limited-purpose public figure in resolving a motion to dismiss. However, this case represents a rare instance where the allegations found in the Complaint are sufficient to allow this Court to determine that the Plaintiff is in fact a limited-purpose public figure. Accordingly, this brief will address each prong of the test in turn.

First, the Plaintiff clearly "had access to channels of effective communication" at the time he was allegedly defamed. This entire controversy started when the Plaintiff filmed James Fields' horrible act of driving a car into a group of people and the Plaintiff posted the video on Twitter. Compl. ¶ 27 and 29. According to the image accompanying paragraph 29, that tweet was widely shared. The image shows that it has been retweeted over 80,000 times and liked by more than 100,000 people. In addition to that very effective direct access to the public through social media,

the Plaintiff "spoke with multiple television news networks and other news media" with respect to that incident, including but not limited to the *New York Times*, "on August 12 and 13, 2017." Compl. ¶ 30-31. The Plaintiff also complains about being "aggressively questioned" "after concluding a brief television interview" on August 14, 2017. Messrs. Hoft and Stranahan's allegedly defamatory material were published on August 14 and 15, 2017, respectively. Plainly, the Plaintiff "had access to channels of effective communication" at the time Messrs. Hoft and Stranahan published their alleged defamation, meeting the first prong of the test to determine if the Plaintiff was a limited-purpose public figure.

The second prong of the test is pretty straightforward: It asks whether the Plaintiff "voluntarily assumed a role of special prominence in the public controversy." In paragraphs 27-29 of the Complaint, the Plaintiff discusses how he filmed the incident, how he agonized over whether to go public, and how and why he decided ultimately to publish his footage of the incident. There is no question that he assumed a role of prominence in the controversy and did so voluntarily.

The third prong of the test asks if the Plaintiff "sought to influence the resolution or outcome of the controversy." This is obviously the case. In terms of the question of whether a crime was committed, the Plaintiff was publishing video evidence that is very likely to be key in the criminal case against Fields—it might make the difference between Mr. Fields going free or being convicted. Further, the Complaint makes it clear that the video was published in order to influence public perception about the incident. In paragraph 28, the Complaint explains why he shared the video:

> He felt it necessary to share the video on his Twitter account after hearing from family and friends that media outlets were suggesting the incident was something other than a deliberate attack. [The Plaintiff] realized his recording unequivocally showed that the attack was a deliberate attempt to injure and kill peaceful counter-protesters—not an accident or act of self-defense. [The Plaintiff] also feared that an already violent day in Charlottesville could get worse, and he felt it was his duty to

31

help convince the public to stay off the streets until safety was reestablished. Further, the tweet accompanying the video states "Let there be no confusion: this was deliberate terrorism." *Id.* ¶ 30. Clearly, the Plaintiff attempted to influence how the public perceived this incident and thereby "sought to influence the resolution or outcome of the controversy." He sought to convince others with that evidence that the incident was a deliberate act of terrorism, meeting the third prong of the test to determine if he is a limited-purpose public figure.

The fourth prong of the test asks if "the controversy existed prior to the publication of the [allegedly] defamatory statement." According to the Complaint (¶ 54) the controversy regarding "using a car as a weapon against protesters" existed for months prior to the incident the Plaintiff witnessed. The Complaint states that the incident occurred on August 12, *id.* ¶ 27, and the tweet in which he shared the video was date stamped on the same day, *id.* ¶ 29. Mr. Hoft's alleged defamation was published two days later, and Mr. Stranahan's alleged defamation was published the day after that. Thus, the fourth prong is satisfied.

Finally, it goes without saying that the Plaintiff "retained public-figure status at the time of the alleged defamation." As noted above, the Plaintiff was still being interviewed by the media on the same day that Mr. Hoft published his allegedly defamatory material, and it is ridiculous to think he lost his public-figure status by the next day when Mr. Stranahan published his allegedly defamatory material.

With all five prongs of the *Eramo* test satisfied, this Court can determine—on the basis of the allegations in the Complaint alone—that the Plaintiff is a limited-purpose public figure. That not only requires the Plaintiff to allege that Messrs. Hoft and Stranahan acted with constitutional malice with respect to the defamation claims, but as will be shown later, *infra* pp. 43-44, it must be alleged with respect to the IIED claims as well. The Plaintiff has failed to properly allege such

32

malice.

(b)      The Complaint's Allegations of Malice are Conclusory.

Because the Plaintiff is a public figure, defamation cannot lie unless malice is alleged. This requires more than merely conclusory allegations. For instance, in *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing*, 674 F.3d 369, 377-78 (4th Cir. 2012), the Fourth Circuit found that the Appellant was a public figure, and then rejected allegations of malice as follows:

> Applying the *Iqbal* standard to this case, we find that the Appellants have not stated a claim. To begin with, Appellants' assertion that Appellees' statements "were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity" is entirely insufficient. This kind of conclusory allegation—a mere recitation of the legal standard—is precisely the sort of allegations that *Twombly* and *Iqbal* rejected.

The same point was made more memorably by the First Circuit in *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012):

> We turn our attention, then, back to whether Schatz's allegations plausibly support an actual-malice claim. His complaint used actual-malice buzzwords, contending that the RSLC had "knowledge" that its statements were "false" or had "serious doubts" about their truth and a "reckless disregard" for whether they were false. But these are merely legal conclusions, which must be backed by well-pled facts.

In the instant case, "actual-malice buzzwords" are all the Plaintiff has to offer. The Complaint alleges in many paragraphs that the Defendants' allegations "were made with knowledge of their falsehood or reckless disregard for the truth or falsity of their allegations," Compl. ¶¶ 112, 124, 134, 146, and 156, or slight variations on that phrase, *id.* ¶¶ 58-59, 91, 174, and 187, and alleges many times that Defendants acted with malice by using the word "malice," *id.* ¶¶ 112, 124, 134, 145, 156, 174, and 187. However, those allegations of malice are "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Complaint never alleges facts that would plausibly support the conclusion that Messrs. Hoft or Stranahan made their statements "with knowledge that it was false or with reckless disregard of

33

whether it was false or not."[8] *New York Times*, 376 U.S. at 280.

Therefore, the Plaintiff has failed to properly plead constitutional malice, and the counts for defamation should be dismissed under Fed. R. Civ. P. 12 (b)(6).

    4.    <u>The Complaint Fails to Properly Allege Negligence.</u>

Even if this Court could not find at this time that the Plaintiff is a public figure, the Plaintiff still has not properly pled the state of mind needed to allege defamation. As explained in *Gazette, Inc. v. Harris*, 229 Va. 1, 15 (1985), the Virginia Supreme Court has adopted a negligence standard when private individuals sue for defamation:

> We hold, therefore, that in an action brought by a private individual to recover actual, compensatory damages for a defamatory publication, the plaintiff may recover upon proof by a preponderance of the evidence that the publication was false, and that the defendant either knew it to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.

As with the issue of constitutional malice, the Complaint uses many buzzwords, claiming that Messrs. Hoft and Stranahan knew their statements were false and that they acted negligently, Compl. ¶ 147 and 156, but as with the issue of constitutional malice, the Complaint never makes non-conclusory allegations to support a claim of negligence. For this reason, the defamation claims against Messrs. Hoft and Stranahan should be dismissed.

    5.    <u>The Complaint Fails to Properly Plead Damages.</u>

Even if the Plaintiff had properly pled that Messrs. Stranahan and Hoft made statements of fact and not opinions and if the Plaintiff had properly pled the correct state of mind, the Complaint does not properly allege damages. Under Virginia law, a plaintiff alleging defamation must also

---

[8] Indeed, Messrs. Hoft and Stranahan maintain that every fact they asserted was true and every conclusion they drew was correct but recognize that in a motion to dismiss for failure to state a claim, they are not allowed to challenge the evidentiary basis of the Complaint.

plead special damages, unless the statements at issue qualifies as defamation per se. In this instance, the Plaintiff has failed to plead special damages but apparently seeks to invoke the exception for defamation per se, by asserting both Messrs. Hoft and Stranahan had alleged criminal conduct and prejudiced the Plaintiff in his trade. However, the alleged defamatory statements are not defamation per se, and, therefore, the Complaint has failed to properly allege defamation.

(a)   None of the Statements by Messrs. Hoft or Stranahan Could Constitute Defamation per se.

In *Fleming v. Moore*, 221 Va. 884, 889 (1981), the Virginia Supreme Court laid out the difference between defamation per quod and defamation per se:

> Unlike most states, Virginia makes no distinction between actions for libel and those for slander.... We have held that actions for libel are treated as actions for slander, and that the common-law rules of slander are applicable, so that alleged defamatory language is actionable according to the following principles:
>
> At common-law defamatory words which are actionable per se are:
>
> > (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society. (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. (4) Those which prejudice such person in his or her profession or trade. All other defamatory words which, though not in themselves actionable, occasion a person special damages are actionable.

The same opinion went on to state that the determination of whether the statement is potential defamation per se or defamation per quod is a matter of law to be determined by the court, *id.*, and if the words do not constitute potential defamation per se, then special damages must be shown, *id.* at 889-890.

The Complaint only asserts that Messrs. Hoft and Stranahan committed defamation per se

by allegedly claiming that the Plaintiff engaged in criminal conduct or by prejudicing him in his trade, but fails in each instance.

First, the Complaint alleges in paragraph 148 that

Defendant Hoft's statements are defamatory per se because they impute to [the Plaintiff] the commission of some criminal offense involving moral turpitude—in this instance, that [the Plaintiff], as part of some "deep-state" conspiracy, planned or participated in James Alex Fields, Jr.'s car attack in Charlottesville on August 12, 2017, which killed one person and injured many others. If true, these allegations would cause [the Plaintiff] to be indicted and punished. Defendant Hoft's statements also prejudice [the Plaintiff] in his profession as a Foreign Service Officer at the United States State Department.

However, as noted above (*supra* pp. 22-25), the Complaint never alleges that these allegations are *false*. Therefore, it cannot be considered defamatory per se, because it cannot be defamatory at all.

The same problem plagues paragraph 157 of the Complaint:

Defendants Jones, InfoWars, Free Speech Systems, Stranahan, and McAdoo's statements are defamatory per se because they impute to [the Plaintiff] the commission of some criminal offense involving moral turpitude—in this instance, that [the Plaintiff] planned or participated in James Alex Fields, Jr.'s car attack in Charlottesville on August 12, 2017, which killed one person and injured many others, as part of a conspiracy to stage a "coup" and overthrow a sitting president. If true, these allegations would cause [the Plaintiff] to be indicted and punished.

In the following paragraph, the Complaint alleges that this statement prejudices the Plaintiff in his profession. However, as noted above (*supra* pp. 22-25), the Complaint does not allege that the claim (dubiously imputed to Mr. Stranahan) that the Plaintiff helped to plan or participate in the Fields' attack is false. Therefore, that alleged meaning cannot be defamatory, either.

To the extent that the Plaintiff alleges that Messrs. Hoft or Stranahan made statements that allegedly had false meanings, even if they were not protected opinion (*supra* pp. 25-29), they would not constitute defamation per se. For instance, in paragraph 140, the Complaint denies Mr. Hoft's allegation that the Plaintiff is a "deep state shill." A "shill" is defined by Webster's

Dictionary as "to act as spokesman or promoter."[9] It is not a crime to act as a spokesperson or promoter—indeed, many celebrities make a good (and lawful) living "shilling" for various products and services.

In paragraph 142, the Complaint quotes Mr. Hoft as saying "This weekend [the Plaintiff] happened to be in Charlottesville with the rioters." But being in the same city as rioters is not a crime. The Complaint claims that this is tantamount to a claim that the Plaintiff engaged in incitement of the riots, but Mr. Hoft's article never calls the Plaintiff's conduct incitement, nor does Mr. Hoft allege actions by the Plaintiff that would amount to incitement under *Brandenburg*, 395 U.S. at 447. In paragraph 141, the Complaint also claims Mr. Hoft falsely stated that "It looks like the State Department was involved in Charlottesville rioting and is trying to cover it up." As noted previously, *supra* p. 28, it is not clear that this sentence is truly of or concerning the Plaintiff, and simply being "involved" is not the same as being culpably or even voluntarily involved. Therefore, there is no allegation of criminal conduct. Further, to the extent that the Plaintiff claims that Mr. Hoft is alleging that the Plaintiff incited a riot, the answer is same: Mr. Hoft never accuses him of incitement by name or in substance.

Turning to Mr. Stranahan, the Complaint claims in paragraph 154 that Mr. Stranahan accused the Plaintiff of being "involved in a conspiracy to exploit Heather Heyer's death to stage a coup resulting in the removal of Donald Trump as President." Putting aside that Mr. Stranahan's talk of a coup was not clearly of and concerning the Plaintiff and is clearly a protected opinion, even an accusation of actually participating in a coup or attempted coup is not inherently an accusation of criminal conduct. Webster's dictionary defines a *coup d'état* as follows: "a sudden

---

[9]  *Shill*, MERRIAM-WEBSTER,  https://www.merriam-webster.com/dictionary/shill  (last visited April 8, 2018).

decisive exercise of force in politics; *especially* : the violent overthrow or alteration of an existing government by a small group a military *coup d'état* of the dictator."[10] There is nothing in that definition that automatically makes that application of force unlawful or even immoral. For instance, if a future president is impeached and the Senate votes to remove him or her, that ex-president might refuse to physically leave the White House. In that situation, federal agents—the Secret Service, one supposes—might be tasked with forcibly removing that ex-president. Such an act would be a "a sudden decisive exercise of force in politics" and thus a "coup," but it would not be illegal or immoral.

Nor would any of these allegedly false allegations fall into the category of statements that "prejudice such person in his or her profession" supporting an assertion of defamation per se. As stated in *Modla v. Parker*, 17 Ariz. App. 54, 56-57 (Ariz. App., 1972):

> In order to fit within the business category, the slanderous utterance must prejudice the person in the profession, trade or business in which he is actually engaged. This means that the statement must be of or concerning one in his business capacity. See, 53 C.J.S. Libel and Slander §§ 32--33 (1948) [sic] *Lady Windsor Hairdressers, Inc. v. Calvo*..., 231 N.Y.S.2d 221 (1962). Words which are merely injurious to one regardless of his occupation do not qualify as slander per se. *Gunsberg v. Roseland Corp....*, 225 N.Y.S.2d 1020 (1962).

None of the allegations outlined above meet this test. They are all words that, if they are injurious at all, are injurious to any person regardless of his or her profession. Accordingly, the Plaintiff has failed to properly allege any defamation per se (pretending he had alleged any defamation at all) and, therefore, he must allege special damages.

      (b)    The Complaint Serially Fails to Allege Special Damages Caused by Messrs. Hoft and Stranahan.

As stated in *Fleming*, 221 Va. at 890, a plaintiff needs to either show that the defendant

---

[10]    *Coup d'état*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/coup%20d'%C3%A9tat (last visited April 8, 2018).

committed defamation per se or that the plaintiff suffered special damages. Having failed to show defamation per se, by process of elimination the Plaintiff must allege special damages. The concept of special damages is explained well in *M. Rosenberg & Sons v. Craft*, 182 Va. 512, 520-21 (1944) (overruled on other grounds by *Gazette*) as follows:

> "Special damages are such as in fact have actually occurred as the result or consequences of the injury complained of, and not implied by law....
>
> "Special damages must always be the legal and natural consequence arising from the defamation itself, and not a mere wrongful act of a third person. Whenever special damages are claimed, in order to prevent a surprise on the defendant, which might otherwise ensue at the trial, the law requires the plaintiff to state the particular damage which he has sustained, or he will not be permitted to give evidence of it at the trial." Newell on SLANDER AND LIBEL, 4 ed., sec. 556, p. 603.

The alleged harm suffered by the Plaintiff rarely meets this standard.

For instance, one of the chief calculations of harm asserted by the Plaintiff stems from the deplorable and often illegal conduct by third parties. However, as noted above, *supra* pp. 12-17, these damages cannot be attributed to Messrs. Hoft or Stranahan because the Plaintiff has not alleged that they met the *Brandenburg* test*, 395 U.S. at 447. Furthermore, *Craft,* 182 Va. 521, makes it clear that even if that test were met, that the Plaintiff cannot include in special damages "a mere wrongful act of a third person" as a matter of common law.

The Plaintiff also attempts to include harms that are speculative. For instance, in paragraph 89, the Complaint states that he fears that the alleged defamation will harm his ability to form friendships, but does not allege that any particular person shunned him. He states he will not be able to continue in his present role in Wize Solutions in paragraph 90, but does not state that role has ended. Indeed, there is no clear explanation why he could not continue in his role or what his "present role" involves. He complains that others have "severe skepticism" and that he has been "consistently questioned," but does not allege actual harm from being questioned. Compl. 90. He

claims it is "nearly certain that many other potential clients and partners decided not to pursue business relationships with Wize as a result of reviewing" the alleged defamatory materials, but "nearly certain" is not the same as "certain."

Finally, in paragraph 91, the Complaint states that

it will be exceedingly difficult for him to serve as a diplomat to another nation, as foreign officials will certainly research his background and find the shocking and threatening information published by Defendants, including allegations that he is not actually a diplomat, but a covert CIA agent.

Among several deficiencies with that allegation, there is no particular allegation that any Defendant actually threatened him. Rather, it is probably just another example of the Plaintiff pretending he properly alleged incitement of threats. Certainly, if he means that one or more Defendants threatened him, that would be another conclusory allegation. See *Virginia v. Black*, 538 U.S. 343, 359 (2003) (describing the elements of a "true threat"). Further, the claim that the allegedly defamatory statements would make life difficult for the Plaintiff is vague and conclusory. *Iqbal* made it clear that conclusory allegations are insufficient, 556 U.S. at 679, and this Court has made it clear that vague allegations are equally insufficient. *Nowell v. Kumer*, No. 7:15cv00461, at *2 (W.D. Va. Nov. 17, 2015) ("Nowell's allegations in his complaint are far too vague to state a cognizable federal claim against any defendant") and *Chitty v. Liberty Univ.*, No. 6:13CV00043, at *3 n. 3 (W.D. Va. July 25, 2013) (stating that a complaint can be dismissed for vagueness, quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir. 1988)). The only claim in that paragraph that is not utterly vague is the claim that the allegation that he was a CIA agent might expose him to risk,[11] but the Plaintiff never alleged that Messrs. Hoft or Stranahan made such an accusation.

In the end, those forms of harm outlined in the last two paragraphs are speculative, possible

---

[11] It is odd to assert that the allegation that one works for the CIA is defamatory, given how many Americans honorably and proudly (though not openly) serve that federal agency.

future harms, and therefore, cannot meet the requirement of special damages.

The Complaint becomes less speculative in paragraph 6, contradicting the allegations in paragraphs 89-91, when it alleges that

> as a result [of the Defendants' allegedly defamatory statements], Plaintiff... has experienced irreversible personal and professional damage in Virginia, including the loss of business opportunities in Virginia, irreparable damage to his career as a Foreign Service Officer, and the loss of friendships with individuals in Virginia.

However, these allegations must be disregarded because they are conclusory. *Iqbal*, 556 U.S. at 681.

Finally, the Plaintiff attempts to claim emotional damages by alleging that the Plaintiff "has experienced severe emotional distress as a result of Defendants' deliberate campaign to portray him as a 'CIA asset' and 'deep state shill' due to the defamation, harassment, and threats to his safety that this campaign directly caused." Compl. ¶ 89. There are several problems with using this passage against Messrs. Stranahan or Hoft. First, Mr. Stranahan didn't refer to the Plaintiff as a "CIA asset" or a "deep state shill." Further, this claim that the Plaintiff suffered emotional distress is purely conclusory. The allegations become less conclusory toward the end of the paragraph when the Plaintiff alleges that

> Since these articles were first published, [the Plaintiff] has had to rely on the assistance of a therapist to address the substantial emotional stress of being the target of a deluge of threats as well as his ongoing fear of vile online and in-person harassment.

This allegation of emotional harm is less vague than the previous one, but the harm itself—the feelings of upset and the need to see a therapist—flow not from the defamation but the "wrongful acts of ... third person[s]." *Craft*, 182 Va. at 521. Such harms are not properly asserted forms of damage under Virginia law. *Id.*

In summary, the Complaint fails to state a claim for defamation against Messrs. Hoft and

Stranahan for four reasons. First, the Plaintiff serially fails to allege that what they said (or the Plaintiff pretends they said) was false. Second, all of the alleged falsehoods involve protected opinion in the form of conclusions drawn from stated facts. Third, the Plaintiff fails to properly allege constitutional malice or negligence. Finally, the Plaintiff fails to properly allege any defamation per se or to allege special damages in order to support a claim for defamation per quod. For all of these reasons, this Court should dismiss Counts I, VI and VII insofar as they apply to Messrs. Hoft and Stranahan, for failure to state a claim upon which relief can be granted.

**B.     The Complaint Has Failed to State a Claim for IIED against Messrs. Stranahan or Hoft.**

As noted by this Court in *Jackson v. Fletcher*, No. 7:09CV00408, at *20 (W.D. Va. Jan. 18, 2011), claims for IIED

> are not favored in Virginia. See *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006). The Supreme Court of Virginia has held that a plaintiff cannot recover on a claim of intentional infliction of emotional distress unless he can show by clear and convincing evidence that "1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." *SuperValu. Inc. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008).

Further, an additional requirement is present when the Plaintiff is a public figure: In that case, a plaintiff must allege that the defendant made a false statement *with constitutional malice*. In the instant case, the Complaint fails to plead such malice, repeatedly fails to plead a causal connection between the wrongdoers conduct and the emotional distress, and also fails to plead sufficiently outrageous or intolerable conduct, or sufficiently severe emotional distress. For all of these reasons, this Court should find that the Plaintiff has failed to state a claim for IIED against either Messrs. Hoft or Stranahan and to the extent that Count X applies to them, it should be dismissed with respect to Messrs. Hoft and Stranahan.

42

1.    Once Again, the Complaint Fails to Properly Plead Malice.

Previously, this brief noted that the Plaintiff is a limited-purpose public figure and, therefore, had to meet the malice standard with respect to defamation. *Supra* pp. 29-34. Further, this brief noted that the Complaint fails to properly plead malice, using conclusory "actual-malice buzzwords," *Schatz*, 669 F.3d at 56, instead of specific allegations that would lead this Court to conclude that actual malice was present. *Supra* 33-34.

Such a failure to plead constitutional malice not only justifies dismissal of the defamation claim but also the claim for IIED. This rule was established in *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988). In that case, *Hustler* ran a piece which imagined a fictional interview with televangelist Jerry Falwell, in which the preacher recalls a fictional sexual encounter with his mother, with a disclaimer reading "ad parody—not to be taken seriously." *Id.* at 48. Falwell sued the magazine and other defendants in part for IIED, arguing that even though the piece did not even pretend to be true, it nonetheless intentionally inflicted emotional distress on him.

However, the Supreme Court made it clear that the constitutional malice standard did apply under those circumstances as follows:

> We conclude that public figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publications such as the one here at issue without showing in addition that the publication contains a false statement of fact which was made with "actual malice," i.e., with knowledge that the statement was false or with reckless disregard as to whether or not it was true. This is not merely a "blind application" of the *New York Times* standard, see *Time, Inc. v. Hill*, 385 U. S. 374, 390 (1967), it reflects our considered judgment that such a standard is necessary to give adequate "breathing space" to the freedoms protected by the First Amendment.

*Id.* at 56. Therefore, because the Plaintiff is a limited-purpose public figure, he is required to plead that there was a false statement of fact (which the Complaint repeatedly failed to do, *supra* 22-29) and malice with respect to his claim of emotional distress. The Plaintiff's failure to properly plead

constitutional malice is fatal to both the defamation and IIED claims, justifying dismissal of both causes of action.

> 2.    The Complaint Improperly Attempts to Blame Messrs. Hoft and Stranahan for the Independent Actions of Third Parties.

It is useful to take the elements somewhat out of order and look at the question of whether "there was a causal connection between the wrongdoer's conduct and the resulting emotional distress" first because this will help limit the discussion of what conduct and what emotional distress are relevant in this case. As noted *supra* p. 5, the Complaint discusses in great detail about the deplorable and often illegal harassment the Plaintiff has allegedly faced since coming forward as a witness to the Fields incident. Compl. ¶¶ 59-72. In every case, these are the acts of third parties, and the Plaintiff may very well have causes of action against those third parties. If that conduct is criminal or tortious, Messrs. Hoft and Stranahan hope that those third parties—if they are guilty of the conduct described—face justice, in either criminal or civil law.

However, the Plaintiff has inappropriately attempted to blame Messrs. Hoft and Stranahan for the conduct of those third parties without alleging facts that would make them jointly liable. As noted above, *supra* pp. 12-17, the Plaintiff does make conclusory allegations that Messrs. Hoft and Stranahan committed incitement but without properly alleging that their words met the constitutional test for incitement set down in *Brandenburg*, 395 U.S. at 447. The Plaintiff had not even alleged the bare minimum under *Brandenburg*: The Plaintiff never alleged that Messrs. Stranahan or Hoft advocated violence or unlawful behavior.

Particularly on point is *Wilson v. Midway Games, Inc.* In *Wilson,* a thirteen-year-old boy died when he was stabbed to death by a friend, identified only as "Yancy S." Andrea Wilson, the late child's mother, argued that Yancy S. was driven to stab her son by the famously violent video game *Mortal Kombat*, published by Midway and sued Midway under a number of theories that

included IIED. The *Wilson* court noted significant doubts whether the tort of IIED would even lie under such facts as a matter of common law but settled the matter by looking instead to the First Amendment. The *Wilson* court brushed aside a claim that the plaintiff only needed to allege that Midway "knew or should have known that its conduct would bring about harm," 198 F. Supp. 2d at 182, and instead held that Midway could not be held responsible for distress caused by the misconduct of a third party (Yancey S.) unless Midway's expression met the *Brandenburg* test, 395 U.S. at 447. As in the instant case, Midway's expression could not meet that standard.

Indeed, any other approach would inappropriately chill speech. The danger was most articulately explained in *McCollum v. CBS, Inc.*, 202 Cal. App. 3d 989 (Cal. App. 2 Dist. 1988). In that case, musician John "Ozzy" Osbourne and his music publisher was sued for allegedly causing a nineteen-year-old man to commit suicide by the content of Osborne's music. Brushing aside that assertion, the *McCollum* court wrote that:

> it is simply not acceptable to a free and democratic society to impose a duty upon performing artists to limit and restrict their creativity in order to avoid the dissemination of ideas in artistic speech which may adversely affect emotionally troubled individuals. Such a burden would quickly have the effect of reducing and limiting artistic expression to only the broadest standard of taste and acceptance and the lowest level of offense, provocation and controversy. No case has ever gone so far. We find no basis in law or public policy for doing so here.

202 Cal. App. 3d at 1005-6 (footnote omitted). As dangerous as such liability would be to performing artists, it would be even more so to impose such liability on journalists such as Messrs. Hoft or Stranahan. According to the Plaintiff's theory, Messrs. Hoft and Stranahan cannot criticize other people or engage in negative reporting about them because even though they do not advocate violence or illegal conduct, third parties might decide on their own to be violent or to break the law. In short, they believe that under the First Amendment all speakers must limit their expression "to only the broadest standard of taste and acceptance and the lowest level of offense, provocation

45

and controversy." *Id.* The *McCollum* court refused to adopt such a repressive rule, and this Court should do the same.

Applied here, the only form of emotional distress alleged by the Plaintiff that Messrs. Hoft and Stranahan might be liable for is that which flows directly from the upset caused by the Plaintiff personally reading their writing. So, for instance, paragraph 89 of the Complaint states that the Plaintiff "has experienced severe emotional distress as a result of Defendants' deliberate campaign to portray him as a 'CIA asset' and 'deep state shill' due to the defamation, harassment, and threats to his safety that this campaign directly caused." Putting aside the conclusory and often vague nature of this allegation, the claim that other persons' alleged harassment and threats caused him distress must be disregarded. The same can be said with regard to that paragraph's allegation that the Plaintiff had to see a therapist due to threats and harassment, or paragraph 197's allegation that he suffered distress due to threats and harassment.

Accordingly, to the extent that the claim of IIED is based on the conduct of third parties, those claims should be dismissed because the Complaint fails to allege an appropriate causal connection between Messrs. Hoft and Stranahan's alleged conduct and the distress that was allegedly felt.

3.    The Complaint Fails to Properly Plead Outrageous or Intolerable Conduct.

The second element of IIED is the requirement that the conduct of the defendant be "outrageous or intolerable." The Plaintiff plainly tries to meet this standard by bundling in the conduct of Messrs. Hoft and Stranahan with those of third parties not even named as defendants in this suit. As demonstrated in the previous section, Messrs. Stranahan and Hoft are not responsible for that deplorable conduct by third parties as a matter of law. Therefore, when all of that third-party conduct is stripped away, the allegedly outrageous and intolerable behavior

46

amounts to nothing more than Messrs. Hoft and Stranahan making allegedly defamatory statements about the Plaintiff. This is not outrageous or intolerable as a matter of law.

For instance, in *Coles v. Carilion Clinic*, 894 F. Supp. 2d 783 (W.D. Va. 2012), this Court was faced with a more outrageous and intolerable series of events. In that case, Vernell Coles, a black man, alleged that his employer maintained an incredibly hostile work environment as follows (with apologies for the language):

> In the complaint, Coles asserts that Carilion maintained a racially hostile work environment and harassed and treated him differently than his nonblack coworkers based on his race. (Docket No. 1 at ¶ 10.) More specifically, Coles alleges that he was frequently referred to by fellow employees as a "nigger" and a drug dealer, subjected to the display of shackles and a noose in the workplace, subjected to references to the Ku Klux Klan and the lynching of a black man, subjected to similar racially derogatory remarks concerning the current President of the United States, denied promotions, and instructed to perform degrading work assignments. (*Id.* at ¶ 11.) Despite Carilion's policy providing that the company would promote from within its ranks before hiring outside workers, Coles alleges that one manager informed him that he would never advance because he was a "worthless nigger." (*Id.*) Another manager stated that Coles obtained his job only "because of the NAACP," that he was a "lazy nigger," and that the manager desired to terminate Coles but "could not figure out how to do it." (*Id.*) Coles further alleges that one worker claimed to be a member of the Ku Klux Klan and reportedly displayed a Klan belt buckle at work. (*Id.*) Based on these factual allegations, Coles advances two causes of action in his complaint: first, a claim for race discrimination and retaliation, pursuant to 42 U.S.C. § 1981 (§ 1981) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. (Title VII); and, second, a claim for intentional infliction of emotional distress (IIED), pursuant to Virginia law.

*Id.* at 786-87. Yet, this Court did not find that this abuse was sufficiently outrageous or intolerable to support IIED as follows:

> Pursuant to the second element of an IIED claim, a plaintiff must prove that the conduct giving rise to the claim was outrageous and intolerable. To satisfy this element, Coles relies on the allegations in the amended complaint surrounding the use of racially abusive language and symbols and Carilion's persistence in refusing to promote him while electing to promote white males instead. An IIED claim under Virginia law "requires extreme or outrageous conduct intended to cause and in fact causing severe emotional distress. `Extreme' means just that—only the most execrable conduct can give rise to the tort." *Webb v. Baxter Healthcare Corp.*, 57 F.3d 1067, 1995 WL 352485, at *5 (4th Cir.1995) (per curiam) (unpublished table

47

decision). Furthermore, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Russo [v. White*, 241 Va. 23, 400 S.E.2d 160, 162 (1991)]. While the alleged conduct in the instant case "*may* violate contemporary standards of appropriate behavior in the workplace, [the court] cannot label it an atrocity or `utterly intolerable in a civilized society.'" *Webb*, 1995 WL 352485, at *6 (emphasis in original) (concluding that the plaintiff's allegations that she was repeatedly ridiculed based on her gender, religion, and disability were insufficient to state a claim for IIED under Virginia law); see also *Law v. Autozone Stores, Inc.*, No. 4:09CV00017, 2009 WL 4349165, at *3 (W.D. Va. Nov. 25, 2009) (stating that, generally, "verbal abuse and use of insensitive language will not meet the bill for outrageous and intolerable conduct for purposes of an IIED claim based on Virginia law"); *Harris v. Kreutzer*, 271 Va. 188, 624 S.E.2d 24, 34 (2006) (stating that "[i]nsensitive and demeaning conduct does not equate to outrageous behavior as set by our caselaw"). For this reason, the court will grant Carilion's Rule 12(b)(6) motion with respect to the plaintiff's IIED claim.

*Id.* at 796-97. While some subjectivity is involved in the definition of words such as "outrageous" or "intolerable," it seems safe to say that the abuse Mr. Coles allegedly faced was far more severe than any conduct Messrs. Hoft and Stranahan allegedly engaged in. The behavior Mr. Coles described was in-person, defamatory, racially bigoted, and threatening. By comparison, Messrs. Hoft and Stranahan, at most, allegedly defamed the Plaintiff on the Internet. If Mr. Coles did not allege sufficiently outrageous or intolerable conduct, then this Plaintiff certainly has not alleged such conduct either. This provides an additional reason to dismiss any claim for IIED against Messrs. Hoft or Stranahan.

> 4. The Complaint Fails to Properly Plead That the Plaintiff Felt Severe Emotional Distress.

The final difficulty with the Plaintiff's assertion that Messrs. Hoft and Stranahan intentionally inflicted emotional distress upon him is that the Plaintiff fails to properly plead that "resulting emotional distress was severe." *Fletcher*, at *20.

First, most of the time when the Plaintiff attempts to assert he felt distress at all, he is referring to the distress felt because of the independent actions of third parties that he

48

inappropriately blames on the Defendants, including Messrs. Hoft and Stranahan. So, for instance, the Complaint states in paragraph 89 that the Plaintiff

> also continues to fear additional online harassment and unpredictable physical harm. Since these articles were first published, [the Plaintiff] has had to rely on the assistance of a therapist to address the substantial emotional stress of being the target of a deluge of threats as well as his ongoing fear of vile online and in-person harassment.

Because such distress is properly attributed to third parties not included in this suit, even if such distress qualified as "severe" (and it does not), it is not relevant to the case against Messrs. Hoft or Stranahan. The same can also be said when the Complaint alleges in paragraph 195 that "Defendants knew or should have known that their publications about [the Plaintiff] would cause him to be the subject of harassment and threats and thereby cause severe emotional distress." Likewise, paragraph 197 states that "Defendants' publication of baseless false allegations have caused [the Plaintiff] extensive personal suffering in the wake of the slew of threats and harassment that has been directed at him[.]" In each instance, Messrs. Hoft and Stranahan are not the cause of that distress as a matter of law, and therefore, that cannot be considered when determining whether the emotional distress prompted by their behavior was severe.

To the extent, that there are any allegations that Messrs. Hoft and Stranahan actually caused any distress at all, the majority of those allegations are entirely conclusory and vague. For instance, at the beginning of paragraph 89, the Complaint alleges that the Plaintiff "has experienced severe emotional distress as a result of Defendants' deliberate campaign to portray him as a 'CIA asset' and 'deep state shill' due to... defamation[.]" To the extent that it lumps together all defamation and all nine Defendants together, the allegation is vague. To the extent that it complains that the Plaintiff has been portrayed as a CIA asset, it is irrelevant to Messrs. Hoft or Stranahan, because neither man is accused of making that allegation. Finally, to the extent that it alleges "severe

emotional distress," it is a conclusory allegation—nothing more than another buzzword—and, therefore, it must be disregarded.

Likewise, the Complaint alleges in paragraph 197 that the Plaintiff

has experienced serious and severe emotional distress as a direct and proximate result of Defendants' actions. Defendants' publication of baseless false allegations have caused [the Plaintiff] extensive personal suffering in the wake of the... the irreparable damage to his professional reputation as a diplomat in the State Department and his ability to conduct business in his current company.

There, again, the claim of "serious and severe emotional distress" is another example of a conclusory allegation that must be disregarded. Even when the Complaint gets slightly more specific in paragraph 89, the allegation of distress remains conclusory. Paragraph 89 alleges that

The presence of Defendants' widely-available articles and videos has ... polluted a simple Google search for his name. As a result, [the Plaintiff] fears losing potential friends or romantic interests if an acquaintance finds any one of Defendants' defamatory articles.

This is slightly more specific when discussing why he feels this fear, but is utterly vague about its actual effect on the Plaintiff. This is nowhere near sufficient to properly plead severe emotional distress.

Although it was decided on a motion for summary judgment basis, *Fletcher* provides excellent guidance on the kinds of things that must be alleged to plead severe emotional distress and deserves to be quoted at length:

Assuming, without deciding, that a reasonable jury could find that Jackson satisfied the first three elements, the court concludes that Jackson's claim for intentional infliction of emotional distress is insufficient to withstand summary judgment, since he has failed to proffer sufficient evidence that he has suffered the degree of emotional distress required to meet the fourth element. With respect to that element, the Virginia Supreme Court has emphasized that "liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Russo v. White*, 400 S.E.2d 160, 163 (Va. 1991).

In *Russo*, the [Virginia] Supreme Court held that a plaintiff complaining of

nervousness, sleep deprivation, stress and its physical symptoms, withdrawal from activities, and an inability to concentrate at work, failed to allege the type of extreme emotional distress that gives rise to liability. Id Applying *Russo* in *Harris v. Kreutzer*, the [Virginia] Supreme Court similarly held that the

> plaintiffs allegations of "severe psychological trauma and mental anguish affecting her mental and physical well-being," with symptoms including "nightmares, difficulty sleeping, extreme loss of self-esteem and depression, requiring additional psychological treatment and counseling," were "insufficient to satisfy the fourth element" of the test for intentional infliction of emotional distress. *[Kreutzer]*, 624 S.E.2d at 34.

*Fletcher*, No. 7:09CV00408, at *21. Measuring the conclusory allegations present in this case against the allegations that were deemed insufficient in *Russo* and *Kreutzer*, it is obvious that the Plaintiff has failed to properly plead that his distress was severe.

In summary, the Plaintiff has serially failed to properly plead a claim for IIED for four reasons. First, as a public figure, the Plaintiff is required to plead malice and fails to do so. Second, the Plaintiff inappropriately attempts to blame Messrs. Hoft and Stranahan for distress caused by third parties. Third, to the extent that the Plaintiff alleges any distress caused by Messrs. Hoft or Stranahan, their alleged defamation cannot, as a matter of law, satisfy the requirement that the conduct be extreme and outrageous. Finally, the Plaintiff does not properly allege any distress caused by Messrs. Hoft and Stranahan, let alone the severe emotional distress needed to sustain this cause of action. Accordingly, for all of these reasons, to the extent that Count X applies to Messrs. Stranahan and Hoft, it should be dismissed for failure to state a claim.

## IV.
## MESSRS. HOFT AND STRANAHAN SHOULD BE GRANTED IMMUNITY AND ATTORNEY'S FEES AND COSTS UNDER VA. CODE § 8.01-223.2

States have increasingly recognized the growing problem of abusive lawsuits designed to punish people for engaging in protected expression. These are known as "SLAPP" suits, a concept

explained concisely by the Public Participation Project[12] as follows:

> SLAPPs are Strategic Lawsuits Against Public Participation. These damaging suits chill free speech and healthy debate by targeting those who communicate with their government or speak out on issues of public interest.
>
> SLAPPs are used to silence and harass critics by forcing them to spend money to defend these baseless suits. SLAPP filers don't go to court to seek justice. Rather, SLAPPS are intended to intimidate those who disagree with them or their activities by draining the target's financial resources.
>
> SLAPPs are effective because even a meritless lawsuit can take years and many thousands of dollars to defend. To end or prevent a SLAPP, those who speak out on issues of public interest frequently agree to muzzle themselves, apologize, or "correct" statements.

VA. CODE § 8.01-223.2 provides courts with tools to partially address this problem. The current statute reads in relevant part that

> A.     A person shall be immune from civil liability for... a claim of defamation based solely on statements... regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party.... The immunity provided by this section shall not apply to any statements made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false.
>
> B.     Any person who has a suit against him dismissed pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs.

Although there is no caselaw on the current version of the statute, the language is plain enough.

First, the plain language of the statute requires that there be a claim of defamation. That is true on the face of the Complaint.

Second, the speech at issue is plainly regarding a matter of public concern. Whether one sees this as part of the larger debate about whether Lee's statue should remain, or just sees this as a question how one should perceive the actions of James Fields, either is plainly an issue of public

---

[12] *What is a SLAPP?*, PUBLIC PARTICIPATION PROJECT, https://anti-slapp.org/what-is-a-slapp/ (last visited April 12, 2018).

concern.

Third, there is no question the statements are protected under the First Amendment—given that this brief has demonstrated that the objected-to statements, to the extent that they were alleged to be false, *supra* pp. 22-22, were simply statements of opinion, *supra* pp. 25-29. Further, even if this Court pretended that they were allegedly false statements of fact, the Plaintiff had failed to properly plead malice or negligence, *supra* pp. 29-34, and, therefore, the alleged statements remain protected.

Fourth, there is no question that the statements were communicated to a third party.

Finally, the Plaintiff has failed to properly plead actual or constructive knowledge that the alleged statements are false or were made with reckless disregard for whether they are false. *Supra* pp. 29-34.

Accordingly, the statutory immunity would apply. Subsection B, meanwhile, gives this Court the discretion to award attorney fees and costs.

That discretion should be exercised in this case. The utter frivolousness of this lawsuit suggests that it is a classic SLAPP suit, not filed in order to win but filed simply to harass the Defendants and impose legal costs upon them. The evidence of that intent to harass will be outlined in more detail in an anticipated motion for sanctions under Fed. R. Civ. P. 11(c). Accordingly, this Court should use its discretion and grant not only dismissal but also attorney fees and costs to be determined at a later date.

## **CONCLUSION**

In the end, this is a lawsuit that should not have been filed. It would appear on its face to be a suit designed to punish expression protected by the First Amendment. The Plaintiff wishes to hale Messrs. Hoft and Stranahan into a court that lacks subject matter jurisdiction. The Plaintiff

wishes to force Mr. Hoft to endure the expense of defending himself in a court far from home, when this Court lacks personal jurisdiction. The Plaintiff wishes to declare to be tortious meanings that he does not claim to be false and statements that are obviously protected opinion. The Plaintiff wishes to put Messrs. Stranahan and Hoft on trial for defamation without properly alleging malice, negligence, or special damages. The Plaintiff wishes to assert IIED without properly alleging malice, or extreme and outrageous behavior that actually caused the Plaintiff to feel severe emotional distress.

Most of all, the Plaintiff wishes to hold Messrs. Hoft and Stranahan responsible for the illegal or immoral acts of third parties. The Plaintiff does so either in ignorance of the Supreme Court's holding in *Brandenburg* or with a desire to erode this landmark decision in First Amendment law. In doing so, the Plaintiff would declare that these Defendants are no longer free to criticize or report negative facts about others, because a member of their audience might independently decide to engage in misconduct.

In short, the Plaintiff wants Messrs. Hoft and Stranahan to just shut up.

Fortunately, for those who believe the civil right of Freedom of Expression, the Plaintiff has failed to show that jurisdiction is present and has failed to state a claim for which relief can be granted. Furthermore, Virginia law grants immunity to their expression. Therefore, this case should be dismissed under Fed. R. Civ. P. 12(b)(1), (2) and (6), and under VA. CODE § 8.01-223.2.

Tuesday, April 17, 2018                    Respectfully submitted,


    *s/ Aaron J. Walker*
Aaron J. Walker, Esq.
*Attorney for Defendants Hoft and Stranahan*
Va Bar# 48882
7537 Remington Road
Manassas, Virginia 20109
(703) 216-0455
AaronJW72@gmail.com

**<u>List of Exhibits:</u>**

Exhibit A: Declaration of Lee Stranahan

Exhibit B: Declaration of James Hoft

Exhibit C: *Liberty Mut. Fire. Ins. v. Hayes*, No. 96-2384 (4th Cir. Sept. 15, 1997)