UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| BRENNAN M. GILMORE,<br><br>                             Plaintiff,<br><br>                v.<br><br>ALEXANDER ("ALEX") E. JONES, INFOWARS, LLC, a Texas limited liability company, FREE SPEECH SYSTEMS, LLC, a Texas limited liability company, LEE STRANAHAN, LEE ANN MCADOO a/k/a LEE ANN FLEISSNER, SCOTT CREIGHTON, JAMES ("JIM") HOFT, ALLEN B. WEST, and DERRICK WILBURN,<br><br>                            Defendants. | Case No. 18-00017 |

***AMICUS*** **BRIEF OF SCHOLARS IN SUPPORT OF PLAINTIFF**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTEREST OF *AMICI CURIAE* ........................................................................................ iv

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 3

    I.    SETTLED SUPREME COURT DOCTRINE ESTABLISHES THAT DEFENDANTS' CONDUCT RENDERS THEM SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT. ................................................ 3

    II.   DEFENDANTS' READING OF FOURTH CIRCUIT CASE LAW IS INCORRECT, EXTREME, AND CONTRARY TO THE WEIGHT OF AUTHORITY. ........................................................................................................ 7

CONCLUSION ................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bochan v. La Fontaine*,
  68 F. Supp. 2d 692 (E.D. Va. 1999) ...................................................................................9

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
  137 S. Ct. 1773 (2017) ................................................................................................1, 3, 5

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ..............................................................................................................2

*Calder v. Jones*,
  465 U.S. 783 (1984) ................................................................................................... passim

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*,
  334 F.3d 390 (4th Cir. 2003) ...............................................................................................4

*CFA Inst. v. Inst. of Chartered Fin. Analysts of India*,
  551 F.3d 285 (4th Cir. 2009) ...............................................................................................3

*First Am. First, Inc. v. Nat'l Ass'n of Bank Women*,
  802 F.2d 1511 (4th Cir. 1986) ...........................................................................................8

*Gubarev v. Buzzfeed, Inc.*,
  253 F. Supp. 3d 1149 (S.D. Fla. 2017) ..............................................................................11

*Hawbecker v. Hall*,
  88 F. Supp. 3d 723 (W.D. Tex. 2015) ...............................................................................10

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ............................................................................................................1

*Jones v. Dirty World Entertainment Recordings, LLC*,
  766 F. Supp. 2d 828 (E.D. Ky. 2011) .................................................................................9

*Keeton v. Hustler Magazine*,
  465 U.S. 770 (1984) .................................................................................................5, 7, 11

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) ............................................................................................10

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014) ............................................................................................. passim

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ............................................................................................................4

*Young v. New Haven Advocate*,
   315 F.3d 256 (4th Cir. 2002) ..................................................................................3, 7, 8, 9

**OTHER AUTHORITIES**

C. Douglas Floyd & Shima Baradaran-Robison, *Toward A Unified Test of
   Personal Jurisdiction in an Era of Widely Diffused Wrongs: The Relevance of
   Purpose and Effects*, 81 IND. L.J. 601, 630–31 (2006) .............................................................4

"Shirley Jones, still going strong," *The Los Angeles Times*, May 13, 2009,
   available at http://articles.latimes.com/2009/may/13/entertainment/et-
   classichollywood13 (date accessed: June 10, 2018) ...............................................................11

Virginia Practice Series Jury Instructions § 48:35 ...........................................................................7

# INTEREST OF *AMICI CURIAE*

*Amici* are law professors with expertise in civil procedure and an interest in the sound and stable development of personal jurisdiction doctrine. They submit this brief to highlight the importance of applying to this case settled Supreme Court personal jurisdiction law as stated in *Calder v. Jones*, 465 U.S. 783 (1984), and *Walden v. Fiore*, 134 S. Ct. 1115 (2014), and to urge the Court against adopting an anomalous view of how that doctrine should apply in this case and others like it. Application of that doctrine to the facts alleged in this case compels the conclusion that Defendants are properly subject to personal jurisdiction in this Court.

*Amici* are the following scholars (their institutional affiliations are provided solely for purposes of identification):

Christine P. Bartholomew
Associate Professor of Law
SUNY Buffalo School of Law

Danielle K. Citron
Morton & Sophia Macht Professor of Law
University of Maryland Francis King Carey School of Law

Brooke D. Coleman
Professor of Law and Associate Dean of Research & Faculty Development
Seattle University School of Law

Scott Dodson
James Edgar Hervey Chair in Litigation and Professor of Law
UC Hastings College of the Law

Howard M. Erichson
Professor of Law
Fordham University School of Law

Helen Hershkoff
Herbert M. and Svetlana Wachtell Professor of Constitutional Law and Civil Liberties
New York University School of Law

Lee Kovarsky
Professor of Law

University of Maryland Francis King Carey School of Law

Sarah Ludington
Professor of Law and Associate Dean of Academic Affairs
Campbell University Law School

Philip A. Pucillo
Professor of Law in Residence
Michigan State University College of Law

Alexander A. Reinert
Professor of Law
Benjamin N. Cardozo School of Law

Joan M. Shaughnessy
Roger D. Groot Professor of Law
Washington and Lee University School of Law

A. Benjamin Spencer
Professor of Law
University of Virginia School of Law

Adam N. Steinman
University Research Professor of Law
University of Alabama School of Law

Suja A. Thomas
Peer and Sarah Pedersen Professor of Law
University of Illinois College of Law

# INTRODUCTION

The "minimum contacts" standard governs whether a non-resident defendant is subject to a court's personal jurisdiction. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). While cases differ based on the facts, types of claims, and whether the defendants are people or businesses, the Supreme Court has repeatedly returned to the "minimum contacts" framework, even in the age of the Internet. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1782 (2017) (applying minimum contacts analysis in complex pharmaceutical consumer protection case with over 600 plaintiffs).

In this case, the personal jurisdiction question is whether a group of individuals and media companies are fairly brought to defend a defamation suit in federal court in Virginia when: (a) the allegedly defamatory statements were about a Virginia resident; (b) the statements concerned that Virginia resident and in particular his filming of a violent rally and protest that took place in Charlottesville, Virginia; (c) the protest and rally that gave rise to Defendants' defamatory statements about the Virginia resident were about whether a Confederate statue in a Charlottesville park should be taken down in light of Virginia's Confederate history; (d) Defendants are not local media outlets foreign to Virginia, but rather are well-heeled media operations with a national platform and tens of millions of customers, including many in Virginia; and (e) the foreseeable and inevitable effects of the allegedly defamatory statements – the harassment of Plaintiff and his family, his loss of business opportunity, and damages to his professional reputation – were felt by the Virginia resident Plaintiff in his Virginia community.

A straightforward application of settled Supreme Court doctrine confirms that these facts suffice for establishing personal, specific jurisdiction over Defendants in this case. Just as "a publisher who distributes magazines in a distant State may fairly be held accountable in that forum

1

for damages resulting there from an allegedly defamatory story," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985), so too may a nationally prominent media personality who makes defamatory statements about a private citizen and his involvement in events in a distant State be held accountable for damages resulting there from his statements. That is the holding of *Calder v. Jones*, 465 U.S. 783, 789 (1984).

Defendants' contention that they are not subject to the jurisdiction of this Court because their defamatory statements were not accompanied by "advertisements for Virginia businesses or services," or because their stories about Plaintiff and the Charlottesville protest were not exclusively "aimed at a Virginia audience," *e.g.*, Infowars Br. at 9,[1] misreads the case law. Defendants argue that a special, higher standard for establishing personal jurisdiction against a defendant exists when he or she makes defamatory statements about a plaintiff via a popular website and YouTube show.

No court has ever held that. Indeed, that argument cannot be correct given the Supreme Court's continued adherence to the minimum contacts analysis and in particular its adherence to the "crux of *Calder*," *i.e.*, "that the reputation-based 'effects' of the alleged libel" or defamation can connect the defendants to the forum of the defamed plaintiff, and thus can be sufficient for establishing personal jurisdiction. *Walden v. Fiore*, 134 S. Ct. 1115, 1123–24 (2014). The Court should therefore reject Defendants' arguments that this Court does not have personal jurisdiction over them, and deny the motions to dismiss.

---

[1] "Infowars Br." refers to the Memorandum in Support of Motion to Dismiss and Motion for Attorney Fees Pursuant to the Texas Citizens Participation Act or the Virginia Anti-SLAPP Act filed by Defendants Alexander E. Jones, Infowars LLC, Free Speech Systems LLC, and Lee Ann McAdoo. Dkt. 57 (filed May 22, 2018).

## ARGUMENT

A court may exercise "specific" personal jurisdiction when the suit arises out of or relates to the non-resident defendant's contacts with the forum State. *Bristol-Myers Squibb*, 137 S. Ct. at 1780.[2] In applying this standard, courts use a three-step analytical framework: first, the court asks whether the defendant's contacts with the forum State are "purposeful[]," and not random or fortuitous; second, the court asks whether the plaintiff's claim arises out of or relates to the defendant's forum-related behavior; and third, the court asks whether the exercise of jurisdiction would be reasonable under the circumstances. *See Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quotations and citations omitted). Because the Virginia long-arm statute has been construed as coterminous with the limits of constitutional due process, the two inquiries merge into one: if defendants' contacts "in Virginia satisfy due process, then they also satisfy Virginia's long-arm statute." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009). *See also Young*, 315 F.3d at 261 (holding that the Virginia long-arm "statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one") (citation and quotations omitted).

**I. SETTLED SUPREME COURT DOCTRINE ESTABLISHES THAT DEFENDANTS' CONDUCT RENDERS THEM SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT.**

Two principles of the minimum contacts doctrine are particularly relevant to this case. First, while the purpose of the minimum contacts analysis is to prevent courts from exercising jurisdiction over a defendant based on his "random, fortuitous, or attenuated contacts [with the forum] or on the unilateral activity of a plaintiff," *Walden*, 134 S. Ct. at 1123 (citations and

---

[2] This brief focuses on the arguments for specific jurisdiction. The arguments in favor of general jurisdiction are detailed in Plaintiff's brief.

quotations omitted), it is settled law that even a single contact between the non-resident defendant and the forum State can be enough to satisfy the requirements of due process. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). This makes sense: just as a single act can give rise to a claim, so too can a single act show that a non-resident defendant's conduct was directed at – not aimless or untethered from – a particular place. The mailing of a single bomb to a single plaintiff in a single State, for example, can without question be enough to hale the bomb-maker into that State because "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); C. Douglas Floyd & Shima Baradaran-Robison, *Toward A Unified Test of Personal Jurisdiction in an Era of Widely Diffused Wrongs: The Relevance of Purpose and Effects*, 81 IND. L.J. 601, 630–31 (2006).

Second, while the minimum contacts test applies in all cases, the claim asserted shapes how a court analyzes the non-resident defendant's contacts with the forum State. *Walden*, 134 S. Ct. at 1123–24 ("The strength of that connection was largely a function of the nature of the libel tort."). In a defamation case, a defendant who publishes a defamatory or libelous story about a particular person in a particular State involved in activities in that particular State has the effect of tarnishing that person's reputation in her community; the nature of the intentionally tortious conduct and its effect connects the defendant to the forum, thereby satisfying the purposeful availment standard. That is why even a single libelous tabloid story about an entertainer whose career was centered in California, for example, has the effect of causing distress and injury to that entertainer's professional reputation in California and can be the basis for personal jurisdiction against the Florida-based tabloid that ran the story nationally. *Calder*, 465 U.S. at 788–89.

4

These principles have been consistently reaffirmed by the Supreme Court. In *Bristol-Myers Squibb*, 137 S. Ct. at 1782–83, the Court stated that the required connection between the claims and the forum is satisfied in a libel case like *Keeton v. Hustler Magazine*, 465 U.S. 770 (1984), because the false statements harm both the targeted subject and their readers; that is why the publication of the false statements (in magazines) in the forum and the "damage[s] allegedly caused within the State" by those false statements is sufficient for jurisdiction. *Bristol-Myers Squibb*, 137 S. Ct. at 1782 (discussing *Keeton*, 465 U.S. at 776). Similarly, in *Walden*, 134 S. Ct. at 1123–24, the Court stated that the required connection between the defendants and the forum is satisfied in a defamation and libel case like *Calder* because "the reputation-based 'effects' of the alleged libel connected the defendants to California [the forum], not just to the plaintiff"; "[t]he strength of that connection was largely a function of the nature of the libel tort." *Id.* (discussing *Calder*, 465 U.S. at 788–89).

These principles compel the conclusion that personal jurisdiction in this Court is appropriate over Defendants in this case. Plaintiff Brennan Gilmore is a Virginia resident, Am. Compl. ¶ 6, 13, and his residence in Virginia "enhance[s] [D]efendants['] contacts with the forum" given Defendants' relationship with Plaintiff. *Keeton*, 465 U.S. at 780. That Defendant Infowars sent reporters to attend and report on the Charlottesville "Unite the Right" rally further tightens the connection between Defendants, Plaintiff, and Virginia. Am. Compl. ¶ 11.

Moreover, Defendants' false statements were about Plaintiff in the context of his involvement in the protests in Charlottesville, Virginia. Indeed, each title of each article or video containing the false statements explicitly tied Plaintiff to his location in Charlottesville: "*Charlottesville* Attack, Brennan Gilmore and … the STOP KONY 2012 Psyop? What?", *id.* ¶ 37; "*Charlottesville* Attack – Brennan Gilmore: Witness or Accessory," *id.* ¶ 46; "Random Man

5

at [Charlottesville] Protests Interviewed by MSNBC, NY Times Is Deep State Shill Linked to George Soros," *id.* ¶ 62; "Bombshell Connection Between *Charlottesville*, Soros, CIA," *id.* ¶ 83; "Breaking: State Department/CIA Orchestrated *Charlottesville* Tragedy," *id.* ¶ 102; and "BOMBSHELL: New Evidence Suggests *Charlottesville* Was a Complete SET-UP," *id.* ¶ 125. (Emphasis added in each.) The overall context of the false statements about Plaintiff were that he was part and parcel of a larger conspiracy – a coup – to bring down the presidency of Donald J. Trump, and that "Mr. Gilmore's coincidental presence at and recording of" the young woman protestor being crushed by a car in Charlottesville "was not coincidental, but was due to his knowing participation in Soros- and government-staged violence in Charlottesville designed to force a coup to oust President Trump." *Id.* ¶ 85.

The effects of Defendants' false statements were the harassment of Plaintiff in Virginia. Plaintiff's Lexington, Virginia address was posted online following Defendants' false statements. *Id.* ¶¶ 151–52. (The posters were wrong: it was Plaintiff's parents' address.) Local law enforcement in Virginia arranged protection for Plaintiff's family following a series of threats. *Id.* ¶¶ 154–55. Plaintiff himself was physically accosted on the street in Charlottesville in August 2017, with the unknown aggressor asking Plaintiff questions about details highlighted in Defendants' false articles about him, including his ties to a former candidate for Governor of Virginia (Tom Perriello) and Charlottesville Mayor Mike Signer. *Id.* ¶ 158. Further, Plaintiff suffered the loss of business opportunities and the damage to his professional reputation as a diplomat in Virginia. *Id.* ¶¶ 187-203.

Given the facts and the claim asserted, Defendants in this case are properly subject to this Court's jurisdiction. In Virginia, a claim for defamation entitles the plaintiff to damages for the damage to his "reputation and standing *in the community*," for the "pain, embarrassment,

6

2357627 v7
Case 3:18-cv-00017-NKM-JCH   Document 72-1   Filed 06/19/18   Page 12 of 19   Pageid#: 1282

humiliation and mental suffering endured by" him, and for the "pecuniary loss suffered by" him. Va. Prac. Jury Instruction § 48:35 (emphasis added). Because Defendants' statements involved a Virginia resident and that Virginia resident's involvement in events in Virginia, and because the resulting reputational harm and distress were naturally suffered by Plaintiff in Virginia, "the focal point both of the story and of the harm suffered" was Virginia. *Calder*, 465 U.S. at 789. This case is thus identical to and therefore governed by *Calder*.

## II. DEFENDANTS' READING OF FOURTH CIRCUIT CASE LAW IS INCORRECT, EXTREME, AND CONTRARY TO THE WEIGHT OF AUTHORITY.

Defendants do not cite *Calder* or *Keeton*, the controlling Supreme Court precedent. Instead, they cite *Young v. New Haven Advocate*, 315 F.3d at 256, for the proposition that they cannot be subject to personal jurisdiction in this Court because their false statements about Plaintiff were not accompanied by advertising "for Virginia businesses or services," because the Charlottesville protest was "a story of national and even international interest," and because Infowars in particular is a website and media operation popular with a national audience, and therefore its statements could not be targeted at Virginia readers. Infowars Br. at 8–9. *See also* Hoft Br. at 25-26; West Br. at 9.[3] These arguments fundamentally misconstrue *Young* and misread the governing case law.

*Young* stands for the non-controversial proposition that posting information on the Internet does not by itself subject the poster of that information to the personal jurisdiction of every court where that information is accessible. *Young*, 315 F.3d at 263. That is particularly true where, as in *Young*, (1) the defendant newspapers' websites were "decidedly local" (the *New Haven*

---

[3] "Hoft Br." refers to the Brief in Support of the Joint Motion to Dismiss and Motion for Attorney Fees and Costs of Defendants Hoft, Creighton, Stranahan, Wilburn, Hickford, and Words-N-Ideas, LLC. Dkt. 47 (filed May 9, 2018). "West Br." refers to the Memorandum in Support of Motion to Dismiss filed by Defendant Allen B. West. Dkt. 59 (filed May 22, 2018).

7

2357627 v7
Case 3:18-cv-00017-NKM-JCH   Document 72-1   Filed 06/19/18   Page 13 of 19   Pageid#: 1283

Advocate and the *Hartford* Courant), (2) the articles in question were focused on the *Connecticut* policy of transferring *Connecticut* inmates to a Virginia prison, and (3) the articles were published in the context of "a public debate *in Connecticut* about whether the transfer policy was sound or practical for that state and its citizens." *Id.* at 263–64 (emphasis added). In other words, "Connecticut, not Virginia, was the focal point of the articles." *Id.* at 264. Given the "decidedly local" nature, context, and makers of the statements, the defendant newspapers' absence of any other contacts with Virginia – no advertisements for Virginia businesses or stories particular to Virginia – highlighted that the newspapers "could not have reasonably anticipate[d] being haled into court [in Virginia] to answer for the truth of the statements made in their article[s]." *Id.* at 264 (citing *Calder*, 465 U.S. at 790) (citations and quotations omitted).

1. Properly understood, *Young* does nothing to narrow the holding of *Calder*. Instead, it hews closely to *Calder*'s emphasis on the nature of the defamation tort and the location of the injury sustained. *Young*, 315 F.3d at 262 (noting that, in the minimum contacts analysis, "the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry") (citation and quotations omitted). Nor does it overrule the longstanding rule in the Fourth Circuit that the location of the effects of a defamatory statement is an important and often overriding consideration in the personal jurisdiction analysis. *See First Am. First, Inc. v. Nat'l Ass'n of Bank Women*, 802 F.2d 1511, 1517 (4th Cir. 1986) ("Though the allegedly libelous letters were not directed only at the plaintiffs' actions in Virginia, there can be no doubt that the primary and most devastating effects of the letters would be felt in Virginia where [the plaintiff] lives and his business is principally located.").

Defendants' contention that *Young* made Virginia-focused advertising and Virginia-only stories necessary conditions of personal jurisdiction is clearly wrong, Infowars Br. at 8–9, as it

8

2357627 v7
Case 3:18-cv-00017-NKM-JCH   Document 72-1   Filed 06/19/18   Page 14 of 19   Pageid#: 1284

cannot be the law that only *The Roanoke Times* and *The Richmond Times-Dispatch* are subject to the jurisdiction of a Virginia court in a case like this. To the extent Defendants attempt to read *Young* as somehow abrogating or narrowing *Calder*, that reading cannot survive the Supreme Court's post-*Young* reaffirmance of *Calder*, where the Court stated that "[t]he crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff," and that "[t]he strength of that connection was largely a function of the nature of the libel tort." *Walden*, 134 S. Ct. at 1123–24.

        2.      That Defendants' statements were made on a website over the Internet does not weigh against a finding of personal jurisdiction, nor does *Young* raise the requirement for personal jurisdiction when the statements were made on a website or via the Internet. The Fourth Circuit in *Young* was answering a question that does not fit this case, *i.e.*, is a local paper writing about a local issue subject to an out-of-state court's jurisdiction when it publishes allegedly defamatory information about an out-of-state plaintiff accessible to that plaintiff via the Internet? *Young*, 315 F.3d at 263-64. The answer to that question is no. But that bears very little on a case where, like here, a national media platform made defamatory or libelous statements via the Internet about a Virginia resident's involvement in an event taking place in Virginia.

This case is thus less like *Young* and more like *Bochan v. La Fontaine*, 68 F. Supp. 2d 692 (E.D. Va. 1999), where the court, applying *Calder*, upheld personal jurisdiction over Texas and New Mexico defendants who posted statements on Internet listservs calling the Virginia plaintiff a pedophile, the plaintiff "and several of his Virginia friends[] accessed the postings in Virginia, and the reputational harm resulting from defendants' actions and allegations of pedophilia and sexual deviancy, if any, [were] primarily suffered in Virginia[.]" *Bochan*, 68 F. Supp. 2d at 702. Similarly, this case is more like *Jones v. Dirty World Entertainment Recordings, LLC*, 766 F. Supp.

9

2d 828, 830, 831, 834–36 (E.D. Ky. 2011), where the court applied *Calder* and upheld personal jurisdiction over Arizona defendants who refused to take down a post from their website saying that the plaintiff, a Kentucky-based BenGals cheerleader, had "slept with every other Bengal Football player." These cases reflect a broader trend holding defendants liable for defamatory or libelous statements made over the Internet when the statements are about the plaintiff and the core effects of those statements are felt in the plaintiff's community. *See Hawbecker v. Hall*, 88 F. Supp. 3d 723, 728 (W.D. Tex. 2015) (applying *Calder* to hold that a Colorado resident was subject to personal jurisdiction in Texas when she made a Facebook page indicating that the Texas plaintiff sexually abused children); *Tamburo v. Dworkin*, 601 F.3d 693, 705–06 (7th Cir. 2010) (applying *Calder* to hold that non-resident defendants' email blasts and website postings about how plaintiff stole data and should be boycotted subjected them to personal jurisdiction in plaintiff's forum because the conduct was "specifically aimed" at plaintiff and his business).

3. That Defendants Infowars and Alexander Jones are nationally prominent media institutions, or that the Charlottesville story became important nationally, does not weigh against a finding of personal jurisdiction. A defendant who defames another is not immune from jurisdiction in every court except his home court by virtue of his having a national audience or reporting on an issue that has appeal for "a national or even a global audience." *See* Hoft Br., at 26. Indeed, Jones' media platforms (for example) are deliberately aimed at attracting a national audience, and targeting a national audience should not be a recipe for gaining immunity from personal jurisdiction. *See* Am. Compl. ¶¶ 9–11. If anything, it should point this Court towards placing a stronger emphasis on the effects of the defamatory and libelous statements, which were suffered in Virginia. *See id.* ¶ 10 ("Defendant Jones' radio show is aired on the Genesis Communication Network's Virginia affiliate stations, which publishes content to Virginians.").

2357627 v7
Case 3:18-cv-00017-NKM-JCH   Document 72-1   Filed 06/19/18   Page 16 of 19   Pageid#: 1286

The national reach and power of a defamatory statement does not render its maker less subject to the jurisdiction in which the victim is located and the harm was primarily suffered. That argument is incompatible with *Calder*, 465 U.S. at 784, where the Court sustained jurisdiction in California over *The National Enquirer,* a prominent national tabloid based in Florida, for defaming Shirley Jones in a story with national appeal given Jones' celebrity and high-profile. Jones was a prominent actress and the star of *Oklahoma!*, *Carousel*, *The Music Man*, and *The Partridge Family*. "Shirley Jones, still going strong," *The Los Angeles Times*, May 13, 2009, available at http://articles.latimes.com/2009/may/13/entertainment/et-classichollywood13 (date accessed: June 10, 2018). *See also Keeton*, 465 U.S. at 775–76 (Hustler Magazine).

Another court applying *Calder* similarly expressly rejected the argument that the international prominence of the non-resident defendant's defamatory statement rendered it immune from jurisdiction in the plaintiff's forum. In *Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149 (S.D. Fla. 2017), the court, applying *Calder*, upheld personal jurisdiction over the internationally-known news website Buzzfeed and its New York-based editor-in-chief for publishing the now-infamous Fusion GPS "dossier" on President Trump and his purported connections with the Russian government. That dossier included the allegedly defamatory statements that the plaintiffs – a Florida corporation and its Cyprus-based CEO – were involved in the hacking of the Democratic National Committee during the 2016 presidential election. *Id.* at 1152-53. The court held that although the dossier was focused on President Trump, the publication of the dossier was "'aimed' at [p]laintiffs, one of which was a Florida resident," and that Buzzfeed knew the article "would be viewed around the world" and would have acute effects in the communities of the individuals named in the article. *Id.* at 1159. That publication of the dossier

11

2357627 v7
Case 3:18-cv-00017-NKM-JCH    Document 72-1    Filed 06/19/18    Page 17 of 19    Pageid#: 1287

was explosive news did not render the defamation about the Florida plaintiff any less connected to that Florida plaintiff's community.

Regardless of Defendant Jones' notoriety, Infowars' national profile, or the notoriety of the events in Charlottesville, the connection to Virginia was integral to Defendants' defamatory statements and the message they were conveying through those defamatory statements. The thrust of Defendants' false statements was that the Charlottesville protest and subsequent reporting was an engineered hoax designed to lay the groundwork for a coup; and the defamatory statements about Plaintiff – that he was part of a fictive hoax in Charlottesville to overthrow the President, that he was a CIA agent and a "Deep State" operative who helped orchestrate the murder of a woman, and that he had ties to "special operations, special forces," and the like, *see, e.g.*, Am. Compl. ¶¶ 36, 63, 83, 104 – would not have had the same meaning without the context of the "Unite the Right" rally, which was held to protest the decision of the Charlottesville City Council to remove a statue of Confederate General Robert E. Lee from a small city park and change the park's name from "Lee Park" to "Emancipation Park." *Id.* ¶¶ 25–26. That the defamatory stories were "forum-focused," *Walden*, 134 S. Ct. at 1125, and plaintiff-focused, and that the harms arising out of those stories were felt in Virginia, tethers Defendants' defamatory statements to Virginia and the Plaintiff, rendering Defendants properly subject to this Court's jurisdiction.

## CONCLUSION

The Court should reject Defendants' arguments that this Court does not have personal jurisdiction over them, and deny their motions to dismiss.

Respectfully submitted,

*/ s / Elizabeth A. Aniskevich*
Elizabeth A. Aniskevich
  E.D. Va. Bar No. 81809
Adam H. Farra

12

2357627 v7
Case 3:18-cv-00017-NKM-JCH   Document 72-1   Filed 06/19/18   Page 18 of 19   Pageid#: 1288

COHEN MILSTEIN SELLERS
    & TOLL PLLC
1100 New York Avenue, N.W. / Fifth Floor
Washington, D.C. 20005
Tel. (202) 408-3640
eaniskevich@cohenmilstein.com
afarra@cohenmilstein.com

Michael B. Eisenkraft
COHEN MILSTEIN SELLERS
    & TOLL PLLC
88 Pine Street / Fourteenth Floor
New York, New York 10005
Tel. (212) 220-2925
meisenkraft@cohenmilstein.com

*Counsel to Amicus Curiae*

13