**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| **BRENNAN M. GILMORE,** | **CASE NO.: 3:18-cv-00017-NCM-JCH** |
| Plaintiff | |
| v. | |
| **ALEXANDER JONES,** *et al.*, | **BRIEF IN REPLY IN OPPOSITION TO SCHOLARS'** *AMICUS* **BRIEF OF (DKT. 72-1) BY MR. HOFT, MR. CREIGHTON, MR. WILBURN, MS. HICKFORD AND WORDS-N-IDEAS, LLC** |
| Defendants | |

# TABLE OF CONTENTS

Table of Authorities .................................................................................................................. iii

Introduction and Summary of Argument ...................................................................................... 1

Facts ............................................................................................................................................... 1

I.     Scholars' *Amicus* Has Failed to Demonstrate That This Court Can Exercise Personal Jurisdiction over These Defendants .................................................................................... 2

        A.     The *Amicus* Scholars Have Failed to Show that these Defendants Have Engaged in Any Conduct That Meets the Requirements of Virginia's Long-Arm Statute ......... 3

        B.     The *Amicus* Scholars' Proposed Assertion of Jurisdiction Would Violate the Due Process Clause of the Fourteenth Amendment ................................................... 6

Conclusion ..................................................................................................................................... 9

# **TABLE OF AUTHORITIES**

## CASES

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002) ............ 8

*Bennett v. OmniSOURCE Corp.*, No. 7:14CV00309 (W.D. Va. Nov. 4, 2015) ............ 2

*Bergaust v. Flaherty*, 57 Va. App. 423 (2011) ............ 5

*Bonello, et al. v. Lieto, et al.*, No. CL-2011-10159 (Va. Ffx. Cir. Jan. 24, 2012) ............ 5

*Burger King Corporation v. Rudzewicz*, 471 U.S. 462 (1985) ............ 8

*Calder v. Jones*, 465 U.S. 783 (1984) ............ 7

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir. 2003) ............ 8

*CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285 (4th Cir. 2009) ............ 3

*Hanson v. Denckla*, 357 U.S. 235 (1958) ............ 7

*Ins. Co. of Ireland, Ltd v. Compagnie Bauxites Guinee*, 456 U.S. 694 (1982) ............ 4

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) ............ 7

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ............ 4

*Krantz v. Air Line Pilots Ass'n, Intern.*, 245 Va. 202 (1993) ............ 4

*Nathan v. Takeda Pharm. Am. Inc., et al.*, No. CL-2010-2064 (Va. Ffx. Cir. Aug. 2, 2011) ............ 4

*N.Y. Com. Bank v. Heritage Green Dev., LLC*, No. CL-2016-13753 (Va. Ffx. Cir. Mar. 7, 2017) ............ 4

*Washington v. Lucas*, No. 1221-14-3 (Va. App. Dec. 30, 2014) ............ 5

*Young v. New Haven Advocate,* 315 F.3d 256 (4th Cir. 2002) ............ 6 and 8-9

## FEDERAL AND STATE STATUTES AND RULES

Va. Code § 8.01-328.1 ............................................................................................... passim

Fed. R. Civ. P. 12 ...................................................................................................... passim

Va. Code § 8.01-328.1 ............................................................................................... passim

Fed. R. Civ. P. 12 ...................................................................................................... passim

## WEBSITES

Julia Dahl, *Trayvon Martin shooting: A timeline of events*, CBS News, July 12, 2013, https://www.cbsnews.com/news/trayvon-martin-shooting-a-timeline-of-events/ (last visited June 25, 2018) ............................................................................................... 10

Executive Secretary, the Supreme Court of Virginia, *Opinions*, Virginia's Judicial System, http://www.courts.state.va.us/opinions/home.html (last visited June 25, 2018) .................. 5

# INTRODUCTION AND SUMMARY OF ARGUMENT

As a preliminary matter, this brief responds solely to the arguments presented in the *Amicus* Brief of Scholars in Support of Plaintiff (Dkt. 72-1) (the "Scholars' *Amicus*"), presented by and on behalf of a group of law professors (the "*Amicus* Scholars"). That *amicus* addresses a single issue—whether personal jurisdiction can lie against the Undersigned Defendants who reside out-of-state. This brief will only address whether this Court can exercise personal jurisdiction over Mr. Hoft, Mr. Wilburn, Mr. Creighton, Ms. Hickford, or Words-N-Ideas, LLC ("these Defendants").[1] Furthermore, these Defendants do not waive any rights of jurisdiction, notice, process, joinder, or venue.

The most basic mistake the Scholars' *Amicus* makes is that it argues that Virginia's Long-Arm Statute, VA. CODE § 8.01-328.1, can simply be ignored. This is incorrect, and when this Court examines the evidence, it is clear that the Plaintiff has failed to show that the requirements of this statute have been met. Further, even if VA. CODE § 8.01-328.1's requirements had been met, this assertion of jurisdiction would not satisfy due process because there is no evidence before this Court of *any* contacts between these Defendants and Virginia, let alone the minimum contacts required by due process. Accordingly, the Scholars' *Amicus* fails to establish that this Court has personal jurisdiction over these Defendants.

# FACTS

This brief incorporates the statement of facts included in the "Brief in Support of the Joint Motion to Dismiss and Motion for Attorney Fees and Costs of Defendants Hoft, Creighton, Stranahan, Wilburn, Hickford and Words-N-Ideas, LLC" (Dkt. 47) (the "MTD") 2-7, and notes

---

[1] Mr. Stranahan does not join this brief because, as a resident of Virginia, he has no credible argument challenging personal jurisdiction over him in Virginia.

only the following additional facts:

The Plaintiff has claimed that this Court can validly exercise personal jurisdiction over these Defendants. In their MTD, these Defendants presented an evidence-based challenge to that assertion of jurisdiction. They submitted declarations showing that they wrote and published the relevant pieces and video outside of Virginia, that they "do not regularly do business in Virginia, solicit business in Virginia, engage in any persistent course of conduct in Virginia, or derive any revenue from goods used or consumed or services rendered in Virginia," and that none of their articles were targeted toward a Virginia audience. MTD, Exhibit B, ¶¶ 2-3; Exhibit C, ¶¶ 2-3; Exhibit D, ¶¶ 3-4; and Exhibit E, ¶¶ 2-3. In his "Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss" (Dkt. 70) ("Opp. to MTD"), the Plaintiff has presented no evidence to rebut these Defendants' evidence.

The MTD did admit that these Defendants wrote the articles attributed to them and that they published the articles on the Internet. However, the latest Declaration of William Hoge, attached as Exhibit A establishes that when something is posted to the Internet, it is not typically transmitted to any particular state *unless a person in that state unilaterally accesses that website*. Exhibit A, ¶ 3.

## I.
## SCHOLARS' *AMICUS* HAS FAILED TO DEMONSTRATE THAT THIS COURT CAN EXERCISE PERSONAL JURISDICTION OVER THESE DEFENDANTS

Although this brief only addresses the arguments made by the *Amicus* Scholars, these Defendants have presented an evidence-based attack on this assertion of jurisdiction. MTD 22-27. Accordingly, it is the Plaintiff's burden to show prima facie evidence supporting this assertion of personal jurisdiction. *Bennett v. OmniSOURCE Corp.*, No. 7:14CV00309, at *3-4 (W.D. Va. Nov. 4, 2015). Therefore, it is necessary, even when responding to the *Amicus* Scholars, to address the

state of the evidence. Remarkably, the Plaintiff has not presented *any* evidence supporting his assertion of jurisdiction.

This lack of evidence undermines every argument that *Amicus* Scholars make. First, it is incorrect to argue—as the Scholars' *Amicus* does—that Virginia's Long-Arm Statute can just be ignored. Second, when one does examine VA. CODE § 8.01-328.1(A)(1) and (4)—the only provisions invoked by the Plaintiff—it is plain that the requirements of these provisions have not been met. Third, even if the requirements of Virginia's Long-Arm Statute were otherwise satisfied, there is no evidence of *any* contacts between these Defendants and the Commonwealth, let alone the minimum contacts required by due process. This Court can dismiss these Defendants for lack of personal jurisdiction based on either a failure to satisfy the Virginia Long-Arm Statute or because it would violate due process. Because both justifications apply in this case, this Court should dismiss these Defendants for lack of personal jurisdiction.

### A. The *Amicus* Scholars Have Failed to Show that these Defendants Have Engaged in Any Conduct That Meets the Requirements of Virginia's Long-Arm Statute.

A remarkable feature of the Scholars' *Amicus* is that it asserts that it is appropriate to simply ignore the strictures of Virginia's Long-Arm Statute. The Scholars' *Amicus* states that

> Because the Virginia long-arm statute has been construed as coterminous with the limits of constitutional due process, the two inquiries merge into one: if defendants' contacts 'in Virginia satisfy due process, then they also satisfy Virginia's long-arm statute.' *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009), while the Opp. to MTD simply implies that they are following the same analysis.

Scholars' *Amicus* 3.

The *Amicus* Scholars' belief that this Court can simply ignore the language of the Virginia Long-Arm Statute is incorrect. The (U.S.) Supreme Court has instructed that "in the absence of a federal rule or statute establishing a federal basis for the assertion of personal jurisdiction, the

personal jurisdiction of the district courts is determined in diversity cases by the law of the forum State." *Ins. Co. of Ireland, Ltd v. Compagnie Bauxites Guinee*, 456 U.S. 694, 711 (1982). This avoids the danger of unequal administration of justice in diversity cases. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). No such federal statute or rule is applicable to this case and, therefore, state law controls on personal jurisdiction.

Thus, this Court must treat the question of personal jurisdiction exactly as a Virginia state court would. Virginia Courts *do not* skip the question of whether there can be personal jurisdiction under VA. CODE § 8.01-328.1 (or any other statute) and often decline to exercise jurisdiction solely based on a failure to satisfy Virginia law. For instance, in *Krantz v. Air Line Pilots Ass'n, Intern.*, 245 Va. 202, 205 (1993), the Supreme Court of Virginia said that "the function of [Virginia's] long-arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in Virginia, to the extent permissible under the Due Process Clause" of the Fourteenth Amendment. However, the *Krantz* court did not claim that this meant that it could ignore Virginia's Long-Arm Statute: Instead the *Krantz* court first determined whether the statute had been satisfied and then, after determining that a statutory basis existed for personal jurisdiction, the *Krantz* court found that due process was also satisfied. That court engaged in precisely the sort of two-part analysis that the *Amicus* Scholars urge this Court to skip.

Further, this is the regular practice of Virginia Courts to this day. For instance, in *Nathan v. Takeda Pharm. Am. Inc., et al.*, No. CL-2010-2064 (Va. Ffx. Cir. Aug. 2, 2011) (see Exhibit B), the Fairfax County Circuit Court allowed for jurisdiction over a foreign company, but only after determining first that VA. CODE § 8.01-328.1 had been satisfied, and that the assertion of jurisdiction did not offend due process. Similarly, in *N.Y. Com. Bank v. Heritage Green Dev., LLC*,

4

No. CL-2016-13753 (Va. Ffx. Cir. Mar. 7, 2017)[2] and in *Bonello, et al. v. Lieto, et al.*, No. CL-2011-10159 (Va. Ffx. Cir. Jan. 24, 2012) (attached as Exhibit C), the Fairfax County Circuit Court dismissed cases solely based on a failure to satisfy the terms of VA. CODE § 8.01-328.1. Meanwhile, in *Bergaust v. Flaherty*, 57 Va. App. 423 (2011), the Virginia Court of Appeals was confronted with a dismissal by the Fairfax County Circuit Court based on both a failure to satisfy VA. CODE § 8.01-328.1 and based on due process, but affirmed the lower court's decision solely based on Virginia's long-arm statute as follows:

> because we hold the circuit court did not have personal jurisdiction over Flaherty under Virginia's long arm statute, we need not consider further whether the exercise of personal jurisdiction over Flaherty exceeds the limits of due process under the United States Constitution.

*Id.* at 436. Further, although it is an unpublished opinion, in *Washington v. Lucas*, No. 1221-14-3 (Va. App. Dec. 30, 2014),[3] the Virginia Court of Appeals affirmed a circuit court decision that dismissed a case for want of personal jurisdiction based solely on VA. CODE § 8.01-328.1. That decision may not have precedential value,[4] but it shows how the Virginia Court of Appeals actually practices, as late as 2014. Plainly, Virginia Courts do not skip over VA. CODE § 8.01-328.1, and this Court should not skip the statute, either.

When this Court actually examines the statutory assertion of jurisdiction in the First Amended Complaint (Dkt. 29) ("FAC"), it should be clear that the Plaintiff has failed to properly assert personal jurisdiction. The Plaintiff invokes §8.01-328.1(A)(1), FAC ¶ 4, but that subsection

---

[2] This opinion is accessible at https://www.fairfaxcounty.gov/circuit/sites/circuit/files/assets/documents/pdf/opinions/cl-2016-13753-ny-comm-bank-v-heritage-green.pdf.

[3] This opinion is accessible at http://www.courts.state.va.us/opinions/opncavwp/1221143.pdf.

[4] Executive Secretary, the Supreme Court of Virginia, *Opinions*, VIRGINIA'S JUDICIAL SYSTEM, http://www.courts.state.va.us/opinions/home.html (last visited June 25, 2018) (stating that unpublished opinions are "**not** designated by the Court as having precedential value or as otherwise having significance for the law or legal system" (emphasis in original)).

5

only applies when the cause of action arises from the Defendant having "[t]ransact[ed] any business in this Commonwealth"—which wholly fails to relate to the allegations in this case.

The Plaintiff also invokes §8.01-328.1(A)(4), FAC ¶ 4, which applies to a tortious injury in Virginia caused by an act or omission outside of Virginia, but that only applies if the person "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." As noted above, *supra* 2, the declarations submitted in this case establish that Mr. Hoft, Mr. Creighton, Mr. Wilburn, Ms. Hickford and Words-N-Ideas, LLC, have not met this requirement. That is, they do not regularly do or solicit business in Virginia, or engage in any other persistent course of conduct in Virginia, and do not derive substantial revenue from goods used or consumed or services rendered in Virginia. With no other evidence to consider, this Court should find that the Plaintiff has failed to show that the requirements of VA. CODE § 8.01-328.1(A)(1) or (4) have been met and dismiss this case for want of personal jurisdiction.

B.     **The *Amicus* Scholars' Proposed Assertion of Jurisdiction Would Violate the Due Process Clause of the Fourteenth Amendment.**

Even if the *Amicus* Scholars could show that the Plaintiff had satisfy the requirements of the long-arm statute, such an assertion of jurisdiction would offend due process because there is no evidence before this Court of any contact between these Defendants and the Commonwealth.

Again, the lack of evidence on the Plaintiff's side is devastating. *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002) gave the following test for the exercise of personal jurisdiction with respect to due process:

> a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts."

6

There is no evidence before this Court that the first prong of the test is met and the declarations submitted with the MTD and attached to this Reply establish that these Defendants did not direct any electronic activity into the state.

The Scholars' *Amicus* discusses the minimum contacts test, but one is tempted to ask "what contacts?" In *Calder v. Jones*, 465 U.S. 783 (1984), the contact was obvious. That case involved alleged libel contained in the weekly newspaper, the *National Enquirer*. When holding that California could exercise jurisdiction over the *Enquirer* in a defamation case, the Supreme Court observed:

> The *Enquirer* is a Florida corporation with its principal place of business in Florida. It publishes a national weekly newspaper with a total circulation of over 5 million. About 600,000 of those copies, almost twice the level of the next highest State, are sold in California.

*Id.* at 785. Therefore, in *Calder*, there were sufficient minimum contacts between the Enquirer and the state of California. Likewise, in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), a companion case to *Calder*, *Hustler Magazine* was found to be subject to personal jurisdiction in New Hampshire, because they regularly distributed their magazines into the state.

By sending physical copies of their periodicals, the defendants in *Calder* or *Keeton* "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). So, for instance, if the *National Enquirer* sent a shipment of its newspapers into California, it would enjoy the benefit of that state's laws in the sense that if someone robbed the carrier of the shipment, California law enforcement would presumably seek to catch the perpetrator, punish him or her, and return the stolen merchandise and/or seek restitution. This is not the case with a website: There are no physical objects being sent into any state and no property

7

to be protected by Virginia law enforcement.

Nor can it be said that electronic signals are sent by these Defendants into Virginia, with such signals being metaphorically similar to sending printed copies of a newspaper or magazine. The *Amicus* Scholars apparently believe that when one publishes on the Internet, one is sending that information to every state in the union and, indeed, every country in the world. This is not the case. As established by the latest Declaration of William Hoge, Exhibit A, ¶ 3, when a person posts on the Internet, it is sent to a server where most of the world can *access* the information, but the information is only transmitted into a specific state when a person in that state enters the address of the file sought into his or her web browser. This is why cases such as *ALS Scan, Inc. v. Digital Service Consultants*, 293 F.3d 707, 717 (4th Cir. 2002) ("If we were to conclude as a general principle that a person's act of placing information on the Internet subjects that person to personal jurisdiction in each State in which the information is *accessed*, then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist"), *Young*, 315 F.3d at 263 ("the newspapers' websites could be *accessed* anywhere, including Virginia"), and *Carefirst of Md. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 394 (4th Cir. 2003) ("CPC's sole contact with Maryland springs from its operation of an Internet website, *accessible* from anywhere in the world through any one of several web addresses") discuss the relevant contacts via websites in terms of being *accessed*, rather than being transmitted.

However, access alone cannot satisfy the strictures of due process. Contacts initiated solely by third parties who happen to be in Virginia do not satisfy the requirement of purposeful availment because they are caused by the unilateral acts of third parties. As stated in *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 475 (1985), "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous,

8

or attenuated contacts, or of the unilateral activity of another party or a third person." (internal citations and quotation marks removed). That is reflected in the first part of the *Young* test for Internet jurisdiction, requiring that a person "direct[] electronic activity into the State." 315 F.3d at 263.

However, even if the unilateral act by third persons of accessing these Defendants' websites allowed for this state to exercise jurisdiction in theory, the Plaintiff's assertion of jurisdiction would crash, again, on the complete lack of evidence presented by the Plaintiff. The Plaintiff has failed to show that a single person has accessed any of these Defendants' websites while in Virginia. There are *allegations* in the Complaint to that effect, but absolutely no evidence. With no evidence of *any* contacts, let alone the minimum contacts required by due process, this Court has no factual basis allowing it to exercise personal jurisdiction over these Defendants.

In summary, there is no absolutely no evidence that this Court has personal jurisdiction over Mr. Hoft, Mr. Creighton, Mr. Wilburn, Ms. Hickford or Words-N-Ideas, LLC. The *Amicus* Scholars wrongfully ignore the requirements of the Virginia Long-Arm Statute, and the undisputed evidence demonstrates that these Defendants' conduct have not met the requirements of the statute. Further, there is no evidence of the minimum contacts required by due process—or indeed any contacts at all. Accordingly, this Court should dismiss this case with respect to these Defendants under Fed. R. Civ. P. 12(b)(2).

## CONCLUSION

In the end, this assertion of personal jurisdiction falters on the evidence: These Defendants chose to present evidence on the subject of jurisdiction, and the Plaintiff did not. The *Amicus* Scholars are powerless to change that reality. The Scholars' *Amicus* erroneously attempts to skip over the question of whether the conduct satisfies Virginia's Long-Arm Statute and, when the

9

statute is applied, the undisputed evidence shows that its requirements have not been met. Likewise, even if the long-arm statute was satisfied, the requirements of due process have not been met because there is no evidence before this Court that these Defendants have purposefully availed themselves of the privilege of conducting activities within the forum state.

This is not a dry, academic question. Under the *Amicus* Scholars' approach, a person living in Alaska could write on Twitter that "George Zimmerman murdered Trayvon Martin," discussing a controversial event in Florida,[5] and Mr. Zimmerman, a Floridian, could hale that Alaskan all the way to Florida on a claim he was defamed. It may further turn out that by the end of that trial, that this Alaskan would prove that in fact Mr. Zimmerman did kill Trayvon Martin without lawful excuse or justification. However, even as that hypothetical Alaskan wins, he or she would still lose by being punished with thousands of dollars in travel costs alone. If simply discussing an event in a state is sufficient to hale a person into that state to face trial, expression will be greatly chilled even when that person is confident that the facts are on his or her side, because he or she would be afraid of the costs of defending suit, including travel.

Thankfully, the law of personal jurisdiction requires more than simply the fact that a person wrote about a Virginian or an event in Virginia to hale people far from their homes into a Virginia court. This does not mean a meritorious plaintiff cannot seek justice, but such a plaintiff is required to decide whether the costs he or she will incur to pursue each defendant in a jurisdiction where that defendant has a meaningful connection with the forum will be worth it. Therefore, dismissing this case for lack of personal jurisdiction is not merely a technical victory; it promotes an efficient evaluation of the costs and benefits of such claims in a manner that favors our most precious

---

[5] *See generally* Julia Dahl, *Trayvon Martin shooting: A timeline of events*, CBS NEWS, July 12, 2013, https://www.cbsnews.com/news/trayvon-martin-shooting-a-timeline-of-events/ (last visited June 25, 2018) (providing an overview of this series of events).

freedom of expression.

For all of these reasons, this Court should dismiss this case under Fed. R. Civ. P. 12(b)(2).

Tuesday, June 26, 2018                     Respectfully submitted,

    *s/ Aaron J. Walker*
Aaron J. Walker, Esq.
*Attorney for Defendants Hoft, Stranahan, Creighton, Wilburn, Hickford and WNI*
Va. Bar# 48882
7537 Remington Road
Manassas, Virginia 20109
(703) 216-0455
AaronJW72@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia on Wednesday, June 26, 2018. All participants in the case will be served automatically.

    *s/ Aaron J. Walker*

**List of Exhibits:**

Exhibit A: Declaration of William Hoge

Exhibit B: *Nathan v. Takeda Pharm. Am. Inc., et al.*

Exhibit C: *Bonello, et al. v. Lieto, et al.*