# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BRENNAN M. GILMORE, | Case No. 3:18-cv-00017-NKM |
| Plaintiff, | |
| vs. | DEFENDANT ALLEN B. WEST'S REPLY IN SUPPORT OF MOTION TO DISMISS |
| ALEXANDER ("ALEX") E. JONES, *et al.*, | |
| Defendants. | |

Lt. Col. Allen B. West, one of the defendants named in this case, hereby respectfully submits this reply in support of his previously-filed motion to dismiss and reiterates that, for the reasons previously stated as well as those articulated below, dismissal of all claims against him is appropriate under Rules 12(b)(1), (b)(2), and (b)(6) of the Federal Rules of Civil Procedure.

**I. PLAINTIFF HAS NOT CONTROVERTED THE FACTS PRESENTED BY LT. COL. WEST THAT DEMONSTRATE A LACK OF PERSONAL JURISDICTION, AND THE COMPLAINT'S ALLEGATIONS DO NOT ESTABLISH JURISDICTION IN VIRGINIA OVER LT. COL. WEST.**

Despite Lt. Col. West offering verified evidence and thereby presenting a factual challenge to the exercise of personal jurisdiction by this Court, plaintiff has failed to offer any verified evidence of his own that contradicts Lt. Col. West's declaration. Indeed, plaintiff's response does not even cite Rule 12(b)(2) or the standard applicable to such motions challenging the exercise of personal jurisdiction over a defendant. The *amici* supporting plaintiff likewise do not address the facts contained in Lt. Col. West's declaration.

At all times relevant to this case, Lt. Col. West has been a resident and domiciliary of the State of Texas, and he has no place of business in the Commonwealth of Virginia. (D.E. #59-1:

West Decl. ¶¶ 3-5.) Plaintiff does not controvert any of these allegations in discussing the question of jurisdiction over Lt. Col. West. Moreover, the evidence from Lt. Col. West establishes that he had no ownership interest in, or involvement with, the website that published the allegedly defamatory statements, nor was he involved with the subject article's writing or publication. (*Id.* ¶¶ 6-8.) Once again, plaintiff has submitted no proof that contradicts this verified evidence from Lt. Col. West.

A plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence. *Mylan Lab., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). Here, with Lt. Col. West having submitted evidence denying jurisdiction, the burden shifts to plaintiff to come forward with *evidence*, not mere allegations, to sustain the exercise of jurisdiction by this Court. *See, e.g., Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 676 (M.D.N.C. 2011) ("[W]here the defendant provides evidence that denies the facts essential for jurisdiction, the plaintiff must present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant presented evidence.")); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999); *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 602 (E.D. Pa. 2010) (noting that after the burden shifts the "[p]laintiff may . . . through affidavits or competent evidence that show sufficient contacts with the forum state to establish personal jurisdiction") (citation omitted); *Clark v. Meijer, Inc.*, 376 F. Supp. 2d 1077, 1082 (D.N.M. 2004) ("When . . . a defendant presents credible evidence through affidavits or other materials suggesting the lack of personal jurisdiction, the plaintiff must come forward with sufficient evidence to create a genuine dispute of material fact on the issue.") (citing *Doe v. National Medical Services*, 974 F.2d 143, 145 (10th Cir. 1992)). Plaintiff, however,

has not undertaken any such effort, and has presented no verified proof to this Court to support personal jurisdiction over Lt. Col. West in the Commonwealth of Virginia.

The most that plaintiff has done is, in the part of his brief addressing dismissal under Rule 12(b)(6), cite to his own counsel's letter, which discusses certain features of *AllenBWest.com*, the website on which the allegedly defamatory article being attributed to Lt. Col. West was posted. (*See* Pl.'s Response at 34 n.15 (discussing Exs. I & J thereto).) The items alleged by plaintiff's counsel about the website, though, do not contradict Lt. Col. West's declaration, which clearly states that he did not own the website and did not have any involvement with it or the article at issue.[1] Plaintiff's speculation and innuendo cannot defeat actual evidence. Accordingly, there is no basis for exercising personal jurisdiction over Lt. Col. West.

Additionally, plaintiff's argument for exercising personal jurisdiction over Lt. Col. West in Virginia is foreclosed by Supreme Court and Fourth Circuit precedent. "[T]o justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate presence and thus render the sovereignty just.'" *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277-78 (4th Cir. 2009) (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997)). Thus, for jurisdiction to comport with the requirements of due process, a plaintiff must "show that the defendant 'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities" lest the defendant be "'haled into a jurisdiction

---

[1] The *AllenBWest.com* screenshots excerpted by plaintiff in his counsel's letter do not show any representation that the site is owned or operated by Lt. Col. West. Similarly, no part of the "contact page" states that it is providing a direct means to communicate with Lt. Col. West, and the part that mentions "speaking engagements" actually directs the reader to contact a speaker's bureau (Worldwide Speaker's Group). (*See* D.E. #70-10: Ex. I at CM/ECF p 4.)

3

solely as a result of random, fortuitous, or attenuated contacts.'" *Id.* at 277 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation and quotation omitted)).

The Fourth Circuit's decision in *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002), represents an application of this rule that controls the instant case. In *Young*, the Fourth Circuit held that the Virginia plaintiff (a prison warden) could not sue two out-of-state newspapers and their editors and reporters in Virginia due to a lack of personal jurisdiction. *Id.* at 262-63. As the court explained, when an article is placed on the internet, the out-of-state publisher must "manifest an intent to target and focus on . . . readers" in the state where personal jurisdiction is to be exercised before such jurisdiction will be proper. *Id.* at 263. The Fourth Circuit held that Virginia lacked jurisdiction—even though the articles at issue in that case discussed the plaintiff's alleged conduct in Virginia. *See id.* at 259 (defendants' articles discussed "allegedly harsh conditions at the Virginia prison").

Ultimately, neither plaintiff's amended complaint nor any evidence submitted to this Court demonstrates that either the article being attributed to Lt. Col. West or the website itself "manifest[ed] an intent to target and focus on . . . readers" in Virginia, as required by the Fourth Circuit in *Young*. *See id.* at 263. Plaintiff attempts to distinguish *Young* by arguing that Virginia was the "focal point" of the articles at issue. But, Virginia is no more the focal point here than it was in *Young*. Indeed, there is no disputing that the events in Charlottesville constituted a nationwide story and that plaintiff himself helped make it a national and even international story when he posted his video on Twitter. (*See* Pl.'s Am. Compl. ¶¶ 31-35.)

Moreover, the plaintiff in *Young* made effectively the same argument as plaintiff here by arguing that personal jurisdiction existed in Virginia because "the newspapers posted articles on their Internet websites that discussed the warden and his Virginia prison, and he would feel the

4

effects of any libel in Virginia, where he lives and works." *Id.* at 262. The Fourth Circuit, however, rejected the contention that this was a sufficient basis for personal jurisdiction.

Plaintiff makes one last effort to salvage personal jurisdiction by arguing that it would simply be unfair to require him to sue Lt. Col. West (and the other defendants) in other states. (*See* Pl.'s Resp. at 20.) Plaintiff cites no authority for the proposition that this is the relevant standard. To the contrary, there is no constitutional right to sue a defendant in one's own home state, but there is a well-established due process right for a defendant to be free from suit in a state unless that defendant has "'certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710-11 (4th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted)).

Therefore, because the proof before the Court shows that Lt. Col. West has no relevant connection with the Commonwealth of Virginia or with the allegedly defamatory article at issue, he is not subject to personal jurisdiction in this Court. Furthermore, plaintiff's own allegations are insufficient to establish personal jurisdiction because they fail to evidence an intent by Lt. Col. West "to target and focus on . . . readers" in Virginia. *Young*, 315 F.3d at 263. Thus, Lt. Col. West's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction should be granted.

## II. TEXAS LAW APPLIES TO THE CLAIMS AGAINST LT. COL. WEST.

Additionally, plaintiff's response erroneously contends that Virginia, rather than Texas, law applies to this case. The allegation as to Lt. Col. West is that he published a defamatory statement. In tort actions, Virginia applies the *lex loci delicti*—the law of the "'place of the wrong' . . . [that is] the place 'the last event necessary to make an [actor] liable for an alleged tort takes place.'" *Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 850, 856 (E.D. Va. 2013) (citations

5

omitted). There is no allegation that Lt. Col. West, a citizen and resident of Texas, has been present in any state other than Texas at any time relevant to this action, and more importantly there is no allegation that Lt. Col. West has ever engaged in any conduct within Virginia. Thus, the "last event" for his alleged actions in publication of a supposedly defamatory statement would have necessarily occurred in Texas, not Virginia. Plaintiff cites the Fourth Circuit case of *Wells v. Liddy*, 186 F.3d 505 (4th Cir. 1999), but in that case the court was applying Maryland, rather than Virginia, choice of law principles. Unlike the Maryland, Virginia has not signaled that it would depart from the traditional *lex loci delicti* rule to the more liberal standard of the *Second Restatement of Conflict of Laws*. *See* 186 F.3d at 528. Therefore, applying Virginia's choice of law rules would result in application of Texas law to the allegations made against Lt. Col. West.

### III. PLAINTIFF HAS FAILED TO ALLEGE A PLAUSIBLE CLAIM FOR DEFAMATION BY LT. COL. WEST.

#### A. Plaintiff Has Failed To Plausibly Allege That Lt. Col. West Had Any Role In The Publication Of The Statement At Issue, And As A Matter Of Law The Statement Attributed To Lt. Col. West Was Not Defamatory.

First, plaintiff has failed to make a plausible allegation that Lt. Col. West had any particular role in the article with which he takes issue. Plaintiff's amended complaint, for instance, does not allege that Lt. Col. West wrote or edited the article. Instead, plaintiff asserts simply that the author of the article was his agent or employee and that he owned the website on which it was published as well as the Twitter account from which it was republished. The amended complaint, though, includes no detailed factual allegations to substantiate these assertions and even elsewhere asserts that Word-N-Ideas, LLC, is the "purported owner" of the subject website. (*See* Pl.'s Am. Compl. ¶¶ 24; 278-79.) This lack of detail to substantiate any involvement or establish any other basis for liability fails to satisfy the *Twombly-Iqbal* pleading standard. *See Ashcroft v. Iqbal*, 556 U.S. 678-79 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

6

statements, do not suffice."); *see also Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Further, even taking as true the allegations of plaintiff's amended complaint for purposes of Rule 12(b)(6), plaintiff still fails to establish a plausible claim for defamation against Lt. Col. West. For a claim of defamation to lie under either Texas or Virginia law, the defendant must have made an assertion of fact that is false. *See Neely v. Wilson*, 418 S.W.3d 52, 63-64 (Tex. 2013); *Jordan v. Kollman,* 269 Va. 569, 575, 612 S.E.2d 203 (2005) ("True statements do not support a cause of action for defamation."). Plaintiff's own response brief concedes, however, that the article attributed to Lt. Col. West was quoting another article and included language indicating that the information being reported had not been verified. (*See* Pl.'s Resp. at 34-35.) Oddly, plaintiff then says that "the interference fairly attributable to the words in this article is that the author has evidence that [plaintiff]" was involved in a massive conspiracy. (*Id.* at 35-36.) The very meaning of the words used, though, is quite the opposite—the article says the information being reported by *someone else* constituted "'early accounts and [were] as yet unverified.'" (*Id.* at 35 (quoting article attributed to Lt. Col. West).)

For these same reasons, there can be no contention that the article attributed to Lt. Col. West is defamatory *per se*. *See Hancock v. Variyam*, 400 S.W.3d 59, 63-64 (Tex. 2013). ("[D]efamation *per se* has involved statements that are so obviously hurtful to a plaintiff's reputation that the jury may presume general damages."); *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713, 636 S.E.2d 447 (2006) (statements that are defamatory *per se* include "[t]hose which impute to a person the commission of some criminal offense involving moral turpitude"). Similarly, the article could not be seen as otherwise defaming plaintiff by injuring his reputation. Instead, the article being attributed to Lt. Col. West simply reported what another outlet was

7

reporting, and then added a disclaimer.[2]  This is the reporting of facts about what is transpiring with respect to a developing national news story, not the defaming of a private individual.

### B. Plaintiff Is A Limited Purpose Public Figure, And Plaintiff Has Failed To Plausibly Allege The Required Actual Malice As To Lt. Col. West.

Plaintiff attempts to deny that he is a limited purpose public figure, but his own actions defy such a conclusion.  "When a person thrusts himself into the forefront of public debate, he is treated as a 'limited-purpose public figure' for purposes of comment on issues arising from that debate."  *Carr v. Forbes, Inc.*, 259 F.3d 273, 278 (4th Cir. 2001).  Though the Fourth Circuit has identified five factors to consider on this issue, the Court of Appeals has also said that the "heart" of the matter is whether "the plaintiff voluntarily assumed a role of special prominence in the controversy" and whether "the plaintiff sought to influence the resolution of the controversy."  *Id.* at 280.  Thus, the issue is "sometimes combined into the question of 'whether the plaintiff has voluntarily assumed a role of special prominence in a public controversy by attempting to influence the outcome of the controversy.'"  *Id.* (quoting *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 709 (4th Cir. 1991) (en banc)).

Here, according to plaintiff's own amended complaint, he became a subject of interest after he voluntarily Tweeted about the Charlottesville incident.  (*See* Pl.'s Am. Compl. ¶ 31.)  In point of fact, plaintiff says he did so because he was "hearing from family and friends that media outlets were suggesting the incident was something other than a deliberate attack."  (*Id.*)  Plaintiff then

---

[2] Plaintiff attempts to rely on the principle that "[r]epetition of another's words does not release one of responsibility if the repeater knows that the words are false or inherently improbable, or there are obvious reasons to doubt the veracity of the person quoted or the accuracy of his reports," *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2d Cir. 1969), but he does not include any factual allegations in his amended complaint to plausibly allege that Lt. Col. West's conduct (assuming he could actually be deemed to have repeated another's statements) satisfies this standard.

8

received and accepted several interviews from media outlets, including the *New York Times*. (*See id.* ¶¶ 33-35.)

By his own admission then, plaintiff "thrust himself" into debate about the Charlottesville incident in a purposeful effort to influence news reporting and thus the public's perception of the events he witnessed. As a result, plaintiff must plead and prove actual malice. The allegations of the amended complaint, however, do not establish a plausible claim for actual malice by Lt. Col. West. As noted above, the amended complaint does not allege that Lt. Col. West had any role in the writing, editing, or decision to publish the story at issue. Nor can it be plausibly said that writing, editing, or publishing the story (which merely reported what was already being reported and also included a disclaimer) would satisfy the actual malice standard.

Finally, assuming that plaintiff qualifies as a private figure, he would still have to prove negligence as to Lt. Col. West. *See, e.g., Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681, 686 (4th Cir. 1989). The amended complaint, though, does not explain how Lt. Col. West was personally negligent. Even plaintiff's allegation that the author of the article was Lt. Col. West's employee fails to allege a plausible relationship that would satisfy the standard of *respondeat superior* liability that plaintiff himself urges. *See, e.g., Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 304-05, 618 S.E.2d 331 (2005) ("In Virginia, the doctrine of *respondeat superior* imposes tort liability on an employer for the negligent acts of its employees, *i.e.*, its servants, but not for the negligent acts of an independent contractor.") (citations omitted). Indeed, beyond the bare allegation of an employer-employee relationship between Lt. Col. West and the article's author there is nothing in the amended complaint that would plausibly support finding that the author of the article was actually a *personal* employee of Lt. Col. West.

9

Thus, the allegations against Lt. Col. West fail to state a claim for defamation under Rule 12(b)(6).

## IV. PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

As argued in Lt. Col. West's opening brief, plaintiff also fails to allege a plausible claim for intentional infliction of emotional distress, and nothing about his response rescues this claim. First, irrespective of which state's law applies, a claim for intentional infliction of emotional distress cannot be used to circumvent the protections of the First Amendment. *See, e.g., Hustler Magazine v. Falwell*, 485 U.S. 46, 55-56 (1988).

Further, as noted previously, plaintiff has not plausibly alleged any personal involvement by Lt. Col. West in the allegedly defamatory statement. Indeed, there is nothing alleged in the amended complaint with any degree of specificity to sustain a conclusion that he acted intentionally or recklessly and that such conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting *Restatement (Second) of Torts* § 46 cmt. d (1965)); *accord Russo v. White*, 241 Va. 23, 27, 400 S.E.2d 160 (1991) ("Even if a defendant "has intended to inflict emotional distress," or his conduct can be "characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort," the requirement of the second prong has not been satisfied. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'") (quoting *Restatement (Second) of Torts* § 46 cmt. d (1965)); *see also SuperValu, Inc. v. Johnson*, 276 Va. 356, 369-70, 666 S.E.2d 335 (2008) (under Virginia law, a plaintiff must prove the elements of an intentional

10

infliction claim by "clear and convincing evidence"). And, as also discussed previously, the statements being attributed to Lt. Col. West constituted reporting of what was already being said in public discourse and thus cannot be seen as being beyond the bounds of civilized society.

Therefore, plaintiff's claim for intentional infliction of emotional distress fails and should be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

For the above reasons, Lt. Col. Allen B. West respectfully asks that plaintiff's claims be dismissed and that he be awarded appropriate attorneys' fees and costs.

This the 10th day of July, 2018.

Respectfully submitted,

DALE JENSEN, PLC

BY: s/Dale R. Jensen
Dale R. Jensen (VSB No. 71109)
606 Bull Run
Staunton, VA 24401
Telephone: (434) 249-3874
Facsimile: (866) 372-0348
djensen@jensenjustice.com

THOMAS MORE LAW CENTER

BY: s/B. Tyler Brooks
B. Tyler Brooks (Mich. Bar No. P82567)[†]
Richard Thompson (Mich. Bar No. P21410)[†]
24 Frank Lloyd Wright Drive
Suite J 3200 (P.O. Box 393)
Ann Arbor, MI 48106
Telephone: (734) 827-2001
Fax: (734) 930-7160
tbrooks@thomasmore.org
rthompson@thomasmore.org

[†] Admitted *pro hac vice*.

*Attorneys for Defendant Allen B. West*

11

## **CERTIFICATE OF SERVICE**

  It is hereby certified that on that on this date the foregoing document was filed with the Court's CM/ECF system, which will send notice of such filing to counsel for all parties of record. Parties may access this document through the Court's CM/ECF system.

Date:  July 10, 2018                s/B. Tyler Brooks
                             B. Tyler Brooks
                             THOMAS MORE LAW CENTER
                             *Counsel for Defendant Allen West*