IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BRENNAN M. GILMORE,<br><br>Plaintiff<br><br>v.<br><br>ALEXANDER JONES, et al.,<br><br>Defendants | CASE NO.: 3:18-cv-00017-NKM-JCH<br><br><br><br>BRIEF IN REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION FOR SANCTIONS (DKT. 109) FILED BY DEFENDANTS HOFT, STRANAHAN, CREIGHTON, WILBURN, HICKFORD AND WORDS-N-IDEAS, LLC. |

# TABLE OF AUTHORITIES

## CASES

*Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982) ............................................................. 1-2

*Biospherics, Inc. v. Forbes, Inc.*, 151 F. 3d 180 (4th Cir. 1998) ........................................ 6

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) .................................................................. 88

*Jewell v. Grain Dealers Mutual Insurance Co.*, 290 F.2d 11 (5th Cir. 1961) ...................... 4

*Liberty Mut. Fire. Ins. v. Hayes*, No. 96-2384 (4th Cir. Sept. 15, 1997) ............................ 4

*Mims v. Kemp*, 516 F.2d 21 (4th Cir.1975) .................................................................. 2

*Moldea v. New York Times Co.*, 15 F.3d 1137 (D.C. Cir. 1994) *rev'd in on other grounds on reh'g*, 22 F.3d 310 (D.C. Cir. 1994) ............................................................................. 6

*Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56 (4th Cir., 1993) ................................... 1

*Nwanguma v. Trump*, No. 17-6290 (6th Cir. Sept. 11, 2018) ......................................... 8

*Walter v. Northeastern R. Co.*, 147 U.S. 370 (1893) ..................................................... 4

## FEDERAL STATUTE AND RULE

28 U.S.C. § 1746 ........................................................................................................ 2

Fourth Circuit Local Rule 32.1 ................................................................................... 4

As a preliminary matter, by presenting this Reply, Mr. Hoft, Mr. Stranahan, Mr. Creighton, Mr. Wilburn, Ms. Hickford, and Words-N-Ideas, LLC (the "Undersigned Defendants") do not waive any rights of jurisdiction, notice, process, joinder, or venue.

This Reply will be kept short, because the failures of the Plaintiff are manifest at this point.

First, the Plaintiff remarkably admits that there is no evidence to support the claim in paragraph 7 of the First Amended Complaint (Dkt. 29) (the "FAC") that Mr. Hoft, Mr. Creighton, Mr. Wilburn, Ms. Hickford, and Words-N-Ideas, LLC ("WNI")

> regularly do and/or solicit significant business in Virginia, engage in other persistent courses of conduct, or derive substantial revenue from goods sold to, goods used or consumed, or services rendered in Virginia, such that they have made minimum contacts with the state and have purposefully availed themselves of its laws.

The Plaintiff goes on to claim that he does not have to prove jurisdiction exists at a motion to dismiss stage, but black letter law in the Fourth Circuit says that a plaintiff has to provide such proof or lose the case. "[W]hen, as here, the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56 (4th Cir., 1993). Accordingly, the Plaintiff's complete failure to provide *any* evidence in support of this assertion of jurisdiction is a failure to show a factual and legal foundation for the Plaintiff's claims that justifies sanctions.

In all bluntness, the failure to voluntarily dismiss at this stage would also appear to violate Rule 11 as well.

Second, with respect to subject matter jurisdiction, the Plaintiff attempts to claim that he has presented evidence that this Court can consider, but he has not. As stated in *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982):

> The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction. A trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment. *See Mims v. Kemp*, 516 F.2d 21 (4th Cir.1975). Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction.

*Adams* only lists three kinds of evidence that this Court is allowed to consider: Affidavits, depositions, and live testimony.[1] Under 28 U.S.C. § 1746, a declaration must be considered equal to an affidavit, so a declaration is acceptable. What is not acceptable is a paper unsupported by affidavit, declaration, deposition, or live testimony. No one has promised that any document attached to the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motions to Dismiss (Dkt. 70) ("Opp. to MTD") is truthful. Therefore, these documents are not admissible for the purpose of considering whether jurisdiction exists, another failure that justifies sanctions.

Indeed, the Plaintiff appears to have violated Rule 11 again when he claims that Mr. Stranahan had only one declaration and the only fact in that declaration is that Mr. Stranahan resides in Virginia. Opp. to MFS, p. 8. During today's hearing on the motions to dismiss, Plaintiff's counsel also falsely stated that Mr. Stranahan submitted one declaration and falsely stated that the only fact alleged in that declaration was that Mr. Stranahan resided in Virginia. The truth is that Mr. Stranahan has submitted more than one declaration, and each declaration states more facts than just that he resides in Virginia. The first declaration was attached as Exhibit A to the Brief in Support of the Joint Motion to Dismiss and Motion for Attorneys Fees and Costs of Defendants Hoft, Creighton, Stranahan, Wilburn, Hickford, and Words-N-Ideas, LLC (Dkt 47) ("MTD Brief")

---

[1] The Plaintiff mentions *Adams* in footnote 1 of the Opp. to MFS, p. 8, but conveniently ignores this passage limiting the evidence to affidavits, depositions, and live testimony.

and it states that 1) he has a year-long lease in Virginia,[2] 2) he intends to live in Virginia for the foreseeable future, 3) he rents offices in D.C. and Virginia, 3) he has no office in Texas, 4) he has declared himself a Virginian for tax purposes and consequently Virginia taxes have been withheld from his paychecks, 5) he has no home in Texas, 6) he has no immediate family in Texas, 7) he has no property at all in Texas, 8) he has no Texas driver's license or any kind of photo ID card issued by the state of Texas, and 9) he has not registered to vote or voted in Texas since 2012. His second declaration[3] adds the additional facts: 1) he did not register to vote in Texas in late 2017 (or any other time after 2012), 2) he uses a passport card as his photo ID when such ID is needed, and 3) the information on his Facebook page is out of date. Additionally, his 2017 W-2 form was attached as an exhibit to that second declaration, showing that he has been paying Virginia withholding taxes. Therefore, the Plaintiff (and his counsel) has misstated the truth with respect to the number of declarations and the facts established by both.

Meanwhile, with respect to the amount in controversy, the Undersigned Defendants have noted that the allegation that the amount in controversy exceeds $75,000 depends on the allegation that the Undersigned Defendants have incited third parties who are not defendants in this case. Further, the Undersigned Defendants note that the Plaintiff has failed to properly allege that such incitement occurred. The Plaintiff does not deny these points, but continues to ludicrously assert that the Defendants cannot dispute the types of damages included when calculating the amount of damages. The Plaintiff makes this assertion by citing cases that limit the ability to challenge the *amount* of damage but not the *type* of damage. The Undersigned Defendants will not repeat their analysis originally presented in their "Brief in Reply to Plaintiff's Opposition to the Motion to

---

[2] In other words, he does not merely reside there, but has a long-term lease in the state.
[3] Attached as Exhibit A to the "Brief in Reply to Plaintiff's Opposition to the Motion to Dismiss (Dkt. 70)" (Dkt. 91).

3

Dismiss (Dkt. 70)" (Dkt. 91) pp. 2-3 where the Undersigned Defendants showed that courts regularly refused to include certain types of damages when calculating the amount in controversy.

Instead, the Undersigned Defendants wish to show one example of how absurd the Plaintiff's argument is. It is true as a matter of black letter law that a plaintiff cannot reach the jurisdictional minimum by aggregating (or combining) claims by different defendants unless the Plaintiff can show that the claim is common, undivided, or joint. As the Fourth Circuit said in *Liberty Mut. Fire. Ins. v. Hayes*, No. 96-2384, at *4 (4th Cir. Sept. 15, 1997):[4]

> The rules of aggregation can be stated fairly simply. If a single plaintiff sues a single defendant, the plaintiff may aggregate the value of all claims to satisfy the jurisdictional amount, regardless of whether the claims have any factual connection. In the case of multiparty litigation, however, claims by or against co-parties generally may not be aggregated to meet the jurisdictional amount. If several plaintiffs join together to sue a single defendant, aggregation is allowed only if the plaintiffs' claims arise from a common and undivided interest. Likewise, if a single plaintiff joins several parties as defendants, the plaintiff may not aggregate the various claims unless the defendants' liability is common, undivided or joint. 15 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE §§ 102.108(1)-102.108(3) (3d ed. 1997).

See also *Jewell v. Grain Dealers Mutual Insurance Co.*, 290 F.2d 11, 13 (5th Cir. 1961) and *Walter v. Northeastern R. Co.*, 147 U.S. 370, 373-74 (1893).

So, there is no question that the Plaintiff can not, for instance, aggregate his claims between Mr. Hoft and Mr. Creighton so long as they are co-defendants without showing that their liability is common, undivided, or joint. Yet, the Plaintiff would have this Court hold that if the Plaintiff voluntarily dismissed Mr. Creighton, he could reach the jurisdictional threshold by aggregating

---

[4] This is an "unpublished disposition," but Fourth Circuit Local Rule 32.1 states that while citation of such opinions are "disfavored" they can be cited when "no published opinion… would serve as well." Because undersigned counsel could find no published case that serves as binding precedent on this Court within the past century, that condition has been satisfied. A copy of that opinion has been attached as Exhibit C to the Brief in Support of the Joint Motion to Dismiss and Motion for Attorney Fees and Costs of Defendants Hoft and Stranahan (Dkt. 26).

4

damages caused by Mr. Creighton in his claim against Mr. Hoft without showing that their liability is common, undivided, or joint. This is absurd. Why should the Plaintiff be allowed to aggregate claims involving third parties not named as defendants when he couldn't do this to co-defendants?

Accordingly, the Plaintiff has no basis in law for claiming that he could aggregate claims between the Defendants and third parties not named as defendants without showing that liability is common, undivided, or joint. Further, the only theory that the Plaintiff has offered for how the Defendants are liable for the conduct of those third party non-defendants is the claim that the Defendants have committed incitement, but as noted thoroughly in the MTD Brief, he has failed to properly plead incitement. Such a failure is grounds for sanctions.

Meanwhile, in trying to escape the conclusion that many of the statements are opinions based on disclosed facts and, therefore, protected speech, the Plaintiff falsely claims that these opinions are "unsupported" or not based on disclosed facts[5] when this Court can read for itself that in each case, the opinions disclosed their factual basis. One particularly blatant example of this comes in FAC ¶ 38, when the Plaintiff alleges the following with respect to Mr. Creighton:

> In this article, Defendant Creighton notes [the Plaintiff's] experience as a Foreign Service Officer in the Central African Republic and his work as chief of staff to Tom Perriello. On the basis of these true facts, along with [the Plaintiff's] statement of belief that the attack was an act of terrorism, Defendant Creighton falsely states that [the Plaintiff] cannot have been a mere bystander who happened to record the attack.

In short, Mr. Creighton provided factual support for his opinion, and the Plaintiff does not dispute those facts, but nonetheless, the Plaintiff claims that this opinion is somehow actionable.

Then, paradoxically, in the very next paragraph of the Opp. to MFS, pp. 12-13, the Plaintiff claims that the factual predicates for their opinions are false. However, these examples invariably

---

[5] See Plaintiff's Opposition to Defendants Hoft, Stranahan, Creighton, Wilburn, Hickford, and Words-N-Ideas, LLC's Motion for Sanctions (Dkt. 109) ("Opp. to MFS") p. 12.

5

fail. For instance, in Opp. to MFS, p. 12, n.3, the Plaintiff cites FAC ¶ 46 as alleging that "Mr. Creighton falsely stated that Mr. Gilmore has 'ties to special operations, special forces, CIA,'" but in fact, the FAC does not allege at any point that the claim of such ties is false. In any case, this is obviously true: Any person who works for the administrative branch of the Federal Government is "tied" to every other part of the administrative branch, including special operations command (SOCOM), special forces, and the CIA. Likewise, in the same footnote the Plaintiff claims it is false to claim that he has links to George Soros, but the Plaintiff Admitted in FAC ¶ 106 that the Plaintiff worked for Tom Perriello's gubernatorial campaign, which, in turn, received a donation from Mr. Soros, thus indicating he was in fact linked to Mr. Soros. Similarly, the same footnote claims that it is false to state that the Plaintiff "was involved in the Kony 2012 operation," but there is no allegation in the FAC that the Plaintiff was not involved in this operation. Finally, Mr. Hoft's statement that the "Deep State ... [is] trying to erase [Mr. Gilmore] from their records" found in the same footnote is simply another opinion based on disclosed facts.

The Plaintiff complains that allowing people to freely discuss the conclusions the Defendants draw from disclosed facts would create a dangerous "loophole" in the law. Opp. to MFS, p. 13. However, that assertion demonstrates just how afraid the Plaintiff and/or his lawyers are of freedom of expression. *Moldea v. New York Times Co.*, 15 F.3d 1137, 1144-45 (D.C. Cir. 1994) *rev'd in on other grounds on reh'g*, 22 F.3d 310 (D.C. Cir. 1994)[6] eloquently explains why opinions based on disclosed facts are protected:

> Because the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation.

---

[6] This passage was quoted favorably in *Biospherics, Inc. v. Forbes, Inc.*, 151 F. 3d 180, 185 (4th Cir. 1998).

In other words, people will be able to think for themselves and draw their own conclusions. The Plaintiff thinks this is a dangerous loophole, but most people think that this is how freedom of expression and freedom of thought is supposed to work.

Furthermore, the Plaintiff chose to completely ignore several complaints in the Brief in Support of Motion for Sanctions Filed by Defendants Hoft, Stranahan, Creighton, Wilburn, Hickford, and Words-N-Ideas, LLC (Dkt. 102) ("MFS Brief"). Specifically, the Plaintiff does not address the Undersigned Defendants' point that "the FAC repeatedly attempts to penalize the Undersigned Defendants for stating undisputed facts." MFS Brief, p. 5. Likewise, the Plaintiff simply ignores the MFS Brief's point that in the FAC, "the Plaintiff attempted to use the valid theory of defamation by implication but completely disregarded the limitations to this theory," evidently hoping to avoid the necessity of trying to justify the ridiculous claim that Mr. Stranahan conveyed a long and detailed message by a facial expression.

As for the Undersigned Defendants' claim that "the Plaintiff repeatedly pretended to know facts that he could not possibly know" in the FAC, MFS Brief, p. 7, the Plaintiff's has indicated that this is exactly true. By way of background, the Plaintiff claimed to know for a fact that the Undersigned Defendants did not do adequate research, did not reach out to third party subjects of their reporting for comment and did not have their claims independently checked. The Undersigned Defendants argued that the allegations were implausible because there is no practical way for the Plaintiff to know any of it. Now they have admitted that they didn't actually know these allegations were true—they were just guessing. *See* Opp. to MFS, pp. 14-15, n. 6. So, every one of the Plaintiff's claims of lack of investigatory process—failure to contact persons (other than the Plaintiff), lack of independent verification, and so on—is simply a guess. This is an admission that the Plaintiff has violated Rule 11.

7

Turning again to the issue of incitement—this time, in the context of the claim for intentional infliction of emotional distress—the Plaintiff states that the Undersigned Defendants "fail to point to any case law suggesting that the [*Brandenburg v. Ohio*, 395 U.S. 444, 557 (1969)] standard is a required element of intentional infliction of emotional distress in Virginia." Opp. to MFS, p. 15. It is not an inherent element of intentional infliction of emotional distress: It is an inherent limitation imposed by the First Amendment on all private causes of action.

For instance, in *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167 (D. Conn. 2002), that court was faced with another claim of intentional infliction of emotional distress by incitement. The court found that even if the legal theory was sound as a matter of state law—and the court had its doubts—the plaintiff had to plead incitement that survives the *Brandenburg* test, stating that

> Although Wilson is a private party seeking legal redress on a common law theory of liability, the First Amendment nonetheless has bearing and applicability here, as the State of Connecticut cannot provide a remedy, either by its common law or by statute, that violates Midway's free speech rights.

*Id.* at 178. This principle was affirmed this past September in *Nwanguma v. Trump*, No. 17-6290 (6th Cir. Sept. 11, 2018).[7] That case involved the application of a statute providing civil relief for those harmed when a person incites a riot. Then-presidential-candidate Donald J. Trump allegedly incited violence against protesters at one his rallies. The court held that even if Mr. Trump's expression met the definition of incitement in the relevant statute, the First Amendment would not permit liability unless the expression at issue met the *Brandenburg* standard—and in that case, Mr. Trump's expression didn't pass the *Brandenburg* test.

Finally, with respect to the issue of the intent behind the Plaintiff's suit, if anything, the Plaintiff has reinforced the inference that it was filed in bad faith. The Opp. to MFS complains that

---

[7] This decision does not yet have a proper citation. However, a copy of this decision was provided to the Court during today's hearing.

the evidence of intent is intertwined with legal observations about the legal faults in the complaint, but plainly frivolousness in a complaint is evidence that it was not filed in good faith. Further, the Opp. to MFS states on page 16 that the Plaintiff filed suit

> because he faced a "barrage of harassing and threatening messages" in the months since Defendants published their defamatory statements, including the public sharing of his address, attempts to log into his online accounts, and multiple implied death threats against him and his family.

However, the Plaintiff did not sue any of the people who harassed him, shared his home address, attempted to log into his online accounts, or made death threats against him and his family. He sued various other people who are not responsible for that behavior as a matter of law.[8]

In short, the Plaintiff has failed to demonstrate why he or his attorneys should not be sanctioned under Rule 11.

Tuesday, November 13, 2018				Respectfully submitted,

                                                   s/ Aaron J. Walker
Aaron J. Walker, Esq.,
*Attorney for Defendants Hoft, Stranahan, Creighton, Wilburn, Hickford, and WNI*
Va. Bar# 48882
7537 Remington Road
Manassas, Virginia 20109
(703) 216-0455
AaronJW72@gmail.com

---

[8] Indeed, the choice of who the Plaintiff chose to sue seems arbitrary and capricious. For instance, Mr. Wilburn is being sued for extensively quoting an article on YOURNEWSWIRE—while cautioning his readers that he does not know whether the allegations the article makes is true—but the Plaintiff inexplicably does not sue the author of the YourNewsWire article that Mr. Wilburn quoted. Further, none of the people who supposedly harassed the Plaintiff are being sued, either. This arbitrary choice of defendants suggests a different agenda other than simply enforcing the Plaintiff's legal rights.

9

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia on November 13, 2018. All participants in the case will be served automatically.

                                        *s/ Aaron J. Walker*