IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

BRENNAN M. GILMORE,

    Plaintiff,

v.

ALEXANDER E. JONES, et al.,

    Defendants.

Case No. 3:18-cv-00017-NKM

**Memorandum in Support of Motion for Reconsideration or Certification
<u>For Interlocutory Appeal of the Court's March 29 Order and Opinion</u>**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

LEGAL STANDARD ............................................................................................................ 5

ARGUMENT ......................................................................................................................... 6

    I.    The Court Should Reconsider Its Holding that Commentary on Forum-State Events Necessarily Manifests Intent to Target a Forum-State Audience Sufficient to Support Specific Jurisdiction ............................................................. 6

    II.    In the Alternative, the Court Should Amend Its Order To Certify Interlocutory Appeal on that Issue ........................................................................................ 10

        A.    The Order Involves a Controlling Question of Law ................................. 11

        B.    There Is Substantial Ground for Difference of Opinion on that Question ........................................................................................................ 11

        C.    Immediate Appeal Will Materially Advance Termination of the Litigation ........................................................................................................ 13

CONCLUSION ................................................................................................................... 14

# INTRODUCTION

In the days and weeks following the Charlottesville protests in August 2017, tens of thousands of Internet users, if not more, joined the national debate over the protests' causes, meaning, and significance. That included defendants in this case, but it also included every national publication covering national political affairs, individual bloggers scattered across the country, and countless users of social media like Twitter and Facebook. Under the reasoning of the Court's decision denying the Defendants' motions to dismiss for want of personal jurisdiction, every single one of them could be haled into a Virginia court if any person mentioned in their articles, blog posts, Tweets, or Facebook posts believed that she was defamed. In the Court's view, because "[e]vents…are most intensely felt in the states and communities where they occur," discussion of such events suffices to support specific personal jurisdiction, even when it is part of a national debate and was not aimed specifically at an audience in those states or communities, but at a national audience.

The Free Speech Defendants[1] respectfully suggest that the Court's holding on that point was in error and therefore move for reconsideration or, in the alternative, certification for immediate appeal. The requirement of personal jurisdiction serves to "protect[] the defendant against the burdens of litigating in a distant or inconvenient forum" and "to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). To that end, even the most solicitous extensions of jurisdiction over out-of-state defendants for libel claims have still required that the defendants "expressly aim" their conduct toward the forum state specifically. *See Tamburo v. Dworkin*, 601 F.3d 693, 704 (7th Cir. 2010) (discussing "*Calder*'s 'express aiming' requirement"). The Fourth Circuit, in particular, has strictly applied that requirement in the Internet-defamation context by requiring a demonstration that out-of-state defendants "manifested an intent to direct their website content…to a [forum-

---

[1] The "Free Speech Defendants" are Free Speech Systems LLC, Infowars LLC, Alex Jones, and Lee Ann McAdoo.

state] audience." *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002). While commentary on a matter of *local* interest may demonstrate an intention to target the audience of the relevant locale, *Young*'s logic indicates that commentary concerning matters of *national* interest, even when addressing events occurring in a particular forum, is not similarly probative, because it sheds no light on where the writer or publisher intended to target its publication. The Court's reasoning to the contrary, by focusing on things other than the defendant's own actions and intentions, therefore conflicts with *Young*, with the reasoning of decisions applying *Young*, and with the Supreme Court's decisions in *Calder* and *Walden*. Reconsideration is warranted.

If the Court disagrees on that score, then it should certify for immediate appeal the question of whether an Internet publication's focus on forum-state events and persons, standing alone, suffices to support specific personal jurisdiction over out-of-state defendants who have not otherwise aimed their conduct at the forum state. That legal question is controlling here, given that a decision on it in favor of the Free Speech Defendants would mandate dismissal of at least the claims against them, and it is subject to reasonable disagreement among courts, given the differing view of the decisions applying *Young* and the emphasis that other courts have placed on *Calder*'s "express aiming" requirement. Leaving such a question for appeal following final judgment risks substantial waste of judicial and party resources because reversal on that ground would nullify the results of all further proceedings, from discovery through trial.

Accordingly, the Free Speech Defendants respectfully request that the Court reconsider, in part, its order denying their motion to dismiss for want of personal jurisdiction or, in the alternative, amend that order to certify it for interlocutory appeal.

## **BACKGROUND**

1. Plaintiff brought this action on March 13, 2018, and filed an Amended Complaint ("Complaint") on April 24, 2018. The Complaint alleges, *inter alia*, that the Free Speech Defendants defamed and intentionally inflicted emotional distress upon Plaintiff in two video

publications commenting on the August 12, 2017 protests in Charlottesville, Virginia, and coverage of those protests by the media.

2. As to personal jurisdiction, the Complaint alleged that its claims "arise from Defendants' tortious conduct which caused injury in Virginia, and Defendants' substantial business activity in Virginia." Compl. ¶ 4. The Complaint further alleged that "Defendants were aware that Mr. Gilmore was a resident of Virginia and that the matters discussed in their published content primarily concerned and were of concern to Virginians," because the "larger controversy" underlying the protests was "a divisive issue of Virginia history, its Confederate monuments." Compl. ¶ 5. And it alleged that the Defendants' publications caused Plaintiff to suffer reputational and other injury in Virginia. Compl. ¶ 6. As to the Free Speech Defendants, in particular, the Complaint alleged that Jones is domiciled in Texas, that McAdoo is domiciled in Florida, and that InfoWars LLC and Free Speech Systems LLC are Texas companies. Compl. ¶¶ 14–16, 18.

3. The Free Speech Defendants sought dismissal pursuant to Rule 12(b)(2) for want of personal jurisdiction, arguing that the Court could not exercise jurisdiction over them consistent with constitutional due process. ECF No. 57, at 7, *et seq*. Their motion argued that they are not subject to general jurisdiction because none are "at home" in Virginia. *Id*. at 7–8. And they are not subject to specific jurisdiction because they had only placed information on the Internet without manifesting any intent to target and focus on Virginia readers. *Id*. at 8–9.

4. The motion included three declarations containing testimony relevant to personal jurisdiction. Jones testified that his media productions target a national and international audience; that the challenged video publication he produced was directed to the national and international audience following the story of the Charlottesville protests and their aftermath; and that he did not know, at the time he produced the video, that Plaintiff was a Virginia resident. ECF No. 57, Jones Decl. at ¶¶ 7–9. Likewise, McAdoo testified that her media productions target a national and international audience; that the challenged video publication she produced was directed at the national and international audience following the story of the Charlottesville

3

protests and their aftermath; and that she did not know, at the time she produced the video, that Plaintiff was a Virginia resident. ECF No. 57, McAdoo Decl. at ¶¶ 6–9. Finally, Tim Fruge, Operations Manager of Free Speech Systems LLC, testified that Free Speech Systems LLC operates the Infowars website and the "Alex Jones Channel" on YouTube; that Infowars does not maintain an office or otherwise conduct business in Virginia; that Infowars targets and attracts a national and international audience; and that Infowars does not specifically target a Virginia audience, publish information of local interest to Virginia residents, or target advertisements to Virginia residents. ECF No. 57, Fruge Decl. at ¶¶ 6–12.

5. In his opposition, Plaintiff argued that Free Speech Systems LLC, Infowars LLC, and Jones were subject to general personal jurisdiction based on their alleged "continuous and systematic" business activity in Virginia. ECF No. 70, at 14. Plaintiff also argued that all of the Free Speech Defendants were subject to specific personal jurisdiction under the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984). *Id.* at 17–20. That test was satisfied, Plaintiff argued, because the Free Speech Defendants "deliberately targeted…a Virginia resident," causing injury in Virginia. *Id.* at 18.

6. The Court's March 29 order and opinion ("MTD Opinion") denied the Free Speech Defendants' motion to dismiss for want of personal jurisdiction. The Court ruled that none of the Free Speech Defendants were subject to general personal jurisdiction because none had general, persistent, continuous, and systematic contacts with Virginia. ECF No. 123, at 16–17. But the Court found that it could exercise specific jurisdiction over them under the *Calder* "effects test." The key question, it recognized, was whether a given Defendant "'manifested an intent to direct their website content' to a 'Virginia audience.'" *Id.* at 20 (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002)). And the Court held that commentary focused on forum-state events, even when published by a website targeting a national audience and concerning events of interest to a national audience, manifests an intent to target a forum-state audience and thereby supports specific jurisdiction in the forum state. *Id.* at 22–23 nn.25–26. Because both of the challenged video publications concerned "a Virginia event and a Virginia

citizen's role in that event," the Court concluded that the Free Speech Defendants had manifested an intent to target a Virginia audience, which was sufficient to support personal jurisdiction. *Id*. at 27 (discussing McAdoo video); *see also id*. at 29 (discussing Jones video). The MTD Opinion identified no other contacts relevant to this determination.

### LEGAL STANDARD

Motions for reconsideration of an interlocutory order are governed by Rule 54(b), under which "any order…may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Thus, when warranted, a district court retains the power to reconsider and modify its interlocutory judgments at any time before the final judgment." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 618 (D. Md. 2013) (citing *Am. Canoe Ass'n v. Murphy Farm, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003)). Resolution of such motions is "committed to the discretion of the district court," *Am. Canoe Ass'n*, 326 F.3d at 515, and "the goal is to reach the correct judgment under law," *Netscape Commc'n Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va. 2010) (citation omitted).

Certification for immediate appeal is warranted when a district court determines that the interlocutory order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Particularly suited for immediate appeal is a "narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *KPMG Peat Marwick, LLP v. Estate of Nelco, Ltd.*, 250 B.R. 74, 78 (E.D. Va. 2000) (quoting *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, at *5 (4th Cir. 1989)).

# ARGUMENT

I. **The Court Should Reconsider Its Holding that Commentary on Forum-State Events Necessarily Manifests Intent to Target a Forum-State Audience Sufficient to Support Specific Jurisdiction**

The MTD Opinion errs in conflating a publication's focus on forum-state events with the intent to target a forum-state audience that is required to support personal jurisdiction under *Calder*'s "effect test." In so doing, its reasoning conflicts with governing decisions of the Fourth Circuit and Supreme Court and would subject any Internet user discussing national affairs—from the *New York Times* and its reporters to a lone Twitter user—to nationwide jurisdiction, in contravention of their due process rights and the Fourth Circuit's specific rejection of that result. Reconsideration of that holding is therefore warranted.

For a forum-state court to exercise jurisdiction consistent with due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). In other words, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). *Calder* recognized that the "reputation-based 'effects'" of an alleged libel may support jurisdiction based on "contacts the defendants had created with [the forum state] (and not just with the plaintiff) by writing the allegedly libelous story." *Id*. at 287 (discussing *Calder*, 465 U.S. at 788–89). Key was that the *Calder* defendants "'expressly aimed' 'their intentional, and allegedly tortious, actions' at California because they knew the National Enquirer 'ha[d] its largest circulation' in California, and that the article would 'have a potentially devastating impact' there." *Id*. at 288 n.7 (quoting *Calder*, 465 U.S. at 789–90); *see also id*. at 287 (reciting *Calder* defendants' "ample" forum contacts); *Tamburo*, 601 F.3d at 704 (discussing what the court called "*Calder's* 'express aiming' requirement" and its application in the different circuits).

The Fourth Circuit refined the application of *Calder*'s "express aiming" requirement to Internet communications in *ALS Scan, Inc. v. Digital Service Consultants, Inc*., 293 F.3d 707 (2002), and *Young v. New Haven Advocate*, 315 F.3d 256 (2002). *ALS Scan* held that personal

jurisdiction over a non-forum resident is permissible "when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." 293 F.3d at 714. Thus, "a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received." *Id*. Instead, "specific jurisdiction in the Internet context may be based only on an out-of-state person's Internet activity directed at [the forum state] and causing injury that gives rise to a potential claim cognizable in [forum state]." *Id*. On that basis, the court ruled that a district court could not exercise jurisdiction over an action against an out-of-state internet service provider for publishing materials allegedly subject to the plaintiff's copyright. *Id*. at 715.

*Young* applied the *ALS Scan* standard in a defamation action, reaffirming that the proper inquiry is an Internet publisher's intent to target forum-state residents. At issue were several Internet articles by out-of-state newspapers alleged to have defamed a Virginia prison warden. 315 F.3d at 258. To assess specific jurisdiction, the court "thus ask[ed] whether the newspapers manifested an intent to direct their website content—which included certain articles discussing conditions in a Virginia prison—to a Virginia audience." *Id*. at 263. It found that they did not, based on the facts that the "websites are not designed to attract or serve a Virginia audience" and that the specific articles at issue focused on "a public debate in Connecticut" concerning transfers of Connecticut prisoners to Virginia prisons. *Id*. at 263–64. On that basis, it concluded, the newspapers "did not post materials on the Internet with the manifest intent of targeting Virginia readers" and so were not subject to jurisdiction in Virginia. *Id*. at 264.

The Court's MTD Opinion erred in drawing from *Young* the proposition that an article's "general thrust" or "focus" concerning a "Virginia event and Virginia citizen" suffices to demonstrate "an intent to direct website content at a Virginia audience" and thereby satisfies *Calder*'s express aiming requirement. MTD Opinion at 22–23 (quotation marks omitted). But where an article concerns matters of *national* interest, it does not logically follow that its

7

publication was motivated by an *intent to target* a forum-state audience. For example, in recent years national publications like the *New York Times* have covered "Black Lives Matter" protests, irrespective of whether they were held in any particular state, because they are of interest to a national audience and concern national debates over race relations, policing, civil rights, etc. When a nationally-focused publication like the *Times*—or Infowars, for that matter—publishes an article on such a protest, it seeks to target and inform its national audience. That the protest may have taken place in Virginia, Alabama, North Carolina, or some other state says nothing about whether the reporter or publisher expressly aimed the publication at that state's audience.

    The Court's reasoning to the contrary chafes against *Young*. Under *Young*, the *sine qua non* of specific jurisdiction for out-of-state Internet publications is the "intent to target and focus on [forum-state] readers." 315 F.3d at 263. It was for that reason that *Young* considered the contents of the challenged newspaper articles, "to determine whether they were posted on the Internet with the intent to target a Virginia audience." *Id*. And because the articles' "focal point" was a "public debate in Connecticut," *Young* could infer that the "newspapers did not post materials on the Internet with the manifest intent of targeting Virginia readers." *Id*. at 263–64. Nothing in *Young* suggests that the proper standard is whether a challenged publication addresses forum-state events; to the contrary, its reasoning begins and ends with the question of "intent to target a [forum-state] *audience*." *Id*. at 263 (emphasis added). While publication contents concerning matters of *local* interest may speak to that intent—because they may evidence intent to target the audience of that specific locale, whether the forum state or elsewhere—*Young*'s logic indicates that contents concerning matters of *national* interest are not similarly relevant, because they shed no light on where in the nation defendants were targeting their publications. In fact, the Fourth Circuit recognized that principle in *ESAB Group, Inc. v. Centricut, Inc.*, which rejected specific jurisdiction premised on a conduct directed "generally on customers located throughout the United States and Canada without focusing on and targeting South Carolina," where the plaintiff was injured and brought suit. 126 F.3d 617, 625 (4th Cir. 1997). Publications

8

aimed at a national audience cannot be assumed, based on their contents alone, to be expressly aimed at a given forum state.

The Court's observation that "[e]vents—even those that garner widespread attention—are most intensely felt in the states and communities where they occur" does not answer this point. MTD Opinion at 22 n.26. Instead, the proper focus is on *the defendants' actions and intentions* targeting a specific forum, not on downstream consequences. *See Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). Indeed, *Young* stressed "how important it is in light of *Calder* to look at whether the defendant has expressly aimed or directed its conduct toward the forum state." 315 F.3d at 262. In that respect, it explained that the jurisdictionally relevant facts in *Calder* were that the "writers' 'actions were expressly aimed at California,'…'and they knew that the brunt of the potentially devastating injury would be felt by the actress in the State in which she lives and works and in which the National Enquirer has its largest circulation." *Id*. (alterations omitted); *see also Walden*, 571 U.S. at 287–88 & n.7 (identifying same conduct); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397–98 (4th Cir. 2003) (same). By contrast, under the Court's reasoning, it would have been enough that the National Enquirer article concerned a California person and events that undoubtedly resonated in California. But that's not how *Young* or *Walden* understood *Calder*'s standard.

Finally, the Court's policy concern (at 22 n.25) that strict application of *Young*'s targeting-based standard would frustrate plaintiffs from bringing suit in their home-state fora against national publications commenting on matters of national interest is misplaced. Personal jurisdiction's "limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 571 U.S. at 284. The *Young* standard, properly understood and applied, serves that interest. By contrast, the Court's content-based standard severely undermines personal-jurisdiction protections by potentially subjecting those who report or comment on national affairs—websites, pundits,

9

political magazines, and all the intemperate denizens of Twitter—to personal jurisdiction in every state simply for airing their takes on the day's news and events from around the country. That includes, for example, the hundreds of publications and tens of thousands (if not more) individuals who took to the Internet in 2017 to comment on the Charlottesville protests—every single one could be haled into a Virginia court for joining in what was a truly national discussion and debate. As a practical matter, each state would have "unlimited judicial power over every citizen in each other State who uses the Internet." *ALS Scan*, 293 F.3d at 713. But the Fourth Circuit has expressly rejected that result, explaining that the dawn of the Internet age did not spell the collapse of traditional limitations on personal jurisdiction. *Id*. Reconsideration of the Court's ruling is therefore warranted.

**II.     In the Alternative, the Court Should Amend Its Order To Certify Interlocutory Appeal on that Issue**

If the Court does not reconsider its ruling on personal jurisdiction, then certification for immediate appeal is warranted so that the Court of Appeals may address the controlling question of law presented by the Court's MTD Opinion: whether an Internet publication's focus on forum-state events and persons, standing alone, suffices to support specific personal jurisdiction over out-of-state defendants who have not otherwise aimed their conduct at the forum state. There are substantial grounds for difference of opinion on that question and, absent immediate appeal, the Fourth Circuit's disposition of that question on appeal following a final judgment may moot all further proceedings in this matter, at least as concerns the Free Speech Defendants and potentially as to all the Defendants. These are the precise circumstances where leave to appeal should be granted, as shown by *ALS Scan* and *Young*, which both involved interlocutory appeals to address similar questions of personal jurisdiction concerning Internet communications. *See ALS Scan*, 293 F.3d at 710 & n.2 (affirming order dismissing defendant for lack of personal jurisdiction); *Young*, 315 F.3d at 261 (reversing order denying motion to dismiss for lack of personal jurisdiction).

### A. The Order Involves a Controlling Question of Law

The question identified above is one *of law* because it concerns the interpretation of a constitutional provision—the Fourteenth Amendment's Due Process Clause—rather than a dispute of fact. *See Lynn v. Monarch Recovery Mgmt., Inc.,* 953 F. Supp. 2d 612, 623 (D. Md. 2013). And it is *controlling* because an error in answering it would be reversible final error on appeal. *Id.* (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)). If the Constitution does not permit the Court to exercise jurisdiction premised on the focus of the Free Speech Defendants' publications, then all claims against them must be dismissed for want of jurisdiction, given that none of them are subject to general jurisdiction and their only relevant "contacts" for purposes of determining specific jurisdiction were the creation and publication of the challenged videos.

### B. There Is Substantial Ground for Difference of Opinion on that Question

A substantial ground for difference of opinion exists "where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed. Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *see also Randolph v. ADT Sec. Services, Inc.*, No. 09-1790, 2012 WL 273722, at *6 (D. Md. Jan. 30, 2012); *Kennedy v. Villa St. Catherine, Inc.*, No. 09–3021, 2010 WL 9009364, at *2 (D. Md. June 16, 2010).

The Court's determination that an Internet publication's focus on forum-state events and persons suffices to support personal jurisdiction is reasonably subject to disagreement. To begin with, as described above, it appears to contravene *Young*'s intent-to-target standard or is, at a minimum, a debatable interpretation of *Young*. The district court in *FireClean, LLC v. Tuohy* interpreted and applied *Young* in the manner urged by the Free Speech Defendants, holding that Internet publications that "aim to distribute [the defendant's] opinions to the nationwide marketplace" cannot support specific jurisdiction, no matter their impact in the forum state. No.

1:16-cv-0294, 2016 WL 3952093, at *6 (E.D. Va. July 21, 2016). Likewise, the district court in *Fertel v. Davidson* understood *Young* to preclude jurisdiction where challenged internet publications were "meant for…a national or even a global audience," as opposed to the forum state where the plaintiff, who was the subject of the publications, suffered injury. No. 13–2922, 2013 WL 6842890, at *4 (D. Md. Dec. 18, 2013); *see also id*. at *5 (distinguishing *Calder* on the basis that the publications at issue were not "expressly aimed at Maryland" but instead "would appeal to a national, or even global, audience"). The Free Speech Defendants appreciate the Court's view that the publications at issue in *FireClean* and *Fertel* can be distinguished on the facts because they "made only glancing references to the forum state," MTD Opinion at 23 n.29, but respectfully suggest that their reasoning—that a publication aimed at a national audience does not specifically "target" the forum state—is inconsistent with this Court's. In so reasoning, they confirm that there is ground for disagreement over how *Young* applies in these circumstances.

Moreover, the Eighth Circuit applied the same approach in *Johnson v. Arden*, which concerned Internet publication accusing cat breeders of severe misconduct. 614 F.3d 785 (8th Cir. 2010). The plaintiffs alleged that a defendant posted a message on a consumer-complaint board that "Sue Johnson and Cozy Kittens operated from Unionville, Missouri, where they killed cats, sold infected cats and kittens, brutally killed and tortured unwanted cats and operated a 'kitten mill' in Unionville, Missouri." *Id*. at 796. That was insufficient to support personal jurisdiction in Missouri over the out-of-state defendant, the court held, because there was no indication that the defendant "uniquely or expressly aimed her statements at Missouri" or that the "website specifically targets Missouri." *Id*. at 797. That was so despite that alleged criminal animal abuse and fraud in Missouri are intrinsically matters of interest to the state's residents and that it was plain from the publication that the defendant knew the plaintiffs resided in Missouri. Whether or not it could be distinguished on factual grounds, *Johnson*'s reasoning conflicts with that of the MTD Opinion.

Finally, viewed in a certain light, this case presents what could be viewed as a question of

first impression in the Circuit, concerning whether there is a material difference, under *Young*, between publications that target a national audience as opposed to ones that specifically target a non-forum-state audience. The Free Speech Defendants acknowledge that *Young*, and the cases to apply it, did not confront that question, although their reasoning appears to answer it, in the negative. If there is, as the Court suggested in its MTD Opinion (at 22 nn. 25–26), a tension between how *Young* and *Calder* apply to Internet publications that target a national audience, that in itself would demonstrate ground for difference of opinion warranting interlocutory resolution by the Court of Appeals.

C. **Immediate Appeal Will Materially Advance Termination of the Litigation**

An interlocutory appeal would materially advance termination of the litigation "when resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *Maxtena, Inc. v. Marks*, No. 11-0945, 2014 WL 4384551, at *6 (D. Md. Sept. 2, 2014) (citing 16 Fed. Prac. & P. § 3930). Thus, "[i]n determining whether certification will materially advance the ultimate termination of the litigation, a district court is to examine whether an immediate appeal would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Id.* (quoting *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 322 (E.D. Pa. 1994)).

In this instance, interlocutory appeal would indisputably advance those interests. If the Court of Appeals agrees with the Free Speech Defendants' view of *Young*, the claims against them would have to be dismissed. There would be no need for a trial or other proceedings on the claims against the Free Speech Defendants and potentially any of the Defendants, which surely satisfies this prong. *See, e.g.*, *Cmty. Trust Bancorp., Inc. v. Cmty. Trust Fin. Corp.*, No. 7:10–cv–062–KKC, 2011 WL 2020246, at *4 (E.D. Ky. May 24, 2011) (reversal of court's finding of personal jurisdiction "would completely terminate this action and bar any further proceedings, thus, eliminating the need for discovery and a trial," thus satisfying the material advancement element).

## CONCLUSION

For the foregoing reasons, the Court should reconsider its March 29, 2019 Order denying the Free Speech Defendants' motion to dismiss for want of personal jurisdiction or, in the alternative, amend that order to certify it for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

May 2, 2019

Respectfully submitted,

| | |
|---|---|
| TREMBLAY & SMITH, PLLC | BAKER HOSTETLER LLP |
| | |
| Thomas E. Albro (VSB #12812) | /s/ Elizabeth A. Scully |
| Evan D. Mayo (VSB #89383) | Elizabeth A. Scully (VSB #65920) |
| 105-109 E. High Street | Mark I. Bailen |
| Charlottesville, VA 22902 | Andrew M. Grossman |
| Telephone: (434) 977-4455 | Richard B. Raile (VSB #84340) |
| Facsimile: (434) 979-1221 | Washington Square, Suite 1100 |
| tom.albro@tremblaysmith.com | 1050 Connecticut Avenue, N.W. |
| evan.mayo@tremblaysmith.com | Washington, DC 20036-5304 |
| | Telephone: (202) 861-1500 |
| *Co-Counsel for Defendants Alexander E. Jones, Infowars, LLC, Free Speech Systems, LLC and Lee Ann McAdoo a/k/a Lee Ann Fleissner* | Facsimile: (202) 861-1783 |
| | escully@bakerlaw.com |
| | mbailen@bakerlaw.com |
| | agrossman@bakerlaw.com |
| | rraile@bakerlaw.com |

*Counsel for Defendants Alexander E. Jones, Infowars, LLC, Free Speech Systems, LLC and Lee Ann McAdoo a/k/a Lee Ann Fleissner*

WALLER LANSDEN DORTCH & DAVIS, LLP

Eric J. Taube
100 Congress Avenue, Suite 1800
Austin, TX 78701
Telephone: (512) 685-6401
eric.taube@wallerlaw.com

*Of Counsel for Defendants Alexander E. Jones, Infowars, LLC, Free Speech Systems, LLC and Lee Ann McAdoo a/k/a Lee Ann Fleissner*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 2, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

      /s/ Elizabeth A. Scully
Elizabeth A. Scully (VSB #65920)
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
Telephone: (202) 861-1500
Facsimile: (202) 861-1783
escully@bakerlaw.com