# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

BRENNAN M. GILMORE,

     Plaintiff

     v.

ALEXANDER JONES, *et al.*,

     Defendants

CASE NO.: 3:18-cv-00017-NKM-JCH

BRIEF IN SUPPORT OF THE JOINT MOTION TO RECONSIDER THIS COURTS' FINDING OF PERSONAL JURISDICTION OR TO CERTIFY THE QUESTION FOR INTERLOCUTORY APPEAL OF DEFENDANTS WILBURN, HICKFORD, HOFT, CREIGHTON, AND WORDS-N-IDEAS, LLC

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iii

Facts .......................................................................................................................... 1

I.      This Court Should Reconsider its Ruling in Relation to Personal Jurisdiction Both Under Virginia's Long-Arm Statute and Under the Due Process Clause, or Certify These Issues for Interlocutory Appeal ................................................................................. 1

        A.     The Existence of a Substantial Ground for Difference of Opinion is Demonstrated by a Split Within this Circuit and Even Within this District on the Limits of Personal Jurisdiction Imposed by the Due Process Clause ................................. 1

        B.     This Court Should Also Reconsider its Decision to Assert Personal Jurisdiction Over the Undersigned Defendants by Ignoring the Language of Virginia's Long-Arm Statute ............................................................................................. 6

             1.     This Court Should Reconsider its Decision to Ignore the Virginia Long-Arm Statute ................................................................................. 6

             2.     Under the Virginia Long-Arm Statute, Personal Jurisdiction Cannot be Based Solely on Electronic Contact ......................................... 11

        C.     In the Alternative, this Court Should Certify the Question of Whether this Court Can Ignore the Virginia Long-Arm Statute for Interlocutory Appeal ................. 16

Conclusion ............................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Betz v. Aidnest*, No. 1:18-cv-0292 (KBJ) (D. D.C. Oct. 26, 2018) .................................... 15

*Beyond v. Realtime*, 388 Md. 1, 15, 878 A.2d 567 (2005) ........................................... 8

*Booth v. Leaf*, 40 F.3d 1243 (4th Cir. 1994) ...................................................... 10-11

*Carefirst of Maryland v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390 (4th Cir. 2003) ............ 6 and 8

*Christian Book v. Great Christian*, 137 Md. App. 367, 768 A.2d 719 (Md. App. 2001) ........... 12

*Dring v. Sullivan*, 423 F. Supp. 2d 540 (D. Md. 2006) .............................................. 15

*Edwards v. Schwartz,* No. 7:18-cv-378 (W.D. Va. March 20, 2019) ........................... 2-3 and 6

*Etchebarne-Bourdin v. Radice*, 982 A.2d 752 (D.C. 2009) ........................................... 12

*KPMG Peat Marwick v. Estate of Nelco, Ltd., Inc.*, 250 B.R. 74 (E.D. Va. 2000) ................... 2

*Krantz v. Air Line Pilots Ass'n, Intern.*, 245 Va. 202 (1993) ..................................... 9-10

*Legard v. EQT Production Co.*, 771 F. Supp. 2d 607 (W.D. Va. 2011) ............................... 8

*Mackey v. Compass*, 391 Md. 117, 892 A.2d 479 (2006) ............................................. 8

*Margoles v. Johns*, 483 F.2d 1212, 157 U.S.App.D.C. 209 (D.C. Cir. 1973) ....................... 15

*Mercer v. MacKinnon*, No. 180358 (Va. S. Ct. Feb. 21, 2019) ........................ 9, 11-12 and 17

*Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217 (D.C. Cir. 1986) ......................... 15

*Noah Nathan v. Takeda Pharmaceuticals America Inc., et al.* No. 08-02-2011 (Va. Cir. Aug. 2, 2011) ................................................................................................. 15

*Planet Aid, Inc. v. Reveal,* No. GLR-16-2974 (D. Md. June 26, 2017) .............................. 5

*Robinson v. Egnor*, 699 F. Supp. 1207 (E.D. Va. 1988) ............................................ 15

*Schmalfeldt v. Grady, et. al.*, No. 4:17-cv-01310-RBH-KDW (D. S.C. Dec. 7, 2017) (*Schmalfeldt II*) ................................................................................................... 3-6

*Schmalfeldt v. Johnson, et. al.*, No. 15-CV-1516 (E.D. Wis. July 1, 2016) (*Schmalfeldt I*) ........ 3-5

*St. Clair v. Righter*, 250 F. Supp. 148 (W.D. Va. 1966) ................................................ 10, 13 and 15

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292 (4th Cir. 2012)

........................................................................................................................................... 6 and 8

*Winter v. Pinkins*, No. JKB-14-2125 (D. Md. Oct. 29, 2014) ...................................................... 15

*Zinz v. Evans and Mitchell Industries*, 324 A.2d 140, 22 Md. App. 126 (Md. App. 1974) ......... 15

## CONSTITUTIONAL PROVISIONS AND STATUTES

U.S. Const. Amend. 14, § 1, cl. 3 ........................................................................................... passim

28 U.S.C. § 1292 ...................................................................................................................... 2 and 16-17

VA CODE § 8.01-328.1 ............................................................................................................... passim

MD CODE CTS. & JUD. PROC. § 6-103 ...................................................................................... 8, 12 and 15

D.C. CODE § 13–423 ................................................................................................................. 12-15

## ARTICLE

Henry Graff and Meghan Moriarty, *Biden Announces Presidential Bid in Video that Focuses on Events in Charlottesville,* NBC29.COM, April 30, 2019 at https://www.nbc29.com/story/40365743/joe-biden-announces-2020-presidential-bid-in-video-that-focuses-on-white-nationalist-events-in-charlottesville (last viewed May 8, 2019) ................ 3

iv

## FACTS

Defendants Wilburn, Hickford, Hoft, Creighton, and Words-N-Ideas, LLC (the "Undersigned Defendants") adopt the facts as set out in "Free Speech Defendants' Motion for Reconsideration or Certification for Interlocutory Appeal of the Court's March 29 Order and Opinion" (Dkt. 133) and in its accompanying brief in support (Dkt. 133-1) (hereinafter collectively the "Free Speech Defendants' Motion to Reconsider or for Certification").

## I.
## THIS COURT SHOULD RECONSIDER ITS RULING IN RELATION TO PERSONAL JURISDICTION BOTH UNDER VIRGINIA'S LONG-ARM STATUTE AND UNDER THE DUE PROCESS CLAUSE, OR CERTIFY THESE ISSUES FOR INTERLOCUTORY APPEAL

The Undersigned Defendants join the Free Speech Defendants' Motion to Reconsider or for Certification without reservation. Their arguments are adopted by reference. The Undersigned Defendants write separately only to concur and to make the following additional points: 1) There is additional caselaw demonstrating that there is substantial grounds for disagreement as needed for a certification of an interlocutory appeal on the due process limits of personal jurisdiction; 2) this Court should also reconsider its decision to ignore the Virginia long-arm statute, particularly in light of recent precedent from the Supreme Court of Virginia; 3) if this Court applied the Virginia long-arm statute, it would be unable to find personal jurisdiction in this case; and 4) in the alternative, this Court should certify the question of whether it can ignore the long-arm statute for interlocutory appeal.

**A.    The Existence of a Substantial Ground for Difference of Opinion is Demonstrated by a Split Within this Circuit and Even Within this District on the Limits of Personal Jurisdiction Imposed by the Due Process Clause.**

With respect to the availability of an interlocutory appeal in relation to the application of the Due Process Clause, one of the factors that the Free Speech Defendants correctly focused on

was 28 U.S.C. § 1292(b)'s requirement that there be a "substantial ground for difference" with respect to this Court's decision. The Undersigned Defendants wish to add a little to the Free Speech Defendants' argument on this point. This does not require this Court to determine that it made an incorrect decision, only that another jurist could have reasonably reached a different outcome. As stated in *KPMG Peat Marwick v. Estate of Nelco, Ltd., Inc.*, 250 B.R. 74, 82 (E.D. Va. 2000), "an interlocutory appeal will lie only if a difference of opinion exists between courts on a given controlling question of law, creating the need for an interlocutory appeal to resolve the split or clarify the law."

There can be no stronger evidence of a reasonable difference of opinion than the appearance of a split *within this district.* Nine days before the decision in this case, the Roanoke division ruled in *Edwards v. Schwartz,* No. 7:18-cv-378 (W.D. Va. March 20, 2019) (attached as Exhibit D). As in the instant case, *Schwartz* concerned alleged defamation committed over the Internet, with the *Schwartz* case concerning social media. In rejecting the proposed assertion of jurisdiction, *Schwartz* held that:

> In sum, although Edwards alleges that the defendants "directed numerous defamatory statements . . . directly to Virginia Tech via social media," there is no support, by affidavit or exhibit, indicative of incidental, let alone purposeful, targeting of Virginia Tech (or Virginia) as to the claims in paragraphs 52, 53, 54, 55, 56, and 63.12 Neither the statements themselves nor the social media platforms from which they were published uniquely target Virginia or would have inherently included a substantial number of Virginia residents or businesses.

Exhibit D at 18. This analysis, discussing whether the posts or the forums "uniquely target Virginia," suggests that the *Schwartz* court would be likely to find that the writings and videos of

the Undersigned Defendants were sent to the world at large, rather than any individual state,[1] and therefore, the Undersigned Defendants could not be subjected to personal jurisdiction in Virginia.

Likewise, in a pair of cases that shall be referred to as *Schmaelfeldt I* and *Schmalfeldt II*,[2] district courts in Wisconsin and South Carolina[3] (respectively) held that personal jurisdiction was lacking based on facts that were, if anything, more likely to support an assertion of personal jurisdiction than those in the instant case. As in the instant case, the *Schmalfeldt* cases arose from Internet speech, but unlike the instant case, the controversy involved was a small one of mainly local character. By contrast, the events of this case are a matter of controversy that has had impact across this country and has even been finding its way into the 2020 campaign for president.[4] Although questions were raised about the applicability of the long-arm statutes in *Schmalfeldt I & II*, both cases contained rulings that due process would not allow for the assertion of personal jurisdiction. However, the conduct of the defendants alleged in *Schmalfeldt I and II* did more to arguably target their respective jurisdictions than the Undersigned Defendants allegedly did in this case.

For instance, in *Schmalfeldt I*, the court analyzed the conduct of two defendants: Sarah Palmer and Eric Johnson. In the name of full disclosure, undersigned counsel represented those

---

[1] *Schwartz* did find personal jurisdiction over one claim, involving a letter, emailed to an official at Virginia Tech, precisely because such an emailed letter is directed toward Virginia.

[2] *Schmalfeldt I* refers to *Schmalfeldt v. Johnson, et. al.*, No. 15-CV-1516 (E.D. Wis. July 1, 2016) and is attached as Exhibit E. *Schmalfeldt II* refers to *Schmalfeldt v. Grady, et. al.*, No. 4:17-cv-01310-RBH-KDW (D. S.C. Dec. 7, 2017), which is the magistrate's recommendation and is attached as Exhibit B. Attached as Exhibit C is the order where that recommendation was adopted.

[3] Both cases involve the same plaintiff, who had moved from jurisdiction to jurisdiction.

[4] Henry Graff and Meghan Moriarty, *Biden Announces Presidential Bid in Video that Focuses on Events in Charlottesville,* NBC29.COM, April 30, 2019 at https://www.nbc29.com/story/40365743/joe-biden-announces-2020-presidential-bid-in-video-that-focuses-on-white-nationalist-events-in-charlottesville (last viewed May 8, 2019).

3

defendants, but was not involved in *Schmalfeldt II*. Ms. Palmer had simply published information to the world at large from her home in North Carolina, much like the Undersigned Defendants, but in the context of a local controversy rather than a national one. On the other hand, Johnson was alleged to have transmitted more than one defamatory phone call and email into Wisconsin (the relevant jurisdiction) from his home in Tennessee. Despite the fact that Johnson had allegedly directed defamatory communications into the relevant jurisdiction, *Schmalfeldt I* held as a matter of due process that Wisconsin could not exercise jurisdiction over either defendant.

Likewise, in *Schmalfeldt II* (decided in another court in this circuit) the behavior at issue presented a stronger case for asserting jurisdiction (in South Carolina) than in the instant case:

> The post relied on by Plaintiff that comes closest to a South Carolina connection is the one post allegedly by Defendant Grady wherein he claims to have "e-mailed-blasted every landlord in the entire state of South Carolina . . . and reminded them the Step 1 of any background check is run a credit report on any prospective tenant . . . ." https://sonoranconservative.com/2017/07/18/helpme-i-need-a-medic/comment-page-1. However, a close examination of that post discloses no direct reference to Plaintiff in the alleged "e-mail blast" to "every landlord," nor does Plaintiff provide any evidence showing that any landlord even received such an e-mail or that Plaintiff was denied housing in South Carolina based on that post or on any other posts by any Defendant. As a result, this court can only speculate as to whether Defendant Grady even sent the alleged e-mail or whether any person or entity in South Carolina even read the blog posts on which Plaintiff relies.

Exhibit B at 8-9. Later on, *Schmalfeldt II* notes the following in relation to the remaining posts:

> While the other posts by Defendants Hoge, Johnson, and Palmer on which Plaintiff relies do reference Plaintiff's current residence in South Carolina, none directly connects Defendants' activities to South Carolina as opposed to their general accessibility to all states and most countries through the Internet.

Exhibit B at 9-10 (footnotes omitted). Based on this logic, the *Schmalfeldt II* court found that it could not exercise personal jurisdiction over the defendants, all of whom lived outside of South

4

Carolina.  By this Court's analysis in the instant case, all of those *Schmalfeldt* defendants—including Ms. Palmer in *Schmalfeldt I*—could have been subject to personal jurisdiction, consistent with the Due Process Clause.  Thus, it is clear in both of the *Schmalfeldt* cases that those respective jurists would not have found personal jurisdiction to exist in the instant case.

A similar conclusion was reached in *Planet Aid, Inc. v. Reveal,* No. GLR-16-2974 (D. Md. June 26, 2017) (attached as Exhibit F).  *Planet Aid* involved allegedly defamatory broadcasts that originated outside of Maryland but were transmitted into Maryland.  Specifically, Reveal (a news outlet) had created radio programs called "podcasts" that Reveal gave to a network that included public radio stations in Maryland, while two of Reveal's reporters had appeared on NBC 4, a television station located in Washington, D.C., to discuss Planet Aid.  Yet the *Planet Aid* court held that even if Maryland's long-arm statute would allow for that court to exercise jurisdiction, it could not do so consistent with due process and dismissed for lack of personal jurisdiction.  With respect to the distribution of materials to be aired on Maryland's public radio stations, the *Planet Aid* court wrote that: "Defendants could not have had a reasonable expectation that PRX's nationwide distribution of the Podcasts would be sufficient to subject PRX to personal jurisdiction in Maryland merely because five of those 364 radio stations would broadcast the Podcasts into Maryland." Exhibit F at 7.  Likewise, when discussing the appearance of Reveal's reporters on NBC 4, the *Planet Aid* court wrote that NBC4 could not be subjected to jurisdiction, and therefore the Defendants could not have either, stating that "Defendants ... could not have had a reasonable expectation that airing the NBC 4 Broadcasts from Washington, D.C. would subject NBC 4 to jurisdiction in Maryland simply because the two NBC 4 Broadcasts could also be viewed in Maryland."  *Id.*  Plainly, the *Planet Aid* court would not have decided the instant case the same way that this Court has.

5

All of the cases cited to this Court, including *Schwartz* and *Schmalfeldt I and II*, together with the cases cited by the Free Speech Defendants demonstrate that reasonable jurists can disagree on this point of law—providing further support for the proposition that this Court should certify this issue for interlocutory appeal.

**B.    This Court Should Also Reconsider its Decision to Assert Personal Jurisdiction Over the Undersigned Defendants by Ignoring the Language of Virginia's Long-Arm Statute.**

In finding that this Court could assert personal jurisdiction over the Undersigned Defendants, this Court found that the Virginia long-arm statute had exactly the same reach as the Due Process Clause, and therefore, this Court could ignore the language of that statute. A recent decision by the Virginia Supreme Court indicates that a Virginia Court cannot ignore the long-arm statute, and thus, this Court cannot ignore it in a diversity case, either. If this Court examines the language of the Virginia long-arm statute, this Court will see that the Plaintiff cannot exercise personal jurisdiction over the Undersigned Defendants.

1.    This Court Should Reconsider its Decision to Ignore the Virginia Long-Arm Statute.

In its March 29, 2019 decision, this Court determined that it could ignore the language of Virginia's long-arm statute, VA CODE § 8.01-328.1, on the following logic:

> For a court to "assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). "Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process, the two-prong test collapses into a single inquiry when Virginia is the forum state." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012). "A Virginia court thus has jurisdiction over a nonresident defendant if the exercise of such jurisdiction is consonant with the strictures of due process." *Id.*

6

Dkt. 123 at 15-16. This case presents as stark a test of that principle as this Court might imagine. The Plaintiff has only asserted jurisdiction based on VA CODE § 8.01-328.1(A)(1) and (4) which states that:

> A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: ...
>
> 1. Transacting any business in this Commonwealth; [or] ...
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;

There is no serious argument that this case arises out of any transaction by the Undersigned Defendants; thus, subsection (A)(1) does not apply. Further, with respect to subsection (A)(4), the Undersigned Defendants have submitted declarations showing that they "do not regularly do business in Virginia, solicit business in Virginia, engage in any persistent course of conduct in Virginia, or derive any revenue from goods used or consumed or services rendered in Virginia." Declaration of R. Scott Creighton, Dkt. 47-2, ¶ 3; Declaration of James Hoft, Dkt. 47-3, ¶ 3; Declaration of Michelle Hickford, Dkt. 47-4, ¶ 4 (attesting to her and Words-N-Ideas, LLC's lack of contact with Virginia); and Declaration of Derrick Wilburn, Dkt. 47-5, ¶ 3. The Plaintiff, for his part, has presented absolutely no evidence to contradict those declarations, and thus the Plaintiff has failed to meet the requirements under subsection (A)(4). Therefore, the only way that this Court can find that there is jurisdiction under Virginia's long-arm statute is by ignoring its language completely.

While some of dicta from the Fourth Circuit, such as the language cited by this Court from

Case 3:18-cv-00017-NKM-JCH   Document 138   Filed 05/09/19   Page 11 of 23   Pageid#: 2020

*Shandong Linglong Rubber Co.*, suggests that it is proper to ignore the language of the long-arm statute, a deeper investigation into the applicable precedent shows it is not.

For instance, Maryland's long-arm statute, MD CODE CTS. & JUD. PROC. § 6-103(b), is virtually identical in every relevant respect to Virginia's long-arm statute[5] and in the past, the Fourth Circuit has stated that it can be ignored, just like Virginia's. *See, e.g.*, *Carefirst of Maryland v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 396-97 (4ᵗʰ Cir. 2003).

However, the Maryland Court of Appeals has stated that this approach is 180 degrees wrong, writing in *Mackey v. Compass*, 391 Md. 117, 892 A.2d 479, 493 n.6 (2006) that

> We stated recently in *Beyond v. Realtime*, 388 Md. 1, 15, 878 A.2d 567, 576 (2005) that "[w]e have consistently held that the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the Due Process Clause of the Federal Constitution." We did not, of course, mean by this that it is now permissible to simply dispense with analysis under the long-arm statute. *See id*. at 14, 878 A.2d at 575 (noting that personal jurisdiction analysis entails "dual considerations," the first of which is analysis under the long-arm statute). Rather, we meant no more than what we said in *Geelhoed*, viz., that we interpret the long-arm statute to the limits permitted by the Due Process Clause when we can do so consistently with the canons of statutory construction.

In other words, the language of *Beyond* amounted to nothing more than an interpretive principle used when construing the words of the long-arm statute, not a belief that the words of the long-arm statute could be ignored.

The key question before this Court, however, is how would the Virginia Supreme Court interpret VA CODE § 8.01-328.1? Would it ignore the statute's language as this Court has, or would it treat its language as controlling? As this Court observed in *Legard v. EQT Production Co.*, 771 F. Supp. 2d 607, 609 (W.D. Va. 2011):

> In accord with *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82

---

[5] Both are based on the same model statute. *Infra* 11-12.

> L.Ed. 1188 (1938), a federal court exercising diversity jurisdiction must apply the law of the highest court of the state in which it sits. *Wells v. Liddy*, 186 F.3d 505, 527-28 (4th Cir.1999). Where state law is unclear, the court must predict how the highest court of that state would rule if presented with the issue. *Id.*

Virginia's Supreme Court has never made a statement as unequivocal as that made by Maryland's highest court, but it is clear that the Virginia Supreme Court agrees that its long-arm statute cannot simply be ignored. The clearest indication of this is found in *Mercer v. MacKinnon*, No. 180358 (Va. S. Ct. Feb. 21, 2019). A copy of this opinion is attached as Exhibit A, and this Court can see that this was a decision rendered approximately a month before this Court's March 29 decision— thus, well after briefing had ended. *Mercer* involved another challenge to personal jurisdiction. The important point, however, is that the Virginia Supreme Court relied *exclusively* on the interpretation of its long-arm statute, specifically VA CODE § 8.01-328.1(A)(4). The *Mercer* court's analysis went deeply into the meaning of the words of that subsection and determined that the requirements of that subsection had not been met. Based on that statutory determination and *without any consideration of the Due Process Clause*, the *Mercer* court determined that the lower court appropriately dismissed the case for lack of personal jurisdiction. In other words, the *Mercer* court skipped the Due Process Clause, not the long-arm statute—the direct opposite of what this Court has done.

Indeed, applying the long arm statute has been the regular practice of Virginia's courts for some time. In *Krantz v. Air Line Pilots Ass'n, Intern.*, 245 Va. 202, 205 (1993), the Supreme Court of Virginia said that "the function of [Virginia's] long-arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in Virginia, to the extent permissible under the Due Process Clause." However, *Krantz* made it clear that this language was not a license to skip over the long-arm statute *by actually determining whether the long-arm statute applies.* It

9

was only after a statutory basis for the exercise of jurisdiction was found that the *Krantz* court turned to due process and ultimately determined that Virginia had personal jurisdiction over the defendants in that case.

Finally, the Fourth Circuit has not been consistent in claiming that the Virginia long-arm statute can be skipped. In *Booth v. Leaf*, 40 F.3d 1243 (4th Cir. 1994) (a copy is attached as Exhibit G),[6] the Fourth Circuit examined a case where a person allegedly defamed a Virginian by sending a letter from outside of Virginia, into Virginia, where it was republished by a third party in the state. First, the *Leaf* court examined VA CODE § 8.01-328.1(A)(3) which states that:

> A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: ...
>
> 3. Causing tortious injury by an act or omission in this Commonwealth;

The *Leaf* court held that this statutory language did not apply for the following reason:

> Sec. 8.01-328.1(A)(3) does not grant jurisdiction over a person who wrote and mailed an allegedly defamatory letter outside Virginia. *Early*, 669 F. Supp. at 132; *Davis*, 580 F. Supp. at 1087; *St. Clair v. Righter*, 250 F. Supp. 148, 151 (W.D. Va. 1966), disapproved on other grounds, *Beaty v. M. S. Steel Co.*, 401 F.2d 157, 160-61 (4th Cir.1968), *cert. denied*, 393 U.S. 1049 (1969).

Exhibit G at 2. Rejecting jurisdiction under subsection (A)(3), the *Leaf* court turned to subsection (A)(4). In the process of analyzing that subsection, the *Leaf* court brushed aside any suggestion that it could just ignore Virginia's statutory language as follows:

> As for the second requirement, although Virginia's long-arm statute has been extended to the limits of due process, *English & Smith*, 901 F.2d at 38, jurisdiction under Sec. 8.01-328.1(A)(4) requires this Court to find that the specific statutory requirements are met "even

---

[6] This is an "unpublished disposition," but 4TH CIR. local rule 32.1 states that while citation of such opinions is "disfavored" they can be cited when "no published opinion … would serve as well."

in those situations where it could plausibly be argued that a lesser standard would meet due process." *Willis v. Semmes, Bowen & Semmes*, 441 F. Supp. 1235, 1243 (E.D. Va.1977).

*Id.* The *Leaf* court proceeded to determine that the defendants did not have sufficient contacts with Virginia in order to satisfy VA CODE § 8.01-328.1(A)(4) and then dismissed the case. In other words, just as in the *Mercer* case above, the *Leaf* court skipped the Due Process Clause but not the long-arm statute: "Because Booth failed to meet the statutory requirements, we need not decide whether jurisdiction over the Leafs comports with due process." *Id.* at 3.

Indeed, if Virginia's General Assembly had meant to simply reach every case that it could consistent with the Due Process Clause, why not simply say that? Why not rewrite VA CODE § 8.01-328.1 to say something like "a court may exercise personal jurisdiction over persons outside of this Commonwealth to the utmost allowed under the constitutions of the United States and Virginia"? There are over 600 words in VA CODE § 8.01-328.1, and yet, according to this Court's ruling, Virginia only needed twenty-five. It is bizarre to pretend that those hundreds of words are surplusage, especially when the Virginia Supreme Court clearly thinks that they are not.

Therefore, it is clear that a Virginia court cannot assert jurisdiction over a defendant without meeting the requirements of the long-arm statute.[7] As will be demonstrated in the next section, if this Court had required the Plaintiff to meet those requirements, this Court would not have been able to assert personal jurisdiction over the Undersigned Defendants.

2. Under the Virginia Long-Arm Statute, Personal Jurisdiction Cannot be Based Solely on Electronic Contact.

As a starting point, in all respects relevant to this suit, the long-arm statutes of the District

---

[7] Alternatively, this Court might consider certifying the question of whether this Court can simply ignore the language of the long-arm statute to the Virginia Supreme Court.

11

of Columbia, Virginia, and Maryland[8] are the same. This is not surprising, because all three are based on the Uniform Interstate and International Procedure Act promulgated in 1962. *Mercer*, Exhibit A at 4; *Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 763 (D.C. 2009); *Christian Book v. Great Christian*, 137 Md. App. 367, 768 A.2d 719, 731 (Md. App. 2001). Further, all three statutes have been interpreted so that a defamatory statement uttered outside of the relevant jurisdiction but sent my mail, by telephone, or by email into that jurisdiction is insufficient to meet the standards of these long-arm statutes.

Indeed, in most cases involving defamation that is uttered outside of the relevant jurisdiction and transmitted into that jurisdiction, D.C., Virginia, and Maryland Courts have consistently looked to the third subsection of their long-arm statutes, not the fourth, so it is worth examining both subsections together. The Virginia version of these two subsections reads as follows:

> A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: ...
>
> 3. Causing tortious injury by an act or omission in this Commonwealth; [or]
>
> 4. Causing tortious injury in this Commonwealth[9] by an

---

[8] D.C. CODE § 13–423(a), VA CODE § 8.01-328.1(A) and MD CODE CTS. & JUD. PROC. § 6-103(b), respectively.

[9] The Maryland version of the fourth subsection reads differently in a way that is irrelevant to this case. It states that Maryland can exercise jurisdiction over any person who

> "Causes tortious injury in the State *or outside of the State* by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;"

12

> act or omission outside this Commonwealth if he
> regularly does or solicits business, or engages in any
> other persistent course of conduct, or derives
> substantial revenue from goods used or consumed or
> services rendered, in this Commonwealth;

VA CODE § 8.01-328.1(A)(3) and (4).

Courts in all three jurisdictions have regularly held that a defamatory statement uttered outside of the jurisdiction and transmitted into that jurisdiction does not count as an "act or omission" inside the jurisdiction. For instance, in *St. Clair v. Righter*, 250 F. Supp. 148 (W.D. Va. 1966), this Court held that sending an allegedly defamatory letter from outside of Virginia, into Virginia, was not an act or omission in Virginia under VA CODE § 8.01-328.1(A)(3).[10] At the time the *St. Clair* court ruled, the Uniform Interstate and International Procedure Act was only four years old, and therefore the case was a matter of first impression. In reading these statutes, this Court reasoned that

> It will be noted that Virginia has included two separate paragraphs,
> (3) and (4), which deal with jurisdiction predicated on a potentially
> tortious injury which occurs within the State (the statute refers to the
> causing of a "tortious injury" which, of course, is something of a
> misnomer, since whether or not the injury was tortious is generally
> the fact at issue). This sets the Virginia statute apart from the so-
> called "single-act" long-arm statutes (notably those of Illinois and
> New York) which state simply that in personam jurisdiction may be
> asserted over a person who commits a "tortious act" within the state.
> Ill.Ann.Stat., *supra*; N.Y. CPLR § 302 (1963). Paragraph (4) is
> considerably more restrictive than paragraph (3), the former
> requiring that the defendant engage in some persistent course of
> conduct or derive substantial revenue from goods used or consumed
> or services rendered within the State for jurisdiction to attach.
> Therefore, in interpreting the Virginia statute we must attempt to
> ascertain the legislative purpose behind the inclusion of the two

---

MD CODE CTS. & JUD. PROC. § 6-103(b) (emphasis added). The Maryland legislature has chosen to insert the italicized language into their version of the statute. This is surely significant in some cases, but not in the instant case.

[10] At the time, the long-arm statute was codified as VA CODE § 8-81.3. Aside from cosmetic changes, it read the same in every relevant way as the current version.

13

tortious injury paragraphs.

The significant difference between Virginia's statute and the "single-act" statutes is that the General Assembly saw fit to separate the causal act from the resulting injury. In legislation which bases jurisdiction simply on a "tortious act" committed within the state, it is obvious that the act and injury must coincide, as an act cannot be tortious in the absence of injury. Virginia, on the other hand, refers both to the "act or omission" and the "tortious injury" resulting therefrom. In both paragraphs the tortious injury occurs within Virginia, but in paragraph (3) the causal act also occurs within the State while in paragraph (4) it occurs outside the State, a fact which, in the minds of the legislators, necessitated the restrictive language appended to the latter paragraph.

…

In the instant case, the alleged tortious injury occurred upon the publication of the alleged libel within Virginia, but this was caused by the act of writing and mailing the letters outside Virginia. Plaintiff, therefore, must predicate jurisdiction upon paragraph (4), and this court must hold that the acts alleged in this case do not fall within the terms of the statute, as there is no evidence of any persistent course used by the Virginia General Assembly of conduct or derivation of revenue on the part of the defendants. The language must be interpreted with relation to the statute as a whole, and if the court were to hold that plaintiff could use paragraph (3) to obtain jurisdiction (a holding that the act occurred in Virginia), the necessity for paragraph (4) would be completely obviated, as every set of facts which give rise to tortious injury could be brought within the terms of paragraph (3). We would in effect be assimilating the Virginia statute to the single-act statutes of other states. Obviously, there is a purpose for paragraph (4) or the legislature would not have included it. Most probably, there was some concern over the constitutionality of single-act provisions, and to "enact" a single-act statute by judicial legislation would be to blatantly disregard the intent of the General Assembly.

250 F. Supp. at 150-151. In short, because these provisions separated the act from the injury, the

act of defamation occurred when the letter was written and mailed outside of Virginia, and the

injury occurred when it arrived in Virginia. Therefore, the requirements of subsection (A)(3) was

not met, and this Court, having determined that the act was committed outside of Virginia, went

14

on to hold that there was not a sufficient connection to Virginia to satisfy subsection (A)(4), either.

Similarly, in *Margoles v. Johns*, 483 F.2d 1212, 157 U.S.App.D.C. 209 (D.C. Cir. 1973), the D.C. Circuit was confronted with a defendant who allegedly called into the District of Columbia from Wisconsin and allegedly made defamatory remarks in that call. Although there can be no question on those facts that the defendant in that case intended to cause injury primarily in D.C. and the defendant purposefully transmitted that information into D.C., that was insufficient to meet the requirements the equivalent D.C. CODE § 13–423(a)(3). Meanwhile, the Maryland Court of Special Appeals reached the same conclusion in *Zinz v. Evans and Mitchell Industries*, 324 A.2d 140, 22 Md. App. 126 (Md. App. 1974). In *Zinz*, an allegedly defamatory letter was mailed from outside of Maryland, into Maryland, allegedly causing damage to a Marylander. Relying on *Righter* and *Margoles*, the Court of Special Appeals held that the mere act of sending such a letter was insufficient to satisfy MD CODE CTS. & JUD. PROC. § 6-103(b)(3) or (4).

These are not aberrant precedents. For instance, *Righter* has been applied to bar personal jurisdiction arising from allegedly defamatory Internet postings, *Noah Nathan v. Takeda Pharmaceuticals America Inc., et al.* No. 08-02-2011 (Va. Cir. Aug. 2, 2011) (attached as Exhibit H), and to allegedly defamatory phone calls, *Robinson v. Egnor*, 699 F. Supp. 1207 (E.D. Va. 1988). Meanwhile, in *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217 (D.C. Cir. 1986), *Margoles* was extended to an allegedly defamatory newspaper article written in Kentucky and mailed to D.C., while *Betz v. Aidnest*, No. 1:18-cv-0292 (KBJ) (D. D.C. Oct. 26, 2018) (attached as Exhibit I) confirmed the continuing vitality of *Margoles*. Likewise, *Zinz* was cited in *Dring v. Sullivan*, 423 F. Supp. 2d 540 (D. Md. 2006) when that court found that an email sent from outside of Maryland, into Maryland, was not sufficient to meet MD CODE CTS. & JUD. PROC. § 6-103(b)(3), and the continuing vitality of *Zinz* was verified as recently as 2014 in *Winter v.*

15

*Pinkins*, No. JKB-14-2125 (D. Md. Oct. 29, 2014) (attached as Exhibit J).

Therefore, under Virginia's long-arm statute, even allegedly defamatory communications specifically transmitted from outside of the jurisdiction, into the jurisdiction, are not sufficient, by themselves, to subject one to personal jurisdiction under VA CODE § 8.01-328.1 (or its equivalents in Maryland and D.C.) because such conduct is not an "act or omission" *in Virginia* as required by § 8.01-328.1(A)(3). If that can be said about letters, phone calls, and emails intentionally transmitted into Virginia, it can also be said of a passive website that is only *accessed* from Virginia and therefore, § 8.01-328.1(A)(3) does not apply to any of the conduct of the Undersigned Defendants.

Instead, the Plaintiff has to look to § 8.01-328.1(A)(4)—as he has—which applies to acts and omissions committed outside of Virginia that allegedly cause harm in Virginia. However, in order to assert jurisdiction under that subsection, this Court must find that each of the Undersigned Defendants "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." *Id.* The only evidence before this Court on this subject are unrebutted declarations establishing that the Undersigned Defendants do not have such a relationship with Virginia, and therefore, this Court lacks personal jurisdiction over those defendants.[11]

## C. In the Alternative, this Court Should Certify the Question of Whether this Court Can Ignore the Virginia Long-Arm Statute for Interlocutory Appeal.

This brief will not belabor the point that such a question would meet the standards set out by 28 U.S.C. § 1292(b). First, there is no doubt that this involves a question of law and not of fact, because there are no facts in dispute on this point. Second, there is no doubt that the question is

---

[11] The Undersigned Defendants previously pointed out why subsection (A)(1) had no applicability to their alleged conduct. *See supra* at 7.

16

*controlling* because it controls whether or not this case should be dismissed. Third, there is no question that such an appeal might serve to advance the termination of the litigation because if the Undersigned Defendants are correct on this point, the case would be terminated (dismissed).

Finally, there is little doubt there is substantial ground for a difference of opinion among jurists. The logic of the *Mercer* case, where the Virginia Supreme Court examined the language and the meaning of the Virginia long-arm statute and determined that Virginia lacked jurisdiction based solely on the failure to meet the long-arm statute's requirements—without examining whether that assertion of jurisdiction would pass muster under due process—is fundamentally at odds with the analysis of this Court's ruling, wherein the specific language of the long-arm statute did not matter so long as the Due Process Clause was satisfied. *Mercer* demonstrates beyond any reasonable doubt that if this case had been filed in the Circuit Court of Albemarle County, that court would have been dismissed the case for lack of personal jurisdiction. Again, this Court does not have to believe it made the wrong decision by ignoring the long-arm statute; it only has to believe that another reasonable jurist might reach a different decision.

Therefore, all of the requirements of 28 U.S.C. § 1292(b) have been met. Accordingly, if this Court is not willing to reconsider its decision to ignore the long-arm statute, the Undersigned Defendants ask this Court to certify that question for interlocutory appeal.

## CONCLUSION

In all of this discussion, it is easy to get lost in the "weeds" and forget that there is an important question at stake: How should expensive "free" speech be? This is not a question for one set of defendants whose views might be less popular than most people's. This is question of a rule of law that will apply to every defendant in every case, whether the case is meritorious or abusive. Citizens across this country should not be afraid of speaking on national issues, due to

the risk of being haled into a court far from home in a defamation suit that might or might not have factual merit. Rigorously enforcing barriers to personal jurisdiction allows all people to speak more freely.

The Undersigned Defendants join the arguments made in the Free Speech Defendants' Motion to Reconsider or for Certification without reservation. With respect to the question of whether this Court could assert jurisdiction over the Undersigned Defendants consistent with the Due Process Clause, the Undersigned Defendants believe that the argument for allowing an interlocutory appeal is even stronger than the Free Speech Defendants stated. Additionally, the Undersigned Defendants have demonstrated that this Court should reconsider its decision to ignore Virginia's long-arm statute and should determine that the Plaintiff has failed his burden to show that the Undersigned Defendants fall within its requirements. In the alternative, the Undersigned Defendants ask this Court to certify that question for interlocutory appeal.

Thursday, May 9, 2019                     Respectfully submitted,


                                          _s/ Aaron J. Walker_
                                          Aaron J. Walker, Esq.
                                          *Attorney for Defendants Wilburn, Hickford, Hoft,*
                                          *Creighton and Words-N-Ideas, LLC*
                                          Va. Bar# 48882
                                          7537 Remington Road
                                          Manassas, Virginia 20109
                                          (703) 216-0455
                                          AaronJW72@gmail.com

18

**List of Exhibits:**

Exhibit A: *Mercer v. MacKinnon*, No. 180358 (Va. S. Ct. Feb. 21, 2019)

Exhibit B: *Schmalfeldt v. Grady, et. al.*, No. 4:17-cv-01310-RBH-KDW (D. S.C. Dec. 7, 2017) (*Schmalfeldt II*)

Exhibit C: Opinion Adopting the Recommendation in *Schmalfeldt II*.

Exhibit D: *Edwards v. Schwartz,* No. 7:18-cv-378 (W.D. Va. March 20, 2019)

Exhibit E: *Schmalfeldt v. Johnson, et. al.*, No. 15-CV-1516 (E.D. Wis. July 1, 2016) (*Schmalfeldt I*)

Exhibit F: *Planet Aid, Inc. v. Reveal,* No. GLR-16-2974 (D. Md. June 26, 2017)

Exhibit G: *Booth v. Leaf*, 40 F.3d 1243 (4th Cir. 1994)

Exhibit H: *Noah Nathan v. Takeda Pharmaceuticals America Inc., et al.* No. 08-02-2011 (Va. Cir. Aug. 2, 2011)

Exhibit I: *Betz v. Aidnest*, No. 1:18-cv-0292 (KBJ) (D. D.C. Oct. 26, 2018)

Exhibit J: *Winter v. Pinkins*, No. JKB-14-2125 (D. Md. Oct. 29, 2014)