IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

BRENNAN M. GILMORE,

    Plaintiff,

  v.

ALEXANDER E. JONES, et al.,

    Defendants.

Case No. 3:18-cv-00017-NKM

**Reply in Support of Motion for Reconsideration or Certification**
**For Interlocutory Appeal of the Court's March 29 Order and Opinion**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................................. 1

ARGUMENT ........................................................................................................................................ 2

    **I.**    Reconsideration Is Warranted ................................................................................... 2

    **II.**   In the Alternative, Interlocutory Appeal Is Warranted ............................................ 4

CONCLUSION ..................................................................................................................................... 9

# INTRODUCTION

The Court's denial of the Free Speech Defendants' motion to dismiss for lack of personal jurisdiction misapprehended the breadth of *Calder v. Jones*'s "effects test," as clarified by subsequent decisions of the Supreme Court and lower courts, and propounded a rule with far-reaching and severe consequences. By holding that an Internet publication's focus on forum-state events and persons, standing alone, suffices to support specific personal jurisdiction over out-of-state defendants who have not otherwise aimed their conduct at the forum state, the Court's decision subjects Internet users who comment on national affairs to suit in any state where events of national interest happen to occur. That holding conflicts with the views of other courts within the Fourth Circuit to consider the matter, conflicts with the "express aiming" requirement that the courts of appeals (including the Fourth Circuit) have derived from *Calder*, and ultimately conflicts with the Supreme Court's recharacterization of *Calder* along those lines in *Walden v. Fiore*, 571 U.S. 277 (2014).

The Plaintiff's Opposition ("Opp.") does not seriously grapple with any of these things. It does not mention, let alone discuss, *Walden*, which is the Supreme Court's latest statement on this matter and which addresses *Calder*'s "effects test" at great length. It attempts to distinguish away the conflicting authorities identified by the Free Speech Defendants on factual grounds, without engaging their statements of the governing law. And it does not dispute that the Court's rule would impose significant burdens on all those who use the Internet to express their views on national affairs, ones that violate traditional notions of fair play and substantial justice.

In short, the Court's decision decided an important question of law in a way that chafes against governing authority, conflicts with other courts' views on that question, and will lead to serious consequences. In these circumstances, reconsideration or certification for immediate appeal is warranted.

1

# ARGUMENT

I. **Reconsideration Is Warranted**

The Free Speech Defendants seek reconsideration because the Court's decision overlooks the import of decisions interpreting and applying *Calder*'s "effects test" and does not appear to recognize that its rule portends such serious consequences for Internet speakers. The Plaintiff rebuts neither point in his Opposition.

The Plaintiff's Opposition, like the Court's decision, does not address *Walden*'s treatment of *Calder*. *Walden* explains that "mere injury to a forum resident is not a sufficient connection to the forum" and that "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." 571 U.S. at 290. That standard was satisfied in *Calder*, it explained, because the defendants "'expressly aimed' 'their intentional, and allegedly tortious, actions' at California because they knew the National Enquirer 'ha[d] its largest circulation' in California, and that the article would 'have a potentially devastating impact' there," where they knew the plaintiff to work and reside. *Id*. at 288 n.7 (quoting *Calder*). Contrary to Plaintiff's suggestion (at 5), it was not enough that the article at issue concerned events in California; what mattered was that it was "expressly aimed" at a California audience, as shown by the defendants' targeting of a California audience through the National Enquirer's significant circulation there and their knowledge that the publication would cause an impact in California. On this point, *Walden* does not stand alone; all of the courts of appeals to consider the matter have placed great emphasis on Calder's "'express aiming' requirement," *Tamburo v. Dworkin*, 601 F.3d 693, 704 (7th Cir. 2010) (collecting cases), which the Plaintiff neither addresses nor disputes.

Unlike the *Calder* defendants, the Free Speech Defendants did nothing to expressly aim their conduct at Virginia. Unlike the National Enquirer, InfoWars has no special relationship with the Virginia market or heightened circulation there. And, unlike the *Calder* defendants, the Free Speech Defendants did not know and had no reason to know that the Plaintiff resided in Virginia, given that so many attending the protests had come from out of state, let alone that their speech

2

could impact the Plaintiff's reputation there. *See* Mot. at 3–4.[1] The Plaintiff identifies no other basis to conclude that the Free Speech Defendants' publications were "expressly aimed" at a Virginia audience, focusing instead on contents that were of equal interest to audiences in other states. But writing about events of interest across the nation cannot, in itself, satisfy *Calder*'s "express aiming" requirement—otherwise, *Calder*'s discussion of the issue, and *Walden*'s treatment of *Calder*, would have been concluded in about a sentence apiece, instead of the pages of analysis that were required to conclude that the publication there had been "expressly aimed" at a California audience.

*Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002), confirms as much. *Young* holds that the central inquiry in assessing specific jurisdiction based on out-of-state Internet publications is whether the defendants manifested an "intent to target and focus on [forum-state] readers." *Id*. at 263. And because the "focal point" of the articles at issue in *Young* was a "public debate in Connecticut," the court could infer that the defendants there "did not post materials on the Internet with the manifest intent of targeting Virginia readers." *Id*. at 263–64. No such inference arises, however, when a publication covers events of broad national interest, because such a publication does not in itself demonstrate an intent to target a particular state's audience. The point is not, as the Plaintiff mischaracterizes this argument (at 6), that "a court could not exercise personal jurisdiction over defendants who publish a story that targets a particular State simply because that story is also of interest to people outside that State." Instead, it is simply that it must be shown in the first place that the publication "targets a particular State," without assuming as much based on the locale of the underlying events that are of equal interest within and without the forum state. And that is what is absent here, a showing that the Free Speech Defendants had any intent to target a Virginia audience in particular.

---

[1] The Plaintiff's suggestion (at 7 n.3) that the defendant's knowledge of where the plaintiff might suffer reputational injury is immaterial conflicts with, among other authorities, *Walden* and *Calder*. *See Walden*, 571 U.S. at 288 n.7 (discussing *Calder*). Absent such knowledge, it could never be the case that a defendant "expressly aimed" a publication to cause an effect in a particular state, as required to support jurisdiction in that state.

3

As for the consequences of the Court's decision, the Plaintiff does not dispute that, under its reasoning, any of the thousands of Internet publications and individual Internet users who commented on the Charlottesville protests could be haled into a Virginia court for joining a national discussion and debate. And the same holds true for those commenting on any number of national debates over events taking place in a particular state. Given that the Plaintiff offers no rebuttal to this point, the assertion (at 7) that this outcome is "far-fetched" cannot persuade.[2]

For these reasons, including the rule's conflict with governing authority, the Free Speech Defendants respectfully seek reconsideration.

## II. In the Alternative, Interlocutory Appeal Is Warranted

If the Court does not reconsider its ruling on personal jurisdiction, then certification for immediate appeal is warranted so that the Court of Appeals may address the controlling question of law presented by the Court's decision. The Plaintiff's argument to the contrary misses the mark in all respects: whether the court may exercise personal jurisdiction in these circumstances presents a controlling question of law no different than in *Young* and *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707 (2002); courts have, in fact, expressed a difference of opinion on that question; and a decision requiring dismissal of every single claim against the Free Speech Defendants, as well as those against potentially all the other Defendants, would obviously advance termination of the litigation.

A. The question for which the Free Speech Defendants seek certification—whether an Internet publication's focus on forum-state events and persons, standing alone, suffices to support specific personal jurisdiction over out-of-state defendants who have not otherwise aimed their conduct at the forum state—is a controlling question of law. Indeed, it is a refinement of the controlling

---

[2] The Plaintiff asserts (at 7) that Virginia is the only state where he could have brought this action, but it was the Plaintiff who chose to join together in one action claims against unrelated defendants for unrelated publications. And "the convenience of plaintiffs" is not the concern of the "[d]ue process limits on the State's adjudicative authority" enforced through the personal jurisdiction requirement. *Walden*, 571 U.S. at 284.

question of law that was certified for interlocutory appeal in *Young*, which was in turn a refinement of the question presented in *ALS Scan*. The Plaintiff's contention (at 10–11) that this question merely involves the application of settled law to the facts of the case is incorrect and proves too much: phrased at a similarly high level, the questions in both *ALS Scan* and *Young*, or any case really, could be similarly characterized as involving only the application of law.[3] And although the Plaintiff suggests (at 10–11), that certification might require the appeals court to "delve into the facts of the case," his Opposition provides no explanation of why that is so. It is not: the relevant facts are set forth in the question itself, and the only dispute is their legal significance. And that is a classic controlling question of law.

The Plaintiff's string citation (at 9–10), without further discussion, of cases in which certification was denied says nothing about whether certification is warranted in this case. In fact, courts have regularly granted certification to appeal on questions of personal jurisdiction. Notably, that includes, within just the Fourth Circuit specifically, questions closely related to the one presented here, as in *ALS Scan*, *Young*, and *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997) (addressing application of *Calder* to conduct aimed at the nation as a whole). And, for what it may be worth, compiling an opposing string citation of cases in which certification was granted to answer questions of personal jurisdiction is no difficult task.[4]

---

[3] For example, how does the Due Process Clause apply to the facts of a given case?

[4] *See, e.g.*, *City of Virginia Beach v. Roanoke River Basin Ass'n*, 776 F.2d 484, 486 (4th Cir. 1985) (addressing certified interlocutory appeal of personal jurisdiction); *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 745–46 (4th Cir. 1971) (same); *Roorda v. Volkswagenwerk, A.G.*, 481 F. Supp. 868, 881 (D.S.C. 1979) (certifying question of personal jurisdiction *sua sponte*); *see also Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6 n.6 (1st Cir. 2018) (addressing certified interlocutory appeal of personal jurisdiction); *Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 817 F.3d 755, 759 (Fed. Cir. 2016) (same); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 528 (5th Cir. 2014) (same); *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 344 (3d Cir. 2013) (same); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1345 (D.C. Cir. 2000) (same); *Pintlar Corp. v. Rowland*, 127 F.3d 1182, 1184 (9th Cir. 1997), *amended and superseded by In re Pintlar Corp.*, 133 F.3d 1141 (9th Cir. 1998) (same); *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 454 (10th Cir. 1996) (same); *Drexel Chem. Co. v. SGS Depauw & Stokoe*, 59 F.3d 170 (6th Cir. 1995) (unpublished) (same); *Klinghoffer v. S.N.C. Achille Lauro*

5

More to the point, the three cases principally relied upon by the Plaintiff are readily distinguishable from this one. Contrary to the Plaintiff's characterization (at 12), this Court's decision in *Elderberry of Weber City, LLC* did not address a substantive question of personal jurisdiction, but instead addressed the procedural matter of "whether a defendant filing a motion to transfer or stay waives any and all rights to object to personal jurisdiction," concluding that because any possible answer to the question would necessitate significant additional proceedings, it was not a "controlling question" fit for interlocutory review. *Elderberry of Weber City, LLC v. Living Centers-Se., Inc.*, No. 6:12-CV-00052, 2013 WL 1399314, at *1–*2 (W.D. Va. Apr. 5, 2013). By contrast, a decision in the Free Speech Defendants' favor on appeal would require their dismissal from this suit, with no further proceedings in this court. *Eshelman* involved no "question of law" at all; instead, the defendant sought certification of the question "whether Puma is subject to personal jurisdiction in North Carolina." *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 9440363, at *2 (E.D.N.C. May 24, 2017). And the same is true of *Hecklerco*, where several defendants sought appeal on the question of whether the district court properly addressed factual evidence (which they had not previously presented to the court) regarding their alleged control over other defendants. *Hecklerco, LLC v. YuuZoo Corp. Ltd.*, 258 F. Supp. 3d 350, 357 (S.D.N.Y. 2017). By contrast, the Free Speech Defendants seek certification of an important and recurring question of law broadly applicable in future cases.

Finally, "[t]here is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment." 16 Fed. Prac. & Proc. Juris. § 3930 & n.20 (3d ed.) (collecting authorities). And the Plaintiff does not dispute that the question here is "controlling" in that sense.

B. Courts have, in fact, disagreed on the legal standard at issue here, demonstrating that there is a substantial ground for difference of opinion on the question presented for appeal.

---

*Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24–25 (2d Cir. 1990) (same); *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1241 (7th Cir. 1990) (same); *Radaszewski by Radaszewski v. Contrux, Inc.*, 891 F.2d 672, 673 (8th Cir. 1989) (same); *Army Times Pub. Co. v. Watts*, 730 F.2d 1398, 1398–99 (11th Cir. 1984) (same)

As the Free Speech Defendants explained in their motion, other courts within the footprint of the Fourth Circuit have understood *Calder* and *Young* to hold that an Internet publication's discussion of events that occurred within a given state, when directed at a national audience, does not in itself support specific jurisdiction. *See* Mot. at 11–12 (discussing *FireClean, LLC v. Tuohy*, 1:16-cv-0294, 2016 WL 3952093, at *6 (E.D. Va. July 21, 2016); *Fertel v. Davidson*, No. 13–2922, 2013 WL 6842890, at *4 (D. Md. Dec. 18, 2013)); *see also Edwards v. Schwartz*, No. 7:18-CV-378, 2019 WL 1295055, at *13 (W.D. Va. Mar. 20, 2019) (so interpreting and applying *FireClean*). The Eighth Circuit reasoned as much *Johnson v. Arden*, 614 F.3d 785, 796–97 (8th Cir. 2010). And the Seventh Circuit recognized that the question presented here remains an open one. *Tamburo*, 601 F.3d at 707 n.10 ("Because the newspaper in *Young*…clearly targeted a local audience, the case suggests that when a local publication posts an article on its website, jurisdiction in another state may be proper only if the publication specifically targets forum-state readers. But the analysis may be more complex when, for example, a truly national publication, such as *USA Today*, is sued for defamation arising out of an article on its website.").

The Plaintiff does not, of course, dispute that these courts said what they said, instead arguing (at 13) that their decisions can be distinguished on factual grounds. But what matters is their view of the governing legal standard, which differs from the one adopted by this court. And where jurists have disagreed on the governing legal standard, there is necessarily "substantial ground for difference of opinion" supporting interlocutory appeal. 28 U.S.C. § 1292(b).

Finally, only one of the five decisions cited by the Plaintiff (at 14–15) as supporting its jurisdictional rule is on-point, and that one decision's confused reasoning demonstrates why further clarification on this legal question is warranted. Four of those cited decisions each concern a matter of decidedly local interest that the court had no difficulty concluding was expressly aimed at the forum-state audience uniquely interested in that matter.[5] And none of those decisions take a

---

[5] *See Bochan v. La Fontaine*, 68 F. Supp. 2d 692, 702 (E.D. Va. 1999) (involving Internet postings accusing a Virginia resident of being a pedophile, statements that had little or no relevance other than to a Virginia audience); *Jones v. Dirty World Entm't Recordings*, LLC, 766 F. Supp. 2d 828,

side on the issue presented here. The exception is *Gubarev v. Buzzfeed, Inc.*, which reasoned that, where defendants published a dossier that they "knew…would be viewed around the world," they "should have anticipated that the effects of the publication might be felt in different fora," such that they were subject to suit basically anywhere. 253 F. Supp. 3d 1149, 1159 (S.D. Fla. 2017). The court made no attempt, however, to square that rule with *Walden*'s admonition that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." 571 U.S. at 290. And, notably, that rule is different from the one adopted by the Court here. And so *Gubarev* only confirms the confusion extent on this point of law.

      C.     Immediate appeal would materially advance termination of the litigation. "If present appeal promises to advance the time for trial or to shorten the time required for trial, appeal is appropriate." 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.). The Plaintiff does not dispute that resolution of the jurisdictional question in the Free Speech Defendants' favor would require dismissal of all claims regarding all of the publications at issue here, except potentially for Defendant Lee Stranahan's comments.[6] That the Plaintiff chose to join together claims involving so many defendants and so many different publications in a single action is no reason to deny immediate appeal that would materially advance termination of nearly every claim.

---

830–31, 834–36 (E.D. Ky. 2011) (involving Internet comments that a cheerleader "slept with every other Bengal Football player"); *Hawbecker v. Hall*, 88 F. Supp. 3d 723, 728 (W.D. Tex. 2015) (involving Internet comments that an individual sexually abused children, including the poster's daughter); *Lostutter v. Olsen*, No. 1:16-CV-1098, 2017 WL 3669557, at *9 (M.D.N.C. Aug. 24, 2017) (involving Internet comments aimed at disrupting the business of the plaintiff's "brick-and-mortar store" in North Carolina and "encouraging online readers to contact North Carolina authorities to have him investigated").

[6] Given the Court's finding that Mr. Stranahan was domiciled in Texas at the time this action was filed, MTD Opinion at 9, the Court may well conclude on remand from a decision in the Defendants' favor that it lacks personal jurisdiction over him, as well. In any instance, even assuming that the claims against Mr. Stranahan would proceed, resolving on the merits claims against a single defendant involving a single publication will be far more expeditious than proceedings involving multiple defendants and publications.
8

## CONCLUSION

The Court should reconsider its March 29, 2019 Order denying the Free Speech Defendants' motion to dismiss for want of personal jurisdiction or, in the alternative, amend that order to certify it for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

June 6, 2019

Respectfully submitted,

| | |
|---|---|
| TREMBLAY & SMITH, PLLC | BAKER HOSTETLER LLP |
| Thomas E. Albro (VSB #12812) | /s/ Elizabeth A. Scully |
| Evan D. Mayo (VSB #89383) | Elizabeth A. Scully (VSB #65920) |
| 105-109 E. High Street | Mark I. Bailen |
| Charlottesville, VA 22902 | Andrew M. Grossman |
| Telephone: (434) 977-4455 | Richard B. Raile (VSB #84340) |
| Facsimile: (434) 979-1221 | Washington Square, Suite 1100 |
| tom.albro@tremblaysmith.com | 1050 Connecticut Avenue, N.W. |
| evan.mayo@tremblaysmith.com | Washington, DC 20036-5304 |
| | Telephone: (202) 861-1500 |
| | Facsimile: (202) 861-1783 |
| | escully@bakerlaw.com |
| | mbailen@bakerlaw.com |
| | agrossman@bakerlaw.com |
| | rraile@bakerlaw.com |

*Co-Counsel for Defendants Alexander E. Jones, Infowars, LLC, Free Speech Systems, LLC and Lee Ann McAdoo a/k/a Lee Ann Fleissner*

*Counsel for Defendants Alexander E. Jones, Infowars, LLC, Free Speech Systems, LLC and Lee Ann McAdoo a/k/a Lee Ann Fleissner*

WALLER LANSDEN DORTCH & DAVIS, LLP

Eric J. Taube
100 Congress Avenue, Suite 1800
Austin, TX 78701
Telephone: (512) 685-6401
eric.taube@wallerlaw.com

*Of Counsel for Defendants Alexander E. Jones, Infowars, LLC, Free Speech Systems, LLC and Lee Ann McAdoo a/k/a Lee Ann Fleissner*

# CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Elizabeth A. Scully
Elizabeth A. Scully (VSB #65920)
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
Telephone: (202) 861-1500
Facsimile: (202) 861-1783
escully@bakerlaw.com
