CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
09/16/2019
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BRENNAN M. GILMORE,<br><br>    *Plaintiff*,<br><br>v.<br><br>ALEXANDER ("ALEX") E. JONES, *et al.*,<br><br>    *Defendants.* | CASE NO. 3:18-cv-00017<br><br>**MEMORANDUM OPINION**<br><br>JUDGE NORMAN K. MOON |

    This matter is before the Court upon Defendants Alex Jones, Lee Ann McAdoo, InfoWars, LLC, and Free Speech Systems, LLC's ("FSS Defendants") Motion to Reconsider or Certify for Interlocutory Appeal (Dkt. 133) and Defendants Derrick Wilburn, Michele Hickford, James Hoft, R. Scott Creighton, and Words-N-Ideas, LLC's ("WNI Defendants") Joint Motion to Reconsider or Certify for Interlocutory Appeal (Dkt. 137). For the reasons stated herein, FSS Defendants' Motion to Certify for Interlocutory Appeal will be **GRANTED**. WNI Defendants' Motion to Reconsider or Certify on Other Grounds will be **DENIED**. The Court will certify the following question[1] for interlocutory appeal:

> Where an online journalist or publisher with a national audience purposefully and primarily focuses their coverage underlying the suit-related conduct on forum-state events and persons, is such conduct sufficient for a forum court to assert specific personal jurisdiction over that journalist or publisher?[2]

---

[1] However this question is limited, the Fourth Circuit may nevertheless review uncertified issues contained within the Court's order on Defendants' Motions to Dismiss. "[W]e would not necessarily be limited to only those questions expressly or implicitly identified as 'controlling' by the district court; under § 1292(b), appeal is from the *order certified,* not from particular rulings embodied within it." *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, at *3 (4th Cir. 1989) (unpublished).

[2] FSS Defendants seek certification on the issue of "whether an Internet publication's focus on forum-state events and persons, standing alone, suffices to support specific personal jurisdiction over out-of-state defendants who have not otherwise aimed their conduct at the forum state." However, the Court in its discretion reframes the

**Introduction**

Plaintiff Brennan M. Gilmore brought this diversity action against several "alt-right" journalists and online publishers, seeking to recover on defamation and intentional infliction of emotional distress ("IIED") claims arising out of Defendants' coverage of the August 12, 2017 "Unite the Right" ("UTR") rally in Charlottesville, Virginia, as it pertained to Plaintiff. (Dkt. 48). Defendants moved to dismiss Plaintiff's complaint based on Plaintiff's failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, lack of subject matter jurisdiction under Rule 12(b)(1), and lack of personal jurisdiction under Rule 12(b)(2). (Dkt. 56, 58). On March 29, 2019, the Court granted Defendants' motion to dismiss Plaintiff's IIED claim against them under 12(b)(6), but it maintained Plaintiff's defamation action. To this end, the Court concluded that it had both subject-matter and personal jurisdiction to hear these claims against the remaining Defendants and that Plaintiff's allegations sufficed to survive a 12(b)(6) motion. (Dkt. 123, 124).

FSS Defendants now move this Court to reconsider its personal jurisdiction ruling pursuant to Fed. R. Civ. P. 54(b). (Dkt. 133). In the alternative, they ask the Court to certify the issue for interlocutory appeal under 28 U.S.C. § 1292(b). *Id*. WNI Defendants join FSS Defendants' motion, while also seeking reconsideration or certification of the Court's interpretation of Virginia's long-arm statute. (Dkt. 137).

**Reconsideration**

A court's refusal to dismiss a claim under Fed. R. Civ. P. 12 "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

---

question to present the issue more accurately.

Fed. R. Civ. P. 54(b). Even so, the Court only departs from a prior decision if that decision "was clearly erroneous and would work manifest injustice." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) (internal citations omitted). Motions for reconsideration are granted only "sparingly" because "reconsideration is not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously-available facts, or otherwise award a proverbial 'second bite at the apple' to a dissatisfied litigant." *Wootten v. Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016). Rather, reconsideration is appropriate in very narrow circumstances: (1) an intervening change in the law, (2) new evidence that was not previously available, or (3) correction of a clear error of law or to prevent manifest injustice. *LaFleur v. Dollar Tree Stores, Inc*., 2014 WL 2121563, at *1 (E.D. Va. May 20, 2014).

    *i. FSS Defendants*

In their briefing, FSS Defendants go to great lengths to argue why and how this Court's personal jurisdiction ruling was incorrect, but they make almost no attempt to argue why reconsideration is warranted—or even permissible—in this context under Rule 54(b).[3] FSS Defendants cite no case law holding that reconsideration is proper under these facts; for the most part, they merely rehash arguments this Court has already considered and rejected. Regardless, reconsideration is not an occasion "to present a better and more compelling argument that the party could have presented in the original briefs," *Madison River v. Business Management Software Corp.*, 402 F. Supp. 2d 617, 619 (M.D.N.C. 2005), or to "introduce evidence that could have been addressed or presented previously," *Regan v. City of Charleston, S.C.*, 40 F. Supp. 3d 698, 702 (D.S.C. 2014). In sum, "a party who fails to present his strongest case in the first instance generally

---

[3] Contrary to FSS Defendants' contention, reconsideration would not rise to the level of "clearly erroneous" even if they were correct in alleging that "the Court's decision decided an important question of law in a way that chafes against governing authority, conflicts with other courts' views on that question, and will lead to serious consequences" (Dkt. 147 at 1). *See Am. Canoe Ass'n,* 326 F.3d at 515.

– 3 –

has no right to raise new theories or arguments in a motion to reconsider." *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 473 (M.D.N.C. 2003). FSS Defendants do not allege that there has been any new intervening law, that there is new evidence not previously available, and, FSS Defendants have failed to demonstrate that the Court's decision constituted a "clear error" of law.

  *ii. WNI Defendants*

WNI Defendants make even less of a showing than the FSS Defendants in establishing proper grounds for reconsideration under Fed. R. Civ. P. 54(b). Although WNI Defendants cite a recent case from the Supreme Court of Virginia, *Mercer v. MacKinnon*, 823 S.E.2d 252 (Va. 2019), through which WNI Defendants could perhaps have argued constituted new or intervening law, this ruling does not help their present case. As Plaintiff correctly argues in his brief, (Dkt. 145 at 8), the Supreme Court of Virginia's review was very limited in its scope because of the posture of the appeal. *See Mercer*, 823 S.E.2d at 254 ("[A]lthough Mercer raised alternative grounds for the exercise of personal jurisdiction over MacKinnon in the circuit court proceedings on the plea in bar and motion to dismiss, we confine our review on appeal to whether the circuit court could exercise jurisdiction over MacKinnon under the 'persistent course of conduct' provision of the long arm statute." (quoting Va. Code § 8.01-328.1(A)(4) (2019))). Nowhere did the *Mercer* court hold that the Virginia long-arm statute was no longer coextensive with the limits of the Due Process Clause. Such a ruling would indeed sharply contrast with Virginia federal courts' consistent interpretation of the long-arm statute. *E.g.*, *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 488 (W.D. Va. 2019) (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002)) ("Virginia's long-arm statute extends personal jurisdiction to the extent permitted by due process, and therefore "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one."); *see also Mondul v. Biomet, Inc.*, 2019 WL 2619541, at *1 (W.D. Va.

June 26, 2019); *Gratz v. Gratz*, 2019 WL 1646541, at *2 (E.D. Va. Apr. 16, 2019); *JUUL Labs, Inc. v. Unincorporated Ass'n Indentified in Schedule A*, 2019 WL 1511883, at *1 (E.D. Va. Mar. 20, 2019). *Mercer*'s analysis of a specific and limited portion of Virginia's long-arm statute is not representative of how Virginia courts approach personal jurisdiction questions as a matter of course. Therefore, WNI Defendants' motion to reconsider also fails.

### Certification for Interlocutory Appeal

There are three elements that must be met for a judgment to be properly satisfied for interlocutory appeal. 28 U.S.C. § 1292(b); *see also Wootten v. Commonwealth of Virginia*, 2015 WL 1943274 at *4 (W.D. Va. 2015). A district court may in its discretion certify a non-final order for interlocutory appeal when the order involves (1) a controlling question of law (2) about which there is a substantial ground for difference of opinion and (3) an immediate appeal therefrom may materially advance the termination of the litigation. *Id*. Although district courts have wide discretion in granting or denying certification for immediate appeal, this discretion is not limitless.[4] *See In re Trump*, 928 F.3d 360, 369 (4th Cir. 2019).

Finally, interlocutory appeals must not be granted liberally. "Because Congress intended that § 1292(b) should be applied sparingly, the procedural requirements for interlocutory appeal under this section are to be strictly construed and applied." *State of N.C. ex rel. Howes v. W.R. Peele, Sr. Tr.*, 889 F. Supp. 849, 852 (E.D.N.C. 1995) (citing *Myles v. Laffitte*, 881 F.2d 125 (4th Cir. 1989)). Section 1292(b)'s three requirements will be taken in turn with respect to FSS Defendants' motion for certification on the Court's personal jurisdiction ruling, followed by

---

[4] Although *In Re Trump* is noteworthy in providing that district courts may have a duty to certify for interlocutory appeal in extraordinary cases, WNI Defendants are incorrect to take from it the proposition that "the door to interlocutory appeal is wide open." (Dkt. 161 at 7).

WNI's motion.

1) Controlling question of law

Plaintiffs assert that because a reversal on the Court's personal jurisdiction ruling would not completely dispose of the litigation, interlocutory appeal on it is improper. (Dkt. 145 at 11). However, a question may be "controlling" under § 1292(b) even if it is not completely dispositive to the litigation; an issue is sufficiently controlling if its resolution would "substantially shorten the litigation." *In re Trump*, 928 F.3d at 371 (citing *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)). *See also Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (noting that two of § 1292(b)'s sponsors cited non-dispositive venue determinations as permissible examples under the statute); *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996) ("A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so."); *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981) ("[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court.").

The present case will likely continue regardless of how the Fourth Circuit dispenses with this interlocutory appeal, because Defendant Lee Stranahan waived any objection to this Court's assertion of personal jurisdiction over him. (Dkt. 123 at 15). Still, if the Fourth Circuit affirms this Court's holding on personal jurisdiction, the case will likely proceed against all Defendants. If, by contrast, the Fourth Circuit should reverse this Court's decision on Defendants' Fed. R. Civ. P 12(b)(2) motion, that would likely result in the dismissal of all but one of the remaining Defendants. This is sufficient to constitute a "controlling" question for the purposes of § 1292(b).

– 6 –

*Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) ("[Section 1292(b)'s legislative history] suggests that 'controlling' means serious to the conduct of the litigation, either practically or legally.").

However, the appeal must concern a controlling question "of law." "[A] pure question of law [is] something the court of appeals could decide quickly and cleanly without having to study the record." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010). "[Q]uestions requiring the court of appeals to hunt through the record are not appropriate for interlocutory appeal." *LaFleur v. Dollar Tree Stores, Inc.*, 2014 WL 2121721, at *2 (E.D. Va. May 20, 2014). To satisfy this prong, the question should also be one of "pure law," avoiding the need for an appellate court to conduct a thorough review of the facts at hand. Plaintiff is correct that analyzing personal jurisdiction is often a fact-intensive inquiry; however, Defendants correctly assert that the issue for certification—the reach of a state's personal jurisdiction over online publishers—can be appropriately cabined as a purely legal one. Indeed, the two Fourth Circuit decisions this Court found most applicable in its memorandum opinion at issue, *ALS Scan* and *Young*, were decided on interlocutory appeal. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002) ("From the district court's ruling, ALS Scan filed this interlocutory appeal [under Fed. R. Civ. P. 54(b)]."); *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) ("With our permission the newspaper defendants are taking this interlocutory appeal."). These cases, which both the Plaintiff and this Court relied upon heavily in their personal jurisdiction analyses, demonstrate that highly analogous issues have been properly framed for interlocutory appeal in the Fourth Circuit.

2) Substantial ground for difference of opinion

"[A] substantial ground for difference of opinion exists if there is a 'genuine doubt as to the correct legal standard' to be applied." *S. U.S. Trade Ass'n v. Unidentified Parties*, 2011 WL 2790182, at *2 (E.D. La. July 14, 2011) (quoting *Kapossy v. McGraw–Hill, Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996)). "An issue presents a substantial ground for a difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue." *Lynn v. Monarch Recovery Mgmt. Inc.*, 953 F. Supp. 2d 612, 624 (D. Md. 2013). "A mere lack of unanimity, or opposing decisions outside of the governing circuit, need not persuade a court that a substantial ground for disagreement exists." *Virginia ex rel. Integra Rec, LLC v. Countrywide Sec. Corp.*, 2015 WL 3540473, at *5 (E.D. Va. June 3, 2015). Rather, "[a] substantial ground for disagreement may arise if there is a 'novel and difficult issue of first impression,' or if there is a circuit split and the controlling circuit has not commented on the conflicting issue. *Hatch v. Demayo*, 2018 WL 4688390, at *2 (M.D.N.C. Sept. 29, 2018) (quoting *Cooke-Bates v. Bayer Corp.*, 2010 WL 4789838, at *2 (E.D. Va. Nov. 16, 2010)).

In the Court's memorandum opinion accompanying its order granting in part and denying in part Defendants' motion to dismiss, it found three decisions "particularly salient": the Fourth Circuit's decisions in *Young* and *ALS Scan*, and the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). (Dkt. 123 at 18). The Court summarized the relevant aspects of these cases as follows:

> In *Calder v. Jones*, 465 U.S. 783, 788–89 (1984), the Supreme Court held that a California court could exercise personal jurisdiction over two Florida newspapermen in a libel action arising out of a *National Enquirer* article written in Florida but "concern[ing] the California activities" of Shirley Jones, a Hollywood actress and California resident. The Court noted that the "article was drawn from California sources, and the brunt of the harm, in terms both of [Jones's] emotional distress and the injury to her professional reputation, was suffered in California." *Id*. Because "California [was] the focal point both of the story and of the harm

– 8 –

suffered," jurisdiction was "proper in California based on the 'effects' of [defendants'] Florida conduct in California." *Id*. at 789.

(Dkt. 123 at 18–19). The two subsequent Fourth Circuit rulings later applied *Calder*'s "effects test" to defendants alleged to have made defamatory statements online. *Id*. at 19–20. First, *ALS Scan* held that "a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." 293 F.3d at 714. Applying this standard to the Maryland court's assertion of personal jurisdiction over a Georgia-based Internet service provider ("ISP") that merely provided bandwidth allowing another entity "to create a website and send information over the Internet," the Fourth Circuit held that exercise of personal jurisdiction was improper because the defendant "did not select or knowingly transmit infringing photographs" or "direct its electronic activity specifically at any target in Maryland." *Id* at 714–15.

Finally, this Court also relied on *Young*, 315 F.3d at 263, which applied *ALS Scan* to a case in which the Internet activity at issue involves "the posting of news articles on a website." (Dkt. 123 at 19–20). The defendants there were two Connecticut newspapers that posted a series of articles online allegedly defaming a Virginia state correctional facility official while reporting on the "Connecticut prison transfer policy." *Young*, 315 F.3d at 263–64. The Fourth Circuit held personal jurisdiction could not be exercised against the out-of-state defendant; mere accessibility of the articles online in Virginia was insufficient to "demonstrate that the [defendant was] intentionally directing content to a Virginia audience." *Id*. at 263. The "content of the websites [was] decidedly local, and [neither defendants'] website contain[ed] advertisements aimed at a Virginia audience," and "Connecticut, not Virginia, was the focal point of the articles."

This Court then synthesized the cases addressing the specific jurisdiction analysis in the context of online activity against the backdrop of more generalized holdings[5] on personal jurisdiction analysis to the following standard:

> In deciding whether to exercise specific personal jurisdiction over Defendants, the Court must ask whether (1) each defendant "manifested an intent to direct their website content" to a "Virginia audience," *Young*, 315 F.3d at 263, such that the defendant "should reasonably anticipate being haled into court" in Virginia, *Perdue Foods*, 814 F.3d at 189; and (2) whether each defendant's activity "creates, in a person within the State, a potential cause of action" under Virginia law. *ALS Scan,* 293 F.3d at 714.

(Dkt. 123 at 20). In its memorandum opinion, this Court then concluded that personal jurisdiction could be properly asserted over each of these Defendants.[6] Although each had targeted the forum state in different ways and with varying levels of specificity, the Court found that all Defendants sufficiently targeted the forum state despite publishing their allegedly defamatory statements to a national audience. Pertinent to whether this is a proper issue for interlocutory appeal, this Court stated:

> Defendants argue that their publications were not "aimed at a Virginia audience" because the Unite the Right rally was a subject of "national and even international interest." (Dkt. 57 at 11). This argument fails. Events—even those that garner widespread attention—are most intensely felt in the states and communities where they occur. Online publications focused on the Unite the Right rally, and a Virginia citizen who protested the rally, would be of particular interest to a Virginia audience. *Calder* establishes that an article with broad national appeal can nonetheless be aimed at an audience in a particular state.
>
> But this approach is not uniform throughout the Fourth Circuit. Other district courts within

---

[5] *See* Dkt. 123 at 18 (citing *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Perdue Foods LLC v. BRF S.A.,* 814 F.3d 185, 189 (4th Cir. 2016); *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396 (4th Cir. 2003)).

[6] The Court did conclude that it could not assert specific personal jurisdiction over one Defendant, Allen B. West, who allegedly owned a website on which a co-defendant's article appeared, but was not alleged to have authored the article or "played any direct role in developing the article's content." (Dkt. 123 at 31).

the Fourth Circuit have interpreted *Young* and *ALS Scan* to require that the defendant primarily target a forum state audience to be subject to specific personal jurisdiction in the forum state.[7] *See, e.g.*, *Fertel v. Davidson*, 2013 WL 6842890, at *4 (D. Md. Dec. 18, 2013) ("Applying *Young*, there is nothing in Davidson's Internet posts to suggest that they were meant for a Maryland audience, as opposed to a national or even a global audience."); *id.* at 5 ("Unlike in *Calder*, there is nothing to suggest that TrustPilot and Ripoffreport.com draw a significant portion of their readership from Maryland."); *see also Edwards,* 378 F. Supp. 3d at 494 ("Here, as in *FireClean*, Edwards has not made a prima facie showing that any of the communications alleged in [the complaint] specifically or purposefully targeted a particular forum, let alone Virginia."); *FireClean, LLC v. Tuohy*, 2016 WL 3952093, at *6 (E.D. Va. July 21, 2016).

District courts within the Fourth Circuit are indeed in disagreement on how *Calder*'s "effects test" applies to Internet publishers with a national focus, who nonetheless target forum states with state-specific coverage. Moreover, neither the Supreme Court nor the Fourth Circuit has opined on personal jurisdiction regarding online publishers catering to a national audience in the seventeen years since *Young* and *ALS Scan* were decided. *See In re Trump*, 928 F.3d at 369 (citing *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009) ("'[D]istrict courts should not hesitate to certify an interlocutory appeal' under § 1292(b) when a decision 'involves a new legal question or is of special consequence'"). Evidenced by differing approaches taken by district courts within the Fourth Circuit, there is a "substantial ground for difference of opinion" on this question, as understood under § 1292(b).

---

[7] Arguably, however, these cases can be distinguished from this case on their facts. For example, in *Fertel v. Davidson*, the subject matter of Davidson's posts was not focused on Maryland. Rather, the only mention of Maryland came from including MarriageMax's address and listing the location of MarriageMax as Baltimore, Maryland. 2013 WL 6842890, at *4.

– 11 –

3) <u>Material advancement toward the ultimate termination of the litigation</u>

Contrary to Plaintiff's contention, FSS Defendants' Motion for Certification is not defeated because the Plaintiff's case would not be entirely terminated by a reversal on this Court's personal jurisdiction determination on appeal. The standard is "materially advance termination" of the litigation, not simply "termination" of the litigation. *See In re Trump*, 928 F.3d 360, 371 (4th Cir. 2019). Congress passed § 1292(b) at least in part to promote efficiency in the federal court system and to avoid "protracted and expensive litigation." *U. S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (citing legislative history of § 1292(b)). Similar to the threshold requirement for a "controlling" question of law,[8] this includes shortening the time that will be later required for trial. 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.) ("If present appeal promises to advance the time for trial or to shorten the time required for trial, appeal is appropriate."); *see, e.g.*, *Montgomery v. Johnson*, 2008 WL 5422866, at *1 (W.D. Va. Dec. 30, 2008); *Univ. of Virginia Patent Found. v. Gen. Elec. Co.*, 792 F. Supp. 2d 904, 910 (W.D. Va. 2011).

Plaintiff cites *Muller v. Temura Shipping Co.*, 629 F. Supp. 1024 (E.D. Pa. 1986), as an example of a district court refusing to certify a personal jurisdiction question for immediate appeal under this third prong of § 1292(b) because some defendants would remain in the litigation even upon reversal. However, only one of several defendants in *Muller* sought this immediate appeal, and thus the court found, "The only potential savings of time and expense from a successful appeal by [defendant] T & H at this stage would be to the benefit of T & H. There would be no savings to any of the other parties." That is not the case here, where all but one defendant, Lee Stranahan, may be dismissed. Defamation claims against the nine defendants joining this motion surely

---

[8] In fact, the "material advancement" and "controlling" issues are often analyzed in tandem. *See, e.g. In re Trump*, 928 F.3d at 371; *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004).

– 12 –

promise the "protracted and expensive litigation" that § 1292(b) was designed to help avoid. *U. S. Rubber Co.*, 359 F.2d at 785.  In sum, resolving claims against all but one Defendant in this case would undoubtedly be a "material advancement" toward ending this litigation.

### WNI's Motion to Certify for Interlocutory Appeal

With respect to WNI Defendants' Motion to Certify this Court's ruling on the scope of Virginia's long-arm statute, there is no substantial ground for difference of opinion regarding its analysis.  Federal courts sitting in Virginia, such as those cited by FSS Defendants in their briefing joined by WNI Defendants, uniformly analyze questions of specific personal jurisdiction in the manner analyzed this Court.  *E.g.*, *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 488 (W.D. Va. 2019) (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002)) ("Virginia's long-arm statute extends personal jurisdiction to the extent permitted by due process, and therefore "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one."); *see also Mondul v. Biomet, Inc.*, 2019 WL 2619541, at *1 (W.D. Va. June 26, 2019); *Gratz v. Gratz*, 2019 WL 1646541, at *2 (E.D. Va. Apr. 16, 2019); *JUUL Labs, Inc. v. Unincorporated Ass'n Indentified in Schedule A*, 2019 WL 1511883, at *1 (E.D. Va. Mar. 20, 2019).  And WNI Defendants identify no Virginia precedent contrary to this approach.  *See infra* at 4.  Because WNI Defendants' motion fails this requirement of § 1292(b), this Court can conclude that this question is improper for interlocutory appeal.

### Conclusion

With respect to this Court's personal jurisdiction ruling, FSS Defendants have met their burden in demonstrating that the issue presents a controlling question of law about which there is

– 13 –

substantial room for disagreement, the resolution of which may materially advance the ultimate termination of the litigation. WNI Defendants have not met this burden. Neither group of Defendants have demonstrated that reconsideration is proper here. Discovery shall be halted pending resolution of this interlocutory appeal.

An accompanying order will issue.

Entered on this ___16th___ day of September, 2019.

                                                  /s/ Norman K. Moon
                                                  NORMAN K. MOON
                                                  SENIOR UNITED STATES DISTRICT JUDGE