**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

BRENNAN M. GILMORE,

Plaintiff,

v.

ALEXANDER E. (ALEX) JONES, *et al*.,

Defendants.

Case No. 3:18-cv-00017-NKM-JCH

**FREE SPEECH DEFENDANTS' OPPOSITION TO MOTION TO COMPEL**

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................................1

II.     BACKGROUND ....................................................................................................................2

        A.      Plaintiff's public role at a deadly protest and Defendants' commentary ...............2

        B.      Plaintiff files this lawsuit and the Court's Ruling on the Motion to Dismiss .........3

        C.      Plaintiff issues over 200 discovery requests to four related Defendants ...............3

        D.      Defendants respond to most of Plaintiff's discovery requests ...............................4

        E.      Plaintiff seeks to compel discovery into matters wholly unrelated to any
                claims or defenses in this matter...........................................................................6

III.    LEGAL STANDARD .............................................................................................................8

        A.      Actual malice requires a subjective and time-sensitive showing ..........................8

        B.      Plaintiff misconstrues the actual malice standard..................................................9

IV.     ARGUMENT ........................................................................................................................10

        A.      Permissible inquiries into circumstantial evidence are constrained and
                Defendants have produced all potentially relevant materials...............................10

        B.      Public statements made after the filing of the lawsuit are irrelevant and
                equally accessible by Plaintiff .............................................................................12

        C.      Materials related to "other defamatory actions" are not relevant to any claim
                or defense ............................................................................................................13

        D.      Materials related to "disciplinary or corrective actions" are not relevant to
                any claim or defense ............................................................................................15

        E.      Materials related to "financial motivation" are not relevant to any claim or
                defense.................................................................................................................16

        F.      Defendants' answers to interrogatories regarding marketing, research and/or
                analytic data are complete and consistent with prior sworn testimony................17

        G.      Interrogatories related to investigation supporting the publications at issue ........18

        H.      Defendant Jones's answer to Interrogatory 1 is complete...................................19

V.      CONCLUSION ....................................................................................................................19

## I.      INTRODUCTION

Plaintiff Gilmore is a sophisticated political activist who, after witnessing, recording and posting a video of the tragic death of a person at a protest, had the wherewithal, drive and connections to translate his position from that of a witness to that of a political influencer.  As this Court held in March 2019, Mr. Gilmore was more than just a witness to history; he sought to influence the public debate about the meaning of the 2017 Charlottesville protests.  Plaintiff has taken issue with just two broadcasts involving the Free Speech Defendants,[1] both of which only briefly mentioned Plaintiff, but he has made clear that he disliked the perspective of the broadcasts on the meaning of those protests and he believes Defendant Jones is a "menace." With an apparent motive to put the Free Speech Defendants out of business, Plaintiff now asks this Court to compel production of wholly irrelevant business information including revenue and purported marketing models, records from other, entirely unrelated litigations, and detailed ownership information. But there are limits to the scope of discovery. The Free Speech Defendants already have produced information responsive to Plaintiff's discovery requests that arguably could be related to any claims or defenses.  The additional information that Plaintiff seeks is simply not relevant to the issues in this case or is too remote, burdensome and not proportional to warrant disclosure.  For these reasons and others detailed herein, Plaintiff's motion to authorize its fishing expedition should be denied.

---

[1] Defendant Free Speech Systems, LLC ("FSS") published the two broadcasts at issue – an interview conducted by defendant Lee Ann McAdoo on August 15, 2017 and commentary by defendant Alex Jones on August 21, 2017.  Defendant Infowars LLC ("IW") had no involvement in these broadcasts.  Collectively, these defendants are referred herein as the "Free Speech Defendants."

II.      BACKGROUND

A.      **Plaintiff's public role at a deadly protest and Defendants' commentary**

On August 12, 2017, Plaintiff attended a protest in Charlottesville, Virginia, and witnessed and video-recorded on his phone a Dodge Challenger drive into a crowd of protestors, killing one. *Compl* ¶¶ 29–30.  Plaintiff posted this video on his active Twitter account, it went viral, he conducted numerous interviews with media about the incident, and appeared repeatedly on television. *Id.* ¶¶ 31-34.

On August 15, 2017, Defendant McAdoo conducted an interview of independent journalist Lee Stranahan discussing the Charlottesville protest.  The interview touched on Plaintiff's video of the car driving into the crowd of protesters and Plaintiff's subsequent public comments about the incident.[2] Free Speech Systems published a video of this interview. ("August 15 Broadcast")

On August 21, Defendant Free Speech Systems published a video of Jones' talk radio show on Infowars.com where Jones discussed the Charlottesville protest and referenced how Plaintiff witnessed the incident and was first on national media to discuss it.[3] ("August 21 Broadcast")

---

[2] *Bombshell Connection Between Charlottesville, Soros, CIA*, INFOWARS (Aug. 15, 2017), https://www.infowars.com/bombshell-connection-between-charlottesville-soros-cia.
[3] The Alex Jones Show, *Breaking: State Department/CIA Orchestrated Charlottesville Tragedy*, INFOWARS (Aug. 21, 2017), https://www.infowars.com/breaking-state-departmentcia-orchestrated-charlottesville-tragedy/.  Plaintiff alleges that this video was posted on YouTube the day before, on August 20, 2017 (Am. Compl. ¶ 102.)

**B.      Plaintiff files this lawsuit and the Court's Ruling on the Motion to Dismiss**

On March 13, 2018, Plaintiff filed his initial complaint in this matter against a total of eleven defendants (including the four Free Speech Defendants) for defamation and intentional infliction of emotional distress based on various statements and commentary made in reporting about the Charlottesville protest and Plaintiff's role there.  The defendants moved to dismiss and on March 29, 2019, the Court granted the motion in part and denied it in part.  As to the Free Speech Defendants, the Court granted the motion to dismiss the claims of intentional infliction of emotional distress against them.  The Court denied the motion as to the defamation claims but determined that Plaintiff was a limited-purpose public figure and therefore must establish actual malice to prevail on his claim.

**C.      Plaintiff issues over 200 discovery requests to four related Defendants**

On March 5, 2020, Plaintiff served 160 requests for the production of documents and 39 interrogatories (with multiple subparts) on the Free Speech Defendants.  On April 27, after securing an extension from Plaintiffs, the Free Speech Defendants served objections, responses and answers to those discovery requests. Dkt. 207-6 through Dkt. 207-9. On June 1, Plaintiff sent a letter seeking to meet and confer regarding the objections, responses and answers.  Dkt. 207-10. On June 5, after securing an agreement from Plaintiff to abide by the terms of a protective order, the Free Speech Defendants made an initial production of documents responsive to Plaintiff's requests.  On June 12, the Free Speech Defendants responded to Plaintiff's June 1 letter. Dkt. 207-11.

**D.      Defendants respond to most of Plaintiff's discovery requests**

The Free Speech Defendants agreed to produce all non-privileged responsive documents

dated between August 1, 2017, and the date Plaintiff filed his complaint, March 12, 2018, for all

the following 18 requests, in some cases using search terms to be negotiated by the parties[4]:

> **REQUEST NO. 1** Produce all documents, regardless of date, used in the preparation of or identified in your Answers to Plaintiff's First Set of Interrogatories (Nos. 1-11).

> **REQUEST NO. 2** Produce all electronically stored information or data regarding, referring to, concerning, or addressing Plaintiff.

> **REQUEST NO. 3** Produce all documents that you sent to or received from any other individual or entity concerning Plaintiff.

> **REQUEST NO. 6** Produce all documents and communications, regardless of date, sufficient to show all "handles" or names under which you, or, to your knowledge, the defendants have posted to the Internet or otherwise used in communications with any individual or entity concerning Plaintiff.

> **REQUEST NO. 7** Produce all documents, regardless of date, sufficient to show all Internet domain names or Uniform Resource Locators ("URLs") owned, controlled, or used by you to disseminate any content concerning Plaintiff.

> **REQUEST NO. 10** Produce all documents concerning the August 15, 2017 InfoWars video entitled "Bombshell Connection Between Charlottesville, Soros, CIA" identified in Plaintiff's April 24, 2018 Amended Complaint at Exhibit F.

> **REQUEST NO. 11** Produce all documents concerning the August 21, 2017 InfoWars video entitled "Breaking: State Department/CIA Orchestrated Charlottesville Tragedy" identified in Plaintiff's April 24, 2018 Amended Complaint at Exhibit G.

> **REQUEST NO. 13** Produce all documents received from or sent by you from August 11, 2017 to the present, concerning Plaintiff.

> **REQUEST NO. 14** Produce all documents made by you concerning Plaintiff.

> **REQUEST NO. 15** Produce all communications between you and the other defendants concerning Plaintiff.

---

[4] These responses and requests refer to those served on FSS but do not differ in a material way from the responses and requests for Jones, McAdoo or Infowars LLC ("IW").

4

**REQUEST NO. 17** Produce all communications with any defendant concerning Plaintiff.

**REQUEST NO. 19** Produce all documents, regardless of date, supporting or refuting each of the defenses asserted in your Answer to Plaintiff's April 24, 2018 Amended Complaint.

**REQUEST NO. 22** Produce all documents (regardless of creation date) used to train or instruct others about the vetting of factual information for publication, as provided to any employee, independent contractor, or entity with which you do or have done business from August 11, 2017 through the present.

**REQUEST NO. 23** Produce all documents (regardless of creation date) reflecting your policies for the factual vetting of information published by you in print or online from August 11, 2017 through the present.

**REQUEST NO. 24** Produce all documents (regardless of creation date) setting forth your editorial standards or guidelines from August 11, 2017 through the present.

**REQUEST NO. 26** Produce an organization chart sufficient to show all employees of Free Speech Systems, LLC from August 11, 2017 through the present.

**REQUEST NO. 30** Produce all documents, regardless of date, constituting any admission or statement against interest made by Plaintiff which you claim to be relevant to the defenses asserted by you.

**REQUEST NO. 37** Produce all documents in your possession, custody, or control concerning Plaintiff.

Defendants agreed to produce non-privileged responsive documents dated between August 1, 2017, and March 12, 2018, sufficient to show the information sought in the following five requests[5]:

**REQUEST NO. 4** Produce all Internet postings made by you concerning Plaintiff.

**REQUEST NO. 5** Produce all Internet postings that are in your possession, custody, or control that were made by the defendants concerning Plaintiff.

---

[5] These responses and requests refer to those served on FSS but do not differ in a material way from the responses and requests for Jones, McAdoo or IW.

**REQUEST NO. 12** Produce all documents concerning Plaintiff on any website or online video channel ever owned, controlled, or used by you, including any postings or comments by you or others appearing on those websites or online video channels.

**REQUEST NO. 18** Produce all recordings in your possession concerning Plaintiff.

**REQUEST NO. 20** Produce all documents identifying the methods by which you have investigated the accuracy of claims made by you concerning Plaintiff.

Defendants also agreed to produce documents responsive to the following premature requests when they become due in the litigation:

**REQUEST NO. 8** Produce all documents, regardless of date, which you intend to introduce at trial.

**REQUEST NO. 16** Produce all communications, regardless of date, with any fact witness you expect to call at trial.

E.     **Plaintiff seeks to compel discovery into matters wholly unrelated to any claims or defenses in this matter**

Plaintiff asks this Court to compel responses from the Free Speech Defendants to the following requests[6]:

**REQUEST NO. 38**[7] Produce all documents from any litigation involving libel or defamation in which you, or an entity in which you have ownership and/or control, have been named as a defendant during the past ten years.

**REQUEST NO. 21**[8] Produce all documents relating to the disciplinary or corrective actions taken against any employee or agent of Free Speech Systems, LLC due to the publication of false or incorrect information during the past ten years.

_____

[6] All request numbers refer to those requests served on FSS. As indicated in footnote for each request number, Plaintiff served identical requests on IW, Jones and McAdoo and seeks to compel their responses to those requests, too.

[7] The same request was served on IW (RFP 38); McAdoo (RFP 39); and Jones (RFP 41).

[8] The same request was served on IW (RFP 21); McAdoo (RFP 21); and Jones (RFP 22).

**REQUEST NO. 27**[9] Produce all documents concerning the revenue generated by the video entitled "Bombshell Connection Between Charlottesville, Soros, CIA" identified in Plaintiff's April 24, 2018 Amended Complaint at Exhibit F.

**REQUEST NO. 28**[10] Produce all documents concerning the revenue generated by the video entitled "Breaking: State Department/CIA Orchestrated Charlottesville Tragedy" identified in Plaintiff's April 24, 2018 Amended Complaint at Exhibit G.

**REQUEST NO. 29**[11] Produce all documents concerning the revenue generated by any other Free Speech Systems, LLC publication or posting concerning Plaintiff.

**INTERROGATORY NO. 4**[12] Identify all individuals responsible for marketing, research, and/or analytic data for Free Speech Systems, LLC, from August 11, 2017 to the present.

**INTERROGATORY NO. 5** Identify every employee or agent of Free Speech Systems, LLC who was involved in the creation, research, editing, marketing, funding, distribution, or publication of the August 15, 2017 InfoWars video entitled "Bombshell Connection Between Charlottesville, Soros, CIA" identified in Plaintiff's April 24, 2018 Amended Complaint at Exhibit F, and describe their specific role.

**INTERROGATORY NO. 6** Identify every employee or agent of Free Speech Systems, LLC who was involved in the creation, research, editing, marketing, funding, distribution, or publication of the August 21, 2017 InfoWars video entitled "Breaking: State Department/CIA Orchestrated Charlottesville Tragedy" identified in Plaintiff's April 24, 2018 Amended Complaint at Exhibit G, and describe their specific role.

**INTERROGATORY NO. 8**[13] Describe your process for ensuring that any assertions made by you concerning Plaintiff were factually accurate.

**INTERROGATORY NO. 9**[14] Identify every step that you took in order to assess the credibility of every source who provided you with information concerning Plaintiff.

---

[9] The same request was served on IW (RFP 27); McAdoo (RFP 27); and Jones (RFP 29).
[10] The same request was served on IW (RFP 28); McAdoo (RFP 28); and Jones (RFP 30).
[11] The same request was served on IW (RFP 29); McAdoo (RFP 29); and Jones (RFP 31).
[12] The same interrogatory was served on IW (No. 4); and Jones (No. 3).
[13] The same interrogatory was served on IW (No. 8); McAdoo (No. 4); and Jones (No. 5).
[14] The same interrogatory was served on IW (No. 9); McAdoo (No. 5); and Jones (No. 6).

**INTERROGATORY NO. 1 (to Jones)** Identify all business organizations and/or other entities in which you have ownership and/or control, and the officers, owners, members, and employees of those organizations and/or entities.

## III. LEGAL STANDARD

Discovery must be "relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1); *see, e.g.*, *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) ("Relevant information need not be admissible at trial, but it must appear to be reasonably calculated to lead to the discovery of admissible evidence."). Because the Court has held that Plaintiff is a limited-purpose public figure, Dkt. 123 at 41-47, he must prove, among other things, that Defendants (1) made a false and defamatory statement of fact; (2) with actual malice.

### A. Actual malice requires a subjective and time-sensitive showing

The inquiry into actual malice is subjective and focused solely on the state of mind of those "having responsibility for the publication." *New York Times v. Sullivan*, 376 U.S. 254, 287 (1964). What matters is a defendant's knowledge at the time they made the statement at issue. Actual malice requires proving a statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Horne v. WTVR, LLC*, 893 F.3d 201, 211 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 823 (2019) (quoting *Sullivan*, 376 U.S. at 279–80). Reckless disregard "relates to a state of mind in which a defendant in fact entertained serious doubts as to the truth of his publication." *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 711 (4th Cir. 1991) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). As the Supreme Court explained, "[t]he phrase 'actual malice' [. . .] has nothing to do with bad motive or ill will." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). "The actual malice standard thus offers broad protection for the media commentator who is critical of public officials or public figures [. . .] Such a commentator must simply 'maintain[ ] a standard of care

such as to avoid knowing falsehood or reckless disregard of the truth.'" *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 294 (4th Cir. 2008) (quoting *Time, Inc. v. Pape*, 401 U.S. 279, 291, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971)).

**B.      Plaintiff misconstrues the actual malice standard**

In his Motion, Plaintiff repeatedly cites to a footnote in a 1979 Supreme Court case, *Herbert v. Lando*, as support for his position that the inquiry into actual malice and related circumstantial evidence is broad.  441 U.S. 153 (1979).  He argues:

> Circumstantial evidence that is probative of actual malice includes, but is not limited to, "the relevant circumstances surrounding the transaction . . .including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights, and [] custom and usage with respect to the treatment of news items of the nature of the one under consideration." *Herbert*, 441 U.S. at 164 n.12.

Dkt. 207 at 5 (citing footnote in *Herbert* opinion that quotes § 455 in 50 Am. Jur. 2d, Libel and Slander (1970)).  Plaintiff repeats the "custom and usage" rationale later in his brief as support for why he is entitled to "all documents from any litigation involving libel or defamation in which [Defendants], or an entity in which [they] have ownership and/or control, have been named as a defendant during the past ten years." *Id.* at 6. But the *Herbert* footnote was cited in a section of the opinion detailing what the malice standard was *before* the landmark *Sullivan* case in 1964. *Herbert*, 441 U.S. at 158-166.  "[L]ong before [*Sullivan*] was decided . . . Malice was defined in numerous ways, but in general depended upon a showing that the defendant acted with improper motive. This showing in turn hinged upon the intent or purpose with which the publication was made, the belief of the defendant in the truth of his statement, or upon the ill will which the defendant might have borne toward the plaintiff." *Id.* at 163-164.

The *Sullivan* case, and later cases, altered and narrowed the type of information relevant to the actual malice inquiry.  The Supreme Court in *Connaughton* in 1989 made clear that "[t]he

phrase 'actual malice' [. . .] has nothing to do with bad motive or ill will." 491 U.S. at 666; *see also Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510 (1991) ("[a]ctual malice under the [*Sullivan*] standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will."). In *Horne* in 2018, the Fourth Circuit stated plainly that "[u]nder the actual malice standard, a plaintiff must prove that the defendant had a particular, subjective state of mind at the time the statements were made." 893 F.3d at 211. This standard is a far cry from the broad "custom and usage" and motive exploration Plaintiff presses the Court to adopt here and hews more closely to the well-established rule that the actual malice standard is meant to offer "broad protection" to those commenting about public figures. *CACI Premier Tech., Inc.*, 536 F.3d at 294. Plaintiff's repeated citation of a 40-year old footnote quoting a version of the law superseded 56 years ago is telling. Plaintiff cannot find support in the current governing law for his fishing expedition into circumstantial evidence.

## IV.   ARGUMENT

### A.   Permissible inquiries into circumstantial evidence are constrained and Defendants have produced all potentially relevant materials

To be sure, Plaintiff may use circumstantial evidence to "prove the defendant's state of mind[.]" *Spirito v. Peninsula Airport Comm'n*, 350 F. Supp. 3d 471, 481 (E.D. Va. 2018) (citing *Eramo v. Rolling Stone, LLC*, 209 F.Supp.3d 862 (W.D. Va. 2016) (quoting *Connaughton*, 491 U.S. at 668). But "courts must be careful not to place too much reliance on" circumstantial evidence. *Connaughton*, 491 U.S. at 668. The type of circumstantial evidence relevant to an actual malice inquiry is narrow and related to whether "defendant had a particular, subjective state of mind *at the time the statements were made*." *Horne*, 893 F.3d at 211 (emphasis added); *see also Hatfill v. New York Times Co.*, 459 F. Supp. 2d 462, 467 (E.D. Va. 2006) (finding that

the relevant inquiry is "the state of mind of the reporter at the time the reporter made the allegedly defamatory statements.").

For example, in *Spirito*, cited by Plaintiff here, the relevant circumstantial evidence was information about plaintiff, that his job duties involved regular paper shredding, that defendants would have known and that directly contradicted their statements that plaintiff's shredding was suspicious. *Spirito*, 350 F. Supp. 3d at 481-82. In *Eramo*, the circumstantial evidence at issue was in the form of reporting notes that revealed the reporter had "obvious reasons" to doubt the credibility of a key source. *Eramo*, 209 F.Supp.3d at 872. Similarly, in *Connaughton*, a reporter decided not to listen to tapes of an interview that would have contradicted a key source. *Connaughton*, 491 U.S. at 683-84. The *Connaughton* court said "it is likely that the newspaper's inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of Thompson's charges. Although failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category." *Id.* at 692 (internal citations removed). In each of these cases, *Spirito*, *Eramo*, and *Connaughton*, the circumstantial evidence at issue was information, in defendant's possession at the time of publication, that directly contradicted the challenged statements.

Here, Plaintiff seeks discovery dating back 10 years and about wholly unrelated matters not involving Plaintiff, including: marketing and revenue models, other defamation litigation not involving Plaintiff, "corrective actions" taken by the Free Speech Defendants, and materials dated after the filing of this lawsuit (over seven months after the statements were published). Plaintiff states patly: "Discovery relating to the InfoWars' Defendants journalistic practices and their revenue generation model is probative of whether they published the disputed videos in this case with knowledge or reckless disregard of the falsity of those videos." But understanding the

11

subjective and time-sensitive standard for actual malice, it is difficult to discern how a "revenue generation model" is probative of *anything* in Defendant Jones or McAdoo's mind, when they made the statements at issue, that would reveal a "purposeful avoidance of the truth" about Plaintiff. *Connaughton*, 491 U.S. at 692.

Not only are Plaintiff's requests beyond the pale of relevance, but the Free Speech Defendants have produced materials responsive to 20-25 different document requests related to Plaintiff and the statements at issue and Plaintiff. *See, e.g.*, FSS Responses to RFPs 1-8, 10-20, 22-24, 26, 30, 37. To the extent that any of these defendants had any documents or information in their possession about Plaintiff at the time of the publication of the statements at issue, those materials have been searched for and produced if they exist. Plaintiff now has those materials. He is not entitled to a fishing expedition covering as much as a decade of unrelated information.

**B.    Public statements made after the filing of the lawsuit are irrelevant and equally accessible by Plaintiff**

> *Requests at issue: RFP No. 31 (FSS, IW, and Lee Ann McAdoo) and RFP No. 33 (Alex Jones)*

Plaintiff filed this defamation lawsuit on March 13, 2018, and his claims relate solely to publications made in August 2017. The Free Speech Defendants already have agreed to produce "any non-privileged responsive documents dated between August 1, 2017, and March 12, 2018," for a number of Plaintiff's requests. *See, e.g.*, Defendants' responses to Request for Production No. 2, seeking "all electronically stored information or data regarding, referring to, concerning, or addressing Plaintiff."

Plaintiff's claims as pleaded are limited to the August 2017 publications. Plaintiff's burden in proving his claims relates to the subjective intent of those responsible for publication at the time of publication. Nothing that occurred after the fact can change that subjective intent. To the extent Plaintiff believes some post-publication statement or posting will expose some

hidden truth, the Free Speech Defendants have agreed to produce responsive materials dated up to seven months after the publications at issue and Plaintiff has access to those materials. Finally, Plaintiff has just as much access to defendants' post-dated public statements and internet postings as defendants. In other words, the "parties' relative access" to this information is the same.  Fed. R. Civ. P. 26(b)(1).

The Motion asserts that these materials are "relevant" because they go to Defendants' "motivation," "knowledge of falsity," "potential desire to injure Plaintiff," and "malicious disregard for the truth."  But this ignores the clear guidance from the Supreme Court that actual malice "has nothing to do with bad motive or ill will." *Connaughton*, 491 U.S. at 666.  As this Court already dismissed the intentional infliction of emotional distress claim, the defendants' motivations or desires are not part of any claim or defense. Further, any materials related to defendants' knowledge at the time of publication grow less reliable the further away from the publication they are created.  As even the footnote in *Herbert* acknowledges, the evidence cannot be "too remote." *Herbert*, 441 U.S. at 164 n.12. Simply put, materials that post-date the filing of the Complaint have no probative value to any claim or defense in this case.

**C.    Materials related to "other defamatory actions" are not relevant to any claim or defense**

> *Requests at issue: RFP No. 38 (FSS and IW); RFP No. 39 (McAdoo); and RFP No. 41 (Alex Jones)*

Plaintiff argues, at 6, that documents relating to other defamatory actions are relevant to the issue of actual malice.  But, as detailed in Section III, *supra*, the standard for actual malice requires a subjective showing of intent, specific to Plaintiff, at the time the publication was made. Plaintiff is not a party or even involved in any other "defamatory action" involving the Free Speech Defendants. It is difficult to see how other actions, not involving Plaintiff, could have any relevance to that subjective and time-sensitive intent.

13

Despite the Motion's suggestion, at n.3, the Fourth Circuit has never ruled that Rule 404(b) allows evidence of prior unrelated acts to prove actual malice in a defamation case. During the meet and confer process, Plaintiff cited to one unpublished ruling 20 years ago by a Magistrate Judge as support. Not only did that opinion lack any analysis of the issue, but it is not binding on the Court and has not been cited or relied upon for this point by any other court. Counsel asked Plaintiff to provide any binding precedent supporting his position that Rule 404(b) provides that other defamatory actions are relevant to the claims and defenses in this action, because we had found none. Plaintiff did not provide any such support and the two cases cited in the Motion, at n.3, are not defamation actions.

Notably, Plaintiff has access to the publicly-filed pleadings in the other cases, as evidenced in the Motion (e.g., citing to filings in a Connecticut case involving some of the Free Speech Defendants), and has not articulated a sufficient reason to burden defendants with producing pleadings and other documents from completely unrelated cases.

Finally, this line of discovery is harassing and, ultimately, prejudicial.  Defendant Jones is a talk radio personality who provides commentary and analysis on the day's events.  He is regularly confronted by those who disagree with him. That the mere existence of these confrontations would be used to limit defendants' speech is antithetical to the robust First Amendment protections for even the most offensive speech. "Indeed, if it is the speaker's opinion that gives offense, that consequence is a *reason* for according it constitutional protection." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55-56 (1988) (emphasis added) (citing *FCC v. Pacifica Foundation*, 438 U.S. 726, 745-46 (1978)); *see also Snyder v. Phelps*, 562 U.S. 443, 458 (2011) ("Given that Westboro's speech was at a public place on a matter of public concern, that speech is entitled to "special protection" under the First Amendment. Such

14

speech cannot be restricted simply because it is upsetting or arouses contempt."); *Hurley v.*

*Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 574 (1995)

("the point of all speech protection ... is to shield just those choices of content that in someone's

eyes are misguided, or even hurtful."); *Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a

bedrock principle underlying the First Amendment, it is that the government may not prohibit the

expression of an idea simply because society finds the idea itself offensive or disagreeable.");

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910 (1982) ("Speech does not lose its

protected character . . . simply because it may embarrass others or coerce them into action");

*Street v. New York*, 394 U.S. 576, 592 (1969) ("It is firmly settled that . . . the public expression

of ideas may not be prohibited merely because the ideas are themselves offensive to some of

their hearers").

> ## D.    Materials related to "disciplinary or corrective actions" are not relevant to any claim or defense
>
> > *Requests at issue: RFP No. 21 (FSS, IW, and McAdoo) and RFP No. 22 (Jones)*

As explained in Section III, *supra*, the standard for actual malice relates to the specific,

subjective intent at the time of publication. Discovery related to "disciplinary or corrective

actions" over the past ten years is not relevant to that specific and time-sensitive intent.

Moreover, if publication of incorrect information could form the basis for actual malice, then

newspapers would be deemed to have published with actual malice in every case based solely on

their daily corrections page.  Obviously, this is not the case.  The "Doctrine of Chances," as

Plaintiff calls it, Motion at 9, if applied to the law of defamation would damn the most

conscientious of media outlets for issuing any correction and would deem publishers guilty just

for being sued.  That applying this "Doctrine of Chances" to defamation cases leads to absurd

and dangerous results is a good indicator it is not meant to apply, and, indeed, it has not been applied, in the defamation context.

E.   **Materials related to "financial motivation" are not relevant to any claim or defense**

> *Requests at issue: RFP Nos. 27, 28, and 29 (FSS, IW, and McAdoo) and RFP Nos. 29, 30, and 31 (Jones)*

Plaintiff seeks production of "revenue generation" discovery because, he argues, it is "probative circumstantial evidence" of motive. Mot. 10. But the Supreme Court has been clear that profit motive "cannot provide a sufficient basis for finding actual malice." *Connaughton*, 491 U.S. at 665. "If a profit motive could somehow strip communications of the otherwise available constitutional protection, our cases from *New York Times* to *Hustler Magazine* would be little more than empty vessels." *Id.* at 667 (noting that "The allegedly defamatory statements at issue in the New York Times case were themselves published as part of a paid advertisement."). Plaintiff argues that *Connaughton* provides that "financial incentive may be considered in support of a court's ultimate conclusion." Mot. 10. But Plaintiff misreads *Connaughton* and cites to a section of the opinion where the Court assessed whether a lower court had judged the case by the "correct substantive standard" for actual malice or had improperly "inferred actual malice from the newspaper's motive in publishing." *Connaughton* at 667-68. The Court resolved that the "evidence of motive [was] merely supportive of the court's ultimate conclusion," and so the Court was satisfied that the lower court did not "place too much reliance on such factors" as motive. *Id.* at 668. In other words, evidence of motive was unnecessary for the Court's decision.

Setting aside the fact that this information is irrelevant, the Free Speech Defendants do not maintain the specific information that Plaintiff seeks "concerning the revenue generated by" publications about Plaintiff. As explained to Plaintiff, the Free Speech Defendants do not collect

16

revenue data for specific broadcasts and therefore are not able to produce information responsive to these requests.  *See* Dkt. 207-11 at 6.

**F.    Defendants' answers to interrogatories regarding marketing, research and/or analytic data are complete and consistent with prior sworn testimony**

> *Interrogatories at issue: Inter. No. 3 (Jones); Inter. No. 4 (FSS and IW); Inter. Nos. 5 and 6 (FSS)*

For reasons detailed in Sections IV. A through E, *supra*, this information is not relevant to any claim or defense at issue in this case and Plaintiff's reference to materials from another lawsuit does not change this fact.

Moreover, the material that Plaintiff cites as support for alleged discrepancies existing between discovery responses in this case and in another lawsuit, do not reveal a contradiction so much as a poorly worded interrogatory. The interrogatories at issue here seek the identity of "all individuals responsible for marketing, research, and/or analytic data" for Defendants Jones, FSS and IW.  Defendants Jones, FSS and IW objected that the phrase "all individuals responsible for" was not defined.  That employees have been "involved in" these efforts, as described in discovery responses in the cited in the other litigation,[15] does not mean any one individual is "responsible" for them.  Indeed, the testimony from that case, cited in the Mot. at 13, indicates that data analytics would be done, if at all, "on the fly."[16]

Plaintiff argues that an "employee or agent" must have been "involved in the marketing or funding of the August 15, 2017, broadcast at issue."  Not so.  Nothing in the discovery in the other case indicates that any individual was responsible for the marketing or funding of that

---

[15] *Lafferty*, UWY-CV18-6046436-S, D.E. 255.0 (Exhibit B, Alex Jones's Interrogatory Response, at 2) ("Employees have been involved in standard marketing and analytics regarding product sales and promotions").

[16] *Lafferty*, UWY-CV18-6046436-S, D.E. 255.0 (Exhibit D, Excerpt of Deposition of David R. Jones, at 36:1-3).

particular broadcast. The same is true for Plaintiff's identical assertion about the August 21, 2017 broadcast.

Finally, Plaintiff bends the meaning of the testimony submitted from the other matter beyond its breaking point.  That testimony does not show that defendants are able to identify revenue from specific broadcasts. If anything, the testimony shows that it is guesswork whether, how and when published content drives revenue.

### G.     Interrogatories related to investigation supporting the publications at issue

> *Interrogatories at issue: Inter. No. 5 & 6 (Jones); Inter. No. 8 & 9 (FSS and IW); Inter. No. 4 & 5 (McAdoo)*

The Motion argues that the Free Speech Defendants' answers to interrogatories about their "process" were so vague as to be "effectively non-responses," are simply not true and, indeed, Plaintiff's meet and confer letter, Dkt. 207-10 at 10-11, cited responses to other interrogatories and not the interrogatories at issue here.  Defendants' answers to Interrogatories No. 5 (Jones), No. 8 (FSS), and No. 4 (McAdoo) were detailed and thorough.

The Motion seeks supplemental answers to interrogatories asking defendants to "Identify every step that you took in order to assess the credibility of every source who provided you with information concerning Plaintiff."  But the Free Speech Defendants objected to this interrogatory as being vague as "every step" is not defined and because it implies that a certain procedure should have been followed without identifying any such procedure.  *See, e.g.*, McAdoo Answer to Interrogatory No. 5.  Dkt. 207-7 at 23-24.  Assessing credibility does not always, if ever, follow rote "steps."  To the extent that Plaintiff seeks information about what the Free Speech Defendants did in advance of publication, that information was provided in the detailed response

to Interrogatories No. 5 (Jones),[17] No. 8 (FSS),[18] and No. 4 (McAdoo),[19] and Plaintiff can ask follow-up questions at deposition.

### H.    Defendant Jones's answer to Interrogatory 1 is complete

*Interrogatory at issue: Inter. No. 1 (Jones)*

The Motion asserts that Mr. Jones must identify "the officers, owners, members, and employees" of organizations in which he has ownership or control because "Jones's financial motivations and revenue generation model are relevant to his state of mind at the time he made and published false statements about Plaintiff." Mot. at 16. But as noted in Section IV. E, *supra*, profit motive "cannot provide a sufficient basis for finding actual malice." *Connaughton*, 491 U.S. at 665. "If a profit motive could somehow strip communications of the otherwise available constitutional protection, our cases from New York Times to Hustler Magazine would be little more than empty vessels." *Id.* at 667 (noting that "The allegedly defamatory statements at issue in the New York Times case were themselves published as part of a paid advertisement."). Jones already answered this interrogatory by stating that he "has an ownership interest in Free Speech Systems, LLC and InfoWars, LLC," and indicating that no other business interests were involved "in the publication of the statements at issue in this case." Dkt. 207-6 at 22-23. Defendant Jones's response to Interrogatory 1 is therefore complete and Plaintiff's motion to compel additional information should be denied.

## V.    CONCLUSION

For the reasons stated herein, Defendants ask that the Court deny Plaintiff's Motion to Compel.

---

[17] Dkt. 207-6 at 25-26.
[18] Dkt. 207-8 at 23-24.
[19] Dkt. 207-7 at 23-24.

19

Dated:  August 14, 2020                        Respectfully submitted,


TREMBLAY & SMITH PLLC                          BAKER HOSTETLER LLP

Thomas E. Albro (VSB #12812)                   */s/ Elizabeth A. Scully*
Evan D. Mayo (VSB #89383)
105-109 E. High Street                         Elizabeth A. Scully (VSB #65920)
Charlottesville, VA 22902                      Mark I. Bailen
Telephone: (434) 977-4455                      Andrew M. Grossman
Facsimile: (434) 979-1221                      Richard B. Raile (VSB #84340)
tom.albro@tremblaysmith.com                    Washington Square, Suite 1100
evan.mayo@tremblaysmith.com                    1050 Connecticut Avenue, N.W.
                                               Washington, DC 20036-5304
*Co-Counsel for Defendants Alexander E.*       Telephone: (202) 861-1500
*Jones, Infowars, LLC, Free Speech Systems,*   Facsimile: (202) 861-1783
*LLC and Lee Ann McAdoo a/k/a Lee Ann*
*Fleissner*                                    escully@bakerlaw.com
                                               mbailen@bakerlaw.com
                                               agrossman@bakerlaw.com
                                               rraile@bakerlaw.com

                                               *Counsel for Defendants Alexander E. Jones,*
                                               *Infowars, LLC, Free Speech Systems, LLC*
                                               *and Lee Ann McAdoo a/k/a Lee Ann Fleissner*


## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2020, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                               */s/ Elizabeth A. Scully*
                                               Elizabeth A. Scully (VSB #65920)
                                               Washington Square, Suite 1100
                                               1050 Connecticut Avenue, N.W.
                                               Washington, DC 20036-5304
                                               Telephone: (202) 861-1500
                                               Facsimile: (202) 861-1783
                                               escully@bakerlaw.com