IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| BRENNAN M. GILMORE, | ) | |
| Plaintiff, | ) | Civil Action No. 3:18-cv-00017 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| ALEXANDER ("ALEX") E. JONES, et al., | ) | By:    Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

This matter is before the Court on Plaintiff's Motion to Compel Discovery from

Defendants Alex Jones, Lee Ann McAdoo, Free Speech Systems, LLC, and InfoWars, LLC

("Defendants").[1] Pl.'s Mot. to Compel, ECF No. 207. The motion has been fully briefed, ECF

Nos. 208, 209, and is ripe for disposition. For the reasons stated below, the Court hereby

GRANTS in part and DENIES in part Plaintiff's Motion to Compel.

I. Background[2]

This is a defamation case arising out of the "Unite the Right" rallies in Charlottesville,

Virginia on August 11–12, 2017. On August 12, 2017, supporters of "Unite the Right" and

counter-protesters filled the streets of downtown Charlottesville. Am. Compl. ¶¶ 25–28. That

afternoon, James Alex Fields Jr. drove his car into a crowd of counter-protesters, killing one

woman and injuring many others. *Id.* ¶ 29. Plaintiff Brennan Gilmore was a counter-protester

---

[1] Multiple defendants are involved in this civil action. Plaintiff's motion to compel addresses only discovery he seeks from Defendants Jones, McAdoo, Free Speech Systems, and InfoWars. Accordingly, the Court's references herein to "Defendants" should be taken to refer only to those four defendants.

[2] This section summarizes certain factual allegations in Plaintiff's Amended Complaint, ECF No. 29. It focuses solely on facts relevant to Plaintiff's claims against Defendants. It does not include facts relevant to Plaintiff's claims against all other defendants to this action. Moreover, while the Court does not repeatedly state, "Plaintiff *alleges* that Defendant *X* did *Y*," this summary should not be taken as the Court's endorsement of one version of the facts. *See Sines v. Kessler*, 324 F. Supp. 3d 765, 774 (W.D. Va. 2018) (Moon, J.).

who captured the attack on video. *Id.* ¶¶ 27, 30. He then posted the video on Twitter and spoke with reporters about what he had seen. *See id.* ¶¶ 31–35.

Plaintiff alleges that Defendants quickly began posting defamatory articles about him on the internet. *See generally id.* ¶¶ 36, 83, 86–124. Defendants "accus[ed] him of being a CIA or 'Deep State' operative who helped orchestrate Fields'[s] attack as a 'false flag.'" *Id.* ¶ 36 (internal footnotes omitted). Specifically, on August 15, 2017, "Defendant InfoWars, a website owned and operated by Defendant Jones, published an article authored by Defendant Lee Ann McAdoo and an accompanying video, both entitled '*Bombshell Connection Between Charlottesville, Soros, CIA.*'" *Id.* ¶ 83 (emphasis and footnote omitted); *see also id.* ¶¶ 87–100. McAdoo wrote that the Charlottesville rallies "demonstrated . . . a civil war is brewing in this country, laying the foundation for a violent coup to take out Trump. Soros-funded NGO's have been able to achieve regime change in other countries by quite literally teaming up with Neonazis and 'moderate' terrorists." *Id.* ¶ 83. By "insinuating that [Plaintiff] knowingly participated in a Soros- and government-staged violent riot and attack," Defendants "falsely impl[ied] that [he was] a criminal conspirator and a party to treason and murder." *Id.* ¶ 92. Plaintiff also alleges that Defendants failed to investigate or otherwise fact-check the allegations made in the article and video. *See id.* ¶¶ 93–96. "Instead, they utilized the preconceived and well-worn narrative that George Soros, the State Department, and the Democratic Party were behind the attack, in advance of any investigation (or lack thereof), and then consciously set up to make their statements about [Plaintiff] conform to this narrative." *Id.* ¶ 98; *see also id.* ¶¶ 99–100.

Similarly, on August 20–21, 2017, Jones allegedly posted a video titled "*Breaking: State Department/CIA Orchestrated Charlottesville Tragedy*" on both YouTube.com and InfoWars's website. *Id.* ¶ 102. In the video, Jones claimed that he had "research[ed]" and "confirmed" that

"known CIA and State Department officials" were involved in the attack in Charlottesville. *Id.* ¶

104. Regarding Plaintiff, Defendant Jones reported:

> Brennan Gilmore was on the scene, and the author of the first viral tweet about
> Charlottesville. He was later interviewed by MSNBC. He was presented as an
> accidental witness, but who is he really? . . . Gilmore worked in Africa as a State
> Department Foreign Office[r] under Hillary Clinton. The New York Times
> mentioned this coincidence and then later deleted it. Brennan Gilmore was also
> involved with the Kony hoax in 2012, and he's currently Chief of Staff for Tom
> Perriello, who's running for governor of Virginia, and received $380,000 from
> George Soros . . . . So the first man in the scene whose tweet went viral and who
> was later interviewed on mainstream news as a witness just happened to be a State
> Department insider with a long history of involvement in psy-ops? If you think that
> isn't fishy, how about this? Since the Charlottesville protest, and his appearance in
> the media, his information was suddenly removed from the State Department
> websites. The elites know we're on to them and are trying to cover their tracks.

*Id.* ¶ 105 (internal quotation marks omitted). Plaintiff vehemently denies the truth of Defendants'

statements about him, *id.* ¶¶ 106–10, 112–13, and argues that Defendants failed to research and

fact-check their claims, *id.* ¶ 114 ("Defendant Jones conducted no research beyond identifying a

few disparate facts and circumstances from [Plaintiff's] biography."); *see also id.* ¶¶ 115–18.

Plaintiff claims that he "attended the protest against the 'Unite the Right' rally as a

private citizen on his personal time because he opposes racism and bigotry, not in any sort of

capacity as a government employee, because he was sent there by the State Department or

George Soros, or because he was participating in any 'Deep State' 'psy-op' or any sort of

operation to unseat President Trump." *Id.* ¶ 145. He also alleges that Defendants' publications

led to "a barrage of harassing and threatening messages that made him fear for his personal

safety as well as the safety of his family members," *id.* ¶ 150; that Defendants knew or should

have known such threats and harassment would follow their publications, *see id.* ¶¶ 164–75; and

that Defendants' publications harmed him personally and professionally, *see id.* ¶¶ 113, 178–

203. The presiding District Judge denied Defendants' motion to dismiss the defamation claims in

March 2019. Order of Mar. 29, 2019, ECF No. 124; *see also* Order of Sept. 16, 2019, ECF No.

164; Order Deny Defs.' Pet. for Interlocutory App. (4th Cir. Nov. 6, 2019), ECF No. 166.

*

On July 31, 2020, Plaintiff filed a motion to compel Defendants to comply with several

of his discovery requests. *See* Pl.'s Mot. to Compel 2–3. Plaintiff divides his requests into seven

categories:

1. *The Time Limitations Dispute* – In most of his Requests for Production, Plaintiff seeks responsive documents dated from August 1, 2017, through the present. *See id.* Pl.'s Mot. to Compel Ex. A1, ¶ 10, ECF No. 207-2, at 5.[3] To the extent Defendants have agreed to produce responsive documents, they have searched for and produced only documents "dated between August 1, 2017 and March 12, 2018." Pl.'s Mot. to Compel 3.

2. *The Revenue Generation Requests* – Plaintiff requests supplemental responses to "Request for Production Nos. 27, 28, and 29 to [Free Speech Systems], InfoWars, and McAdoo and Request for Production Nos. 29, 30, and 31 to Jones, which seek 'documents concerning the revenue generated by' the two videos at issue and 'all documents concerning the revenue generated by any other publication[s] or posting[s] concerning Plaintiff.'" *Id.*

3. *The Jones Ownership Interrogatory* – Plaintiff seeks a supplemental response to "Interrogatory No. 1 to Jones, which asks Alex Jones to identify 'all business organizations and/or other entities in which [he has] ownership and/or control, and the officers, owners, members, and employees of those organizations and/or entities.'" *Id.*

4. *The Defamation Litigation Requests* – Plaintiff requests supplemental responses to "Request for Production No. 38 to FSS and InfoWars, Request for Production No. 39 to McAdoo, and Request for Production No. 41 to Jones, which seek 'all documents from any litigation involving libel or defamation in which' the . . . Defendants or entities with which . . . [they] are affiliated 'have been named as a defendant' in the past ten years." *Id.* at 2.

5. *The Gilmore Investigation Interrogatories* – Plaintiff requests supplemental responses to "Interrogatory No. 4 to McAdoo, Interrogatory No. 5 to Jones, and Interrogatory No. 8 to FSS and InfoWars, which seek identification of the 'process for ensuring that any assertions' concerning [Plaintiff] made by the . . . Defendants 'were factually accurate.'" *Id.* at 3. He also requests supplemental responses to "Interrogatory No. 5 to McAdoo, Interrogatory No. 6 to Jones, and Interrogatory No. 9 to FSS and InfoWars, which seek

---

[3] Pinpoint citations to documents filed electronically in this Court use the header page numbers generated by CM/ECF and the exhibit labels assigned by the filing party.

4

identification of 'every step that they took in order to assess the credibility of every source who provided them with information'" about Plaintiff. *Id.* (brackets omitted).

6. *The Marketing and Research Interrogatories* – Plaintiff requests supplemental responses to "Interrogatory No. 3 to Jones and Interrogatory No. 4 to InfoWars and FSS, which seek identification of 'all individuals responsible' for their 'marketing, research, and/or analytic data.'" *Id.* Plaintiff also requests supplemental responses to "Interrogatories Nos. 5 and 6 to FSS, which seek identification of 'every employee or agent of Free Speech Systems, LLC who was involved in the creation, research, editing, marketing, funding, distribution, or publication' of the two videos at issue in the case, and a description of 'their specific roles.'" *Id.*

7. *The Corrective Action Requests* – Plaintiff seeks supplemental responses to "Request for Production No. 21 to FSS, InfoWars, and McAdoo, and Request for Production No. 22 to Jones, which seek 'all documents relating to the disciplinary or corrective actions taken due to the publication of false or incorrect information during the past ten years.'" *Id.* (alteration omitted).

*See generally id.* at 5–16.

## II. The Legal Framework

Broad discovery is generally permitted in civil cases. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Relevance is not, on its own, a high bar." *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). Indeed, "[t]here may be a mountain of documents and emails that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative." *Id.* Moreover, information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). But discovery, "like all matters of procedure, has ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507. Courts must limit the frequency or extent of proposed discovery if it is "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Although Rule 26(b)(1)'s relevance inquiry does not, itself, pose a "high bar," its proportionality requirement mandates consideration of multiple factors in determining whether to allow

5

discovery of even relevant information. *Jordan*, 921 F.3d at 188–89. These include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

When a party fails to make requested disclosures or discovery, the requesting party may file a motion to compel. Fed. R. Civ. P. 37(a)(1). On such a motion, the party "resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) ("*Eramo I*"). Thus, once the moving party has made "a prima facie showing of discoverability," the resisting party has the burden of showing either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought "is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery." *Id.* (internal quotation marks omitted). Moreover, "[d]istrict courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel." *Id.* (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.*, 43 F.3d 922, 929 (4th Cir. 1995)).

### III. Discussion

Here, Plaintiff argues that the discovery he seeks is relevant to his defamation claim and thereby comes within the broad scope of discovery of Rule 26(b)(1). Pl.'s Mot. to Compel 1–2. Defendants disagree, urging that the discovery Plaintiff seeks is irrelevant, burdensome, and disproportionate to the needs of the case. *See generally* Defs.' Br. in Opp'n to Pl.'s Mot. to Compel 1, 8–19, ECF No. 208 ("Defs.' Br. in Opp'n"). To succeed on a defamation claim in Virginia, Plaintiff must show "(1) publication of (2) an actionable statement with (3) the

requisite intent." *Gilmore v. Jones*, 370 F. Supp. 3d 630, 666 (W.D. Va. 2019) (quoting *Choi v. Kyu Chul Lee*, 312 F. App'x 551, 552 (4th Cir. 2009)); *accord Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005)). "The requisite intent a plaintiff must prove . . . depends upon the plaintiff's status as a public or private figure." *Gilmore*, 370 F. Supp. 3d at 666 (quoting *Reynolds v. Pionear, LLC*, No. 3:15cv209, 2016 WL 1248866, at *5 (E.D. Va. Mar. 25, 2016)). This Court previously held that for the purposes of this litigation, Plaintiff is a limited-purpose public figure. *Id.* at 666–70. He must therefore prove that Defendants published actionable statements about him with "actual malice." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *cf. Gilmore*, 370 F. Supp. 3d at 670–72, 675–78 (concluding that Plaintiff adequately alleged actual malice in denying Defendants' motion to dismiss the defamation claims).

Much ink has been spilled over the meaning of the "actual malice" standard. Today, it is black-letter law that "actual malice" does not mean "evil intent or a motive arising from spite or ill will." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991). Instead, to show actual malice, a plaintiff must prove that the defendant acted "with knowledge of falsity or reckless disregard as to truth or falsity." *See id.* at 511. This standard is a subjective one. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *see Gilmore*, 370 F. Supp. 3d at 671. Merely showing, objectively, that a "reasonably prudent" publisher would not have published the statement, or would have investigated before publishing, does not show reckless disregard. *St. Amant*, 390 U.S. at 731–32 (explaining that mere departures from professional journalistic standards are insufficient to prove reckless disregard); *see also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989) ("Today, there is no question that public figure libel cases are controlled by the *New York Times* [*v. Sullivan*] standard and not by the professional

standards rule, which never commanded a majority of this Court."); *Herbert v. Lando*, 441 U.S. 153, 160 (1979) ("*New York Times* and its progeny made it essential to proving liability that the plaintiff focus on the conduct and state of mind of the defendant."). Rather, reckless disregard is shown when there is "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731. Further, where one or more defendants are institutional actors rather than individuals, the state of mind inquiry focuses on the subjective state of mind of the individuals responsible for the publication at issue. *New York Times Co.*, 376 U.S. at 287 ("[T]he state of mind required for actual malice would have to be brought home to the persons in the [Defendant] organization having responsibility for the publication[.]"); *Palin v. New York Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019) ("When actual malice in making a defamatory statement is at issue, the critical question is the state of mind of those responsible for the publication.").

Plaintiffs may use both direct and indirect evidence to prove actual malice. *See Herbert*, 441 U.S. at 160–65. Indeed, indirect evidence is often key to proving actual malice. "It may be that plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself[.]" *Id.* at 170; *see also Harte-Hanks*, 491 U.S. at 668 (noting that "plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence"). Despite cautioning that "courts must be careful not to place too much reliance on such factors," the *Harte-Hanks* Court found evidence of motive and of departure from accepted journalistic standards relevant to the actual malice inquiry. 491 U.S. at 668.

The *Harte-Hanks* Court, however, did not elaborate on what *other* types of circumstantial evidence may be used to show actual malice. And here, the parties' core dispute revolves around this question. To support his motion to compel various types of circumstantial evidence, Plaintiff

8

urges the Court to follow a footnote from *Herbert* that articulates a broad conception of the types of circumstantial evidence that are relevant to actual malice. *See* Pl.'s Mot. to Compel 5 (citing 441 U.S. at 164 n.12). The footnote quotes a 1970 treatise, which states that plaintiffs may prove actual malice by using:

> all the relevant circumstances surrounding the transaction . . . provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration.

*Herbert*, 441 U.S. at 164 n.12 (quoting 50 Am. Jur. 2d *Libel and Slander* § 455 (1970)). This footnote identifies types of circumstantial information that may be relevant to the actual malice inquiry, but whether that information could be relevant depends on the claims and defenses in a particular case. *See id.* at 157, 177 (citing Fed. R. Civ. P. 26(b)(1)).[4] Examination of cases from other courts supports the views that circumstantial evidence, broadly-speaking, may be used to

---

[4] In *Herbert*, the plaintiff deposed the defendant and moved to compel answers to certain questions that had been "refused on the ground that the First Amendment protected against inquiry into the state of mind of those who edit, produce, or publish, and into the editorial process." 441 U.S. at 157. The Court found that eliciting "direct" evidence of the defendant's state of mind at a deposition did not run afoul of the Constitution. *Id.* at 160. Surveying the types of evidence traditionally used to prove state of mind in defamation cases, the Court noted that even "before *New York Times* was decided [in 1964], certain qualified privileges had developed to protect a publisher from liability for libel unless the publication was made with malice." *Id.* at 163. Malice "general[ly] depended upon a showing that the defendant acted with improper motive . . . [shown by] the intent or purpose with which the publication was made, the belief of the defendant in the truth of his statement, or . . . ill will which the defendant might have borne toward the plaintiff." *Id.* at 163–64 (internal footnotes omitted). The Court then included footnote 12, citing the above-quoted 1970 treatise, *id.* at 164, before concluding that since "[c]ourts have traditionally admitted any direct or indirect evidence relevant to the state of mind of the defendant," *id.* at 165, no constitutional privilege protects a defendant from inquiry into his editorial processes, *id.* at 159–60. The *Herbert* Court was thus persuaded, as am I, that courts have long allowed plaintiffs to use various types of direct and indirect evidence to show actual malice. Nonetheless, the *Herbert* Court included footnote 12 merely as an example of some of the types of evidence that were used to show actual malice even before *New York Times* was decided fifteen years earlier. Accordingly, although I view *Herbert* footnote 12 as persuasive authority, I do not read it as a blanket authorization to permit Plaintiff to obtain the types of evidence that it lists.

show actual malice and that most of Plaintiff's discovery requests seek relevant information. I address each category in turn.

A.     *The Time Limitations Dispute*

In his Requests for Production, Plaintiff sought "responsive documents from [Defendants] dated through the present day." Pl.'s Mot. to Compel 11; *see id.* Pl.'s Mot. to Compel Ex. A1, ¶ 10, ECF No. 207-2. In response, Defendants produced only documents dated between August 1, 2017, and March 12, 2018. Pl.'s Mot. to Compel 11; *see also id.* Pl.'s Mot. to Compel Ex. I, Letter from Pl.'s Counsel to Defs.' Counsel (June 1, 2020), ECF No. 207-10; *id.* Pl.'s Mot. to Compel Ex. J, Letter from Defs.' Counsel to Pl.'s Counsel (June 12, 2020), ECF No. 207-11. Plaintiff now asks the Court to compel Defendants to produce responsive documents dated between March 13, 2018, and the present. *See* Pl.'s Mot. to Compel 11–12. Defendants, by contrast, argue that this timeframe is too broad because the "actual malice inquiry is narrow and related to whether 'defendant had a particular, subjective state of mind at the time the statements were made.'" Defs.' Br. in Opp'n 12 (emphasis omitted) (quoting *Horne v. WVTR, LLC*, 893 F.3d 201, 211 (4th Cir. 2018)). Therefore, they contend that they need not produce documents dated after August 2017 because "[n]othing that occurred after the fact can change that subjective intent." *Id.* at 14.[5]

To succeed on his defamation claim, Plaintiff must prove each Defendant's state of mind at the time of publication. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512

---

[5] Defendants thus far have "agreed to produce any non-privileged responsive documents dated between August 1, 2017, and March 12, 2018." Defs.' Br. in Opp'n 14 (internal quotation marks omitted). But, they appear to argue that they were not obligated to produce documents dated through March 12, 2018 and did so merely as a courtesy. *Id.* at 14–15 ("To the extent Plaintiff believes some post-publication statement or posting will expose some hidden truth, . . . Defendants have agreed to produce responsive materials dated up to seven months after the publications at issue and Plaintiff has access to those materials.").

(1984); *Horne*, 893 F.3d at 211. Plainly, information that a defendant did not have at publication could not have influenced his state of mind in making the statement. Contrary to Defendants' position, however, courts have not strictly limited evidence relevant to the defendant's state of mind to that which *existed* prior to or at the time of publication. While evidence that the publisher had not yet obtained at the time of publication could not be relevant to his state of mind, materials that post-date the publication (including, for example, the publisher's own statements) may be probative of actual malice. *See, e.g.*, *Eramo v. Rolling Stone*, 209 F. Supp. 3d 862, 874 (W.D. Va. 2016) ("*Eramo II*") (concluding on summary judgment that evidence of publisher's "internal conversations and discussions with outside sources" after publication of allegedly defamatory article was relevant to the actual malice inquiry); *Eshelman v. Puma Biotech., Inc.*, No. 7:16cv18, 2017 WL 2483800, at *6–8 (E.D.N.C. June 7, 2017) (allowing discovery of materials created through May 2016 in defamation action filed in May 2015); *Davis v. Schuchat*, 510 F.2d 731, 736 (D.C. Cir. 1975) (noting that witness's testimony regarding the defendant's knowledge "shortly after the slanderous utterances" was relevant to the defendant's state of mind at the time of publication); *Stern v. Cosby*, 645 F. Supp. 2d 258, 280 (S.D.N.Y. 2009) (noting on summary judgment that defendant's trip to the Bahamas, taken after plaintiff filed his defamation suit, where she met her sources and offered to pay them to sign affidavits supporting the allegations in her book was probative of actual malice); Smolla, *supra*, § 3.79 ("What a person does after an event may be probative of a person's intent at the time of the event.").

Here, Defendants' chosen cut-off date of March 12, 2018–i.e., one day before Plaintiff filed this lawsuit–is arbitrary. Defendants have not identified any principled reason why documents published on March 12, 2018, could be relevant to a showing of actual malice, while

documents published on March 13, 2018 could not. And, Plaintiff has shown that since August 2017, Defendants have continued to publish statements, including a January 2020 article, about him and this case. *See* Pl.'s Mot. to Compel 12; *id.* Pl.'s Mot. to Compel Ex. L, *Patriots Say Democrats are Setting a Trap for 'Charlottesville 2.0'*, InfoWars.com (Jan. 19, 2020) ECF No. 207-13, at 2–11. Evidence created after the date of publication may be relevant to actual malice if it addresses the defendant's state of mind at the time of publication. *Eramo II*, 209 F. Supp. 3d at 874. And while evidence used to prove actual malice may not be "too remote," *Herbert*, 441 U.S. at 164 n.12, Plaintiff is entitled, at this stage, to discovery through the present date. Nonetheless, I decline to grant Plaintiff's Time Limitations argument outright. Because only information relevant to the Defendants' state of mind or intent at the time of publication could be relevant to a showing of actual malice, the parties are DIRECTED to meet and confer to establish agreed-upon search terms, focused on the state of mind inquiry, for discovery of documents dated between March 13, 2018, and the date of this Order. The Defendants are also reminded of their continuing obligation to supplement their disclosures and responses pursuant to Federal Rule of Civil Procedure 26(e)(1).

**B.**     *The Revenue Generation Requests and the Jones Ownership Interrogatory*

Through his Revenue Generation Requests[6] and Jones Ownership Interrogatory,[7] Plaintiff seeks evidence of profit motive. He argues, for example, that such evidence could show how Defendants "derive revenue for the InfoWars website and videos," Pl.'s Mot. to Compel 10

---

[6] The Revenue Generation Requests at issue are: (i) Pl.'s Mot. to Compel Ex. B1, Reqs. for Produc. Nos. 27, 28, & 29 to Def. McAdoo, ECF No. 207-3, at 9; (ii) Pl.'s Mot. to Compel Ex. C1, Reqs. for Produc. Nos. 27, 28, & 29 to Def. Free Speech Sys., ECF No. 207-4, at 8–9; (iii) Pl.'s Mot. Compel Ex. D1, Reqs. for Produc. Nos. 27, 28, & 29 to Def. InfoWars, ECF No. 207-5, at 8–9; and (iv) Pl.'s Mot. to Compel Ex. A1, Reqs. for Produc. Nos. 29, 30, & 31 to Def. Jones, ECF No. 207-2, at 9.

[7] The Jones Ownership Interrogatory at issue is: Pl.'s Mot. to Compel Ex. A2, Interrog. No. 1 to Def. Jones, ECF No. 207-2, at 20.

12

(emphasis omitted), whether Defendants monitor "spikes" in website traffic and then try "to

'emulate' those spikes" during later broadcasts, *id.* at 11, and whether Jones's business

ownership interests might "influence [his] financial motivations to run a particular story," *id.* at

16. Defendants disagree. Pointing to the Supreme Court's proclamation that "profit motive

'cannot provide a sufficient basis for finding actual malice,'" they argue that evidence of profit

motive is "irrelevant" here. Defs.' Br. in Opp'n 18 (quoting *Harte-Hanks*, 491 U.S. at 665).

        Profit motive is insufficient, on its own, to show actual malice. The "fact that the

defendant published the defamatory material in order to increase its profits [cannot] suffice to

prove actual malice." *Harte-Hanks*, 491 U.S. at 667 ("If a profit motive could somehow strip

communications of the otherwise available constitutional protection, our cases from *New York

Times* to *Hustler Magazine* would be little more than empty vessels."); *see also Reuber v. Food

Chem. News, Inc.*, 925 F.2d 703, 716 (4th Cir. 1991) (en banc) ("The cases from *New York Times

v. Sullivan* onward teach that evidence of a defendant printing material to increase its profits does

not suffice to prove actual malice." (citing *Harte-Hanks*, 491 U.S. at 667)). Moreover, Plaintiff is

not entitled to discovery into Defendants' general profit motives or into Defendants' general

profits from advocating controversial positions. *Reuber*, 925 F.2d at 716 ("[I]t is hardly unusual

for publications to print matter that will please their subscribers; many publications set out to

portray a particular viewpoint or even to advance a partisan cause. Defamation judgments do not

exist to police their objectivity; the First Amendment presupposes that a veritable medley of

opposing voices is better suited to the search for truth."). Because I find that Plaintiff's Jones

Ownership Interrogatory inquires too deeply into Defendant Jones's profit motives generally, I

decline to order Jones to respond more fully to that question. The Jones Ownership Interrogatory

broadly asks Jones to "[i]dentify all business organizations and/or entities in which [he has]

ownership and/or control, and the officers, owners, members, and employees of those organizations and/or entities." Pl.'s Mot. to Compel Ex. A2, Interrog. No. 1 to Def. Jones, ECF No. 207-2, at 20. In response, Jones disclosed ownership interests in Defendants Free Speech Systems, LLC and InfoWars, LLC, but maintained that "ownership interest in or control of any other business organizations or entities that had no involvement in the publication of the statements at issue in this case is irrelevant." Pl.'s Mot. to Compel Ex. E1, Def. Jones's Answer to Pl.'s Interrog. No. 1, ECF No. 207-6, at 22–23. I agree. The Jones Ownership Interrogatory is not reasonably targeted at discerning a profit motive for publications specifically concerning the statements at issue in this case. *See* Fed. R. Civ. P. 26(b)(1). Rather, it is expansive and seeks information into Defendant Jones's general business dealings. Such information may provide insight into Jones's motives to advocate controversial positions, but that information has not been shown to be relevant to the actual malice inquiry. Accordingly, Plaintiff's motion to compel is DENIED as to the Jones Ownership Interrogatory.

By contrast, discovery into Defendants' specific profit motive to publish stories about Plaintiff is permissible because such evidence is relevant to, even if not sufficient to prove, actual malice. In *Harte-Hanks*, the Court noted that, in finding actual malice, the lower court had "attribute[d] considerable weight to the evidence that the [Defendant newspaper publisher] was motivated by its interest in the reelection of the candidate [that] it supported and *its economic interest* in gaining a competitive advantage over the Cincinnati Enquirer, its bitter rival in the local market." 491 U.S. at 664–65 (emphasis added). Though profit motive alone cannot prove actual malice, the lower court's consideration of such evidence was proper where it was "merely supportive of the court's ultimate conclusion that the record demonstrated" actual malice. *Id.* at 667–68 (internal quotation marks omitted). Thus, while "courts must be careful not to place too

much reliance" on circumstantial factors in determining whether plaintiff has demonstrated the defendant acted with a sufficiently culpable state of mind, "it cannot be said that evidence concerning motive or [standards of professional] care never bears any relation to the actual malice inquiry." *Id.* at 668; *see also Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1135–36 (9th Cir. 2003) (explaining that evidence publisher "was financially overextended" before releasing allegedly defamatory report and "needed a blockbuster story to raise [its] profile and increase funding revenues," as well as evidence that it used the story to solicit funds, were relevant to the actual malice inquiry on summary judgment); *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 595–96 (D.C. Cir. 2016) (noting on summary judgment that defendant's "extortion attempt," in which he told plaintiff that he would "stop writing negative stories about [plaintiff] if he paid [him] one to two million dollars," was relevant to actual malice inquiry even though it was "not enough," on its own, "to support a finding of actual malice").

Plaintiff's Revenue Generation Requests are reasonably targeted at discovery into Defendants' profit motives for publishing statements that specifically concern Plaintiff. They seek, for example, documents regarding revenue "generated by" the August 15, 2017 and August 21, 2017 videos that Defendants published about Plaintiff. *See, e.g.*, Pl.'s Mot. to Compel Ex. D1, Reqs. for Produc. Nos. 27 & 28 to Def. InfoWars, ECF No. 207-5, at 8–9. They also seek documents concerning the revenue "generated by" other publications made by Defendants "concerning Plaintiff." *See, e.g.*, Pl.'s Mot. to Compel Ex. D1, Req. for Produc. No. 29 to Def. InfoWars, ECF No. 207-5, at 9. Because these requests are tailored to revenue from publications concerning Plaintiff, his motion to compel is GRANTED as to the Revenue Generation Requests.

C.    *The Defamation Litigation Requests*

Plaintiff argues that there are "at least five [other] defamation litigations involving" one or more of the Defendants, including litigation regarding the 2018 school shooting at Marjory Stoneman Douglas High School in Parkland, Florida and the 2012 school shooting at Sandy Hook Elementary School in Newtown, Connecticut. Pl.'s Mot. to Compel 5–6. He asks the Court to compel Defendants to produce the discovery they provided to plaintiffs in those cases.[8] *Id.* at 6. Although Plaintiff "does not intend to import" issues from those cases into this one, *id.* (emphasis omitted), he argues that discovery from those cases is relevant to actual malice because it could show "custom and usage with respect to the treatment of [similar] news items," *id.* (quoting *Herbert*, 441 U.S. at 164 n.12). Defendants counter that such evidence would not be relevant to any issue at trial, that Plaintiff already has access to publicly filed documents in those cases, and that turning over their document productions from those cases would be prejudicial. *See* Defs.' Br. in Opp'n 15–17.

As discussed earlier, although *Herbert* does not provide a blanket authorization for plaintiffs to delve into information that may be relevant to "custom and usage," *see supra* n.4, evidence of a preconceived narrative may be relevant to the actual malice inquiry, *Harris v. City of Seattle*, 152 F. App'x 565, 568 (9th Cir. 2005) ("[E]vidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite powerful evidence." (quoting Smolla, *supra*, § 3:71 (2d ed. 2005)); *Tavoulareas v. Piro*, 817 F.2d 762, 796–97 (D.C. Cir. 1987) (en banc) (explaining that although "managerial pressure" to write

---

[8] The Defamation Litigation Requests for Production at issue are: (i) Pl.'s Mot. to Compel Ex. B1, Req. for Produc. No. 39 to Def. McAdoo, ECF No. 207-3, at 10; (ii) Pl.'s Mot. to Compel Ex. C1, Req. for Produc. No. 38 to Def. Free Speech Sys., ECF No. 207-4, at 10; (3) Pl.'s Mot. to Compel Ex. D1, Req. for Produc. No. 38 to Def. InfoWars, ECF No. 207-5, at 10; (4) Pl.'s Mot. to Compel Ex. A1, Req. for Produc. No. 41 to Def. Jones, ECF No. 207-2, at 10.

"high impact investigative stories of wrongdoing" could not constitute evidence of actual malice where the publication at issue was "thoroughly researched and largely accurate," "pressure to produce sensationalistic or high-impact stories *with little or no regard for their accuracy* would be probative of actual malice"); *Eramo II*, 209 F. Supp. 3d at 872 (concluding on summary judgment that evidence of defendant's conduct in investigating the publication at issue and her prior "publi[cation of] five similar articles" probative of actual malice because they "could lead a jury to determine that [she] had a preconceived story line and may have consciously disregarded contradictory evidence").

Nonetheless, Plaintiff's Defamation Litigation Requests are overbroad. Plaintiff seeks all discovery produced by Defendants in "at least five" different lawsuits regarding events unrelated to those at issue in this case and spanning ten years. Pl.'s Mot. to Compel 5–6. Although evidence of a preconceived narrative could be relevant to a showing of actual malice, it is not clear that Plaintiff's request is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1). As Defendants point out, Plaintiff already has access to all documents publicly filed in those cases. Defs.' Br. in Opp'n 16 (noting that Plaintiff has accessed at least some of these public filings). Moreover, Plaintiff's Defamation Litigation Requests appear to inquire broadly into Defendants' intent to advocate controversial positions. Plaintiff argues that he "is only seeking discovery into those defamation actions which are related to his action: actions where the central narrative was that a tragic event was staged by either Democrats or the deep state." Pl.'s Reply 7, ECF No. 209. But his Defamation Litigation Requests are not so limited. *See, e.g.*, Pl.'s Mot. to Compel Ex. C1, Req. for Produc. No. 38 to Def. Free Speech Sys., ECF No. 207-4, at 10 (seeking "all documents from any litigation involving libel or defamation in which you, or an entity in which you have ownership and/or control, have been named as a defendant during the past ten years").

17

Because Plaintiff's Defamation Litigation Requests sweep broadly into matters unrelated to this case, and because Plaintiff already has access to all public filings in those actions, I find that the requests are not "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1). *See Warner v. Centra Health, Inc.*, No. 6:19cv55, 2020 WL 6596699, at *2 (W.D. Va. Nov. 11, 2020) (plaintiff's request for documents "from 'all committees in existence within [defendant's company]'" over two-year time span was disproportionate where only information about committees qualifying for peer-review privilege was needed for plaintiff's claims); *Robertson v. Cincinnati Ins. Co.*, No. 3:16cv4242, 2017 WL 1398342, at *3 (S.D. W. V. Apr. 18, 2017) ("[A] request for **all** insurance department complaints filed against [defendant] in **all** 49 states in which it does business, regarding **all** types of matters, is simply too broad-based. . . . If Plaintiff truly searches for similar claims to show 'other instances of misconduct' and to demonstrate a 'pattern and practice,' . . . then the request should be tailored to the facts of this case.") (emphasis in original). Accordingly, Plaintiff's motion to compel is DENIED as to the Defamation Litigation Requests.

D.    *The Gilmore Investigation Interrogatories, Marketing and Research Interrogatories, and Corrective Action Requests for Production*

Plaintiff's Gilmore Investigation Interrogatories, Marketing and Research Interrogatories, and Corrective Action Requests for Production all seek information about the editorial process and departures from journalistic standards. Evidence that a "reasonably prudent" publisher would have investigated further before publishing is insufficient, alone, to prove actual malice. *St. Amant*, 390 U.S. at 731. Nonetheless, evidence regarding a defendant's editorial processes and departures from journalistic standards is relevant to actual malice. *See Herbert*, 441 U.S at 172 ("[O]ur cases necessarily contemplate examination of the editorial process to prove the necessary awareness of probable falsehood. . . ."); *Reuber*, 925 F.2d at 712 ("While the Supreme Court in

18

*Harte-Hanks* did not endorse making departures from journalistic standards the determinant of actual malice, it did recognize that such standards might serve as supportive evidence for a reviewing court in its determination of this critical element of recovery.").

Plaintiff's Gilmore Investigation Interrogatories seek information about the fact-checking and source-checking procedures used to prepare Defendants' publications concerning Plaintiff. *See generally* Pl.'s Mot. to Compel 14–16.[9] Although Defendants responded to these interrogatories,[10] Plaintiff objects that their responses were too vague and therefore must be supplemented. *See, e.g.*, *id.* at 14 (regarding fact-checking, "FSS and Alex Jones responded with vague generalizations ('Mr. Jones reviews information from numerous sources[.] . . . Mr. Jones gleaned information about Plaintiff and his background from these sources and had no reason to believe that the sources were not providing accurate information.')"); *id.* at 15 (regarding source credibility, "FSS, InfoWars, and McAdoo each stated only that they relied 'on [their] years of experience in newsgathering, reporting, and broadcasting in assessing the information from sources that they reviewed'"). Plaintiff asks the Court to compel Defendants to explain "the actual steps they took, if any," to fact-check their stories about Plaintiff and assess source credibility. *Id.* at 16 (emphasis omitted). Defendants, in response, argue that Plaintiff's interrogatories are vague, that they have already responded in full, and that any suggestion that

---

[9] The Gilmore Investigation Interrogatories at issue are: (i) Pl.'s Mot. to Compel Ex. B2, Interrog. Nos. 4 & 5 to Def. McAdoo, ECF No. 207-3, at 19; (ii) Pl.'s Mot. to Compel Ex. A2, Interrog. Nos. 5 & 6 to Def. Jones, ECF No. 207-2, at 20–21; (iii) Pl.'s Mot. to Compel Ex. C2, Interrog. Nos. 8 & 9 to Def. InfoWars, ECF No. 207-4, at 20; and (iv) Pl.'s Mot. to Compel Ex. D2, Interrog. Nos. 8 & 9 to Def. Free Speech Sys., ECF No. 207-5, at 20.

[10] For Defendants' respective responses to these interrogatories, see: (i) Pl.'s Mot. to Compel Ex. F2, Def. McAdoo's Objs. and Resps., ECF No. 207-7, at 22–24; (ii) Pl.'s Mot. to Compel Ex. E2, Def. Jones's Objs. and Resps., ECF No. 207-6, at 25–27; (iii) Pl.'s Mot. to Compel Ex. G2, Def. Free Speech Sys.'s Objs. and Resps., ECF No. 207-8, at 23–25; and (iv) Pl.'s Mot. to Compel Ex. H2, Def. InfoWars's Objs. and Resps., ECF No. 207-9, at 23–24.

they should have followed a particular procedure for fact-checking and source-checking is improper. Defs.' Br. in Opp'n 20–21.

Information about the steps, if any, Defendants took to check their facts and sources before publishing statements about Plaintiff are plainly relevant to whether Defendants acted with actual malice. *See Hatfill v. New York Times Co.*, 532 F.3d 312, 325 (4th Cir. 2008) (explaining that although the mere "failure to exercise ordinary care" does not show actual malice, "evidence of the publication of a *completely* fabricated story, or of one based entirely on an unverified anonymous telephone call; or publication where there are obvious reasons to doubt the veracity of the informant" can show actual malice) (internal quotation marks omitted); *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 296–98 (4th Cir. 2008) (concluding that plaintiff failed to prove actual malice at summary judgment stage where there was evidence that defendant had relied on "extensive information" from "several reliable sources" when making the published statement at issue); *Carr v. Forbes, Inc.*, 259 F.3d 273, 282–83 (4th Cir. 2001) (concluding that plaintiff failed to show actual malice at summary judgment stage in part because defendant's "employee meticulously fact-checked" the publication at issue and had "at least one source [who] verified every statement in the article"); *Eramo I*, 314 F.R.D. at 211 (granting document request in part because it was "relevant to defendants' anticipated defense . . . that they exercised due diligence in fact checking [third-party source's] story" about plaintiff). And Defendants have failed to meet their burden of showing that the requested information falls outside the broad scope of discovery. Defendants cite no authority for their opposition to these interrogatories. *See* Defs.' Br. in Opp'n 20–21. Moreover, they assert that their responses to these interrogatories were "detailed and thorough." *Id.* at 20. I disagree. "Answers to interrogatories should be true, candid, explicit, responsive and complete." *Shulin v. Werner*

*Enters., Inc.*, No. 1:15cv95, 2017 WL 10379225, at \*6 (N.D. W. Va. Aug. 11, 2017); *see* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."); Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."). Defendants' responses to these interrogatories were vague and incomplete, providing little information about what steps, if any, Defendants took to check their facts and their sources prior to publishing. Accordingly, Plaintiff's motion to compel is GRANTED as to the Gilmore Investigation Interrogatories. Defendants are DIRECTED to supplement their responses thereto.

Plaintiff's Marketing and Research Interrogatories ask Defendants Jones, InfoWars, and Free Speech Systems "to identify individuals responsible for marketing, research, and/or analytic data for InfoWars, LLC . . . Free Speech Systems, LLC, and any other websites, online video channels, or entities in which [they] had or have ownership and/or control." Pl.'s Mot. to Compel 12–13 (internal quotation omitted).[11] Plaintiff also asks Defendants Free Speech Systems and InfoWars to "identify and describe the roles of the employees or agents involved in the InfoWars publications at issue from August 15 and August 21, 2017." *Id.* at 13. Defendants object, claiming that no single individual was "responsible" for these activities. Defs.' Br. in Opp'n 19– 20. Plaintiff, however, argues that he seeks responses identifying individuals "involved in" these activities and that, even if Defendants' difference of opinion as to the meaning of the term "responsible for" has merit, it would be "inefficient to serve a new document request" merely to replace "responsible for" with "involved in." Pl.'s Reply 13; *see* Fed. R. Civ. P. 1.

---

[11] The Marketing and Research Interrogatories at issue are: (i) Pl.'s Mot. to Compel Ex. A2, Interrog. No. 3 to Def. Jones, ECF No. 207-2, at 20; (ii) Pl.'s Mot. to Compel Ex. D2, Interrog. No. 4 to Def. InfoWars, ECF No. 207-5, at 19; and (iii) Pl.'s Mot. to Compel Ex. C2, Interrog. Nos. 4, 5, & 6 to Def. Free Speech Sys., ECF No. 207-4, at 19–20.

Plaintiff's Marketing and Research Interrogatories are probative of departures from journalistic standards and profit motive, both of which are relevant to a showing of actual malice. *See Harte-Hanks*, 491 U.S. at 667–68. Plaintiff explains that this information "may shed light on [Defendants'] strategy to achieve financial gain by publishing their defamatory assertions about [Plaintiff] regardless of whether they knew it was true." Pl.'s Mot. to Compel 14. He also points to prior sworn statements by Defendants and their employees acknowledging that Defendants have "invested significant resources into business and marketing" and have employees who are "involved in standard marketing and analytics regarding product sales and promotions." Pl.'s Mot. to Compel 13 (internal quotation marks and alterations omitted).

Defendants' argument regarding these interrogatories, by contrast, is thin. Aside from directing the Court to the "reasons detailed" throughout the rest of their brief in opposition, Defendants offer no authority for their position that the requested information is not relevant to any remaining claim or defense in this case. *See* Defs.' Br. in Opp'n 19–20. Accordingly, Defendants have not met their burden of showing either that this discovery is not relevant within the meaning of Rule 26(b)(1) or that this discovery "is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery." *Eramo I*, 314 F.R.D. at 209 (internal quotation marks omitted). Moreover, Defendants' argument that they employ no individuals "responsible for" marketing, research, and analytic data is unavailing. Plaintiff has clarified that he means the term "responsible for" to encompass all individuals "involved in" these activities. *See* Pl.'s Mot. to Compel 13. Plaintiff's requests must be tailored, however, to the time of the publications. Accordingly, Plaintiff's motion to compel is GRANTED as to the Marketing and Research Interrogatories. Defendants must amend their interrogatory responses to identify the individuals responsible for marketing, research, and/or

analytic data for the Defendants at the time of the publications at issue from August 15 and August 21, 2017, and identify and describe their roles in those publications.

Finally, Plaintiff's Corrective Action Requests for Production seek "all documents relating to any disciplinary or corrective actions taken against . . . Defendants, or against any of . . . Defendants' employers, employees, or agents, due to the publication of false or incorrect information during the past ten years."[12] Pl.'s Reply 9–10 (cleaned up). Plaintiff argues that evidence of prior disciplinary or corrective actions is probative of whether Defendants acted with reckless disregard for the accuracy of their statements at the time of publication in this case. *See generally id.* at 9–11. More specifically, Plaintiff asserts, if Defendants have been disciplined in the past for false publications, they should have known that the publications in this case were also false. *See id.* at 10. Defendants object: "[I]f publication of incorrect information could form the basis for actual malice, then newspapers would be deemed to have published with actual malice in every case based solely on their daily corrections page." Defs.' Br. in Opp'n 17.

Here, again, Defendants have failed to meet their burden. Plaintiff has shown that evidence of prior disciplinary or corrective actions taken against Defendants would be probative of prior departures from journalistic standards and relevant to Defendants' state of mind at the time of their publications about Plaintiff. Plaintiff also disputes Defendants' only argument to the contrary. As the language used in his Corrective Action Requests shows, Plaintiff seeks "information related to disciplinary or corrective actions 'taken against'" Defendants and their employees. Pl.'s Reply 10; *see, e.g.*, Pl.'s Mot. to Compel Ex. B1, Req. for Produc. No. 21 to

---

[12] The Corrective Action Requests for Production at issue are: (i) Pl.'s Mot. to Compel Ex. B1, Req. for Produc. No. 21 to Def. McAdoo, ECF No. 207-3, at 8; (ii) Pl.'s Mot. to Compel Ex. C1, Req. for Produc. No. 21 to Def. Free Speech Sys., ECF No. 207-4, at 8; (iii) Pl.'s Mot. to Compel Ex. D1, Req. for Produc. No. 21 to Def. InfoWars, ECF No. 207-5, at 8; and (iv) Pl.'s Mot. to Compel Ex. A1, Req. for Produc. No. 22 to Def. Jones, ECF No. 207-2, at 8.

Def. McAdoo, ECF No. 207-3, at 8. He does not seek disclosure of each and every time Defendants have "issued a retraction," as media outlets commonly do. Pl.'s Reply 10. Accordingly, Plaintiff's motion to compel is GRANTED as to the Corrective Action Requests. Defendants must supplement their responses to these requests.

IV. Conclusion

For the foregoing reasons, Plaintiff's Motion to Compel, ECF No. 207, is **GRANTED in part** and **DENIED in part**. Plaintiff's motion is GRANTED as to the Revenue Generation Requests, Gilmore Investigation Interrogatories, Marketing and Research Interrogatories, and Corrective Action Requests. Defendants must supplement their responses thereto within thirty (30) days from the date of this Order. Plaintiff's motion is GRANTED in part as to the Time Limitations Dispute; and the parties are DIRECTED to meet and confer within ten (10) days to establish agreed search terms for documents dated from March 13, 2018, through the present; and Defendants are DIRECTED to supplement their responses to Plaintiff's requests for production of documents within thirty (30) days of entry of this Order. Plaintiff's motion is DENIED as to the Jones Ownership Interrogatory and the Defamation Litigation Requests.

It is so ORDERED.

The Clerk shall send a copy of this Memorandum Opinion & Order to the parties.

ENTER: January 8, 2021

Joel C. Hoppe
U.S. Magistrate Judge