## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

BRENNAN M. GILMORE,

     Plaintiff,

v.

ALEXANDER E. (ALEX) JONES, et al.,

     Defendants.

No. 3:18-cv-00017-NKM-JCH

### PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANTS ALEX JONES, FREE SPEECH SYSTEMS, LLC, INFOWARS, LLC, AND JAMES HOFT

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and the Court's April 1, 2021 Order, D.I. 255, Plaintiff Brennan Gilmore respectfully moves this Court for an order compelling Defendants Alex Jones, Free Speech Systems, LLC ("FSS"), InfoWars, LLC ("InfoWars"), and James Hoft ("Hoft") (collectively, "Defendants"),[1] to respond to Plaintiff's Second Set of Requests for Production.[2]

Mr. Gilmore contends that Defendants made defamatory statements about him to fit a preconceived story line that the Democratic Party, Antifa, the "deep state," and other similar groups orchestrated the attacks at the August 2017 "Unite the Right" rallies in Charlottesville, Virginia. *See, e.g.*, D.I. 29 ("Compl."), ¶¶ 79-80, 98-100. In its January 8, 2021 Order, this Court recognized that evidence that a defendant conceived of a story *before* an investigation and

---

[1] Defendants Jones, FSS, and InfoWars are collectively referred to as the "InfoWars Defendants."

[2] Defendant Lee Ann McAdoo has represented that she has no responsive documents in her possession. *See* Declaration of Hassen Sayeed ("Sayeed Decl.") ¶ 7; *id.* Ex. J. Mr. Gilmore, accordingly, does not move to compel responses from her and has excluded her from this Motion.

then consciously conformed the evidence to that preconceived story is relevant to establishing the requisite intent for proving defamation of a limited-purpose public figure like Mr. Gilmore. *See* D.I. 219 ("January Order") at 16-17; *see generally Gilmore v. Jones*, 370 F. Supp. 3d 630, 667 (W.D. Va. 2019). Accordingly, and in light of that Order, Mr. Gilmore served document requests narrowly tailored to establish that Defendants' custom and practice was to pursue their well-worn narrative in similarly tragic events.

Despite the relevance of the information sought—supporting a key element of Mr. Gilmore's defamation claim—Defendants have flatly refused to produce any responses. That refusal is based on a shifting construction of what the requests for production seek, as well as a misapprehension of both the January Order and the controlling law. For the reasons set forth below, Mr. Gilmore respectfully requests that the Court reject Defendants' excuses and direct them to respond in full to the document requests at issue.

**BACKGROUND**

Mr. Gilmore served his first set of Requests for Production on Defendants on March 5, 2020. In relevant part, those requests sought "all documents from any litigation involving libel or defamation in which" the Defendants "have been named as a defendant in the past ten years." *See* D.I. 207-2, D.I. 207-3, D.I. 207-4, D.I. 207-5; *see also* Sayeed Decl. ¶ 3, Ex. A. In its January Order, the Court recognized that these RFPs—referred to as the "Defamation Litigation Requests"—sought relevant information because "evidence of a preconceived narrative may be relevant to the actual malice inquiry." D.I. 219 at 16. The Court held that the Defamation Litigation Requests as written, however, were overbroad. Specifically, the Court observed that the Requests "inquire[d] broadly into Defendants' intent to advocate controversial positions" instead of seeking specific discovery about incidents "where the central narrative was that a

2

tragic event was staged by either Democrats or the deep state." *Id.* at 17.

In light of the Court's guidance, Mr. Gilmore served a Second Set of Requests for Production on January 15, 2021. The requests propounded revised, narrowly tailored inquiries seeking only records alleging that Defendants operated under a preconceived narrative. RFP No. 40 to FSS, RFP No. 41 to McAdoo, RFP No. 47 to Jones, RFP No. 40 to InfoWars, and RFP No. 43 to Hoft (collectively, the "Narrowed Defamation Litigation Requests") ask the Defendants to:

> Produce all documents, communications, and/or recordings in your possession and/or in the possession of entities in which you have ownership and/or control, whether published or not, **concerning any allegations that** the Sandy Hook shooting on December 14, 2012, the Orlando Nightclub shooting on June 12, 2016, the Las Vegas shooting on October 1, 2017, the Parkland shooting on February 14, 2018, and/or the storming of the U.S. Capitol on January 6, 2021 **were staged by Democrats, Antifa, the deep state, or any other entity**.

*See* Sayeed Decl. ¶ 4; *id.* Exs. B-E (Plaintiff's Second Set of Requests for Production) (emphases added).

Notwithstanding the narrowed scope of these requests, Defendants asserted a blanket objection in responses served on March 10 and 17, 2021. Sayeed Decl., ¶ 6, Exs. F-I (Defendants' Responses and Objections to Plaintiff's Second Set of RFPs). Those objections asserted that the discovery sought was irrelevant and overbroad. *See id.* At the ensuing meet and confers, Defendants made clear that they were unwilling to move from their stated positions. Sayeed Decl., ¶¶ 8-9. Having reached an impasse, Mr. Gilmore accordingly informed Defendants he would seek leave to compel a response. Sayeed Decl., ¶ 10.

On April 1, 2021, the Court granted Mr. Gilmore leave to file a motion to compel after a telephonic discovery hearing. D.I. 255.

3

## ARGUMENT

The rules of discovery afford Mr. Gilmore access to nonprivileged information relevant to his claims or defenses, so long as the request is proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1); *see Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016). It is clear that Defendants misapprehend the scope of the Narrowed Defamation Litigation Requests and the Court's January Order. Moreover, Defendants' formulaic objections of overbreadth and relevance are meritless and should be denied.

*First*, this Court has **already recognized** that the information sought by the Narrowed Defamation Litigation Requests is relevant to Mr. Gilmore's claim that Defendants made false statements about him with actual malice. Because defendants rarely admit to publishing statements with actual malice, courts typically infer such intent from objective facts. *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 183 (2d Cir. 2000). In fact, as this Court recognized, "indirect evidence is often *key* to proving actual malice." D.I. 219 at 8 (emphasis added). Types of circumstantial information that may be relevant to the inquiry can include "custom and usage with respect to the treatment of news items [similar to] the one under consideration." *Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979); *see* D.I. 219 at 8. Likewise, the accumulation of facts providing "evidence of negligence, motive and intent" can support a finding of actual malice. *Bose Corp. v. Consumers Union of U.S. Inc.*, 692 F.2d 189, 196 (1st Cir. 1982). Recognizing *Herbert*'s "persuasive authority," this Court further held that evidence of a preconceived narrative, in particular, can "be relevant to the actual malice inquiry." D.I. 219 at 8-9 n.4, 16. *See also Harris v. City of Seattle*, 152 F. App'x 565, 568 (9th Cir. 2005) (cited approvingly by the Court, *see* D.I. 219 at 16) ("[E]vidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to

4

the preconceived story is evidence of actual malice, and may often prove to be quite powerful

evidence.") (citation omitted).

Here, Mr. Gilmore alleges that Defendants used a "preconceived and well-worn

narrative" that the violence in Charlottesville was the creation of the Democratic Party, the deep

state, and Antifa, and that Defendants consciously made false statements about Mr. Gilmore to

conform to that narrative. *See, e.g.*, Compl. ¶¶ 58, 79-80, 98-100. The Narrowed Defamation

Litigation Requests are tailored to these allegations. They seek documents, communications, and

other recordings concerning allegations by Defendants that five tragic incidents were likewise

staged by similar actors. *See* Sayeed Decl., ¶¶ 4-5, Exs. B-E. Responsive discovery would

illustrate Defendants' publishing practices and provide probative evidence whether Defendants

were driven by a preconceived narrative when they published their false statements about Mr.

Gilmore.

Given that such information goes to the heart of Mr. Gilmore's allegations about actual

malice, and given the Court's January Order, Defendants cannot seriously dispute the relevance

of the information sought. Defendants argue that because the Narrowed Defamation Litigation

Requests inquire about incidents other than the "Unite the Rally," the requests necessarily seek

irrelevant information. *See, e.g.*, D.I. 259 at 26:3-7. Defendants' argument, however, ignores

the Court's express recognition in the January Order that evidence of a preconceived narrative is

relevant to a defamation claim. *See* D.I. 219 at 16. Other courts have reached the same

conclusion. *See, e.g.*, *Harris*, 152 F. App'x at 568; *Eramo v. Rolling Stone*, 209 F. Supp. 3d 862,

872 (W.D. Va. 2016) (cited approvingly by the Court, *see* D.I. 219 at 11) (prior "publi[cation of]

five similar articles" was probative of actual malice because it "could lead a jury to determine

that [she] had a preconceived story line and may have consciously disregarded contradictory evidence").

*Second*, even taking Defendants' objections about the form of the request at face value, the Narrowed Defamation Litigation Requests address the Court's prior overbreadth concerns. The initial Defamation Litigation Requests covered a ten-year period and sought information on "**any** litigation involving libel or defamation" where Defendants were named. *See* D.I. 219 at 17 (emphasis added). As the Court explained, those requests did not expressly limit the requested discovery to "actions where the central narrative was a tragic event" staged by Democrats or the deep state. *Id.* In contrast, the revised Narrowed Defamation Litigation Requests identify five discrete incidents where the central narrative was a tragic event, and about which Mr. Gilmore only seeks discovery about how Defendants framed those events. The plain language of the requests expressly limits the information sought to allegations that Democrats, Antifa, the deep state, or a similar entity staged the incidents. Sayeed Decl., ¶¶ 4-5, Exs. B-E (Plaintiff's Second Set of RFPs).

In other words, the Narrowed Defamation Litigation Requests do not seek **all** information concerning the five incidents. It would have defied this Court's January Order—as well as common  sense—if Mr. Gilmore had tried to reprise requests that the Court had already rejected as overbroad. Instead, Mr. Gilmore followed the Court's guidance. He focused his revised requests on five specific incidents and asked whether Defendants (as they did in his case) characterized those incidents as staged.

That is a plainly narrow request. Accordingly, Defendants' generalized, non-specific assertions of burden cannot prevent the requested discovery. *See Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 498 (D. Md. 2000) ("The party claiming that a discovery request is

unduly burdensome must allege specific facts that indicate the nature and extent of the burden,

usually by affidavits or other reliable evidence.  A conclusory assertion of burden and expense is

not enough.") (citations omitted).[3]  Defendants never provided any specific information or

identified any declarants to explain what the burden would be in complying with the Narrowed

Defamation Litigation Requests.  It may be that there are thousands of documents in which

Defendants have alleged these five incidents were staged; it may be that there none.  But

searching for them and producing them if they exist should not be difficult, and Defendants have

provided no reason to the contrary other than their reluctance to undertake the search.

## CONCLUSION

The requested information informs a key element of Mr. Gilmore's defamation claim.

The revised requests are narrowly tailored to this action, consistent with the January Order.

Defendants' boilerplate and unsubstantiated objections fall far short of meeting their burden to

show that Mr. Gilmore should not receive the discovery to which he is entitled under the law as

potential evidence of actual malice.

For these reasons, and the reasons set forth above, Mr. Gilmore respectfully requests that

the Court grant his motion to compel and direct Defendants to supplement their responses to the

Narrowed Defamation Litigation Requests.

---

[3] Mr. Gilmore repeats here the compromise he offered during the April 1, 2021 telephonic conference with the Court:  the Narrowed Defamation Litigation Requests can be further limited to just those documents, communications, and other recordings created by Defendants.  This would directly address Defendants' claim that it would be too burdensome to search the "unsolicited emails" they receive for relevant information.  *See* D.I. 259 at 26:24-27:6.

Dated: April 8, 2021

Respectfully submitted,

By: _/s/ Hassen A. Sayeed_
Jonathan Hacker, admitted _pro hac vice_
Anwar L. Graves, admitted _pro hac vice_
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC  20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
agraves@omm.com
jhacker@omm.com

Hassen A. Sayeed, admitted _pro hac vice_
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
hsayeed@omm.com

Andrew Mendrala, Virginia Bar No. 82424
COHEN  MILSTEIN  SELLERS  &  TOLL
PLLC
1100 New York Avenue N.W., Fifth Floor
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
amendrala@cohenmilstein.com

Aderson Francois, admitted _pro hac vice_
CIVIL RIGHTS CLINIC
GEORGETOWN UNIVERSITY LAW
CENTER
600 New Jersey Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 662-9065
Aderson.Francois@georgetown.edu

Elizabeth B. Wydra, admitted _pro hac vice_
Brianne J. Gorod, admitted _pro hac vice_
CONSTITUTIONAL
ACCOUNTABILITY
CENTER
1200 18th Street, N.W., Suite 501
Washington, D.C. 20036
Telephone: (202) 296-6889
elizabeth@theusconstitution.org
brianne@theusconstitution.org

8

## RULE 37 CERTIFICATION

I hereby certify that the counsel for Plaintiff have in good faith conferred with counsel for the Defendants in an effort to obtain the discovery that is the subject of this motion without seeking Court action, and those efforts were unsuccessful.

.

_/s/ Hassen A. Sayeed_
Hassen A. Sayeed

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of April, 2021, a copy of the foregoing Motion to Compel was served on all parties via the Court's Electronic Case Filing system, and separately sent via electronic mail to Mr. Lee Stranahan, Mr. Derrick Wilburn, and Mr. Scott Creighton.

*/s/ Hassen A. Sayeed*
Hassen A. Sayeed
