IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

BRENNAN M. GILMORE,

    Plaintiff,

v.

ALEXANDER E. (ALEX) JONES, et al.,

    Defendants.

No. 3:18-cv-00017-NKM-JCH

**PLAINTIFF'S MOTION FOR EVIDENTIARY SANCTIONS
AGAINST DEFENDANT LEE STRANAHAN**

Pursuant to Rules 37(b)(2) and 37(e) of the Federal Rules of Civil Procedure, Plaintiff Brennan Gilmore respectfully moves this Court for sanctions against Defendant Lee Stranahan. After months of evasive and dilatory behavior, and despite repeated accommodations from Plaintiff and the Court, Mr. Stranahan has failed to produce any responsive articles or posts from his website, Citizen Journalism School ("CJS Documents"). Mr. Stranahan failed to take any reasonable steps to preserve the CJS Documents, allowing them to be deleted from the only server where they were stored well after he was on notice about his obligation to preserve evidence. Mr. Stranahan's failure to preserve these documents results from a lack of good faith and apparently deliberate disregard for the Court's instructions, evidenced in his lengthy history of noncompliance with his discovery obligations. Plaintiff will be severely prejudiced by the loss of the CJS Documents, particularly given Mr. Stranahan's broader failure to produce adequate discovery responses. Given the permanent loss of the CJS Documents, Plaintiff respectfully submits that an adverse jury instruction is the only way to remedy the harm to Plaintiff's case.

For these reasons, Plaintiff requests that the Court impose sanctions under Rule 37(b)(2)—or, in the alternative, under its inherent authority—by instructing the jury that Mr. Stranahan chose to intentionally withhold documents, and that the jury may draw adverse inferences from that fact, including that Mr. Stranahan did so because he was aware that the documents contained evidence of his liability.

## BACKGROUND

Plaintiff seeks documents from Mr. Stranahan's website, Citizen Journalism School, that are responsive to Plaintiff's Requests for Production ("RFPs") Nos. 11, 20, and 24.[1] Mr. Stranahan does not contest that he is the founder of the Citizen Journalism School website, which is devoted to the theme that "the media is the enemy," and promises to teach paying subscribers how to become a "news maker" so that "they can do something about it." Ex. A. The documents are referenced in an email produced by Mr. Stranahan, which contains roughly twenty broken links to articles about Plaintiff collected by Mr. Stranahan.[2] Ex. B. In the words of Mr. Stranahan's contractee Katie McHugh, the articles constitute a "complete list of Brennan Gilmore posts" from the Citizen Journalism School website, and were to serve as the source material for "an article with a headline along the lines of '7 Takeaways from Lee Stranahan's InfoWars Interview on The Deadly Charlottesville Rally.'" *Id*. The comments to these articles

---

[1] RFP No. 11 requests that Mr. Stranahan "[p]roduce all documents concerning Plaintiff appearing on any website or online video channel ever owned, controlled, or used by you, including any postings or comments by you or others appearing on those websites or online video channels." RFP No. 20 requests that Mr. Stranahan "[p]roduce all documents identifying the methods by which you have investigated the accuracy of claims made by you, or entities in which you have or had ownership and/or control, concerning Plaintiff." RFP No. 23 requests that Mr. Stranahan "[p]roduce all documents (regardless of creation date) setting forth your editorial standards or guidelines, or the standards or guidelines of any entity that you own and/or control, from August 11, 2017 through the present." *See* Ex. C (Plaintiff's First Set of RFPs to Defendant Stranahan) at 6-7.

would have presumably shown how Mr. Stranahan's audience interpreted his accusations against Plaintiff, including whether they considered the articles to be factual. Mr. Stranahan may also have responded to comments on the articles, which would have been probative of the actual malice associated with his comments about Brennan Gilmore in his InfoWars interview.

Mr. Stranahan has amassed a long record of evasive and noncompliant behavior with respect to Plaintiff's requests for the CJS Documents. Plaintiff first served Mr. Stranahan with document requests on March 5, 2020. *See* Ex. C (Plaintiff's First Set of RFPs to Defendant Stranahan) at 10. Even after consenting to multiple extensions, Plaintiff was forced to move to compel responses from Mr. Stranahan on July 2, 2020 due to his continued failure to produce a single document and his impermissibly vague responses to Plaintiff's RFPs that were simply copied from the responses of other defendants. D.I. 197. On July 17, 2020, this Court granted Plaintiff's request and ordered that Mr. Stranahan provide within 21 days "complete revised responses to Plaintiff's . . . requests for production of documents" and to "state whether responsive material is being withheld on the basis of [any] objection[s]." D.I. 202 at 1.

Mr. Stranahan ignored the Court's order, making his first "production" four days after the Court's deadline on August 11, 2020 in the form of a corrupted file that Plaintiff's counsel was unable to access. Sayeed Decl. ¶ 4; Ex. D. On August 17, 2020, Plaintiff's counsel conferred with Mr. Stranahan and he advised that he would submit his complete responses to Plaintiff's RFPs by August 21, 2020. Sayeed Decl. ¶ 5; Ex. E. Mr. Stranahan again failed to fulfill that assurance and made no further communication, prompting Plaintiff to contact him again ten days later. Sayeed Decl. ¶ 6; Ex. F. On September 2, 2020, Mr. Stranahan stated that his production was not complete but that he expected to finalize it by September 7, 2020. Sayeed Decl. ¶ 7; Ex.

---

[2] Mr. Stranahan has not disputed the responsiveness of the lost articles to Plaintiff's RFPs. Mar.

G at 7-8. Mr. Stranahan yet again failed to comply with this self-imposed deadline.

Plaintiff emailed Mr. Stranahan on September 8, 2020 to inquire again about his failure to produce either RFP responses or documents. Sayeed Decl. ¶ 7; Ex. G at 6. Mr. Stranahan said that he would provide additional responsive documents the same day. Sayeed Decl. ¶ 7. The *next* day, on September 9, 2020, after a meet-and-confer, Mr. Stranahan provided a list of broken internet links to his articles on the Citizen Journalism School website that Plaintiff's counsel could not access, although the article titles contained in the links showed that the articles were plainly responsive to Plaintiff's RFPs. *Id.*; Ex. G at 2-4.

Plaintiff's counsel explained to Mr. Stranahan that he needed to produce viewable versions of the CJS Documents, Sayeed Decl. ¶ 8, and on October 5, 2020, Mr. Stranahan made a Bates-stamped production of the same nine email chains he had sent previously, but no other material. Sayeed Decl. ¶ 8; Ex. H. Plaintiff's counsel once again inquired about Mr. Stranahan's production at a meet and confer on November 6, 2020. Sayeed Decl. ¶ 9; Ex. I. On the call, Mr. Stranahan stated that he would continue his efforts to produce the remaining responsive material, and that he would provide an update by November 9, 2020. Sayeed Decl. ¶ 9. On that date, Mr. Stranahan sent an email to Plaintiff saying "I don't see any posts on Citizen Journalism School." Sayeed Decl. ¶ 9; Ex. J. After Plaintiff followed up with him on November 13, 2020, Mr. Stranahan said that he could not locate the CJS Documents.

Having received no more documents from Mr. Stranahan, Plaintiff reiterated his concerns about the lack of production at a meet-and-confer on January 13, 2021. Sayeed Decl. ¶ 10; Ex. K. Mr. Stranahan said that he had taken steps to access the CJS Documents by contacting potential custodians of that material, and that by January 15, 2021, he would provide Plaintiff

---

31, 2021 Hr'g (D.I. 259) at 43:16-23 (admitting that the posts concerned Mr. Gilmore).

with a letter outlining his plan to move forward with discovery. *Id*. During the same conferral, Plaintiff provided notice to Mr. Stranahan of Plaintiff's intent to seek relief from the Court in the absence of meaningful production. *Id*.

Yet again, Mr. Stranahan failed to follow through. He did not provide any letter detailing his discovery efforts on January 15, 2021, instead stating that he had reached out to two potential custodians of his Citizen Journalism School postings and would "expect to have more material on . . . January 19th after this holiday weekend." Sayeed Decl. ¶ 11; Ex. L. Like all of his previous promises over the past five months, Mr. Stranahan let this new deadline lapse. Sayeed Decl. ¶ 11.

For the first time, at the February 3, 2021 hearing before the Court, Mr. Stranahan said the CJS Documents were "gone. . . . It does not exist." Feb. 3, 2021 Hr'g (D.I. 242) at 22:17, 25:1-2; 28:23; *see id.* ("There's no way to give them the information, that I can see, and I spent hours on this."). Mr. Stranahan claimed that the documents were lost as a result of his transfer of files by his son, Shane Stranahan, to a new server. *Id.* at 22:17-4, 25:4-8. He also said that he had spoken with his contractee Katie McHugh, and she did not have the documents. *Id.* at 22:22-23:3. The Citizen Journalism School website remains accessible on the Internet, and Mr. Stranahan's position appears to be that *only* the CJS Documents have been lost. *Id*. at 25:1-14, 28:17-25. At the Court's instruction, *id*. at 29:1-12, Plaintiff sought unsuccessfully to contact both Shane Stranahan and Katie McHugh using contact information provided by Mr. Stranahan. *See* Sayeed Decl. ¶ 12; Exs. M-N. Plaintiff informed the Court of that fact on March 31, 2021, and the Court granted Plaintiff leave to file a motion for sanctions with respect to the CJS

Documents.[3]

## LEGAL STANDARD

Rule 37(b)(2) of the Federal Rules of Civil Procedure grants broad discretion to courts to impose sanctions if "a party . . . fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A); *Sines v. Kessler*, No. 3:17-CV-00072, 2020 WL 7028710, at *1 (W.D. Va. Nov. 30, 2020). Sanctions may include "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii). A court may also award sanctions for discovery violations pursuant to its inherent authority. *See, e.g.*, *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 375 (4th Cir. 2013) ("[A] court acting under its inherent authority may impose sanctions for any conduct utterly inconsistent with the orderly administration of justice." (quotation omitted)); *Sampson v. City of Cambridge*, 251 F.R.D. 172, 178–79 (D. Md. 2008).[4]

The Fourth Circuit has "developed a four-part test for a district court to use when

---

[3] Mr. Stranahan has also failed to meet the April 9 and April 14, 2021 deadlines set by the Court for producing the transcripts for his Periscope videos and discovery responses to Plaintiff's second set of discovery requests. Mar. 31, 2021 Hr'g (D.I. 259) at 64:13-16; D.I. 255. Mr. Stranahan has blamed his vision issues but he has been able to Tweet and email regularly. Plaintiff has sought through an email to Ms. Dotson to **request the Court's help to seek the relevant and overdue discovery from Mr. Stranahan, and that request is respectfully repeated here.**

[4] The factors courts consider in exercising their inherent authority are similar to those applied under Rule 37: "(1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that [the court] seldom dismiss[es] claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest." *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 373-74 (4th Cir. 2013) (quotation omitted).

determining what sanctions to impose" under Rule 37(b)(2)(A). *Belk v. Charlotte-Mecklenburg Bd. Of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001); *see S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). The court must consider: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *S. States*, 318 F.3d at 597 (quoting *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998)).

Under Rule 37(e), a movant must satisfy four threshold requirements before a court decides if any spoliation sanction is appropriate: "(1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018). Under Rule 37(e), courts may enter an adverse inference "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." *Id.*

When acting pursuant to their inherent authority, courts have "broad discretion in choosing an appropriate sanction for spoliation" in order to "preserve the integrity of the judicial process." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). When imposing sanctions, "a court must find some degree of fault," and "consider the degree of culpability and the extent of the prejudice, if any." *Id.*; *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 499-500 (E.D. Va. 2011). An adverse inference instruction requires "a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction." *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995).

**ARGUMENT**

After a series of missed discovery deadlines, Mr. Stranahan finally announced at the Court's March 31, 2021 hearing that the CJS Documents have been irretrievably deleted from the server for his website. *See supra* at 5. By failing to preserve the CJS Documents, Mr. Stranahan prejudices Plaintiff in a way that goes to the heart of Plaintiff's case. Mr. Stranahan has deprived Plaintiff of at least 20 different articles that directly addressed Plaintiff and the events at the Charlottesville Unite the Right Rally. This evidence would have been probative of Mr. Stranahan's state of mind with respect to Plaintiff and to the manner in which Mr. Stranahan's audience received his statements—both matters that are essential to Plaintiff's claim against Mr. Stranahan. *See supra* at 2-3. Given that the evidence is now irrecoverable, the only remedy for the harm caused by Mr. Stranahan's failure to take any reasonable steps to preserve the CJS Documents is a jury instruction permitting the jury to make adverse inferences about their content.

**I.   MR. STRANAHAN FAILED TO PRESERVE AND PRODUCE THE CJS DOCUMENTS WILLFULLY AND IN BAD FAITH**

There is ample basis for the Court to conclude that Mr. Stranahan's failure to preserve the CJS Documents was willful or in bad faith. Mr. Stranahan's lengthy history of evasive and dilatory behavior reflects a pattern of deliberate disregard for discovery obligations that goes well beyond mere negligence. Some of Mr. Stranahan's own excuses for his discovery failures only serve to further undermine his credibility. Moreover, Mr. Stranahan has clearly been on notice about his preservation obligations since well before the events he claims caused the loss of the CJS Documents. As the owner of the Citizens Journalism School website, Mr. Stranahan had authority to manage the content on the website, and failed to use that authority to preserve responsive documents according to his obligations.

The willfulness of Mr. Stranahan's failure to preserve and produce the CJS Documents is clear from his repeated defiance of discovery deadlines, including deadlines set by the Court as well as those negotiated by Plaintiff. *See supra* at 3-5; *Sines*, 2020 WL 7028710, at *14 (finding bad faith based in part on the noncomplying party's "broken promises" and "halfhearted steps towards compliance"); *Certain Underwriters at Lloyd's, London Subscribing to Pol'y No. BO823PP1308460 v. AdvanFort Co.*, No. 1:18-cv-1421 (TSE/TCB), 2019 WL 3366103, at *8 (E.D. Va. July 25, 2019) ("In the Fourth Circuit, 'bad faith includes willful conduct, where the party "clearly should have understood his duty to the court" but nonetheless "deliberately disregarded" it." (quoting *Axiom Res. Mgmt., Inc. v. Alfotech Sols.*, LLC, No. 1:10cv1011 (LMB/JFA), 2011 WL 2560096, at *7 (E.D. Va. June 3, 2011))). Mr. Stranahan failed to timely comply with the Court's previous motion to compel, making a deficient and incomplete production several days after the deadline set by the Court. *See supra* at 3. He has also ignored deadlines offered by Plaintiff in good-faith efforts to accommodate him. *See supra* at 3-5.

Mr. Stranahan has cited a wide range of shifting excuses over this long period of noncompliance. For example, in explanation of his failure to produce emails sent from his own account, Mr. Stranahan said at a meet and confer that he didn't send any emails—yet, the handful of emails that Mr. Stranahan *did* produce included responses to emails he had sent. *See* Sayeed Decl. ¶ 13, Ex. O at 000014-19, 000024. Mr. Stranahan has also cited his own technical inability when explaining his failure to produce or preserve documents, alleging that he lacks technical competency to access the videos and postings on his Citizen Journalism School website. *See* Ex. L ("[Mr. Stranahan's son] has the tech knowledge."). Yet, his website suggests a robust understanding of internet infrastructure, purporting to teach paying subscribers how to set up their own websites, and even offering to manage their servers. *See* Ex. P. Further, the fact

9

that the Citizen Journalism School currently charges paying users up to $995 for courses suggest that Mr. Stranahan has robust technical support. *Id*. at 4. Plaintiff submits that Mr. Stranahan's sudden claim of technical incompetency is simply not credible. Regardless, those excuses are insufficient to justify his Mr. Stranahan's failure to preserve relevant discovery.

Mr. Stranahan has had notice of his duty to preserve documents since at least March 13, 2018, when he received Plaintiff's complaint and notice of his allegations. Mr. Stranahan claimed that the loss of the CJS Documents was caused when the website was transferred to a new domain "about a year ago." Feb. 3, 2021 Hr'g (D.I. 242) at 22:17-19. That would date the loss to approximately March 2020, two full years after Stranahan's preservation obligations arose. Moreover, Mr. Stranahan is the owner of the Citizens Journalism School website, which means that he bears ultimate responsibility for the disposition of the documents at issue. *Id*. at 21:16-17. On February 7, 2020, just prior to the time Mr. Stranahan claims the loss of the CJS Documents occurred, Mr. Stranahan informed Plaintiff that he had "lost all messages" on his "phone from over a year." *See* Ex. Q at 1. Mr. Stranahan's prior failure to preserve his text messages seemingly did not result in any increase in care or good faith in preserving the CJS Documents. Taken in sum, these facts illustrate bad faith.

## II.  MR. STRANAHAN'S ACT OF SPOLIATION IS PREJUDICIAL TO PLAINTIFF'S CASE

Mr. Stranahan's failure to preserve and produce the CJS Documents is deeply prejudicial to Plaintiff's case, on both substantive and procedural grounds. Mr. Stranahan has not disputed the responsiveness of these documents or Plaintiff's entitlement to them through discovery. Mar. 31, 2021 Hr'g (D.I. 259) at 43:16-23 (admitting that the posts concerned Mr. Gilmore). The links in the email from Ms. McHugh referred to at least 20 articles, all of which directly addressed Plaintiff and the events at the heart of this case. Ex. B. Those articles were very likely

to contain material probative of Mr. Stranahan's actual malice, and of whether his audience received his statements as fact. The Court has previously recognized that "indirect evidence is often key to proving actual malice," D.I. 219 at 8, and that "evidence of motive and of departure from accepted journalistic standards relevant to the actual malice inquiry." *Id.* (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *cf. Sines*, 2020 WL 7028710, at *14 ("discovery was especially critical in this case because it is inherently difficult to prove a conspiracy," which is "usually proven by circumstantial evidence" (quotation omitted)). Moreover, the Court has observed that "[e]vidence created after the date of publication may be relevant to actual malice if it addresses the defendant's state of mind at the time of publication." D.I. 219 at 12.

Mr. Stranahan's conduct has also resulted in procedural prejudice to Plaintiff. *See Sines*, 2020 WL 7028710, at *14 ("Stalling and ignoring the direct orders of the court with impunity is misconduct that must obviously be deterred and will be sanctioned as justice requires." (quotation and quotation marks omitted)); *First Mariner Bank v. Resolution Law Grp.*, Civ. No. MJG-12-1133, 2013 WL 5797381, at *10 (D. Md. Oct. 24, 2013) ("[P]iecemeal, less than complete and slow production takes a toll and inflicts a disadvantage on the requesting party. . . . It is wearing, counter-productive, wholly unacceptable and sanctionable."). Mr. Stranahan's noncompliance has greatly burdened both Plaintiff and the Court, jeopardizing the orderly progress of the case and the parties' ability to complete discovery according to the Court's schedule, and consuming judicial resources by forcing Plaintiff repeatedly to resort to the Court's intervention.

### III. A JURY INSTRUCTION ON ADVERSE INFERENCE IS AN APPROPRIATE SANCTION

There is no dispute that the CJS Documents are irrecoverable. Mar. 31, 2021 Hr'g (D.I. 259) at 44:25-45:11. Plaintiff submits that the only possible remedy for Mr. Stranahan's noncompliance is a jury instruction permitting the jury to make an adverse inference regarding the contents of the CJS Documents. Mr. Stranahan's conduct exemplifies the type of deterrable conduct that Rule 37 sanctions are meant to prevent, considering the cost to the Court's resources and to the parties. *See supra* at 11. Moreover, an adverse inference is not the most severe sanction the Court could impose, which would be a default judgment. Thus, an adverse inference instruction would not raise the same fairness concerns that outright judgment against Mr. Stranahan would have, and thus does not require a finding that Mr. Stranahan showed flagrant bad faith or callous disregard. *See Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503 (4th Cir. 1977) (noting that default judgment is reserved for egregious cases of misconduct).

### CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court impose sanctions under Rule 37—or, in the alternative, under its inherent authority—by instructing the jury that Mr. Stranahan deliberately withheld or destroyed the CJS Documents, and that the jury may draw adverse inferences from that fact, including that Mr. Stranahan did so because he was aware that the documents contained evidence of his liability.

Dated: April 19, 2021               Respectfully submitted,

By:   */s/ Hassen A. Sayeed*
Jonathan Hacker, admitted *pro hac vice*
Anwar L. Graves, admitted *pro hac vice*
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC  20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
agraves@omm.com
jhacker@omm.com

Hassen A. Sayeed, admitted *pro hac vice*
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
hsayeed@omm.com

Andrew Mendrala, Virginia Bar No. 82424
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue N.W., Fifth Floor
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
amendrala@cohenmilstein.com

Aderson Francois, admitted *pro hac vice*
CIVIL RIGHTS CLINIC
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 662-9065
Aderson.Francois@georgetown.edu

Elizabeth B. Wydra, admitted *pro hac vice*
Brianne J. Gorod, admitted *pro hac vice*
Ashwin Phatak, admitted *pro hac vice*
CONSTITUTIONAL ACCOUNTABILITY CENTER
1200 18th Street, N.W., Suite 501
Washington, D.C. 20036
Telephone: (202) 296-6889
elizabeth@theusconstitution.org
brianne@theusconstitution.org
ashwin@theusconstitution.org

## **RULE 37 CERTIFICATION**

I hereby certify that the counsel for Plaintiff have in good faith conferred with Mr. Stranahan in an effort to obtain the discovery that is the subject of this motion without seeking Court action, and those efforts were unsuccessful.

*/s/ Hassen A. Sayeed*
Hassen A. Sayeed

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of April, 2021, a copy of the foregoing Motion for Sanctions against Defendant Lee Stranahan was served on all parties via the Court's Electronic Case Filing system, and separately sent via electronic mail to Mr. Lee Stranahan, Mr. Scott Creighton, and Mr. Derrick Wilburn.

>    */s/ Hassen A. Sayeed*
> Hassen A. Sayeed