IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

BRENNAN M. GILMORE,

    Plaintiff,

v.                                                            Case No. 3:18-cv-00017

ALEXANDER E. JONES, et al.,

    Defendants.

## OBJECTIONS AND MOTION TO QUASH RULE 45 SUBPOENA AND DEPOSITION NOTICE ISSUED TO CITY OF CHARLOTTESVILLE POLICE DETECTIVE DECLAN HICKEY AND FOR A PROTECTIVE ORDER

COME NOW, by special appearance, non-parties the City of Charlottesville, Virginia ("City") and Mr. Declan Hickey ("Hickey"), an individual employed by the City as a police detective, by counsel, and respectfully move this Court for entry of an Order quashing, or significantly narrowing, the subpoena and deposition notice issued to Hickey in this matter (**Attachment A** hereto). In support of this motion, the City and Hickey assert the following grounds:

## I.       FACTUAL BACKGROUND

The lawsuit is a defamation action involving Plaintiff Gilmore's claims of defamation against Defendants arising out of articles and statements published after the August 12, 2017 Unite the Right ("UTR") Rally. Gilmore alleges that Defendants falsely accused him of being "part of some 'Deep State' conspiracy, participated in the orchestration of James Alex Fields, Jr.'s car attack in Charlottesville on August 12, 2017, which killed one person and injured many others." (ECF Doc. 29, at ¶ 214.) Hickey is not a party to this lawsuit, nor is his employer (the City of Charlottesville, Virginia "City")).

1

On April 27, 2021 the City filed its Objections and Motion to Quash subpoenas and deposition notices issued to the City of Charlottesville and a former City chief of police, seeking substantially the same records and testimony as that sought from Detective Hickey. (*See* Document No. 275 filed in this case). The City has not identified Detective Hickey as its spokesperson and would not designate Detective Hickey as its representative in a corporate deposition.

James Hoft ("Hoft") is a Defendant in this defamation case.  Gilmore alleges that "Hoft wrote and published an article containing false and defamatory statements about [him] entitled *Random Man at Protests Interviewed by MSNBC, NY Times is Deep State Shill Linked to George Soros*."  (ECF Doc. 29, at ¶¶ 20, 62-82.)  Gilmore alleges that Hoft's article falsely implies:

1.   That the State Department organized the Charlottesville rioting and/or attack;

2.   That Mr. Gilmore participated in the State Department's planning of the Charlottesville riots and/or attack;

3.   That the State Department conspired to conceal these facts by removing information about Mr. Gilmore from a number of internet sources;

4.   That media outlets were involved in the conspiracy because they knew Mr. Gilmore was  a State Department employee;

5.   That the media characterized Mr. Gilmore as a casual observer because they were working in concert with Mr. Gilmore, the State Department, and other government agencies to cover up their involvement in the conspiracy; and

6.   That all of these conspirators worked together to deceive the public about what happened in Charlottesville that day.

(*Id.* at ¶ 67.)  Count I asserts a claim of defamation against all Defendants and Count VI asserts a claim of defamation against Hoft.  (*Id.* at ¶¶ 204-15, 233-40.)

Hoft, by counsel, has issued a Rule 45 subpoena to Detective Hickey, requesting him to appear at a deposition on **May 19, 2021**, beginning at 1:00 p.m., and to bring documents, electronically stored information, or objects identified in "Schedule A" attached to the subpoena and deposition notice attached hereto as **Exhibit A**.

As a result of the expansive definitions set forth within the subpoena and its attachments (including a 23-line definition of "Document"), and also as a result of over twenty wide-ranging deposition topics and requests for Documents, or individual types of Documents, the subpoena and deposition notice seek the entire universe of City of Charlottesville data, information and records regarding the 2017 UTR Rally.

Hoft's deposition topics and Document requests are overly broad and unduly burdensome. They seek information that that has no apparent relevance to the claims and defenses in this defamation action, that is outside of the scope of discovery pursuant to Rule 26 of the Federal Rules of Civil Procedure, and that includes privileged or other protected matters. Respectfully, the City and Hickey request the Court to quash the Rule 45 subpoena and the deposition notice issued to Detective Hickey, and for a protective order precluding additional subpoenas and deposition notices for the same Documents.

The undersigned counsel has conferred with the attorney whose name is on the subpoena and deposition notice, but counsel were unable to resolve the City's and Thomas' objections.

## II.      LAW AND ARGUMENT

A court must quash or modify a Rule 45(d)(3) subpoena that requires the disclosure of privileged or other protected matter or subjects a person to undue burden. *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, No. CV 3:16-MC-1, 2016 WL 1071016, at *5

(E.D. Va. Mar. 17, 2016); *Virginia Dep't of Corr. v. Jordan*, No. CV 3:17MC02, 2017 WL 5075252, at \*4 (E.D. Va. Nov. 3, 2017), *aff'd,* 921 F.3d 180 (4th Cir. 2019).

**A.      The requested documents are irrelevant and outside of the permissible scope of discovery.**

While Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena, "the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240–41 (E.D. Va. 2012) (citing *Cook v. Howard,* No. 11–1601, 2012 WL 3634451, at \*6 (4th Cir. Aug. 24, 2012) (*per curiam*).  The City and Detective Hickey cannot be required to produce any material that a party to the litigation would not also be required to produce.  *RLI Ins. Co. v. Nexus Serv., Inc.*, No. 5:18-cv-00066, 2019 WL 8324257, at \*1 (W.D. Va. No. 27, 2019 (citing *Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012) (per curiam)).  That same rule should apply to depositions and deposition topics.

The Court must review Hoft's subpoenas and deposition notices under the relevancy standards set forth in Rule 26(b).  *Singletary*, 289 F.R.D. at 240–41.  When a party establishes that a subpoena is overly broad or seeks irrelevant information such that it falls outside of the scope limitations of Rule 26, "undue burden" is necessarily established and the subpoena must be quashed. *ThompsonMcMullan*, 2016 WL 1071016, at \*5.

> The scope of discovery under Rule 26 is limited to:

> [A]ny nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

To prevail in this defamation case Gilmore must show publication of an actionable statement with the requisite intent. *Gilmore v. Jones*, No. 3:18-cv-000017, 2021 WL 68684, at \*6 (W.D. Va. Jan. 8, 2021) (quoting *Gilmore v. Jones*, 370 F. Supp. 3d 630, 666 (W.D. Va. 2019). This Court has previously ruled that:

> To succeed on a defamation claim, [Gilmore] must prove each Defendant's state of mind at the time of publication.  Plainly, **information that a defendant did not have at publication could not have influenced his state of mind in making the statement**. . . . While evidence that the publisher had not yet obtained at the time of publication could not be relevant to his state of mind, materials that post-date the publication (including for example the publisher's own statements) may be probative of actual malice.

*Id.* at \*6 (emphasis added).

None of the deposition topics or Document requests in the subpoenas are relevant to the issues in this case.  Clearly, Hoft did not have the information that he is seeking from the City or Hickey at the time he published statements concerning Gilmore. Therefore, the information within the City's or Hickey's knowledge, possession, custody, or control could not have influenced Hoft's state of mind.  Unlike the post-statement documentation of Defendants that was previously the subject of a motion to compel in this case, Hoft is seeking post-statement documents of non-parties that could not possibly be relevant to the actual malice inquiry.

There appears to be no allegation within the Amended Complaint in this lawsuit that suggests Detective Hickey has or had any personal contacts, involvement, or relationship with Plaintiff Gilmore, Defendant Hoft or any other defendants, or that, for any other reason, Hickey would have any first-hand knowledge of matters relevant to the claims or defenses in this action. Neither does there appear to be any allegation within the Amended Complaint suggesting that any other City official or employee, current or former, would have first-hand knowledge of any matters relevant to claims or defenses in this action.

The information sought in the subpoenas and deposition notices is not relevant to the defamation issues in the present case, and is outside the scope of discovery. The Hickey subpoena and deposition notice should be quashed and a protective order should be entered precluding additional deposition notices and subpoenas seeking the same Documents and information from other current and former City employees and officials.

**B.      The subpoena and deposition notice are unduly burdensome.**

1.   The Hickey subpoena and deposition notice are overly broad and burdensome. To comply with the subpoena and deposition notice to him, Hickey would need to obtain access to City records not in his possession and to spend numerous hours preparing for deposition testimony about events that are four years in the past, many or most of which he would have no first-hand knowledge or information.

2. Hickey is not the custodian of the requested Documents.

3. There is no single person who is custodian of the requested Documents. Further, the City's Documents do not exist within a single database. To conduct a search for and to assemble the requested Documents listed within the subpoenas would involve hundreds of hours of effort from multiple City departments and agencies.

4. While some of the numbered Document requests contain time limitations (Exhibit A, Schedule A, ¶¶ 1-5), several categories contain no time limitations (*see, e.g.,* Exhibit A, Schedule A, at ¶¶ 6, 7, 8, 9, 10, 13, 15, 16, 17, 18, 19, 20) or specify exceptionally large time periods (*see, e.g.,* Exhibits A and B, attached, at ¶¶ 11, 12, 17).

5.  There exist hundreds of hours of video footage (bodycam, street/pole cameras, helicopter footage, private security, private videos, etc., etc.) of the 2017 Unite the Right Rally. These Documents exist in various storage locations and in various formats. Many, if not most, of

these Documents contain information and footage of events or individuals who have no relation whatsoever to any allegations or claims in this lawsuit, and some of these Documents are also part of criminal investigative records. Some requests seek videos or photos of specific individuals (*See* Exhibit A, Schedule A, at ¶¶ 6, 10, 15, 16, 17, 19, 20) other requests seek videos or photos taken by a specific individual (*see* Exhibit A, Schedule A at ¶¶ 3, 4, 11, 12, 13, 18).  If it is even possible to locate Documents based on those parameters, it would—again, quite literally—take hundreds of hours of manual effort on the part of Detective Hickey and other City officials or employees.

6. The subpoena and deposition notice seek Documents collected by Tim Heaphy in 2017 (Exhibit A, Schedule A at ¶¶ 8, 9). Documents collected by Mr. Heaphy were deposited by Heaphy with an outside vendor selected by Hunton & Williams, LLP, and neither the City nor Hickey has free access to them.

7. For the reasons explained *supra*, such a broad date range of Documents could not possibly be relevant to the issues in the case or within the scope of discovery.  Moreover, to require the City or Detective Hickey, as non-parties, to conduct such an extensive search for potentially responsive Documents that would provide little to any benefit to the case is unduly burdensome—requiring the unnecessary expenditure and diversion of public resources.

**C.      The requested Documents requested include privileged information or information otherwise protected from discovery.**

1. Emails exchanged among the various City officials listed in Exhibit A, Schedule A ¶¶ 1, 5, 7 would include attorney-client privileged communications.  Information sought by Exhibit

A, Schedule A at ¶¶ 6, 7, 11 would include attorney-work-product related to other litigation in which the City or other current or former City officials are a party.

2. Exhibit A, Schedule A (¶¶ 1, 2, 3, 4, 5, 11) seek various categories of Documents exchanged between the City, City employees or officials and the Commonwealth of Virginia, which is defined to include the Virginia State Police. To the extent that information within the requested Documents, or sought through deposition testimony, may have been provided to the City, its employees or officials through the Virginia Fusion Intelligence Center, state law prohibits release or dissemination of that information without prior authorization from the Center, *see* Virginia Code §52-48, and parties to this lawsuit should be required to seek any such information directly from the Commonwealth.

3. Exhibit A, Schedule A, ¶¶ 10, 13 seeks criminal investigative files relating to sixteen (16) criminal case numbers for which it is seeking investigative documents and a seventeenth criminal case not identified by a case number. Under Virginia law criminal investigative files are privileged and not subject to discovery. *See, e.g. Singh v. Agbemble*, 77 Va. Cir. 242 (Fairfax 2008); *Decker v. Watson*, 54 Va. Cir. 493 (Prince William 2001); *In re Commonwealth*, 41 Va. Cir. 571 (1978) (rejecting the decision in *Watkins v. Republic Lumber & Bldg. Supply Corp.*, 2 Va. Cir. 463 (Richmond 1978)). This is also consistent with the Rules of the Supreme Court of Virginia regarding criminal actions. *See* Va. Sup. Ct. R. 3A:11. That rule permits discovery only by the accused in a criminal case. *Id.* The rule provides that it "does not authorize the discovery or inspection of the work product of the Commonwealth's attorney, including internal reports, witness statements, memoranda, correspondence, legal research or other internal documents prepared by the office of the Commonwealth's attorney or its agents in anticipation of trial." Va. Sup. Ct. R. 3A:11(b)(6).

### III.    CONCLUSION

For all of the foregoing reasons, pursuant to Rule 45(d)(3) James Hoft's subpoena and deposition notice issued to Detective Declan Hickey should be quashed and the City requests the Court to issue a protective order precluding additional subpoenas and deposition notices from being issued to other City officers, officials, and employees for the same Documents and information.

<div style="margin-left: 50%;">

THE CITY OF CHARLOTTESVILLE,
and
ALFRED S. THOMAS, JR.

By Counsel

</div>

The Office of the City Attorney
By:

_Lisa Robertson_ (signature)

_____
Lisa A. Robertson (VSB #32486)
P.O. Box 911
Charlottesville, Virginia 22902
434-970-3131 - Phone
robertsonl@charlottesville.gov

## **C E R T I F I C A T E**

I hereby certify that a true copy of the foregoing was electronically filed and was also sent by U.S. mail this 11th day of May, 2021 to: John C. Burns, Burns Law Firm, P.O. Box 191250, St. Louis, MO 63119.


_____

Lisa A. Robertson