IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
**Charlottesville Division**

| | |
|---|---|
| **BRENNAN M. GILMORE,** | |
| Plaintiff, | |
| v. | Civil Action No. 3:18-cv-00017 |
| **ALEXANDER E. JONES,** *et al.*, | |
| Defendants. | |

### GOVERNOR OF VIRGINIA'S OBJECTIONS AND MOTION TO QUASH HOFT'S SUBPOENA

Non-party Office of the Governor, Commonwealth of Virginia ("Governor"), appearing specially by counsel, moves this Court to quash the subpoena duces tecum issued by defendant James Hoft ("Hoft") to the Office of the Governor[1] on the basis that the Governor is no longer the legal custodian of these records and the requests are overly broad and unduly burdensome without being reasonably calculated to lead to admissible evidence.

I. **FACTS**

This lawsuit arises out of a defamation claim brought by Brennan Gilmore ("Gilmore") against defendant Hoft and other defendants. Gilmore was a witness to the car attack at the Unite the Right ("UTR") Rally in Charlottesville on August 12, 2017 that led to the death of Heather Heyer. (ECF Doc. 29 at pp. 1-2.) Hoft and the other defendants accused Gilmore's social media posts about the event to be part of a "Deep State" conspiracy. (ECF Doc. 29 at ¶ 214.) Hoft specifically wrote and published an article entitled *Random Man at Protests Interviewed by*

---

[1] The identical subpoena was served on both the Office of the Governor and the Office of the Attorney General of Virginia as counsel for the Governor.

1

*MSNBC, NY Times is Deep State Shill Linked to George Soros* on Hoft's website, The Gateway Pundit. (ECF Doc. 29 at ¶¶ 20, 62-82). Gilmore's defamation claim is predicated on the following assertion of facts by Hoft that Gilmore alleges are false and defamatory:

    1)    The U.S. State Department organized the rioting at the UTR rally in Charlottesville and/or the car attack that killed Heyer;

    2)    Gilmore participated in the U.S. State Department's planning of the rioting and/or the car attack;

    3)    The U.S. State Department conspired to conceal these facts by removing information about Gilmore from a number of internet sources;

    4)    Media outlets were involved in the U.S. State Department's conspiracy because they knew Gilmore was a U.S. State Department employee;

    5)    The media characterized Gilmore as a casual observer of the attack in Charlottesville because they were working in concert with Gilmore, the U.S. State Department, and other government agencies to cover up their involvement in the conspiracy;

    6)    All of these conspirators worked together to deceive the public about what happened in Charlottesville on the day of the UTR rally.

None of Gilmore's allegations against Hoft allege that Hoft made defamatory statements involving the Office of the Governor of Virginia. Gilmore alleges that Hoft's defamatory statements involved a conspiracy among the media, the U.S. State Department, and other federal government agencies, not the Governor of Virginia or any agency of the Virginia state government.

Hoft, by counsel, issued a subpoena to the Office of the Governor of Virginia for the production of documents pursuant to Federal Rule of Civil Procedure 45. (Attached as **Exhibit**

**A**.) The subpoena was issued April 22, 2021, but not served upon the Office of the Governor until May 4, 2021. The due date for the documents requested is May 11, 2021. The vast majority of the documents sought are records of the administration of Governor Terry McAuliffe, who was governor of Virginia until January 13, 2018. Oddly, requests 2 and 11-13 request record through January 20, 2018. Request 14 (cont.) seeks "documents and communications exchanged between Governor Terry McAuliffe" and other listed members of his administration and various other people, from June 1, 2017 through to the present, although Governor McAuliffe left office on January 13, 2018.

      The documents requested via the subpoena are expansive. The entire list of definitions for people, organizations, entities, agencies, and materials requires eleven pages, with some relevant entities, such as "ANTIFA" including subparts labeled a through "www", with some subparts including entire organizations. (Exhibit A at pp. 7-9.) The first request on the list commands the Office of the Governor to search the records created by twelve different record custodians over a wide variety of media relating to the Unite the Right Rally and the Heaphy Report and the prosecution of James Alex Fields, Jr. and the death of Heather Heyer. (Exhibit A at p. 15). The "Unite the Right Rally" includes not only the events on the day of the rally, but it also includes "all efforts by rally organizers . . . to obtain permits, and all efforts by the City of Charlottesville and any other governmental or law enforcement body, including but not limited to the Governor of Virginia, related thereto." (Exhibit A at p. 6.) Each of the fourteen items on the subpoena have an equally lengthy and complex network of subparts, with multiple dates, lengthy date ranges, and lists of topics for which records must be produced.

      Considering that the Office of the Governor of Virginia is a non-party to the action and has no relationship to the allegedly defamatory statements, and that the Office of the Governor is

not the legal custodian for the vast majority of the records, these requests are unduly burdensome, irrelevant, and not reasonably calculated to lead to admissible evidence.

II. **ARGUMENT**

    **A. The Office of the Governor of Virginia is not the custodian of the requested records.**

Hoft seeks records of a prior Governor of Virginia whose term ended on January 13, 2018. Pursuant to Virginia Code § 2.2-126, each Governor must deliver "all correspondence and other records of his office [created] during his term." A Governor may keep his private and personal correspondence, but those private records do not become the records of the Office of the Governor of Virginia. Instead, they are the personal correspondence of each individual person who served as Governor.

Even the current Governor must go to the Library of Virginia to review and make copies of the records of a prior administration. *Id.* These records are equally "accessible to the public, once cataloging has been completed," however. One need not send a subpoena to a current Governor to request copies of the Library of Virginia's records created by prior administrations.

Because the current administration is not the legal custodian of the records Hoft seeks, the subpoena to the Office of the Governor of Virginia for the records of the McAuliffe administration should be quashed as misdirected, pursuant to Virginia Code § 2.2-126.

    **B. Requested documents are overly broad and unduly burdensome.**

Even if this subpoena were directed to the Library of Virginia rather than the Office of the Governor, however, it would remain overly broad and unduly burdensome. Civil discovery is limited by Federal Rule of Civil Procedure 26(b)(1), which requires that the discovery sought be "relevant to any party's claim or defense." It must also be "proportional to the needs of the case,"

meaning "the burden or expense of the proposed discovery" cannot outweigh "its likely benefit" to the party seeking it. *Id.*

Although these two limitations apply to parties and nonparties alike, the proportionality analysis should be weighed differently when the discovery is sought from a non-party. *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). "Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id.* To justify a subpoena against a nonparty, the nonparty must have "important information that cannot be obtained from the party directly." *Id.* Courts "must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally." *Id.* (quoting *Weinman v. Cable*, 427 F.3d 49, 53 (1st Cir. 2005)).

When making this analysis, "courts should consider not just the relevance of information sought, but the requesting party's need for it." *Id.* The information sought "must likely (not just theoretically) have marginal benefit in litigating important issues." *Id.* Courts should weigh more than just the "dollars-and-cents costs associated with a large and demanding document production" but also the cost to privacy or confidentiality interests. *Id.* Furthermore, it is the duty of the requesting party to reasonably limit its subpoena. "A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done it before serving it." *Id.* at 190.

Hoft ignores these important principles set forth by the Fourth Circuit just two years ago in his subpoena. His requests are incredibly broad and burdensome in simply the universe of documents to be searched and potentially produced, because the requests encompass a variety of media, including "all documents, materials, notes, call logs, phone logs, phone call records,

5

records, communications, videos, photos and/or all other materials," but a vast potential universe of subject matters, such as all records "concerning and/or relating to the United the Right Rally and/or the Heaphy Report and/or the prosecution of James Alex Fields, Jr., and/or the death of Heather Heyer, and/or your collection of evidence, documents, communications and records related to these topics. Exhibit A, p. 15. That vast collection of materials on a broadly defined category of topics was propounded to a list of twelve different potential records custodians from Governor McAuliffe's administration, including Governor McAuliffe himself. Worse, that is just the first of fourteen equally broad requests.

The requests are also not directed to the correct entity. Even if they were directed to the current custodian of the McAuliffe administration's records, the Library of Virginia, the McAuliffe administration is not the best or only source of records relating to the Unite the Right rally, which was permitted by the City of Charlottesville. The Charlottesville Police Department was the lead law enforcement agency in charge of planning for the rally. Timothy J. Heaphy of Hunton Andrews Kurth law firm prepared the Heaphy Report and therefore, Hunton Andrews Kurth is the best source of records related to the report. The Commonwealth's Attorney for Charlottesville and the U.S. Department of Justice both prosecuted James Alex Fields, Jr., not any member of the McAuliffe administration. This list of misdirected requests is for simply the first of the fourteen requests.

The requests also implicate another area of concern discussed by the Fourth Circuit in its opinion in *Va. Dep't of Corr.*: confidentiality and privacy. The requests ask for detailed records regarding the movement of the Governor close in time to the planned UTR rally, including Governor McAuliffe's specific movements and what security measures were taken and detailed information about each vehicle and aircraft of any kind associated with his motorcade. Exhibit A,

p. 16. Hoft asks for detailed information about what threats the McAuliffe administration was aware of leading up to the UTR rally and beyond. Exhibit A, pp. 15-19. Hoft asks for all communications exchanged among Governor McAuliffe, members of his administration, and organizations like the CIA, FBI, and DHS related to the UTR rally and a long list of other people, including Hoft himself and the other defendants. Exhibit A, pp. 17-19.

These requests seek information that has nothing to do with claims against Hoft for defamation of Gilmore, but instead seek to uncover how and where the Governor of Virginia travels and the details of his escort vehicles when the state is under threat by far right extremist groups. The information requested also seeks to uncover what, if anything, federal law enforcement agencies have shared with the prior administration of the government of Virginia about Hoft and his fellow defendants. This information is private and confidential and releasing it could be as harmful to the interests of the government of Virginia as releasing the customer list of a business, which the Fourth Circuit noted should also have an expectation of privacy and confidentiality unless necessary to the litigation.

Hoft's subpoena fails to justify these misdirected, overly broad, and invasive requests with an actual need for the information that is in any way related to the claims or defenses relevant to this lawsuit. Hoft has been accused of defaming Gilmore by stating that Gilmore was a "shill" for the federal "Deep State" liberals, backed by George Soros, with the collusion of the liberal media. The claims against Hoft and his defenses to those claims do not involve the Virginia state government at all. Furthermore, Hoft himself should have been in possession of information to support his claims if he was not defaming Gilmore.

Nothing in Hoft's subpoena appears reasonably calculated to lead to any admissible evidence relevant to the claims or defenses in the case at bar. Therefore, there is nothing to

overcome the burdens, expenses, and invasiveness of the requests, even if they were directed to the correct records custodians instead of to the Office of the Governor of Virginia.

### III. CONCLUSION

Hoft has directed his subpoena to the wrong records custodians. Even if this error were corrected, however, Hoft's subpoena would be so overly broad that it would cause a nonparty or several nonparties to incur time-consuming and expensive document searches and production. The information requested is confidential in nature, implicating the security of the Governor of Virginia in a prior administration. This expense and invasion into state security matters is not justified by any need for the information or the fact that the information can be obtained from no other source.

Accordingly, the Office of the Governor of Virginia, by counsel, respectfully requests that this Court quash the subpoena issues by counsel for Hoft.

Respectfully Submitted,

*/s/ Erin R. McNeill*
Erin R. McNeill (VA Bar No. 78816)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone (McNeill): (804) 692-0598
Fax: (804) 371-2087
E-mail: emcneill@oag.state.va.us
*Counsel for Defendant Becky Crannis-Curl*

Mark R. Herring
Attorney General of Virginia

Samuel T. Towell
Deputy Attorney General

Marshall H. Ross
Senior Assistant Attorney General/Trial Section Chief

8

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

*/s/ Erin R. McNeill*
Erin R. McNeill (VA Bar No. 78816)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0598
Fax: (804) 371-2087
E-mail: emcneill@oag.state.va.us
*Counsel for Defendant Becky Crannis-Curl*
