# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| BRENNAN M. GILMORE, <br><br> Plaintiff, <br><br> v. <br><br> ALEXANDER E. (ALEX) JONES, et al., <br><br> Defendants. | No. 3:18-cv-00017-NKM-JCH |

**DEFENDANT JAMES HOFT'S OPPOSITION TO THIRD PARTY COMMONWEALTH ATTORNEY FOR THE CITY OF CHARLOTTESVILLE'S MOTION TO QUASH**

*"Sauce for the goose is sauce for the gander"*

-Western Proverb.

## I. INTRODUCTION

Jim Hoft did not voluntarily join this litigation: he was compelled by force, on the basis of allegations leveled by Mr. Gilmore. Hoft and the other Defendants filed Motions to Dismiss, but these were denied. Hoft's primary means of defending himself in this *defamation* action – for which truth is an **absolute defense**, and material falsity is Plaintiff's burden – is to deliver evidence of the truthfulness of his own statements, and to refute the allegations made by Gilmore. Hoft's subpoena to the Commonwealth Attorney for the City of Charlottesville (Mr. Platania) is only as narrow or as broad as the allegations in the First Amended Complaint (FAC). As a matter of due process and the First Amendment, to defend himself, Hoft is entitled to investigate those allegations.

Mr. Platania has evidence relevant to this case. To date, Platania has produced zero documents, arguing Hoft requests irrelevant materials (they **are** relevant), seeks privileged materials (he does not), or that the requests are unduly burdensome (they are not). Accordingly, the Court should deny Platania's Motion to Quash (Motion), and order him to produce all documents responsive to the subpoena within ten days.

## GILMORE'S ALLEGATIONS

In his *ninety-nine* page FAC, in which he incorporates **all** of his allegations into a collective defamation Count I against all Defendants, Gilmore makes an astonishing number of allegations. Gilmore alleges Hoft and the other Defendants conspired to propagandize and publish a conspiracy theory about Gilmore and the events surrounding the Unite the Right Rally (UTR). In this alleged theory, *inter alia*, Gilmore was a highly connected government official and political operator who

2

participated in a widespread effort, by **governmental** agencies, at all levels, in coordination with numerous non-governmental organizations, to either instigate violence at the UTR (including but not limited to James Fields' car crash and other assaults), and/or manipulate and skew the media's coverage of the events. *See, for e.g.*, FAC, at pars. 63-70. Every page of Mr. Gilmore's FAC contains either a direct allegation that he is not a member of a government conspiracy, or a factual allegation which implies that he is not. For the Court's benefit, Mr. Hoft compiled a non-exhaustive chart of these allegations by relevant category. See Figure 1, immediately below.

| Allegation Category | Page or Paragraph |
|---|---|
| There was no public-private conspiracy surrounding the UTR | Page 2; Par. 30, 31, 32, 33, 34, 35, 36, 38, 42, 43, 46, 47, 48, 49, 50, 58, 59, 60, 63, 64, 65, 66, 69, 70, 79, 80, 83, 84, 85, 91, 94, 101, 105, 109, 110, 120, 126, 129, 144, 145, 208, 214, 239 |
| Gilmore was not part of any public-private conspiracy surrounding the UTR | Page 2; Par. 27, 30, 31, 32, 33, 34, 35, 36, 38, 42, 43, 46, 47, 48, 49, 50, 58, 59, 60, 63, 64, 65, 66, 69, 70, 79, 80, 83, 84, 85, 91, 94, 101, 105, 109, 110, 120, 126, 129, 144, 145, 208, 214, 239 |
| Media involvement was purely organic and not staged, scripted, or message coordinated to skew coverage | Page 2; Par. 31, 32, 35, 36, 38, 42, 43, 46, 47, 48, 49, 50, 58, 59, 60, 63, 64, 65, 66, 69, 70, 79, 80, 83, 84, 85, 91, 94, 101, 105, 126, 129, 144, 145 |
| Fields' car crash was deliberate **terrorism** | Page 1, 2, 62 (Tweet of Gilmore); Par. 29, 30, 31, 34, 38, 43, 49, 62, 120, 160 n. 74 |
| Gilmore's told the truth in his numerous interviews | Page 2, 3; Par. 31, 32, 34 |
| Defendants are propagandists, while facts as presented by Plaintiff are objectively true | Page 2, 3; Par. *Passim*. |
| UTR Pro-Lee consisted exclusively of bigots | 25, 26, 145, and implicit throughout. |
| Defendants are grotesque bigots | Page 2, 3; Par. *Passim*. |

Beyond his direct allegations against the defendants, he makes a number of factual allegations which provide a misleading context for all of the direct allegations. For example, he

alleges, in Manichean terms,[1] that the pro-Lee participants in the UTR were either violent, bigoted militants, bent on overwhelming the town or at least wholly intimidating its citizens, on the one hand, or generally peaceful anti-bigots and ordinary folk, on the other. *See, for e.g.*, FAC, Pages 1-3, and pars. 25, 26, 27, 28, 29, 31.  In fact, Gilmore alleges he was just an *ordinary man* attending a rally of public interest – and fame was *thrust* upon him owing to his sense of *civic duty* and by virtue of happenstance.  *Id*., at p. 3; par. 27.  Gilmore repeatedly states in his FAC that every statement he made to the media was absolutely true.  *Id*., at p. 2-3; par. 34, *passim*.  If those allegations are proven to be false or misleading, evidence of such may be admissible at trial to impeach his credibility, or directly refute the allegations in his Complaint.

Moreover, any allegations made by Gilmore in any interview referencing the UTR are directly relevant, such as the following:

> **I was filming actually a peaceful nonviolent march of anti-racist protesters who were coming up a very narrow street**. I was in the middle of the street myself filming them and her from behind me. The acceleration of a vehicle spun around and saw the vehicle in question, barreling down a very narrow street with no traffic on it **at a high rate of speed, clearly intent on doing damage and disruption** to the crowd passed over a barrier and went down the street and accelerated hard as barreled into the crowd sending bodies flying.
>
> ANCHOR:  Oh, God. Among the things you had publicly said yesterday, via Twitter and elsewhere. 'Let there be no confusion. This was deliberate terrorism.' You stand by that?
>
> Absolutely. And you know, I don't know if the authorities here have used the word terrorism yet there's a judicial process which will play out. **But it was clearly perpetrated by one of these racist Nazis who came to Charlottesville to spread their their their vile ideology. And he targeted this crowd very clearly. There's no**

---

[1] Notably, this Manichean juxtaposition is an omnipresent feature of every interview Gilmore has given on the topic. *See, for e.g.*, MSNBC television interview with Brennan Gilmore, August 13, 2017, https://www.youtube.com/watch?v=GAgIkuGQeHs (last accessed May 15, 2021).

> **question of anyone who witnessed it, that his intent was to cause a mass casualty incident and it's a domestic terrorist incident as far as what I witnessed.[2]**

Gilmore claimed then and claims now in his FAC, that the "counter-protesters" at 4th and Water Street were peaceful, non-violent, anti-bigots, and that James Fields, one of a crowd **exclusively** composed of bigoted, violent lunatics, drove down 4th Street, *unprovoked*, and with the deliberate intention to commit a terroristic, "mass casualty incident."

Any evidence contradicting Gilmore's characterization is directly relevant to this suit. This would include any evidence that the protesters on 4th Street included contingents of violent ANTIFA, BLM and socialist militants, attacked Fields' car, threw canisters of urine at him, and broke the law in shutting down numerous major arteries all over Charlottesville –without a permit,[3] and without objection, let alone consequence from the police. It would also include evidence showing that James Fields **didn't** drive into the protesters at full speed, that he actually **did** apply his brake before approaching the crowd, that he plugged his home address *in Ohio* into his GPS minutes before the crash, that the crowd violently attacked his car before and after the crash, that he refused medical attention – instead asking that it be directed to those injured in the crowd, that the crowd thew urine on him, that he expressed extreme remorse to law enforcement four minutes after the crash,[4] that the pro-Lee protesters were not exclusively composed of bigots, and were a small group, outnumbered perhaps ten to one by "counter-protesters." In short, if *these* facts are true, then virtually everything Mr. Gilmore has stated about the UTR has been a lie, and his motivations are highly suspect.

---

[2] *Id*.
[3] The UTR organizers spent months litigating in federal court for the privilege of obtaining a lawful permit.
[4] Mr. Platania and the City of Charlottesville have bodycam footage which establish this. *See for e.g.*, **Exhibit 1**, hearing transcript (Dec. 14, 2017), Commonwealth v. Fields, 17-296, Charlottesville Circuit Court, cross examination of Detective Steve Young. p. 38-44.

Gilmore's "moral clarity" on the Fields' was not without effect. He was certainly not alone in casting Fields as a terrorist or demonizing the UTR event organizers and blaming them, solely, for every tragedy occurring on August 12th, but his voice was certainly one of the loudest[5] – odd for an "ordinary man" with only a few hundred Twitter followers at the time.[6]

Thanks to these portrayals, every soul in Charlottesville believed James Fields committed premeditated, "cold-blooded,"[7] neo-nazi-inspired, terroristic murder. This pre-judgment enveloped the entire city. Indeed, jurors in Fields' murder trial were forced to walk across *Heather Heyer Way* to enter the Court each day. And yet, we're told Fields received a fair trial. Notably, Fields' attorneys moved to change the venue, but Platania refused to consent, and Judge Moore demurred. *See Commonwealth v. Fields*, 17-296, Charlottesville Circuit Court, Order of Sept. 7, 2018. This mob fervor didn't develop in a vacuum. The public was whipped into a frenzy by political leaders and the media. Mr. Gilmore was a big part of this.

If evidence of coordination by public and/or private forces connected to Gilmore to, *inter alia*, impose a false or misleading narrative on the events surrounding UTR, or instigate violence, then not only is Gilmore proven to be wrong – possibly even a liar – but 20 year-old Fields' convictions in state and federal court and consecutive life sentences – plus *four hundred and nine* (409) years – were quite plainly influenced by something other than justice. If Hoft proves any of this, he wins.

---

[5] Out of the hundreds of people who shot video footage of critical minutes of events surrounding UTR, Gilmores' has been viewed more than six million times on Twitter, and this doesn't include the hundreds of times his interviews have been broadcast all over the country. These interviews have each been carefully stated "on-message." And this is precisely why defendants have refused to believe his involvement in the affair was pure chance.

[6] FAC, at 32.

[7] See, for e.g., Facebook comments from former City Council Member (and mayoral candidate) Kristin Layng Szakos for a flavor of Charlottesville's social environment at the time. **Exhibit 2**, attached.

6

## II. <u>LAW</u>

A party to litigation also may serve on any non-party a subpoena to produce discoverable material in the non-party's possession, custody, or control. *Sines v. Kessler*, No.: 3:17-cv-00072 (Dkt. #765), at p. 2 (W.D. Va. June 12, 2020) (citations omitted). The scope of discovery from a non-party is the same as the scope of a discovery request made upon a party to the action, and a party is entitled to information that is relevant to a claim or defense in the matter at issue. *Id*. (citations and quotations omitted). The party or person resisting discovery bears the burden to show it should not be allowed. *Id*., at p. 3 (citations omitted). Specifically, the parties claiming privilege bear the burden of demonstrating the applicability of the privilege to *specific documents*. *Id*., at p. 5 (citations omitted). The proponents must *establish the particular communications at issue* are privileged and that the privilege was not waived.[8] *Id*., at p. 6. Conclusory assertions of privilege are not proper objections under Rule 45(e)(2)(A)(ii). *Id*. (citations omitted). "They certainly do not justify the decision to withhold responsive documents that are neither privileged attorney-client communications, nor protected trial preparation materials." *Id*. (citations omitted). "Rule 45(d)(3) provides no basis for relief where, as here, the subpoena does not require disclosure of privileged matters or work-product materials. *Id*., at p. 6-7 (citations and quotations omitted) (subpoenas at issue explicitly instructed objecting counsel *not to produce* documents protected by attorney-client privilege or the work-product doctrine).

---

[8] This Court cited to *U.S. v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982), which observed:

> Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege. Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter. *In re Sealed Case,* 676 F.2d 793, 808-09 (D.C.Cir.1982).

See also *United States v. Nobles*, 422 U.S. 225, 239 (1975) ("The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived").

7

### III. ARGUMENT

#### A. HOFT'S REQUESTS ARE RELEVANT.

Truth is an <u>absolute</u> defense to a claim of defamation. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). Not only this: in defamation actions, plaintiff bears the burden of proving material falsity. *Id*. This case has arrested Hoft from the peace of his private life, and has placed his material well-being in jeopardy – all because of an opinion piece he published on his blog. As the guarantors of Hoft's First Amendment rights, the Constitution and this Court are obliged to secure Hoft's ability to investigate Gilmore's claims against him. The factual allegations in play – i.e., *inter alia*, whether or not Mr. Gilmore engaged in a public-private conspiracy aimed at either instigating violence in Charlottesville, a "cover up," or misleading the public, are central and *material* facts to Gilmore's causes of action, and Hoft's defenses thereto. Mr. Hoft has a Fifth and Fourteenth Amendment right to due process. He also has a First Amendment right to express himself. Because of this, he has a right to fully investigate the claims that *haled him into this Court*.

Because truth is an absolute defense, Hoft is not limited to uncovering evidence of information available to him at the time of publication, though such information may or may not be relevant to an evaluation of malice. On the contrary, conduct and events occurring prior or subsequent to the Unite the Right Rally may refute Gilmore's allegations against Hoft. *Cf., Gilmore v. Jones*, No. 3:18-cv-00017, 2021 WL 68684, at *6 (W.D. Va. Jan. 8, 2021) ("evidence that the publisher had not yet obtained at the time of publication … may be probative of actual malice").

Platania has a unique set of documents relevant to the investigation of Gilmore's claims. He has the most available evidence of the events surrounding the central event of the Unite the

8

Right Rally, as well as the most direct event at issue in the Gilmore litigation: the car crash that killed Heather Heyer and condemned James Fields to prison for 409 years. This set of evidence no doubt contains inculpatory information about Mr. Fields, and it may contain exculpatory information, but it will also contain a variety of information that was neither inculpatory or exculpatory for the Fields trial, but is nevertheless relevant to the truth or falsity of the claims made by Gilmore in this suit and before. The same set of facts which were ignored in the mainstream media coverage of the event are the same set of facts that are likely relevant and sitting in Mr. Plantania's files. The material evidence in Platania's possession cannot be replicated or requested elsewhere. The collective evidence is globally relevant because it answers the question of whether or not outside influences and interests affected the decision how to prosecute Mr. Fields.

Gilmore's allegations put the issue of a public-private conspiracy surrounding the UTR to manipulate events or the public's perception of events, squarely in play. Hoft didn't ask to be forced into investigating these topics – *he filed a motion to dismiss*. To defend himself, he is now obliged to investigate. The subject matter being entirely relevant, Platania's Motion should be denied. *Further*, the Court should Order Platania to provide Hoft with a privilege log in accordance with the instructions provided by Hoft in Subpoena Schedule A, page 8. *See* **Exhibit 3**, attached.

      **B.**      **HOFT NEVER SOUGHT PRIVILEGED MATERIALS; HE ASKED FOR A PRIVILEGE LOG.**

Hoft clearly tried to avoid a battle over privileged materials. In Schedule A to the subpoena, after the definitions, but before the requests, are a series of instructions directing Platania to produce a *privilege log* for all materials he deemed privileged. In lieu of producing responsive materials, along with a privilege log, Platania elected to produce no documents. Platania's protestations of privilege are completely mooted by Hoft's explicit injunction against producing privileged materials. Any concerns about privilege can be resolved either by specific

identification in a privilege log, or Protective Order designation.  *See* Dkt. #194 (Stipulation and Protective Order), and Dkt. #196 (adopting Protective Order); *cf. Sines v. Kessler*, No.: 3:17-cv-00072 (Dkt. #765), at p. 7 (W.D. Va. June 12, 2020) ("Again neither Mr. Hill nor Ms. Lunsford identified **specific information** withheld under this Rule…Plaintiffs also point out that a lawyer can reveal such information to comply with law or a court order … and that Mr. Hill and Ms. Lunsford may use the **Protective Order** in this case to designate materials that contain "confidential" or "highly confidential" information") (emphasis added).

For these reasons, this Court should deny Platania's Motion.  *Further*, the Court should Order Platania to provide Hoft with a privilege log in accordance with the instructions provided by Hoft in Subpoena Schedule A, page 8.  *See* **Exhibit 3**, attached.

### C. MR. PLATANIA WAIVED ALL OBJECTIONS AND PRIVILEGES ASSOCIATED WITH MATERIALS HE PRODUCED TO DENISE LUNSFORD AND JOHN HILL

During the state criminal trial of James Fields, Mr. Platania entered into an Open File Agreement with defense attorneys Denise Lunsford and John Hill.  *Sines v. Kessler*, No.: 3:17-cv-00072 (Dkt. #765), at p. 9 (W.D. Va. June 12, 2020).  In *Sines*, this Court noted that Mr. Platania **released** both Ms. Lunsford and Mr. Hill from that agreement.  *Id*.  This Court also ordered that Lunsford and Hill turn over materials they received from Mr. Platania within 10 days.  *Id*., at 9-11.

Because he waived, at a minimum the Open File Agreement records, this Court should deny Platania's Motion and Order him to produce all responsive documents, less any privileged materials, within ten days.  *Further*, the Court should Order Mr. Platania to turn over all materials produced to Lunsford and Hill, irrespective of any privilege which may have applied, pre-waiver, within ten days.  *Finally*, the Court should Order Platania to provide Hoft with a privilege log in

accordance with the instructions provided by Hoft in Subpoena Schedule A, page 8. *See* **Exhibit 3**, attached.

### D.  HOFT'S REQUESTS ARE NOT OVERLY BURDENSOME.

Platania has already indexed *and produced* these same items previously for other litigation. *Id.*, at p. 9 ("Plaintiffs informed this Court that the Commonwealth's Attorney's Office consented to releasing Mr. Hill and Ms. Lunsford from [the Open File Agreement]"). Platania's arguments are not, therefore, well taken. Accordingly, the Court should deny Platania's Motion and Order him to produce the Open File Agreement documents and materials within ten days. *Further*, to the extent Platania possesses responsive, non-privileged materials heretofore not provided to Lunsford or Hill, the Court should Order Platania to provide Hoft with all such further and responsive documents and materials, less any which are privileged, within ten days. Finally, the Court should Order Platania to provide Hoft with a privilege log in accordance with the instructions provided by Hoft in Subpoena Schedule A, page 8. *See* **Exhibit 3**, attached.

### IV.  CONCLUSION.

For all of the foregoing reasons, the Court should Deny Platania's Motion and make and enter an Order requiring Platania to produce to Hoft within ten days:

1.  all documents and materials he shared with Lunsford and Hill as a result of his Open File Agreement, including but not limited to all indexes applicable to such materials;

2.  all non-privileged documents which are responsive to Hoft's subpoena and Schedule A, thereto, including but not limited to all indexes applicable to such materials; and

3.  a privilege log listing all withheld documents – not simply classes or categories of materials and materials – and Platania's specific, corresponding privileges pertinent to the respective requests, all as more fully described in Hoft's Subpoena Schedule A, page 8. *See*

**Exhibit 3**, attached.

Dated: May 17, 2021

                              Respectfully submitted,

By:    */s/ John C. Burns*
        John C. Burns, admitted *pro hac vice*
        BURNS LAW FIRM
        P.O. Box 191250
        Saint Louis, MO 63119
        Tel: (314) 329-5040
        Fax: (314) 282-8136
        TBLF@PM.ME

        Timothy B. Hyland
        Virginia Bar No. 31163
        HYLAND LAW PLLC
        1818 Library Street, Ste. 500
        Reston, VA 20190
        (703) 956-3548 (Tel.)
        (703) 935-0349 (Fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of May, 2021, a true and accurate copy of the foregoing was served on all parties of record via electronic mail.

                                              */s/ John C. Burns*