# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BRENNAN M. GILMORE, <br><br> Plaintiff, <br><br> v. <br><br> ALEXANDER E. (ALEX) JONES, et al., <br><br> Defendants. | No. 3:18-cv-00017-NKM-JCH |

**DEFENDANT JAMES HOFT'S OPPOSITION TO THIRD PARTY COMMONWEALTH ATTORNEY FOR THE CITY OF CHARLOTTESVILLE'S MOTION TO QUASH SUBPOENA FOR DEPOSITION**

## I. INTRODUCTION

Jim Hoft did not voluntarily join this litigation: he was compelled by force, on the basis of allegations leveled by Mr. Gilmore. Hoft and the other Defendants filed Motions to Dismiss, but these were denied. Hoft's primary means of defending himself in this *defamation* action – for which truth is an **absolute defense**, and material falsity is Plaintiff's burden – is to deliver evidence of the truthfulness of his own statements, and to refute the allegations made by Gilmore. Hoft's subpoena ad testificandum to the Commonwealth Attorney for the City of Charlottesville (Mr. Platania) seeks information directly relevant to the allegations in the First Amended Complaint (FAC). As a matter of due process and the First Amendment, to defend himself, Hoft is entitled to investigate those allegations.

Mr. Platania has evidence relevant to this case. To date, Platania skipped his deposition, arguing Hoft's subpoena provides insufficient time to comply (Hoft offered to amend to a mutually agreeable date), seeks privileged materials (unasked, **potential** questions cannot be evaluated for privilege), or that the requests are unduly burdensome (they are not). Accordingly, the Court should deny Platania's Motion to Quash (Motion), and Order Platania to communicate with Hoft within seven (7) days to arrange for a mutually agreeable deposition date to occur within the next twenty-one (21) days, or as negotiated by Hoft and Platania.

## II. LAW

A party to litigation also may serve on any non-party a subpoena to produce discoverable material in the non-party's possession, custody, or control. *Sines v. Kessler*, No.: 3:17-cv-00072 (Dkt. #765), at p. 2 (W.D. Va. June 12, 2020) (citations omitted). The scope of discovery from a non-party is the same as the scope of a discovery request made upon a party to the action, and a party is entitled to information that is relevant to a claim or defense in the matter at issue. *Id*.

(citations and quotations omitted). The party or person resisting discovery bears the burden to show it should not be allowed. *Id*., at p. 3 (citations omitted). Specifically, the parties claiming privilege bear the burden of demonstrating the applicability of the privilege to *specific documents*. *Id*., at p. 5 (citations omitted). The proponents must *establish the particular communications at issue* are privileged and that the privilege was not waived.[1] *Id*., at p. 6. Conclusory assertions of privilege are not proper objections under Rule 45(e)(2)(A)(ii). *Id*. (citations omitted). "They certainly do not justify the decision to withhold responsive documents that are neither privileged attorney-client communications, nor protected trial preparation materials." *Id*. (citations omitted). "Rule 45(d)(3) provides no basis for relief where, as here, the subpoena does not require disclosure of privileged matters or work-product materials. *Id*., at p. 6-7 (citations and quotations omitted) (subpoenas at issue explicitly instructed objecting counsel *not to produce* documents protected by attorney-client privilege or the work-product doctrine).

### III. ARGUMENT

#### A. HOFT'S SUBPOENA PROVIDED SUFFICIENT NOTICE; IT IS NOT UNDULY BURDENSOME.

On May 17, 2021, Hoft served his subpoena for <u>deposition</u> upon Mr. Platania, personally, in his **personal capacity**. *See* **Exhibit 1** - service return.[2] In correspondence, Hoft's counsel

---

[1] This Court cited to *U.S. v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982), which observed:

> Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege. Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter. *In re Sealed Case,* 676 F.2d 793, 808-09 (D.C.Cir.1982).

See also *United States v. Nobles*, 422 U.S. 225, 239 (1975) ("The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived").

[2] Subsequent to service, Hoft's counsel amended the subpoena to correct an error and emailed Mr. Platania a copy, informing him that counsel would be happy to reschedule the deposition to a more agreeable time if the deposition date was unmanageable for Mr. Platania. Dkt. #304-2 Shortly thereafter, counsel for Commonwealth Attorney for the City of Charlottesville (in his **official capacity**) contacted Hoft's counsel and informed him that they were

<u>offered to change the date of the deposition to a mutually agreeable date and time</u>. *See* Platania's **Exhibit B** (Dkt. #304-2). Platania responded, not by negotiating a mutually agreeable date and time, but by filing the instant Motion to Quash. *Cf., Cabell v. Zorro Productions, Inc.*, 2018 WL 3023343 (N.D. Cal. 2018) (although service was only 12 days before compliance date, court noted that prior notice had been given **and defendants had also in good faith sought to schedule alternative date**, therefore denying motion to quash).

Platania is not a layman. He is a legal professional: lecturer at the University of Virginia School of Law, and Commonwealth Attorney for the City of Charlottesville.[3] He had actual knowledge that Hoft was agreeable to negotiating a new deposition date to accommodate his schedule. **Exhibit B** (Dkt. #304-2). His argument regarding notice is disingenuous. The Court should order Platania to communicate with Hoft within seven (7) days to arrange for a mutually agreeable deposition date to occur within the next 21 days, or as negotiated by Hoft and Platania. *Cf., Todd v. LaMarque*, No. C 03-3995 SBA, 2008 WL 564802, at *1 (N.D. Cal. Feb. 28, 2008) (court has authority to modify the subpoena).

Hoft's subpoena *ad testificandum* is not unduly burdensome. As discussed more fully, *infra*, Platania is one of the central governmental figures in the events surrounding the UTR. He prosecuted **all** of the individuals who were charged with crimes stemming from conduct at or around the UTR. He certainly has knowledge about his experiences surrounding the UTR, and his interaction with authorities as an adjunct to law enforcement. This is information which cannot be obtained through any other source, and which will either be admissible at trial, or which will lead to the discovery of admissible evidence. The fact that Mr. Platania will need to prepare

---

representing Platania in his personal capacity as well. *See* **Exhibit 2** – Correspondence. Hoft's counsel *apologized for the misunderstanding* – he did not realize the Commonwealth Attorney's counsel was representing Platania in both capacities. *Id*. Hoft's counsel apologizes to the Court as well. It was an honest mistake.
[3] https://www.law.virginia.edu/faculty/adjunct-profile/jdp6d/2382007 (last accessed June 1, 2021).

4

himself for a deposition is no argument against a subpoena ad testificandum, and Platania offers no support for his bare assertion of undue burden.

Platania's argument regarding notice is mooted by his own unwillingness to provide additional, mutually agreeable deposition availability, Hoft's stated willingness to amend the deposition date to accommodate Platania's schedule, and the Court's power to amend the subpoena deadline. Platania's argument of undue burden bare and is unsupported by any authority. Accordingly, the Court should deny Platania's Motion and Order Platania to communicate with Hoft within seven (7) days to arrange for a mutually agreeable deposition date to occur within the next twenty-one (21) days, or as negotiated by Hoft and Platania.

    B.   **HOFT'S REQUEST FOR DEPOSITION IS RELEVANT.**

Platania is a witness to facts which are dispositive on issues surrounding Plaintiff's pleadings of conspiracies surrounding the UTR. *See, for e.g.,* **Figure 1**, *infra*. Platania has facts which will prove or disprove Plaintiff's allegations of a conspiracy. He may also have information relating to evidence illegally leaked to WVIR NBC 29 Charlottesville and other NBC affiliates in July of 2019. If it turns out he knows who leaked the videos, such evidence may establish a waiver of any purported privilege relating to the footage. He could also provide testimony on the level of political or other improper influence and/or pressure, if any, he or any of his staff felt relating to the UTR and also persons and events relating to the UTR. Platania will also have information relating to the actions of himself and his office leading up to and after the UTR. These facts cannot be obtained elsewhere. In short, Platania is one of the most central governmental actors in the events surrounding the UTR.

Platania completely fails to address the relevance truth and falsity play in Plaintiff's allegations and Hoft's defenses thereto. Truth is an <u>absolute</u> defense to a claim of defamation.

5

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986).  Not only this: in defamation actions, plaintiff bears the burden of proving material falsity.  *Id*.  The factual allegations in play – i.e., *inter alia*, whether or not Mr. Gilmore engaged in a public-private conspiracy aimed at either instigating violence in Charlottesville, a "cover up," or misleading the public, are central and *material* facts to Gilmore's causes of action, and Hoft's defenses thereto.  Mr. Hoft has a Fifth and Fourteenth Amendment right to due process.  Hoft cannot be compelled into a judicial process in which he is forced to defend himself at high expense and high stakes, only to then be denied the ability to work up his case.  He also has a First Amendment right to express himself which has been attacked by the Plaintiff.  Because of this, he has a right to fully investigate the claims that *haled him into this Court*.

      Because truth is an absolute defense, Hoft is not limited to uncovering evidence of information available to him at the time of publication, though such information may or may not be relevant to an evaluation of malice.  On the contrary, conduct and events occurring prior or subsequent to the Unite the Right Rally may refute Gilmore's allegations against Hoft.  *Cf., Gilmore v. Jones*, No. 3:18-cv-00017, 2021 WL 68684, at *6 (W.D. Va. Jan. 8, 2021) ("evidence that the publisher had not yet obtained at the time of publication … will be probative of actual malice").  Similarly, evidence of subsequent conduct by Platania and his office may be probative of various ongoing conspiracies by his or other public offices and entities.

      Charlottesville Police Department was not the only law enforcement agency which failed to protect the public at the UTR.  See **Exhibit 6** – Decl. of John C. Burns.  In fact, large portions of the public within Charlottesville – including former Mayor Dave Norris – still believe that various political figures at all levels **deliberately** abstained from breaking up violence and asserting order at the UTR, **specifically to force the situation to degenerate into chaos**.  *Id*.

Large portions of the Charlottesville public are still angry about this. *Id*. The Virginia State Police (VSP) also abstained from enforcing the law on August 12, 2017. *Id*. We only know about SOME of Charlottesville's deliberate or negligent conduct because the City forced its police department to comply with the Heaphy/Hunton & Williams investigation. VSP, the Governor's Office, and the US Army, each refused to cooperate with Heaphy. **Exhibit 5**, p. 14-16. The City of Charlottesville and Chief Al Thomas destroyed evidence, forged evidence, and deliberately misdirected Heaphy. *Id*., at 12-14. Given his adjunct law enforcement role, Platania will be able to provide valuable information about what decisions were made, why, and by whom, and whether or not he supported or argued against the stand-down order issued by Chief Al Thomas,[4] and whether he expected such an order would lead to great injury and perhaps death.[5]

Platania was witness to numerous events and decisions surrounding important aspects of the UTR – before, during and after the August 11-12 events. As the Court is aware, the UTR did not occur in a vacuum. Numerous antecedent events and decisions, created an important tapestry of context. For example, there were other rally events that occurred in Charlottesville during the summer of 2017. To prove a conspiracy as alleged by Plaintiff, Hoft is forced to unravel facts to reveal the motivations of those who participated in the events surrounding "Charlottesville." Platania occupied a very unique role through at all times relevant to this suit, in which he was able to observe many aspects of interacting governmental authority.

Platania is a witness to facts which are dispositive on issues surrounding the conspiracies surrounding the UTR, as pleaded by Plaintiff. *See, for e.g.,* **Figure 1**, *infra*. Platania has facts which will prove or disprove Plaintiff's allegations of a conspiracy. He will also provide testimony on the level of political or other improper influence and/or pressure, he or any of his staff felt in

---

[4] Or, if the stand down order came from someone other than Thomas.
[5] See Exhibit 5 – Heaphy Report, at p. 133.

managing the investigation and prosecution of James Fields, those who attacked DeAndre Harris, and other persons arrested and prosecuted for acts occurring on or about August 12, 2017.

| Allegation Category | Page or Paragraph |
|---|---|
| There was no public-private conspiracy surrounding the UTR | Page 2; Par. 30, 31, 32, 33, 34, 35, 36, 38, 42, 43, 46, 47, 48, 49, 50, 58, 59, 60, 63, 64, 65, 66, 69, 70, 79, 80, 83, 84, 85, 91, 94, 101, 105, 109, 110, 120, 126, 129, 144, 145, 208, 214, 239 |
| Gilmore was not part of any public-private conspiracy surrounding the UTR | Page 2; Par. 27, 30, 31, 32, 33, 34, 35, 36, 38, 42, 43, 46, 47, 48, 49, 50, 58, 59, 60, 63, 64, 65, 66, 69, 70, 79, 80, 83, 84, 85, 91, 94, 101, 105, 109, 110, 120, 126, 129, 144, 145, 208, 214, 239 |
| Media involvement was purely organic and not staged, scripted, or message coordinated to skew coverage | Page 2; Par. 31, 32, 35, 36, 38, 42, 43, 46, 47, 48, 49, 50, 58, 59, 60, 63, 64, 65, 66, 69, 70, 79, 80, 83, 84, 85, 91, 94, 101, 105, 126, 129, 144, 145 |
| Fields' car crash was deliberate **terrorism** | Page 1, 2, 62 (Tweet of Gilmore); Par. 29, 30, 31, 34, 38, 43, 49, 62, 120, 160 n. 74 |
| Gilmore's told the truth in his numerous interviews | Page 2, 3; Par. 31, 32, 34 |
| Defendants are propagandists, while facts as presented by Plaintiff are objectively true | Page 2, 3; Par. *Passim*. |
| UTR Pro-Lee consisted exclusively of bigots | 25, 26, 145, and implicit throughout. |
| Defendants are grotesque bigots | Page 2, 3; Par. *Passim*. |

Figure 1.

He may also have information relating to the evidence *illegally* leaked to WVIR NBC 29 Charlottesville and other NBC affiliates in July of 2019. If it turns out he knows – or even suspects – who leaked the videos, such evidence may establish or lead to evidence of a waiver of any purported privilege relating to the footage.

Platania also blocked Fields' ability to change venue out of Charlottesville. Hoft can and will argue to a jury that this decision was part of an ongoing and broader public-private coordinated effort to persecute Fields and render him and all pro-Lee statue UTR participants – regardless of specific ideology – *damnatio memoriae*. To this day, large tracts of the American public do not believe Fields received a fair trial for numerous reasons, some of which Hoft has previously argued

8

to this Court. "Charlottesville" was clearly seized upon by Charlottesville's sociopolitical leaders as an archetype, and a tool to bludgeon all dissent or alternative viewpoints and to compel conformity of culture and ideas. At least one Charlottesville City Council member, and possibly more, publicly stated their **hatred** for the right-wing UTR defendants (including Fields) mocked their futile attempts at changing venue, and urged citizens to despise them. *See* **Exhibit 4**. Jurors were forced to cross *Heather Heyer Way* every day when entering or exiting the Circuit Courthouse. We could go on. If ever there were a case in which justice demanded a changed venue, this was it. The UTR, let alone Fields' crash and prosecution, were among the most discussed national issues of the past decade. They became political footballs for congressmen, senators, the United States Attorney General, and two Presidents. The media published its reports on the incidents with lock-step discipline: Fields was an irredeemable monster, akin to the worst evils in human history, who **deliberately** drove through a crowd with the intent to kill as many people as possible.[6] Plaintiff gave a number of media interviews in which he expressed the precise same sentiment. Candidly, Hoft believes Fields was railroaded, and Platania's refusal to consent to a change of venue is one of the central causes of this. Platania could have consented to Fields' attorney's motion to change venue – he refused. He actively worked to block it. *See* **Exhibit 3** – Commonwealth's Opposition to Motion to Change Venue. In refusing to permit a change of venue, Platania may have been improperly influenced by political leaders and/or public employees, as well as private persons.

Plaintiff's alleged public-private conspiracy to instigate violence at the UTR, to cover it up, and to shape the public's opinion about all things "Charlottesville" was not a discrete event,

---

[6] As one excellent exemplar and *paean* to propaganda, see ABC "Good Morning America," on or about August 13, 2017. https://abcnews.go.com/GMA/video/suspected-driver-deadly-charlottesville-crash-arrested-49187570 (last accessed, June 3, 2021).

9

occurring only on August 12, 2017. On the contrary, it antedated the UTR rally itself – in the City's anti-First Amendment hostility to the UTR organizers' exercise of their Constitutional rights to speech and assembly – but it also post-dated the rally, and it continues to this day.

Gilmore's allegations put the issue of a public-private conspiracy surrounding the UTR to manipulate events or the public's perception of events, <u>squarely in play</u>. Hoft didn't ask to be forced into investigating these topics – *he filed a motion to dismiss*. To defend himself, he is now obliged to investigate.

The subject matter being entirely relevant, Platania's Motion should be denied, and the Court should Order Platania to communicate with Hoft within seven (7) days to arrange for a mutually agreeable deposition date to occur within the next twenty-one (21) days, or as negotiated by Hoft and Platania.

### C. PLATANIA CANNOT AVOID HIS DEPOSITION BY CITING TO COUNTERFACTUAL AND <u>UNSTATED</u> HYPOTHETICAL DEPOSITION QUESTIONS.

Platania argues some of the deposition questions Hoft intends to ask **may** be privileged. Unfortunately, Platania provides zero explanation or example of what these might look like. He also provides zero authority for his bare assertion that the **prospect** of asserting a privilege at a deposition is sufficient grounds for failing to attend his own deposition. This argument is improper, without authority, and meritless. Platania's Motion should be denied, and the Court should Order Platania to communicate with Hoft within seven (7) days to arrange for a mutually agreeable deposition date to occur within the next twenty-one (21) days, or as negotiated by Hoft and Platania.

## IV. CONCLUSION.

For all of the foregoing reasons, the Court should Deny Platania's Motion and make and enter an Order requiring Platania to communicate with Hoft within seven (7) days to arrange for a mutually agreeable deposition date to occur within the next twenty-one (21) days, or as negotiated by Hoft and Platania.

Dated: June 3, 2021

                                                    Respectfully submitted,

By:   */s/ John C. Burns*
        John C. Burns, admitted *pro hac vice*
        BURNS LAW FIRM
        P.O. Box 191250
        Saint Louis, MO 63119
        Tel: (314) 329-5040
        Fax: (314) 282-8136
        TBLF@PM.ME

        Timothy B. Hyland
        Virginia Bar No. 31163
        HYLAND LAW PLLC
        1818 Library Street, Ste. 500
        Reston, VA 20190
        (703) 956-3548 (Tel.)
        (703) 935-0349 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of June, 2021, a true and accurate copy of the foregoing was served on all parties of record via the Court's ECF System.

                                                    */s/ John C. Burns*