IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

BRENNAN M. GILMORE,

    Plaintiff,

v.                                                    Case No. 3:18-cv-00017

ALEXANDER E. JONES, et al.,

    Defendants.

### REPLY BRIEF IN SUPPORT OF OBJECTION AND MOTION TO QUASH SUBPOENAS TO THE VIRGINIA STATE POLICE AND ITS VIRGINIA FUSION CENTER

COMES NOW, by special appearance, non-parties the Virginia State Police ("State Police") and the Virginia Fusion Center ("Fusion Center"), by counsel, and in reply to Defendant James Hoft's opposition (Doc. No. 313) to the motion to quash the subpoena for documents issued to it by Hoft, states as follows:

**A. Hoft provides no reasonable basis as to how the extensive range of materials sought by State Police and its Fusion Center are relevant.**

The central issue in this case is whether the defendants, including Hoft, published actionable statements regarding Gilmore with actual malice. *Gilmore v. Jones*, No. 3:18- cv-000017, 2021 WL 68684, at *4-6 (W.D. Va. Jan. 8, 2021) (*quoting Gilmore v. Jones*, 370 F. Supp. 3d 630, 666 (W.D. Va. 2019)). The Court has ruled that Gilmore must prove each defendant's state of mind at the time of the alleged publications and that "information that a defendant did not have at publication could not have influenced his state of mind in making his statement. . ." *Id.* at *6. Hoft's alleged defamatory publication was made on August 14, 2017. Hoft did not possess or have access to any of the information that his subpoena requests from the State Police or its Fusion Center. Thus, the information and material sought is wholly

irrelevant because it could not have had any impact on Hoft's state of mind when he made the alleged defamatory publication. Hoft makes no argument for how the materials sought from the State Police or its Fusion Center, which he did not possess at the time of the alleged defamatory publication, could have possibly influenced his state of mind and how the materials are relevant to the actual malice inquiry at issue in this case. Instead, Hoft's opposition poses a series of rhetorical questions based on speculation and having nothing to do with information that Hoft claims he had at the time he made at the alleged defamatory publication, which alleged a United States State Department conspiracy, rather than a Virginia government conspiracy.  Hoft concludes his argument on the relevance point by stating that the "requested documents from the Virginia State Police and Virginia Fusion Center will either show the relevant coordination [related to a broad based public-private conspiracy], damaging Gilmore's claims, or they will show that Gilmore's claims may have validity." Doc. No 313 at p. 12.  In other words, Hoft wishes to conduct a fishing expedition into State Police/Fusion Center extensive materials regarding its presence and actions surrounding the UTR rally.

### B. The Law Enforcement Privilege Protects the State Police/Fusion Center Documents from Disclosure

The law enforcement privilege is designed "to prevent disclosure of law enforcement techniques and procedures, to preserve confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of City of New York,* 856 F.2d 481, 484 (2d Cir.1988) (citing *Aspin v. Dep't of Defense,* 491 F.2d 24, 29–30 (D.C.Cir.1973), and *Frankel v. Sec. and Exchange Comm'n,* 460 F.2d 813, 817 (2d Cir.1972)).

The law enforcement privilege applies where the [law enforcement agency] demonstrates that disclosure of information, such as law enforcement "techniques and protocols," would "jeopardize future criminal investigations." *Commonwealth of Puerto Rico v. United States,* 490 F.3d 50, 64 (1st Cir.2007); *United States v. Winner,* 641 F.2d 825, 831 (10th Cir.1981) ("[The] law enforcement investigative privilege is based primarily on the harm to law enforcement efforts which might arise from public disclosure of investigatory files.") (internal quotation marks and ellipse omitted); *cf. In re United States Dep't of Homeland Security,* 459 F.3d 565, 569 (5th Cir.2006) (recognizing the law enforcement privilege in the Fifth Circuit and explaining that "in today's times the compelled production of government documents could impact highly sensitive matters relating to national security"). "The party asserting the [law enforcement] privilege must demonstrate that the documents contain information that the law enforcement privilege is intended to protect." *Thayer v. Chiczewski,* 2009 WL 2192581, at *3 (N.D.Ill.2009). "The claim for application of the privilege is 'somewhat stronger' when law enforcement is seeking to protect ongoing investigations as contrasted with closed files, decisions to prosecute as contrasted with decisions not to prosecute, confidential informant identities as contrasted with names of incidental witnesses, confidential law enforcement tactics as contrasted with simple interview materials, and evaluative opinions as contrasted with facts." *Vodak v. City of Chicago,* 2004 WL 2032147, * 4 (N.D.Ill. Sept.9, 2004).[1]

---

[1] Other circuits also recognize the law enforcement privilege as covering documents relating to criminal investigations. See, e.g., Dellwood Farms v. Cargill, Inc., 128 F.3d 1122, 1125 (7th Cir.1997) (recognizing the "law enforcement investigatory privilege"); In re Dep't of Investigation, 856 F.2d 481, 483-84 (2d Cir.1988) (stating that the law enforcement privilege exists and prevents the "disclosure of law enforcement techniques and procedures, [preserves] the confidentiality of sources, [protects] witnesses and law enforcement personnel, [safeguards] the privacy of individuals involved in an investigation, and otherwise [prevents] interference with an investigation"); Tuite v. Henry, 181 F.R.D. 175, 176-77 (D.D.C. July 31, 1998) (unpublished), aff'd Tuite v. Henry, 203 F.3d 53 (D.C.Cir.1999) ("The federal law enforcement privilege is a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement. [It] serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and

In determining whether the law enforcement privilege protects against disclosure, courts in the Eastern District of Virginia[2] have often weighed the following ten factors identified in *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D.Pa.1973) (unpublished):

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

(2) the impact upon persons who have given information of having their identities disclosed;

(3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;

(4) whether the information sought is factual data or evaluative summary;

(5) whether the party seeking discovery is an actual or potential defendant in any actual criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) whether the police investigation has been completed;

(7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;

(8) whether the plaintiff's suit is non-frivolous and brought in good faith;

(9) whether the information sought is available through other discovery or from other sources; and

(10) the importance of the information sought to the plaintiff's case.

Disclosure of the Department's documents would be contrary to the public interest. A balance of the factors identified in *Frankenhauser* favors non-disclosure.

In this case, factors 1, 2, 4, 9, and 10 weigh heavily against disclosure.

---

law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations.").
[2] See, e.g., *Rhodenizer v. City of Richmond Police Department*, 2009 WL 3334744, *2 (E.D.Va. Oct. 14, 2009), *Johnson v. Rankin*, 2011 WL 5358056, *1 (E.D.Va. Nov. 7, 2011).

### (1)  The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information

The first factor considers the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information. Federal courts may consider state policies supporting a privilege claim in assessing the government's interest in maintaining confidentiality when applying the federal common law qualified privilege for criminal investigations to civil discovery requests. *Coughlin v. Lee,* 946 F.2d 1152, 1159-60 (5th Cir. 1991) (rejecting contention that state public records law governs claim of privilege, but stating that court would "consider state policies supporting a privilege in weighing the government's interest in confidentiality"). "[A] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *King v. Conde*,  1988 U.S. Dist. LEXIS 6758*, Lora v. Board of Education,* 74 F.R.D. 565, 576 (E.D.N.Y. 1977) (quoting *United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y. 1976)).

The Commonwealth of Virginia has maintained a long-standing public policy that criminal investigative files are privileged documents which need not be disclosed. Virginia precedent supports the State Police's position.  In *Watkins v. Republic Lumber & Building Supply Corp*., 2 Va. Cir. 463 (Richmond Cir. Ct. 1978), the Richmond Circuit Court considered the Department's motion to quash a subpoena *duces tecum* for a criminal file.  Finding that no general privilege for criminal investigative files exists in Virginia, the trial court ordered that the Department produce the file in question, directing the Department to redact the names of informers and submit the file for an *in camera* review for material that might be subject to the attorney-client privilege.  *Id*. at 467-70.  The Department subsequently sought a writ of prohibition from the Virginia Supreme

Court. The Supreme Court granted the writ, ordering the trial court "to refrain and desist from enforcing any order requiring the petitioner to disclose *its investigative files concerning John P. Watkins, Jr., or any other person.*" *In re Commonwealth of Virginia, Department of State Police*, 41 Va. Cir. 571 (Va. 1978) (*per curiam*) (emphasis added). The writ of prohibition granted by the Supreme Court firmly establishes the public policy that the criminal investigative files of the police should be afforded an absolute privilege against disclosure. The Court had an opportunity to affirm the trial court's decision to conduct an *in camera* inspection of the documents in question, thereby clearing the way for possible disclosure of the investigative files. Instead, the Court quashed the potential disclosure of the investigative files. Other federal and state courts have denied access to criminal files in civil cases for similar reasons.[3] It is clear that compelling public policy supports the existence of a privilege for police files.[4]

### (2) The impact upon persons who have given information of having their identities disclosed

The State Police and its Fusion Center served numerous roles before, during and after the UTR rally. This included interactions with hundreds of citizens. Such citizens should be assured confidentiality to encourage candor and cooperation of citizens in future criminal investigations. Therefore, disclosure through documents included in the subpoena could have a great impact upon

---

[3] *See, e.g., Los Angeles Police Department v. Superior Court*, 135 Cal. Rptr. 575, 577-78 (Cal.App. 1977) (refusing to permit interrogatories about certain police department records); *Houston Chronicle Pub. Co. v. City of Houston*, 536 S.W.2d 559, 560-61 (Tex. 1976) (*per curiam*); *Koch v. Department of Justice*, 376 F.Supp. 313, 316 (D.D.C. 1974); *Losavio v. Mayber*, 496 P.2d 1032, 1034 (Col. 1972); *Kott v.* Perini, 283 F.Supp. 1 (N.D. Ohio 1968); *United States v. Mackey*, 36 F.R.D. 431, 433 (D.D.C 1965); *Whittle v. Munshower*, 155 A.2d 670, 672 (noting that "[i]n the absence of statutory requirement, it is generally held that police records are confidential") (Md.Ct.App. 1959), *cert. denied*, 363 U.S. 981 (1959).

[4] *See Castle v. Jallah*, 142 F.R.D. 618 (E.D. Va. 1992) (citing cases). This privilege shields "information whose disclosure would be contrary to the public interest." *Id*. at 620 (internal citations and quotations omitted). The *Castle* court found that internal documents governing deliberative and decision-making processes are definitely privileged and suggested that even factual information might be privileged to the extent that disclosure may chill witnesses' incentive to share information with investigators. *Id.* at 620-21.

persons who have given information confidentially and the cooperation of future witnesses to criminal acts with the state police.

**(4) Whether the information sought is factual data or evaluative summary.**

Defendant essentially seeks all materials in the possession of the State Police and its Fusion Center's entire, which include voluminous documents, emails, reports, notes, videos, recordings, memoranda, physical evidence pertaining to the event, interviews with potential witnesses, confidential law enforcement sources, operational plans, tactics, and institutional files. While some of the material sought may be factual, it is intricately bound with evaluative or deliberative summary material making it inappropriate for disclosure. The information sought by Hoft contains detailed information that clearly relates to law enforcement techniques and procedures. Providing information about the nature of the State Police's operations would only hinder its ability to conduct future similar operations and investigations and could undermine the safety of law enforcement personnel.

**(6) Whether the police investigation has been completed.**

The criminal investigations in this matter have been concluded, but civil cases involving the rally remain pending.[5] "An investigation," however, "need not be ongoing for the law enforcement privilege to apply as 'the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information' " is revealed to the public. *Nat'l Congress for P.R. Rights ex rel. Perez v. City of N.Y.*, 194 F.R.D. 88, 95 (S.D.N.Y.2000) (quoting

---

[5] While criminal investigations related to the UTR rally have been completed, there are numerous pending civil suits related to the rally, two of which include the State Police as an unserved defendant. *Estate of Henry Cullen v. Virginia State Police*, Richmond City Circuit Court, CL19004105; *Estate of Berke Bates v. Virginia State Police*, Richmond City Circuit Court, CL19004106.

*Morrissey v. City of N.Y.*, 171 F.R.D. 85, 90 (S.D.N.Y.1997)); *see also Halpern v. FBI*, 181 F.3d 279, 294 (2d Cir.1999).

### (9) Whether the information sought is available through other discovery or from other sources

Defendants have failed to show that they have a compelling need for the extensive information sought in the files and that they cannot obtain the requested information through non-confidential sources. *See Brown v. Commonwealth*, 214 Va. 755, 757 (1974) (noting that reporter's right to keep sources confidential must yield to defendant's due process right to call for evidence in his favor only after the defendant has shown that he cannot obtain the information through non-confidential sources). Defendants can subpoena and depose witnesses and seek information from other sources in this matter, especially to support any purported claim of truth related to Hoft's claim of a United States State Department conspiracy.

### (10) the importance of the information sought to the plaintiff's case.

As discussed above, Hoft did not possess or have access to any of the information that his subpoena requests from the State Police or its Fusion Center at the time he published his article. Thus, the information and material sought is wholly irrelevant because it could not have had any impact on Hoft's state of mind when he made the alleged defamatory publication. Hoft has failed to show that he has a compelling need for the information in the materials sought and cannot obtain the requested information through non-confidential sources.

Therefore, to the extent that this Court decides to utilize the *Frankenhauser* factors, the balance of factors weighs in favor of the State Police and its Fusion Center.

### C. Federal and state law protect criminal intelligence information from disclosure.

Like its Northern Virginia Regional Intelligence Center (NVRIC) counterpart, the State Police Fusion Center is a criminal intelligence system and project and as such must comply with 28 Code of Federal Regulations Part 23 related to the operating policies of a criminal intelligence system. As a criminal intelligence system the State Police Fusion Center is prohibited pursuant to Title 28 C.F.R. §23.20(e) from disseminating criminal intelligence information to anyone other than law enforcement authorities with a need to know and right to know and who have agreed to comply with the operating principles set forth in 28 C.F.R. Part 23. As set forth in 28 C.F.R. §23.20(e), the State Police Fusion Center may not disseminate criminal intelligence information outside the confines of performing a "law enforcement activity." The dissemination exceptions set forth in 28 C.F.R. §23.20(f) applicable to disclosures to persons other than law enforcement authorities does not override the prohibition of disseminating criminal intelligence information outside the context of performing a "law enforcement activity." Disseminating criminal intelligence information in response to a subpoena issued in a civil case is in no way a "law enforcement activity." The exception stated in 28 C.F.R. §23.20(f)(2) regarding disclosures to "other individual[s]" is clearly not intended to command the dissemination of criminal intelligence information to parties in civil matters. The purpose of the exception is to allow a project, in the performance of a law enforcement activity, to disseminate information to individuals that may be in danger of losing life or property, such as a target of a credible threat of terrorism.

Additionally, pursuant to Virginia Code § 52-48(B), "[n]o person, having access to information maintained by the Virginia Fusion Intelligence Center, shall be subject to subpoena in a civil action in any court of the Commonwealth to testify concerning a matter of which he has

knowledge pursuant to his access to criminal intelligence information maintained by the Virginia Fusion Intelligence Center." Knowing dissemination of Fusion Center information is a Class 1 misdemeanor. Va. Code § 52-48(D).[6]

## CONCLUSION

For all of the foregoing reasons and those outlined in its memo in support of its motion to quash, pursuant to Rule 45(d)(3), James Hoft's April 22, 2021 subpoenas issued to the Virginia State Police and the Virginia Fusion Center should be quashed. The State Police reserves the right to rely upon additional arguments made by other movants at the hearing that has been set for this matter on June 14, 2021.

THE VIRGINIA STATE POLICE and
THE VIRGINIA FUSION CENTER

By Counsel

s/ Michael A. Jagels
Michael A. Jagels (VSB No. 38262)
Holli R. Wood (VSB No. 82560)
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
804-786-0083 – Phone
804-225-3064 - Fax
mjagels@oag.state.va.us
hwood@oag.state.va.us

---

[6] This section also exempts the State Police Fusion Center information from the Virginia Freedom of Information Act ((§ 2.2-3700 et seq.) and the Government Data Collection and Dissemination Practices Act (§ 2.2-3800 et seq.).

## CERTIFICATE OF SERVICE

    I hereby certify that on the 8th day of June 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a true copy of the foregoing to all counsel of record:

                                             /s/
                                         Michael A. Jagels