**IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT
OF VIRGINIACHARLOTTESVILLE
DIVISION**

BRENNAN M. GILMORE,

      Plaintiff,

v.

ALEXANDER E. (ALEX) JONES, et al.,

      Defendants.

No. 3:18-cv-00017-NKM-JCH

**DEFENDANT JAMES HOFT'S RESPONSE IN OPPOSITION TO THIRD PARTY
MAURICE JONES' MOTION TO QUASH SUBPOENA FOR DEPOSITION (Dkt. 324)**

## I.    <u>INTRODUCTION</u>

Jim Hoft did not voluntarily join this litigation: he was compelled by force, on the basis of allegations leveled by Mr. Gilmore.  Hoft and the other Defendants filed Motions to Dismiss, but these were denied.  Hoft's primary means of defending himself in this *defamation* action – for which truth is an **absolute defense**, and material falsity is Plaintiff's burden – is to deliver evidence of the truthfulness of his own statements, and to refute the allegations made by Gilmore.  Hoft's subpoena duces tecum and ad testificandum to former Charlottesville City Manager Maurice Jones (Mr. Jones) seeks information directly relevant to the allegations in the First Amended Complaint (FAC).  In particular, Jones completely fails to understand the nature of defamation actions and the relation of the First Amendment: i.e., that truth, **<u>whenever discovered</u>**, is an absolute defense.  Notably, truth and falsity are matters for the jury.  Hoft has a right to investigate the truthfulness of the alleged statements and the sting, the gist, of those statements so he can make his case to the jury.

Plaintiff doesn't merely make small discrete allegations of a single sentence or statement.  In his 99-page FAC, he articulates a complex constellation of *general* allegations to suggest Hoft directly, but also implicitly, and also as a co-conspirator, painted a complicated portrait of Plaintiff **– and that this portrait is <u>false</u>**.  As a matter of due process and the First Amendment, to defend himself, Hoft is absolutely entitled to investigate those allegations.

As the former City Manager who oversaw Chief Al Thomas, Jones has evidence relevant to this case.  To date, Jones has produced zero documents.  He offers confusing and conflicting reasons for both not producing documents and not producing a privilege log.  At some places he suggests he has no control over documents; at others he directly states that he does, and in a conclusory manner argues it would be unduly burdensome to require him to produce those

2

documents. In a similarly conclusory manner, Jones argues – without any specificity about specific documents, or even classes of documents – that these documents he doesn't possess are nonetheless privileged. Accordingly, the Court should Deny Jones' Motion, and Order Jones to produce responsive records within ten (10) days, along with a privilege log, and communicate with Hoft within seven (7) days to arrange for a mutually agreeable deposition date to occur within the next twenty-one (21) days, or as negotiated by Hoft and Jones.

## II.    <u>LAW</u>

A party to litigation also may serve on any non-party a subpoena to produce discoverable material in the non-party's possession, custody, or control. *Sines v. Kessler*, No.: 3:17-cv-00072 (Dkt. #765), at p. 2 (W.D. Va. June 12, 2020) (citations omitted). The scope of discovery from a non-party is the same as the scope of a discovery request made upon a party to the action, and a party is entitled to information that is relevant to a claim or defense in the matter at issue. *Id.* (citations and quotations omitted). The party or person resisting discovery bears the burden to show it should not be allowed. *Id.*, at p. 3 (citations omitted). Specifically, the parties claiming privilege bear the burden of demonstrating the applicability of the privilege to *specific documents*. *Id.*, at p. 5 (citations omitted). The proponents must *establish the particular communications at issue* are privileged and that the privilege was not waived.[1] *Id.*, at p. 6. Conclusory assertions of privilege are not proper objections under Rule 45(e)(2)(A)(ii). *Id.* (citations omitted). "They

---

[1] This Court cited to *U.S. v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982), which observed:

> Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege. Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter**.** *In re Sealed Case,* 676 F.2d 793, 808-09 (D.C.Cir.1982).

See also *United States v. Nobles*, 422 U.S. 225, 239 (1975) ("The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived").

certainly do not justify the decision to withhold responsive documents that are neither privileged attorney-client communications, nor protected trial preparation materials." *Id*. (citations omitted). "Rule 45(d)(3) provides no basis for relief where, as here, the subpoena does not require disclosure of privileged matters or work-product materials. *Id*., at p. 6-7 (citations and quotations omitted) (subpoenas at issue explicitly instructed objecting counsel *not to produce* documents protected by attorney-client privilege or the work-product doctrine).

To the extent any privilege is claimed, the withholding party must specifically identify the withheld documents and the basis for the respective privilege. *Smith v. Café Asia,* 256 F.R.D. 247, 250 (D.D.C.2009) (quoting *Avery Dennison Corp. v. Four Pillars,* 190 F.R.D. 1 (D.D.C.1999)) ("Filing a privilege log has become the universally acceptable mean[s] of asserting privileges in discovery in the federal courts"), accord *Smith v. James C. Hormel Sch. of Virginia Inst. of Autism*, No. 3:08CV00030, 2010 WL 3702528, at *7 (W.D. Va. Sept. 14, 2010).

"The purpose of the specific objection requirement is to provide the party seeking discovery with a basis for determining what documents the party asserting the privilege has withheld. Otherwise, how could this opposing party ever know whether the documents withheld under a blanket privilege objection were being withheld correctly, incorrectly, or maliciously?" *Cappetta v. GC Servs. Ltd. P'ship*, No. CIV. A. 3:08CV288, 2008 WL 5377934, at *5 (E.D. Va. Dec. 24, 2008).

## III.   ARGUMENT

### A.   HOFT'S REQUEST FOR DEPOSITION IS RELEVANT.

Jones is a witness to facts which are dispositive on issues surrounding Plaintiff's pleadings of conspiracies surrounding the UTR.  *See, for e.g.,* **Figure 1**, *infra*.  Jones has facts which will

4

prove or disprove Plaintiff's allegations of a conspiracy.  For example, large portions of the public – including citizens of Charlottesville – believe that there was a deliberate effort by the City of Charlottesville, the Virginia State Police, the National Guard and others to provoke violence through encouraging clashes between protesters and counter-protesters.   Hoft deposed Charlottesville former Mayor Dave Norris.  Norris was a witness to critical portions of the UTR before, during and after the order was given to declare an unlawful assembly.  *See* **Exhibit 1** - Norris Dep., *passim*.   Norris stated, based on his observations and his experience in city government that he believed that the decision to incite violence either through **deliberately** failing to protect the public, or through *forcing opposing protesters into direct conflict with each other* was made by multiple officials in multiple agencies, including but not limited to the Virginia State Police, and the Army National Guard, county police, university police, among others.  *Id*., at p. 21-22, 29-30, 63-70.

> **A:**   I mean, clearly the Charlottesville Police were on a stand-down order, but so were everybody else.  You know, and so you either have to believe that there was a stand down order or that hundreds and hundreds of law enforcement personnel for multiple agencies spontaneously and coincidentally came to the decision to stand back and allow things to happen in front of their very eyes.  And not respond in a way that they've all been trained their entire careers to respond.  And to me it's just – that's such a stretch of the imagination that I have to assume there was a stand down order.  That that was a deliberate strategy and that it was done to create an environment of violence and disruption to where they could shut the thing down … I just don't believe we've really gotten the answers that we need as to who's ultimately responsible for that. … But again, given the fact that the City's role and the law enforcement response … were a minority of the overall law enforcement response.  You had state police.  You had National Guard.  You had county police, university police, you know, all kinds of law enforcement personnel onsite. And so you – it begs the question, okay, well, given that all these players that were involved in this and the fact that they all stood down to varying degrees … But it begs the question who is ultimately in charge.  And I thought the Heaphy Report in general was a good document.  I read it from beginning to end.  But that to

> me was a glaring omission, as it doesn't ultimately name and hold accountable who was in charge of formulating and overseeing this failed – tragically failed response or strategy.
>
> Q:     …[J]ust based off your description and based off the Heaphy Report, it wasn't just failed.  It was deliberately failed. …
>
> A:     Exactly.  I think that's a very good way to put it.

*Id*., at 65-67.

　　　　In other words, former mayor Norris believes there was a governmental conspiracy to instigate violence, cover up various governmental decisions and heavily control information to misdirect the public, leaving many of the perpetrators unaccountable by design.  **This sounds awfully similar to the allegations Plaintiff argues are <u>false</u>, and which Hoft argues are <u>true</u>.**  Norris believes that the governmental officials who were ultimately behind these decisions have not been identified or held accountable.  *Id*.  Norris also testified, based on his experience as Mayor of Charlottesville for four (4) years, and additional years on the City Council, that Jones, as City Manager, was the direct supervisor of Charlottesville Police Chief Al Thomas, and oversaw all other executive officials.  *Id*., at p. 66, 77-78.  Maurice Jones and Al Thomas each have direct knowledge relating to the decisions which ultimately affected the lives of hundreds of people who were injured as a direct result of deliberate governmental decision-making, which the City has gone to great expense to give the appearance of exposing through external, objective fact-finding and exposure, only to have such efforts obstructed by the executive branch of Virginia (according to Heaphy, **<u>Exhibit 2</u>**, p. 14-16.), and Chief Thomas. *Id*., at 12-14.  The Governor of Virginia spent enormous resources[2] on "security" in advance of the UTR, only to see his state police, national guard, and other agencies abstain from action.  However, Tim

---

[2] Importantly, he not only dispatched national guardsmen in advance of the UTR, but he also declared a state of emergency contemporaneously with Chief Thomas' "decision" to declare an unlawful assembly.  Whether or not this is a coincidence

Heaphy was only able to investigate Charlottesville – unsurprisingly, McAuliffe refused to permit any executive agencies from contributing to the report.  *Id*., at 14-16.  And Chief Thomas is made the convenient "scapegoat."  **Exhibit 1** – Norris Dep., at p. 64-66 (describing Thomas as a scapegoat and that other officials at all levels were not held accountable for their decisions which caused death and injury).

Jones could provide testimony on the level of political or other improper influence and/or pressure, if any, he or any of his staff felt relating to the UTR and also persons and events relating to the UTR.  Jones will have information relating to the actions of himself and his office leading up to and after the UTR.  These facts cannot be obtained elsewhere.  In short, Jones is one of the most central governmental actors in the events surrounding the UTR.

Jones completely fails to address the relevance **truth and falsity** play in Plaintiff's allegations and Hoft's defenses thereto.  Truth is an <u>absolute</u> defense to a claim of defamation. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986).  Not only this: in defamation actions, plaintiff bears the burden of proving material falsity.  *Id*.  "Evidence of 'substantial truth' must be 'as broad, and as narrow, as the defamatory imputation itself.'  As the defamatory charge against the plaintiff increases in generality, the range of evidence that will establish substantial truth similarly broadens." § 5:22. Substantial truth test: generalized defamatory charges, 1 Law of Defamation § 5:22 (2d ed.) (emphasis added) (citing to Prosser and Keeton on Torts § 116, at 841 (5th ed. 1984), and Restatement (Second) of Torts, § 581A, comment c).

The factual allegations in play – i.e., *inter alia*, whether or not Mr. Gilmore engaged in a public-private conspiracy aimed at either instigating violence in Charlottesville, a "cover up," or misleading the public, are central and *material* facts to Gilmore's causes of action, and Hoft's defenses thereto.  Mr. Hoft has a Fifth and Fourteenth Amendment right to due process.  Hoft

cannot be compelled into a judicial process in which he is forced to defend himself at high expense and high stakes, only to then be denied the ability to work up his case.  He also has a First Amendment right to express himself which has been attacked by the Plaintiff.  Because of this, he has a right to fully investigate the claims that *haled him into this Court*.  The United States Courts cannot hale Hoft into court and then rob him of the ability to defend himself.  The government cannot erect a barrier between a citizen and his Constitutionally protected rights; or, if it does, it must at least provide a ladder. *Cf., Boddie v. Connecticut*, 401 U.S. 371, 376-77 (1971).  ("Thus, although they assert here due process rights as would-be plaintiffs, we think appellants' plight, because resort to the state courts is the only avenue to dissolution of their marriages, *is akin to that of defendants faced with exclusion from the only forum effectively empowered to settle their disputes. Resort to the judicial process by these plaintiffs is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court*.  For both groups this process is not only the paramount dispute-settlement technique, but, in fact, the only available one.  In this posture we think that this appeal is properly to be resolved in light of the principles enunciated in our due process decisions that delimit rights of defendants compelled to litigate their differences in the judicial forum … Prior cases establish, first, that due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard. Early in our jurisprudence, this Court voiced the doctrine that '(w)herever one is assailed in his person or his property, there he may defend'") (internal quotations and citations omitted).

 Because truth is an absolute defense, Hoft is not limited to uncovering evidence of information available to him at the time of publication, though such information may or may not be relevant to an evaluation of malice.  On the contrary, conduct and events occurring prior, during,

8

or subsequent to the Unite the Right Rally may refute Gilmore's **voluminous** allegations against Hoft.  *Cf., Montgomery v. Risen*, 2016 WL 3919809, *12 (D.D.C. 2016) ("Most importantly, although Montgomery claims that the software is irrelevant, he is wrong.  In making that argument, Montgomery has conflated the distinct inquires for actual malice and falsity. *See* 3 Rodney A. Smolla, *Smolla and Nimmer on Freedom of Speech* § 23:6 (2016) ('Wholly aside from the *fault* requirements that have been engrafted upon modern defamation law by the First Amendment, **the First Amendment does not permit liability for defamation unless *the plaintiff also demonstrates* that the defamatory statement was a false statement of fact**.' (second emphasis added)). Actual malice focuses on the *subjective* state of mind of the defendant. Falsity, by contrast, focuses on the *objective* truth of the defendant's assertions. **Therefore, it does not matter 'if the defendant doesn't know the truth of the matter when he makes the defamatory statement'; '[s]o long as what he says turns out to be true, he is free from liability.'** *Bustos v. A & E Television Networks*, 646 F.3d 762, 764 (10th Cir.2011)") (emphasis added).  **"[T]ruth, whenever discovered, serves as a complete defense."** *Id.* (emphasis added).   Jones misapprehends the law.  Evidence of prior or subsequent conduct by Jones and his office may be probative of various ongoing conspiracies by his or other public offices and entities relating to the Unite the Right Rally – as pled by Plaintiff – and this is evidence directly contradicting Plaintiff's allegations.  *See* **Figure 1**, *infra*.

Charlottesville Police Department was not the only law enforcement agency which failed to protect the public at the UTR.  In fact, large portions of the public within Charlottesville – including former Mayor Dave Norris – still believe that various political figures at all levels **deliberately** abstained from breaking up violence and asserting order at the UTR, **specifically to force the situation to degenerate into chaos**.  Large portions of the Charlottesville public are still

angry about this.  The Virginia State Police (VSP) also abstained from enforcing the law on August

12, 2017.  We only know about SOME of Charlottesville's deliberate or negligent conduct because

the City forced its police department to comply with the Heaphy/Hunton & Williams investigation.

VSP, the Governor's Office, and the US Army, each refused to cooperate with Heaphy.  **Exhibit**

**2**, p. 14-16.  The City of Charlottesville and Chief Al Thomas destroyed evidence, forged evidence,

and deliberately misdirected Heaphy.  *Id.*, at 12-14.  Given his adjunct supervisory role within law

enforcement, Jones will be able to provide valuable information about what decisions were made,

why, and by whom, and whether or not he supported or argued against the stand-down order issued

by Chief Al Thomas,[3] and whether he expected such an order would lead to great injury and

perhaps death.[4]

Jones was witness to numerous events and decisions surrounding important aspects of the

UTR – before, during and after the August 11-12 events.  As the Court is aware, the UTR did not

occur in a vacuum.  Numerous antecedent events and decisions created an important tapestry of

context.  For example, there were other rally events that occurred in Charlottesville during the

summer of 2017.  To prove a conspiracy as alleged by Plaintiff, Hoft is forced to unravel facts to

reveal the motivations of those who participated in the events surrounding "Charlottesville."  As

the City Manager, Jones occupied a very unique role through at all times relevant to this suit, in

which he was able to observe many aspects of interacting governmental authorities.

Jones is a witness to facts which are dispositive on issues surrounding the conspiracies

surrounding the UTR, as pleaded by Plaintiff.  *See, for e.g.,* **Figure 1**, *infra*.  Jones has facts which

will prove or disprove Plaintiff's allegations of a conspiracy.  He will also provide testimony on

the level of political or other improper influence and/or pressure, he or any of his staff felt in

---

[3] Or, if the stand down order came from someone other than Thomas.

[4] See Exhibit 2 – Heaphy Report, at p. 133.

managing the investigation and prosecution of James Fields, those who attacked DeAndre Harris, and other persons arrested and prosecuted for acts occurring on or about August 12, 2017.

| Allegation Category | Page or Paragraph |
|---|---|
| There was no public-private conspiracy surrounding the UTR | Page 2; Par. 30, 31, 32, 33, 34, 35, 36, 38, 42, 43, 46, 47, 48, 49, 50, 58, 59, 60, 63, 64, 65, 66, 69, 70, 79, 80, 83, 84, 85, 91, 94, 101, 105, 109, 110, 120, 126, 129, 144, 145, 208, 214, 239 |
| Gilmore was not part of any public-private conspiracy surrounding the UTR | Page 2; Par. 27, 30, 31, 32, 33, 34, 35, 36, 38, 42, 43, 46, 47, 48, 49, 50, 58, 59, 60, 63, 64, 65, 66, 69, 70, 79, 80, 83, 84, 85, 91, 94, 101, 105, 109, 110, 120, 126, 129, 144, 145, 208, 214, 239 |
| Media involvement was purely organic and not staged, scripted, or message coordinated to skew coverage | Page 2; Par. 31, 32, 35, 36, 38, 42, 43, 46, 47, 48, 49, 50, 58, 59, 60, 63, 64, 65, 66, 69, 70, 79, 80, 83, 84, 85, 91, 94, 101, 105, 126, 129, 144, 145 |
| Fields' car crash was deliberate **terrorism** | Page 1, 2, 62 (Tweet of Gilmore); Par. 29, 30, 31, 34, 38, 43, 49, 62, 120, 160 n. 74 |
| Gilmore's told the truth in his numerous interviews | Page 2, 3; Par. 31, 32, 34 |
| Defendants are propagandists, while facts as presented by Plaintiff are objectively true | Page 2, 3; Par. *Passim*. |
| UTR Pro-Lee consisted exclusively of bigots | 25, 26, 145, and implicit throughout. |
| Defendants are grotesque bigots | Page 2, 3; Par. *Passim*. |

Figure 1.

Jones may also have information relating to the evidence *illegally* leaked to WVIR NBC 29 Charlottesville and other NBC affiliates in July of 2019.  If it turns out he knows – or even suspects – who leaked the videos, such evidence may establish or lead to evidence of a waiver of any purported privilege relating to the footage.

Plaintiff's alleged public-private conspiracy to instigate violence at the UTR, to cover it up, and to shape the public's opinion about all things "Charlottesville" was not a discrete event, occurring only on August 12, 2017.  On the contrary, it antedated the UTR rally itself – in the City's anti-First Amendment hostility to the UTR organizers' exercise of their Constitutional rights to speech and assembly – but it also post-dated the rally, and it continues to this day.

Gilmore's allegations put the issue of a public-private conspiracy surrounding the UTR to manipulate events, instigate violence, or alter the public's perception of events, <u>squarely in play</u>. Hoft didn't ask to be forced into investigating these topics – *he filed a motion to dismiss*. To defend himself, he is now obliged to investigate.

The subject matter being entirely relevant, Jones' Motion should be denied, and the Court should Order Jones to produce responsive records within ten days, along with a privilege log, and communicate with Hoft within seven (7) days to arrange for a mutually agreeable deposition date to occur within the next twenty-one (21) days, or as negotiated by Hoft and Jones.

**B.     HOFT'S REQUESTS ARE NOT UNDULY BURDENSOME.**

Bizarrely, Jones argues as though he's still an appendage of the City of Charlottesville, or vice versa.  This is not the case.  Jones hasn't been a city employee for several years.  Jones also argues as though he was not City Manager during the UTR – the *sine qua non* and genesis of this law suit.  He argues that his deposition – by itself – is an undue burden.  He argues all of these without any support.  Jones' Motion should be denied, and the Court should Order Jones to produce responsive records within ten days, along with a privilege log, and communicate with Hoft within seven (7) days to arrange for a mutually agreeable deposition date to occur within the next twenty-one (21) days, or as negotiated by Hoft and Jones.

**C.     JONES' CONCERNS ABOUT PRIVILEGES ARE INSUFFICIENTLY STATED, OVERSTATED OR MERITLESS.**

Without citing to any specific documents or even any examples of documents, Jones declares that the records he can't be sure he possesses are nonetheless subject to law enforcement privilege, work product privilege and attorney-client privilege.

As stated in other responses to motions to quash.  The Commonwealth of Virginia just enacted a law which directly abrogates *Singh v. Agbemble*, 77 Va. Cir. 242 (Fairfax 2008).  *See*

**Exhibit 3** - HB 2004.  With some common sense exceptions, **Virginia doesn't want its public officials to hide criminal investigative materials from the public**.  Hoft incorporates his analysis of this new law from his Response in Opposition to Northern Virginia Regional Intelligence Center (NVRIC) (Dkt. #329) as if fully restated and set forth herein.  In passing this new law, Virginia <u>invited</u> the public to scrutinize the decisions of law enforcement.[5]  If this is true in the FOIA context, then it's true, *a fortiori* when a defendant in a suit needs access to the records to defend himself.  *Jones fails to put forth any argument as to why, given the presumption of openness these records are now generally afforded, Hoft should nevertheless be denied them.*  In failing to put forth such an argument, such putative prudential arguments should be deemed waived.

Jones makes arguments about the Commonwealth Attorney's work product without making distinctions between fact and opinion work product – or even how such records are related to Jones.  Jones also argues there could be attorney-client privileged material in Jones' records.  Again, Hoft doesn't want attorney-client privileged records or opinion work product.  On the other hand, some level of privilege log is required to provide a sufficient basis by which to evaluate privilege claims.  *Cf., Cappetta v. GC Servs. Ltd. P'ship*, No. CIV. A. 3:08CV288, 2008 WL 5377934, at *5 (E.D. Va. Dec. 24, 2008) ("The purpose of the specific objection requirement is to provide the party seeking discovery with a basis for determining what documents the party asserting the privilege has withheld. Otherwise, how could this opposing party ever know whether the documents withheld under a blanket privilege objection were being withheld correctly,

---

[5] See Amy Friedenberger, "Del. Chris Hurst's Bill Opening Up Criminal Investigative Files Sent to Governor," February 27, 2021, The News & Advance (https://newsadvance.com/news/state-and-regional/del-chris-hursts-bill-opening-up-criminal-investigative-files-sent-to-governor/article_c38e9cd0-19bd-5334-a856-6c69db650527.html) (last accessed May 28, 2021); see also "Virginia Moves to Open Police Records," April 27, 2021, The Daily Progress (https://starexponent.com/opinion/editorial/editorial-virginia-moves-to-open-police-records/article_92501b24-067c-5cca-9ff9-edbf97e0e4f5.html) (last accessed May 28, 2021);  Jonathan Edwards, "Police in Virginia Can No Longer Keep All Their Reports Secret Forever, Thanks to a New Law," April 2, 2021, The Virginian-Pilot. (https://www.pilotonline.com/news/crime/vp-nw-police-records-open-hurst-20210402-kgrgotwx4rhihiqc3hvs66s7sy-story.html) (last accessed May 28, 2021).

incorrectly, or maliciously?").

Jones also suggests, but provides zero authority for his bare assertion that the **prospect** of asserting a privilege at a **deposition** is sufficient grounds for failing to attend his own deposition. This argument is improper, without authority, and meritless. Jones' Motion should be denied, and the Court should Order Jones to produce responsive records within ten days, along with a privilege log, and communicate with Hoft within seven (7) days to arrange for a mutually agreeable deposition date to occur within the next twenty-one (21) days, or as negotiated by Hoft and Jones.

IV.     <u>CONCLUSION</u>.

For all of the foregoing reasons, the Court should Deny Jones' Motion, and Order Jones to produce responsive records within ten (10) days, along with a privilege log, and communicate with Hoft within seven (7) days to arrange for a mutually agreeable deposition date to occur within the next twenty-one (21) days, or as negotiated by Hoft and Jones.

Dated:  June 10, 2021

Respectfully submitted,

By:     <u>*/s/ John C. Burns*        </u>
        John C. Burns, admitted *pro hac vice*
        BURNS LAW FIRM
        P.O. Box 191250
        Saint Louis, MO 63119
        Tel:  (314) 329-5040
        Fax: (314) 282-8136
        TBLF@PM.ME

        Timothy B. Hyland
        Virginia Bar No. 31163
        HYLAND LAW PLLC
        1818 Library Street, Ste. 500
        Reston, VA 20190
        (703) 956-3548 (Tel.)
        (703) 935-0349 (Fax)

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of June, 2021, a true and accurate copy of the foregoing

was served on all parties of record via the Court's ECF System.

*/s/ John C. Burns*