**IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT
OF VIRGINIACHARLOTTESVILLE
DIVISION**

BRENNAN M. GILMORE,

      Plaintiff,

v.

ALEXANDER E. (ALEX) JONES, et al.,

      Defendants.

No. 3:18-cv-00017-NKM-JCH

**DEFENDANT JAMES HOFT'S SURRESPONSE IN OPPOSITION TO
<u>THIRD PARTY MEDIA MOVANTS' TO QUASH SUBPOENA (Dkt. #365)</u>**

Movants WVIR-TV, WSLS-TV, WRC-TV, Ashley Curtis, and Julie Carey (collectively "Media Movants" or "Movants"), like nearly all other third parties Hoft has subpoenaed in this case, refuse to produce any records – *whatsoever* – and claim sacrosanct privileges behind which to hide.  Notably, Movants are not the only ones with First Amendment rights – Hoft, too, has rights.  Movants ask the Court to quash Hoft's subpoenas because:[1] (1) he is engaging in an irrelevant 'fishing expedition'; (2) the sought records/materials are available elsewhere; and (3) even if relevant, Hoft has no compelling interest in the materials.  Movants are wrong because the records are: (a) relevant; (b) not available elsewhere; and (c) because Hoft's Constitutional rights **are** his compelling interest in the evidence.

The chief records sought are not only **(i)** the Helicopter Footage – which has **not** been made available to the public *outside* of James Fields' state trial Charlottesville Circuit Court – **but also (ii) Movant's <u>records</u> and <u>testimony</u>** describing communications from a governmental leaker to the press.  Many of Hoft's First Amendment defenses to Plaintiff's allegations hinge on whether or not public officials colluded with the press to skew public opinion of the events surrounding the Unite the Right Rally (UTR).  *See* discussion, *infra*.  Evidence of such collusion continuing through the coverage of the James Fields trial, and efforts by public officials to illegally leak[2] the Helicopter Footage, are directly relevant to showing a pattern and practice of government-media collusion.

---

[1] Movants also offer plenty of colorful comments insulting Hoft's litigation strategy.

[2] Virginia law prohibits the leaking of materials from ongoing criminal investigations until after they are fully adjudicated.  *See, for e.g.*, VA Code Ann. § 52-8.3.  Fields' state sentencing hearing was held on July 15, 2019.  *See* **Exhibit 1**, p. 1.  However, Fields' sentencing wasn't finally determined or imposed until <u>November 8, 2019</u>.  *Id.*, at p. 3 (noting that defendant Fields was advised by the court of his right to appeal within thirty (30) days).  And this is confirmed by Fields' filing of a Notice of Appeal less than thirty (30) days later on December 5, 2019.  *See* **Exhibit 2**, at p.1.  Movants published their video journalism pieces on or about July 17, 2019.  *See, for e.g.*, WRC news report at <u>https://archive.ph/BCd74</u> (published July 17, 2019); *see also* WSLS news report at <u>https://archive.ph/yCITC#selection-1543.18-1543.114</u> (published July 17, 2019).  **And this publication occurred before Fields' final adjudication**.

2

Given the centrality of the question of a media-government conspiracy to Plaintiff's claims and Hoft's defenses, if the Court is inclined to quash this subpoena, then every other media subpoena will be quashed in this case using similar arguments, and Hoft's ability to avail himself of a First Amendment defense will be foreclosed … *because of the First Amendment*.  Plaintiff too, stands to lose – Plaintiff has the burden of proving the material falsity of the context of the statements he alleges, including the sting.  Without such subpoenas, how can Hoft or Gilmore reasonably meet their burdens, much less prevail?

Not only has Hoft tried to obtain these materials from others sources (they have all flatly refused), but one or more of these sources appear to have violated the law and have no incentive to provide truthful testimony on the matter – assuming they would indeed comment other than to cite a Fifth Amendment privilege against self-incrimination.  *Journalists*, however, are protected by *Bartnicki v. Vopper*, 532 U.S. 514 (2001)[3] in this regard, no Fifth Amendment privilege would apply, and the credibility of their testimony would be much more reliable.  So far, notwithstanding the instant Motion to Quash, this is the only source available to Hoft.

Ironically, at the same time Movants claim Hoft can go *elsewhere*, Movants chastise Hoft for having sent out a number of subpoenas, to do just that.  How else is Hoft supposed to find the leaker, given Movants' intractability *and refusal to provide any information to Hoft that would credibly cast doubt upon Hoft's belief that the footage was in fact leaked?*  Hoft has little choice but to proceed in this manner, even though Movants possess the sought information.

On or about December 14, 2017, at Fields' preliminary hearing, Commonwealth Attorney Joseph Platania introduced the Helicopter Footage for the purposes of the hearing – during which *portions* of the video could be seen in open court.  *See* **Exhibit 3**, at p. 1-3.  Platania then removed

---

[3] *But see*, VA Code Ann. § 18.2-462.A, Compounding and Misprision.

it from the public record.  *Id.*  During the summer of 2018, a member of the public Intervenor

argued – vigorously and quite convincingly – to return the Helicopter Footage to the public record.

*Id.*, *passim*.   Remarkably, Platania, the *prosecutor who opposed Fields' multiple Motions to*

*Change Venue*, opposed this, arguing that it would jeopardize Fields' Sixth Amendment Right to

a fair trial.  *Id., passim*.  Judge Moore denied the Intervenor's bid to have the video returned to the

record, and the public did not have any access to the footage until Fields' trial, where Judge Moore

only permitted members of the public to view the footage in the Clerk's Office, during the trial.

*See* **Exhibit 4**.  Judge Moore *ordered the Clerk not to permit dissemination of the Helicopter*

*Footage outside of those constraints*.  *Id.*  Hoft subpoenaed the footage from the Clerk, and she

refused to produce it, citing to the Circuit Court's Order.  Decl. of John C. Burns, Esq., at p. 1.

Hoft also sought the same footage from the Virginia State Police, Joseph Platania, the

Office of the Commonwealth Attorney for the City of Charlottesville, the City of Charlottesville,

the Governor of the Commonwealth of Virginia, as well as other third parties.  *Id.*  ALL have

refused to produce any records at all, let alone the footage or information related to its leak to the

press.  *Id.*

Movants say they have spoken with the Assistant U.S. Attorney Chris Kavanaugh, one of

the prosecutors who prosecuted Fields in federal court.  Dkt. #365, at p. 5.  Kavanaugh "confirmed

that the referenced [Helicopter Footage] … was publicly filed not only in the federal hate crimes

prosecution but also in the state murder prosecution."  *Id.*  As discussed above, Charlottesville

Circuit Court has not and <u>will not</u> permit the footage to be disseminated to the public, so it is not

available there.  Moreover, Hoft **subpoenaed** Mr. Kavanaugh, and he categorically refused to turn

over the footage – as has the U.S. Department of Justice.  Decl. of John C. Burns, esq., at p. 1.

Even were some other source for the footage available, this would not provide evidence of a

leak/collusion; which evidence, as stated previously, can only credibly come from Movants.

> **Further Argument: The Helicopter Footage and Evidence Surrounding its Acquisition by Movants Is Relevant, and Hoft Has a Compelling Interest in This Evidence.**

Movants assert that Hoft mischaracterizes Plaintiff's allegations, and that the subpoenas to Movants are irrelevant, not compelling, and therefore impermissible.  <u>Movants are mistaken</u>.

*This Court* has stated that Plaintiff alleges that Hoft and the other defendants alleged that Plaintiff was a "deep state operative who conspired to orchestrate violence in Charlottesville for political purposes."  *Gilmore v. Jones*, 370 F. Supp. 3d 630, 642 (W.D. Va. Mar. 29, 2019).  Plaintiff incorporated **<u>ALL</u>** of the factual allegations of his FAC into Count One against Hoft, et al.  FAC (Dkt. #29), at p. 79.  Plaintiff makes a large number of *general* and specific allegations in his complaint, but these can be distilled into a non-comprehensive list.  *See* **<u>Figure 1</u>** below.  Specifically, Plaintiff alleges, among other things (FAC, at listed paragraphs, emphasis added):

67.   Through statements such as "[t]he media knows exactly who he is yet played it off like a casual observer," **and "it looks like the State Department was involved in Charlottesville and is trying to cover it up," and by describing Mr. Gilmore's presence at and later description of the events in Charlottesville as proving how "the Deep State is working with the liberal media to shape narrative and fool the American people,"** Hoft implies a number of assertions of fact that are provably false: 1) that the State Department organized the Charlottesville rioting and/or attack; 2) that Mr. Gilmore participated in the State Department's planning of the Charlottesville riots and/or attack; 3) that the State Department conspired to conceal these facts by removing information about Mr. Gilmore from a number of internet sources; 4) that media outlets were involved in the conspiracy because they knew Mr. Gilmore was a State Department employee; **5) that the media characterized Mr. Gilmore as a casual observer because they were working in concert with Mr. Gilmore, the State Department, and other government agencies to cover up their involvement in the conspiracy; and 6) that all of these conspirators worked together to deceive the public about what happened in Charlottesville that day.**

\*\*\*

70.   By both **stating and insinuating that Mr. Gilmore was an accomplice to a government plot to stage a violent riot and/or attack that killed and injured individuals in Charlottesville, and cover it up,** Hoft falsely brands Mr. Gilmore as a criminal, a fraud, and an accessory to murder.

5

***

80.     After the attack in Charlottesville, Defendant Hoft used the factually inaccurate screenshots from Reddit to invent a nefarious role and identity for Mr. Gilmore in order to promote this preconceived narrative: **that the violence in Charlottesville was a creation of the "Deep State," that Mr. Gilmore was a central accomplice to that effort, and that the media was working with the "Deep State" to cover up their role in Charlottesville and deceive the American public**.

Gilmore's allegations are very general: that Hoft said Gilmore was a member of the "deep state" and worked with the State Department and **other government agencies**" to "stage a violent riot and/or attack that killed and injured individuals in Charlottesville, and cover[ed] it up," that the "violence in Charlottesville was a creation of the 'Deep State,' that "Mr. Gilmore was a central accomplice to that effort, **and that the media was working with** the 'Deep State' to cover up their role in Charlottesville and deceive the American public." *Id*., at pars. 67,70,80.

**Movants admit** Plaintiff alleges that "[t]he media characterized Mr. Gilmore as a casual observer because they were working in concert with Mr. Gilmore, the State Department, **and other government agencies to cover up their involvement in the conspiracy; and [t]hat all of these conspirators worked together to deceive the public about what happened in Charlottesville [at the Unite the Right rally].**"  Motion, Dkt. #365, at p. 2 (emphasis added).

| Allegation Category | Page or Paragraph |
|---|---|
| There was no public-private conspiracy surrounding the UTR | Page 2; Par. 30, 31, 32, 33, 34, 35, 36, 38, 42, 43, 46, 47, 48, 49, 50, 58, 59, 60, 63, 64, 65, 66, 69, 70, 79, 80, 83, 84, 85, 91, 94, 101, 105, 109, 110, 120, 126, 129, 144, 145, 208, 214, 239 |
| Gilmore was not part of any public-private conspiracy surrounding the UTR | Page 2; Par. 27, 30, 31, 32, 33, 34, 35, 36, 38, 42, 43, 46, 47, 48, 49, 50, 58, 59, 60, 63, 64, 65, 66, 69, 70, 79, 80, 83, 84, 85, 91, 94, 101, 105, 109, 110, 120, 126, 129, 144, 145, 208, 214, 239 |
| Media involvement was purely organic and not staged, scripted, or message coordinated to skew coverage | Page 2; Par. 31, 32, 35, 36, 38, 42, 43, 46, 47, 48, 49, 50, 58, 59, 60, 63, 64, 65, 66, 69, 70, 79, 80, 83, 84, 85, 91, 94, 101, 105, 126, 129, 144, 145 |
| Fields' car crash was deliberate **terrorism** | Page 1, 2, 62 (Tweet of Gilmore); Par. 29, 30, 31, 34, 38, 43, 49, 62, 120, 160 n. 74 |

| Gilmore told the truth in his numerous interviews | Page 2, 3; Par. 31, 32, 34 |
|---|---|
| Defendants are propagandists, while facts as presented by Plaintiff are objectively true | Page 2, 3; Par. *Passim*. |
| UTR Pro-Lee consisted exclusively of bigots | 25, 26, 145, and implicit throughout. |
| Defendants are grotesque bigots | Page 2, 3; Par. *Passim*. |

Figure 1.

## Hoft's Constitutional rights *are* his compelling interest.

Hoft's First Amendment Truth defense does not require that he prove the literal truth of his alleged specific statements or their general 'sting' or context.   § 5:22. Substantial truth test: generalized defamatory charges, 1 Law of Defamation § 5:22 (2d ed.) (emphasis added) (citing to Prosser and Keeton on Torts § 116, at 841 (5th ed. 1984), and Restatement (Second) of Torts, § 581A, comment c).  If Hoft proves *substantial truth*, Plaintiff loses.  *Cf., id*.  Were Hoft to adduce evidence that Plaintiff was part of a conspiracy to instigate violence and/or manipulate the public's perception of public and private events surrounding the Unite the Right Rally, Hoft would be entitled to submit this evidence to the jury.  It is for the jury alone to decide falsity.   But, even short of trial, in discovery, *Hoft is entitled to seek evidence reasonably calculated to lead to the discovery of admissible evidence*.  In seeking evidence of leaks and collusion Hoft does just this.

Hoft filed a Motion to Dismiss, and this Court already decided that the statements as pled by Plaintiff were actionable defamation.  *Gilmore v. Jones*, 370 F. Supp. 3d 630 (W.D. Va. Mar. 29, 2019).  The Court also *refused* to dismiss this suit.  *Id*.  Hoft has been forced by Plaintiff and the United States Government into this judicial process in which he stands to lose his property. Hoft is entitled to make his case or else he is robbed of due process rights and, with them, his First Amendment rights as well.

Every civil plaintiff – including Gilmore – has a 5th and 14th Amendment property interest

in his cause of action.  *Logan v. Zimmerman Brush Co*., 455 U.S. 422, 428 (1982) (considering it "settled" that "a cause of action is a species of property").  Unlike a criminal prosecution, in which the government brings a criminal complaint ostensibly for the purpose of public safety, a civil suit is normally brought by private actors who are using the awesome power of the Courts as a means to physically force another citizen to part with his property.  A mere complaint is not enough, standing on its own, to provide courts with assurances of the veracity of the claim.[4]  Just as a civil plaintiff has a property interest in his cause of action, so too does a defendant in an adequate opportunity to defend against plaintiff's claim.  Were this not the case, a plaintiff would effectively have a constitutionally protected means of harassing defendants.  *What's more, as this suit attack's Hoft's speech as a citizen and a journalist, the suit is a direct challenge to **his** Freedom of Speech*.  Without an adequate ability to conduct discovery which directly relates to Plaintiff's stated allegations – upheld as valid, actionable defamation by this Court, no less – Hoft risks losing not only his property interest in his financial property, but also his First Amendment interest in his speech.  It is logically and jurisprudentially absurd to suggest that a plaintiff has a Constitutional property interest in a civil cause of action, but that a defendant lacks a property interest in his defense to such action – *in which he stands to lose property*.   The Federal Rules may trace the contours and scope of Hoft's Constitutional rights to discovery, but there can be no doubt but that he has such Constitutional rights; in this specific case, by virtue of the First, Fifth, and Fourteenth Amendments.  What more compelling interest must Hoft show

DATED: June 28, 2021.

---

[4] *Cf., Hickman v. Taylor*, 329 U.S. 495, 501 n.2 (1947) ("The great weakness of pleading as a means for developing and presenting issues of fact for trial lay in its total lack of any means for testing the factual basis for the pleader's allegations and denials") (internal quotations and citations omitted).

Respectfully submitted,

By:     */s/ John C. Burns*
        John C. Burns, admitted *pro hac vice*
        BURNS LAW FIRM
        P.O. Box 191250
        Saint Louis, MO 63119
        Tel:  (314) 329-5040
        Fax: (314) 282-8136
        TBLF@PM.ME

        Timothy B. Hyland
        Virginia Bar No. 31163
        HYLAND LAW PLLC
        1818 Library Street, Ste. 500
        Reston, VA 20190
        (703) 956-3548 (Tel.)
        (703) 935-0349 (Fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of June, 2021, a true and accurate copy of the foregoing

was served on all parties of record via the Court's ECF System.

*/s/ John C. Burns*

9