**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | | |
|---|---|---|
| BRENNAN M. GILMORE, | : | Case No. 3:18-cv-00017 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ALEXANDER E. JONES, et al., | : | |
| Defendants | : | |
| | : | |
| | : | |
| *In re subpoena to Verizon for the mobile* | : | |
| *phone records of journalist Jessica Bidgood* | : | |
| | : | |

## MEMORANDUM IN SUPPORT OF OBJECTIONS AND MOTION TO QUASH SUBPOENA TO VERIZON FOR THE MOBILE PHONE RECORDS OF JOURNALIST JESSICA BIDGOOD

The subpoena that is the subject of this motion should be quashed for two independent reasons. First, it should be quashed because it clearly is overbroad. It seeks to compel disclosure of an entire year's worth of Jessica Bidgood's telephone records, the vast majority of which are wholly irrelevant to this proceeding and the disclosure of which would constitute a severe invasion of her privacy. Second, it should be quashed because Bidgood is a journalist—she was working for *The New York Times* during the time period covered by the subpoena—and her phone records are likely to reveal contacts with sources on any number of news reports and their related investigations. Those records are thus protected by the First Amendment and Virginia's journalist's privilege. Defendant James Hoft has not even tried and ultimately will fail to overcome that privilege.

### Background

On May 20, 2021, Defendant James Hoft served a subpoena on Verizon that indiscriminately seeks "[a]ll phone records, documents, and/or logs, text message documents,

phone contacts, phone photos, phone media, phone video, SUBSCRIBER INFORMATION, and CALL DETAILS for the period of March 1, 2017 through March 1, 2018" for a telephone number associated with Bidgood, who is currently a reporter for *The Boston Globe* and, during the timeframe in the subpoena, was a reporter for *The New York Times*. ECF Doc. 404-1. The subpoena did not mention Bidgood by name, however, and it did not otherwise alert Verizon that Bidgood is a journalist and that her telephone records are therefore privileged. *Id.* Instead, the subpoena affirmatively *misrepresented* that "[n]o legitimately privileged materials are sought." *Id.*

Hoft did not notify Bidgood of the subpoena. For reasons that remain unclear, neither Bidgood nor The New York Times Company (The Times), her former employer, learned of the subpoena until July 14, 2021.[1] That same day, and before The Times and Bidgood learned of the subpoena, Verizon mailed records responsive to the subpoena to Hoft's counsel. Upon learning of the subpoena, and based on Verizon's representation that it would attempt to stop delivery of the mailing upon receipt of notice that Bidgood had filed a motion to quash, she immediately filed such a motion. ECF Doc. 404.

Unfortunately, Verizon was unable to stop delivery of Bidgood's phone records, and so the next day, July 15, 2021, Bidgood filed a motion to enforce the protective order in this case (filed at ECF Doc. 194). That motion, ECF Doc. 405, asked the Court to order Hoft's counsel to treat Bidgood's privileged phone records as "Recalled Information" under the protective order and to immediately destroy them so as to preserve the status quo while Bidgood's motion to quash was pending.

---

[1] The Times suspects that it did not learn of the subpoena until July 14 because Verizon addressed the notice of subpoena to the wrong zip code.

The Court granted Bidgood's motion to enforce the protective order on July 16. In its Order, ECF Doc. 406, the Court instructed Hoft's counsel to "maintain the Verizon records in a sealed receptacle in a secure location and … not review those records or distribute or disclose them to anyone, including his client, until Bidgood's motion to quash is resolved." *Id.* The Order further stated that, if Hoft's counsel had already reviewed the Verizon records, to "not copy them, communicate about them with anyone else, including his client, or otherwise make any use of them." *Id.* A few days later, during a hearing on a motion to quash subpoenas served on other third-party journalists in this case, Hoft's counsel represented that he had been out of the office, that he had not yet received or reviewed the records disclosed by Verizon, and that he would comply with the Court's July 16 Order.  The Court asked Hoft's lawyer to notify the undersigned if and when he came into receipt of the records.

Hearing nothing from Hoft's counsel, the undersigned subsequently followed up with him by letter dated July 22, 2021. *See* Exhibit A to Declaration of Charles D. Tobin. In that letter, the undersigned relayed detailed information provided by Verizon on precisely where the records were delivered. The letter asked that he retrieve the package from the receptionist who received them and confirm both that he had done so and that he would continue to abide by the Court's Order. The letter also asked Hoft's counsel whether he intended to oppose Bidgood's motion to quash and, if he did intend to oppose the motion, to advise when he was available to meet and confer about why he believes Bidgood's privileged phone records are relevant to this case. As of the date of this filing, Hoft's counsel has not responded to that letter.

Bidgood now files this memorandum in support of her July 14 motion to quash.

3

## Argument

### A.       The Subpoena Should be Quashed Because it is Overbroad

The subpoena for Bidgood's phone records should be quashed because it is, on its face, overbroad. The Subpoena seeks *all* telephone records for Bidgood for an entire year—data that, on information and belief, runs for nearly 90 pages. Those records conceivably encompass records of every call or text message Bidgood made, to every source, colleague, friend, and family member during that time. The vast majority of those communications, even if related to her work for The Times, undoubtedly had nothing to do with news reports Bidgood researched and wrote related to the Unite the Right rally. In addition, they undoubtedly reveal calls and text messages with Bidgood's family and friends and could reveal highly personal information such as where Bidgood banks, medical treatment she or her family has sought, legal counsel she has consulted, inter-family communications, and her political and social activities. As Justice Stewart noted more than 30 years ago, the telephone numbers that a person dials "easily could reveal the identities of the persons and the places called, and thus reveal the most intimate details of a person's life." *Smith v. Maryland*, 442 U.S. 735, 748 (1979) (Stewart, J., dissenting). None of this information is remotely relevant to the defense in this matter, and its disclosure would be a gross invasion of Bidgood's privacy.

Overbroad subpoenas are improper as a matter law and should be quashed, as this Court has previously recognized in this case. ECF Doc. 396 at 17-20 (quashing subpoenas to various government entities on the ground they were overbroad and cataloging case law on overbreadth). Indeed, where a subpoena is directed to a non-party such as Bidgood, courts are especially alert to overbroad, intrusive, and harassing subpoenas. *See id.* at 12 (discussing the "special weight" given a recipient's non-party status, the additional factors courts must consider when assessing a subpoena directed to a non-party, and cataloging cases).

As discussed in further detail below, given the bare-bones nature of the subpoena and opposing counsel's refusal to meet and confer regarding the reasons he seeks Bidgood's phone records, it is difficult to discern how any of Bidgood's phone records could possibly relate to this case. But certainly there is no justification for such a wide-ranging and highly intrusive subpoena to a nonparty. *See In re Subpoena to Witzel*, 531 F.3d 113, 120 (1st Cir. 2008) (affirming district court's denial of motion to compel where lower court "concluded [that] the burden on . . . a nonparty to the underlying action[] to disclose his private communications with other nonparties outweighs any slight relevance the disputed communications might have").

Because the subpoena seeks records of all personal and professional telephone calls and text messages made by Bidgood for an entire year, regardless of whom she communicated with, it is manifestly overbroad. Disclosure of these records would reveal confidential and personal information and would constitute a gross intrusion into Bidgood's personal and professional life that simply cannot be justified. This is precisely the kind of subpoena that is not permitted by the rules and that should be quashed.

**B.     The Subpoena Should Also Be Quashed Because It Seeks Privileged Records, The Disclosure Of Which May Not be Compelled**

Even apart from its overbreadth, the subpoena should be quashed because it seeks records that are shielded from compelled disclosure by the Virginia's First Amendment-based journalist's privilege.

As this Court knows from prior briefing in this case, filed on behalf of other journalists, *see* ECF Doc. 365, courts in Virginia recognize a qualified journalist's privilege rooted in the First Amendment. Unless overcome, that privilege protects reporters from being compelled to disclose information obtained in the course of their newsgathering. *See, e.g.*, *LaRouche v. NBC*, 780 F.2d 1134, 1139 (4th Cir. 1986); *Brown v. Commonwealth*, 214 Va. 755, 757 (1974).

5

The privilege applies in federal court where jurisdiction is based on diversity, as it is here. *See, e.g.*, *Hatfill v. N.Y. Times*, 242 F.R.D. 353, 356 (E.D. Va. 2006) ("the notes are not discoverable because they are protected by the qualified reporter's privilege under Virginia state law").

Moreover, it applies to *any* "unpublished" information, whether or not confidential sources are involved. *See Hatfill,* 242 F.R.D. at 356 (quashing subpoena for non-confidential information in a Virginia defamation case); *see also, e.g.*, *Johnson v. Bass*, 69 Va. Cir. 97, 97-98 (Orange Cnty. 2005) (noting that "courts agree that there exists an important constitutional privilege that protects the private files of journalists under the provisions of the First Amendment to the United States Constitution and Article I, Section 12, of the Virginia Constitution" and quashing subpoena to reporter for non-confidential newsgathering information); Order, *In re: Subpoena Issued to Scott Daugherty*, Nos. CR 17000428-01 – CR 17000447-01 (City of Portsmouth Cir. Ct. July 5, 2018) (quashing subpoena for non-confidential information where there was "no showing" that reporter "possesses highly relevant material and information unavailable from another source") (copy attached to Walker Decl. as Exhibit H); Transcript, *HJN Enters., LLC v. Mehlman-Orozco*, No. CL16000876 (Pr. Wm. Cty. Cir. Ct. Aug. 10, 2018), at 23:3-24:2 (quashing subpoena to reporter pursuant to privilege) (copy of relevant portions of transcript attached to Walker Decl. as Exhibit I); *Commonwealth v. Townley*, 2018 Va. Cir. LEXIS 39, at *2-5 (Roanoke City Cir. Ct. Jan. 31, 2018) (same).

And although Virginia courts do not appear to have yet considered the issue, decisions elsewhere make clear that records of calls and text Bidgood made or received for newsgathering purposes constitute unpublished information subject to the privilege. *See, e.g.*, *New York Times Co. v. Gonzales*, 459 F.3d 160, 163 (2d Cir. 2006) ("[W]hatever rights a newspaper or reporter

has to refuse disclosure in response to a subpoena extends to the newspaper's or reporter's telephone records in the possession of a third party provider.")

Meanwhile, the privilege yields only if the subpoenaing party can show that: (1) the information sought is relevant, (2) it is not available from alternative sources, and (3) there is a compelling interest in it. *LaRouche*, 780 F.2d at 1139; *see also Hatfill*, 242 F.R.D. at 356 ("the Virginia courts have applied the three-part balancing test adopted by the Fourth Circuit in *LaRouche*"). The purpose of the privilege is to protect journalists from having to testify and turn over their work product just because it may possibly be helpful to a civil or criminal litigant. As one court has explained, subpoenas to journalists cause a "chilling effect" on newsgathering because of:

> the threat of administrative and judicial intrusion into the newsgathering and editorial process; the disadvantage of a journalist appearing to be an investigative arm of the judicial system or a research tool of government or of a private party; the disincentive to compile and preserve non-broadcast material; and the burden on journalists' time and resources in responding to subpoenas.

*Mark v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995) (citation omitted) (quashing subpoena for non-confidential information); *see also Livingston v. Kehagias*, 2018 U.S. Dist. LEXIS 39545, at *6-7 (E.D.N.C. Mar. 12, 2018) (quashing subpoena for non-confidential information because need for information was "not sufficiently compelling to warrant intrusion into the rights of the free press"); *Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9, 16 (D.D.C. 2015) (privilege for non-confidential information was designed to prevent "wholesale exposure of press files to litigant scrutiny" and the "burden [to] the press [of the] heavy costs of subpoena compliance" (citation omitted)); *United States v. Thompson*, 2015 U.S. Dist. LEXIS 47110, at *3 (S.D. Fla. Apr. 10, 2015) (privilege, which "bars a litigant from compelling production or testimony in all but the

most exceptional cases[,] . . . is derived from the chilling effect that 'forcing journalists to testify in judicial proceedings about the substance of their news reports' would have on an independent and free press'" (citations omitted)).

Nothing in the record or in the subpoena served on Verizon gives any clues as to how Bidgood's phone records are even tangentially relevant to the claims or defenses in this case, much less how Hoft could possibly satisfy the *LaRouche* test. Certainly, the vast majority of the calls reflected in the Verizon records have absolutely nothing to do with this case: As is clear from a simple search on *The New York Times*' website, Bidgood's research and reporting on the Unite the Right rally and related topics represented only a fraction of her journalistic work between March 2017 and March 2018.[2] Many of those unrelated new reports may have involved information shared with Bidgood in confidence or by sources who communicated with her based on the understanding that their identities would be protected. This information cannot even begin to clear the relevancy requirement.

Bidgood strongly suspects that the same is true for those calls—if any—that might relate to her reporting on issues related to this case. Thus, for the benefit of the Court, and to expedite consideration of this motion, the undersigned sought to meet and confer with Hoft's counsel about why his client believes he needs Bidgood's phone records to defend against Plaintiff Brennan Gilmore's defamation claims. But that request has been ignored and, given the far-fetched nature of Hoft's claims regarding some massive conspiracy between the media and government, Bidgood sees no upside in trying to guess how her phone records could possibly be

---

[2] Search results for news reports with Bidgood's byline are available at https://www.nytimes.com/search?dropmab=false&endDate=20180301&query=bidgood&sort=best&startDate=20170301. Hoft can conduct his own searches by clicking on the magnifying glass at the top of *The New York Times'* website, searching for Bidgood and then limiting by date range.

relevant to Hoft's defenses, much less satisfy some compelling interest as the *LaRouche* test requires.

Bidgood thus reserves argument on these points until after Hoft attempts to articulate some explanation in his opposition to her motion. For now, Bidgood simply points out that phone records, by definition, are available from alternative sources: phone calls involve two parties, the caller and the recipient. Thus, rather than subpoena the phone records of a journalist, the *LaRouche* test requires Hoft to first seek discovery from whoever it is he believes Bidgood spoke with, whether that is the Plaintiff or someone else. Hoft's failure to exhaust alternative sources is alone sufficient reason to grant Bidgood's motion to quash and she respectfully asks that the Court do just that.

**Conclusion**

For all the reasons stated herein, Bidgood respectfully requests that the Court grant her motion to quash. In addition, she requests that the Court order Hoft's counsel to take all reasonable steps to find the records Verizon sent to him, using the delivery information the undersigned gave him, and to then provide the package, unopened, to Bidgood.

Dated: August 2, 2021                Respectfully submitted,

                                     BALLARD SPAHR LLP


                                     By:    */s/ Charles D. Tobin*_____
                                     Charles D. Tobin
                                     BALLARD SPAHR LLP
                                     1909 K Street, NW, 12th Floor
                                     Washington, DC 20006
                                     Telephone: (202) 661-2200
                                     Fax: (202) 661-2299
                                     tobinc@ballardspahr.com

                                     Leita Walker (*pro hac vice* pending)
                                     BALLARD SPAHR LLP
                                     2000 IDS Center
                                     80 South 8th Street
                                     Minneapolis , MN 55402-2119
                                     Telephone: (621) 371-6222
                                     Fax: (612) 371-3207
                                     walkerl@ballardspahr.com

                                     *Attorneys for Journalist Jessica Bidgood*