IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BRENNAN M. GILMORE,<br><br>          Plaintiff,<br><br>v.<br><br>ALEXANDER E. (ALEX) JONES; *et al.*,<br><br>          Defendants. | Case No. 3:18-cv-00017-NKM-JCH |

**DEFENDANTS' MOTION TO COMPEL DISCOVERY
RESPONSES FROM PLAINTIFF BRENNAN M. GILMORE**

Defendants Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC (collectively, "Defendants") move this Court pursuant to Fed. R. Civ. P. 37(a) for an order compelling Plaintiff Brennan M. Gilmore to supplement his responses to Defendants' discovery requests. Counsel for Defendants has met and conferred with counsel for Plaintiff in good faith and have reached an impasse as to Mr. Gilmore's discovery obligations in this matter; therefore, Defendants ask this Court to enter an order compelling Mr. Gilmore to supplement his deficient responses.

**1.0 Introduction**

Plaintiff filed this action against the Defendants and others, alleging that certain statements made by the Defendants were defamatory and caused him emotional distress. Specifically, Plaintiff's Amended Complaint references an August 15, 2017 article and video (Dkt. No. 29 at Count VII) and an August 21, 2017 video (*id*. at Count VIII), which are alleged to have been authored or disseminated by the Defendants. Mr. Gilmorealleges that as a result of Defendants' actions, he has suffered reputational harm, damaged business relationships, loss of romantic relationships, and severe emotional distress.

Defendants have propounded four sets of discovery in this proceeding: (1) Defendant Free Speech Systems, LLC's First Set of Interrogatories ("FSS Ints.") (responses attached as

**Exhibit 1**); (2) Defendant Free Speech Systems, LLC's First Set of Requests for Production ("FSS RPDs") (responses attached as **Exhibit 2**); (3) Infowars Defendants' First Set of Requests for Production of Documents (NOS. 1-188) ("IW RPDs") (responses attached as **Exhibit 3**); and (4) Defendants' First Set of Interrogatories to Plaintiff Brennan M. Gilmore (NOS. 1-10) ("IW Ints.") (responses attached as **Exhibit 4**).

This motion is related to five separate areas of discovery propounded by the Defendants: (1) Mr. Gilmore's specific identification of alleged false and defamatory statements made by the Defendants, (2) Mr. Gilmore's communications and interactions with media entities, (3) Mr. Gilmore's claimed injuries and damages, (4) Mr. Gilmore's communications with third parties about the central issues in this case, and (5) Mr. Gilmore's membership in associations and organizations, and his applications for grants and awards.

## 2.0   Legal Standard

Federal Rule of Civil Procedure Rule 26 gives parties in civil litigation wide latitude to conduct discovery: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  As the Fourth Circuit has observed, "[r]elevance is not, on its own, a high bar."  *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019).  Discovery must be proportional to the needs of the case, however discovery requests may still be relevant even if they require production of documents that are uninteresting or cumulative.  *Id*.

> As this Court has observed:
>
> Under Rule 37(a), the "party seeking discovery may move for an order compelling an answer, … production, or inspection" from another party who ""fails to answer an interrogatory summitted under Rule 33," or "fails to produce documents, or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv).  "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4)

*Sines v. Kessler*, Civil Action No. 3:17-cv-00072, 2020 U.S. Dist. LEXIS 102390, at *21 (W.D. Va. June 11, 2020).  Further:

> Rule 34 applies only to documents, ESI, or tangible things within "the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Control" in this context means "actual possession" or "the legal right to obtain" the requested material "on demand." *Terry v. Modern Inv. Co.*, No. 3:04cv85, 2006 U.S. Dist. LEXIS 58553, 2006 WL 2434264, at *6 n.15 (W.D. Va. Aug. 21, 2006) (Moon, J.) (internal quotation marks omitted); *see, e.g., [Poole v. Textron, Inc.,* 192 F.R.D. 494, 501 (D. Md. 2000)] (explaining it "is well established" that Rule 34 should be "broadly construed" so a party may be required to produce requested materials "even though it may not actually possess" them, and adopting the movant's position that "documents in the possession, custody or control of a party's attorney or former attorney are within the party's 'control' for the purposes of Rule 34"). There is no such limitation on a party's obligation to answer interrogatories. *Bonumose Biochem, LLC v. Yi-Heng Percival Zhang*, No. 3:17cv33, 2018 U.S. Dist. LEXIS 231073, 2018 WL 10068638, at *6 (W.D. Va. Oct. 31, 2018) (citing Fed. R. Civ. P. 33(b)(3)).

*Id.* at 41 n.5.

**3.0    Argument**

Defendants seek discovery from the Plaintiff on five topics, addressed below, which are relevant to the defense of this matter. Plaintiff should be compelled to provide supplemental responses to each and every one of them.

**3.1    Identification of Alleged False and Defamatory Statements**

Defendants propounded five interrogatories to Plaintiff seeking to identify which statements are at issue in Plaintiff's claims, and what facts in those statements are alleged to be false. The interrogatories at issue are:

**Int. No. 5:** Identify with specificity what statements in the August 15 Video are false.

**Int. No. 6:** Identify with specificity what statements in the August 15 Video are defamatory.

**Int. No. 7:** Identify with specificity what statements in the August 21 Video are false.

**Int. No. 8:** Identify with specificity what statements in the August 21 Video are defamatory.

**Int. No. 9:** Identify with specificity all facts showing that the statements identified in response to Interrogatory 5 are false.

**Int. No. 10:** Identify with specificity all facts showing that the statements identified in response to Interrogatory 7 are false.

*See* **Exhibit 1**, FSS Ints.

This is a defamation case. The Defendants have a right to seek discovery on the elements of the claim. However, Plaintiff responds with vague, unresponsive, and incomplete answers. If the Plaintiff has come to realize that perhaps he cannot identify defamatory statements, he is free to reconsider this case and to move to voluntarily dismiss it. But, if he is to maintain a defamation action, especially one against the press, he must respond to the most basic question in any defamation claim – *what was the false statement of fact that damaged to his reputation?*

In response to Interrogatory Nos. 5 and 7, Plaintiff responds by using non-exhaustive *examples* of commentary that he believes contain defamatory statements without specifically identifying *which* statements he alleges are false. *See* **Exhibit 1** at Response to Int. No. 5. In response to Interrogatory Nos. 6 and 8, Plaintiff responds by claiming that the videos are defamatory "*in toto*" without clarification. In response to Interrogatories Nos. 9 and 10, Plaintiff likewise declined to provide any substantive response and instead furthers his claim that the videos are simply defamatory "*in toto*." These responses lack any reasonable basis in fact or law. One cannot simply say, "well, everything" in response to a question seeking to determine which specific facts are false and defamatory.

In his meet and confer letters, Plaintiff cites to two cases for the proposition that he need not identify with specificity the allegedly false statements : *Gov't Micro Res., Inc. v. Jackson*, 624 S.E.2d 63, 69 (Va. 2006) and *Spirito v. Peninsula Airport Comm'n*, 350 F. Supp. 3d 471, 484 (E.D. Va. 2018). .

In *Jackson*, the court's discussion of "isolat[ing] parts of an alleged defamatory statement" related solely to the issue of "whether a statement was one of fact or opinion." *Jackson*, 624 S.E.2d. at 69 ("...the alleged defamatory statement must be considered as a whole **to determine whether it states a fact or non-actionable opinion**.") (emphasis added). The court does not, however, hold that isolating statements is unnecessary for proving truth or falsity. In fact, the court in *Jackson* cites to *American Communications Network, Inc. v. Williams*, 264 Va. 336, 341-42, 568 S.E. 2d 683, 686 (2002), where the court *does* extensively parse the allegedly defamatory

statements, but finds that in order to determine whether the statements are fact or opinion, the entire statement must be taken within its context. *Williams*, 264 Va. at 341-42. That is a far cry from "plaintiffs can simply point to an entire publication or broadcast, and say 'well, all of it'" when asked what is false or defamatory." This is the new, novel, and never-before-supported rule of law that the Plaintiff asks this Court to invent. It should decline.

Likewise, in *Spirito*, the court stated that it "declines to parse the individual lines of this exchange as the PAC Defendants request" because the plaintiff "has alleged that the entire [publication] has a defamatory implication." But in *Spirito*, the Court was ruling on a Motion to Dismiss where the statements at issue had been clearly defined in the case, *Spirito* at 476 and *Spirito* Compl. at ¶27[1], and their implication was equally clear: "The defamation by all Defendants includes defamatory statements by implication about the "shredding" of evidence related to [an active investigation]." *Spirito* Compl. Para. 2. In fact, *Spirito* makes clear that "**the clarity of an implication is dispositive**." *Spirito* at 483 (emphasis added). "If a factual statement, given its verbal and practical context, can only lead to one defamatory conclusion, such an implication is actionable." *Id*. Of course, before we can even reach the level of analysis applied by the *Spirito* court, Defendants need to know the "factual statement" at issue, and Defendants need to know the one "defamatory conclusion" Plaintiff believes is implied. Again, the Plaintiff wants this Court to invent a new rule, one where "defamation by implication" is a kind of backstop – if plaintiffs cannot identify anything defamatory, they can simply claim "well, the implication of the entire story is defamatory." That is the exact opposite of the law governing "defamation by implication," which as discussed above, requires **clarity** and **only one defamatory conclusion**.

Further, Plaintiff's letter cites to a later section related to the *Spirito* Court's consideration of protected opinion. *Spirito* at 484. But the Spirito Court *did* "parse" individual lines in its analysis of defamation by implication. *Spirito* at 482-483 ("Given the fact-intensive nature of the defamatory implication inquiry […].") (reviewing the specific statements at issue, assessing the truth of those statements, analyzing case law to determine whether the statements at issue were

"capable of conveying the defamatory innuendo."). At no point in the *Spirito* analysis were the defendants or the court uncertain about the statements or innuendo at issue.

Finally, even in its section about protected opinion, the *Spirito* court relied on the certainty of the statements and their meaning: defendants "did not make vague observations about Plaintiff's conduct," but, instead "remarked on a single incident" that carried a "necessary implication" of wrongful conduct. *Spirito* at 484. Again, Defendants do not have that certainty here where Plaintiff refuses to identify with specificity which statements are false or defamatory, directly or by innuendo. For these reasons, *Spirito* is not decisive here. If anything, it reiterates the importance of knowing what statements are at issue and what specific innuendo is alleged.

Defendants are entitled to know with specificity which statements are alleged to be false and defamatory. *See Lee v. Park*, 73 Va. Cir. 219, 235 (Cir. Ct. 2007) ("[I]n pleading a cause of action for defamation, **a plaintiff must allege actionable defamatory language with particularity**.") (citing *Fed. Land Bank v. Birchfield*, 173 Va. 200, 215, 3 S.E.2d 405, 410 (1939)). A defamation plaintiff bears the burden of "show[ing] that a defendant has published a false factual statement that concerns and harms the plaintiff or the plaintiff's reputation." *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 46, 670 S.E.2d 746, 750 (2009) (citing *WJLA-TV v. Levin*, 264 Va. 140, 152-54, 564 S.E.2d 383, 390-91 (2002); *The Gazette, Inc. v. Harris*, 229 Va. 1, 15, 37, 325 S.E.2d 713, 725, 738 (1985)).

Plaintiff's responses to Defendants' interrogatories on these subjects are inadequate and nonresponsive. Stating that the entire publication is defamatory by implication is not sufficient to avoid his obligation to state what statements he contends are false. For example, is Plaintiff claiming that statements that he worked for the State Department are, in fact, false? Is he asserting that it is defamatory to say someone works for the State Department? Instead, Plaintiff provides in his responses and correspondence blocks of text in which he asserts defamatory statements may somewhere lie. While it may be true that a court would consider a statement as a whole in considering whether or not the statement is opinion or an assertion of fact, the issue of whether a

fact is true or false *does* require parsing.  Defendants cannot prepare affirmative defenses regarding truth without exact information about the defamatory allegations and implications to be proven.

Plaintiff argues that he is excused from showing falsity because even the truthful statements alleged to have been made by Defendants are capable of being defamatory by implication, and thus he should not be required to parse the individual statements.  To that end, he cites to *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993), which outlines the contours of a defamation by implication claim.  However, *Chapin* does not excuse a plaintiff from alleging generally that a certain statement is defamatory without providing more.  Indeed, the court in *Chapin* held that a defamation by implication plaintiff must "make an **especially rigorous showing** where the expressed facts are literally true." *Id*. at 1093.  FSS Interrogatories 6 and 8 specifically require the Plaintiff to "[i]dentify with specificity what statements […] are defamatory" in each relevant video.  Even if Plaintiff argues that the statements are defamatory by implication, he must show what language contributes to such a defamatory meaning.

Accordingly, it is Plaintiff's responsibility to specifically identify which statements are at issue in his complaint and which are not.  Furthermore, Defendants' requests sought identification of the statements with specificity, and Plaintiff's responses did not provide such identification.  Because identification of the statements is already Plaintiff's burden, and because Plaintiff's responses were not sufficiently responsive to Defendants' interrogatories, Plaintiff should be compelled to supplement his answers.

### 3.2 Media Communications and Interactions

Defendants have propounded a number of discovery requests to Plaintiff relating to his communications with journalists and media entitles regarding the central allegations in his complaint.  *See* **Exhibit 2** at FSS RPD Nos. 5, 26, 27, & 28; **Exhibit 1** at FSS Int. No. 2; and **Exhibit 3** at IW RPD Nos. 4 & 20.

Plaintiff's non-public communications with the media are relevant to the Defendants' defense of this case for a number of reasons.  First, Plaintiff has alleged that the Defendants connected Mr. Gilmore to various "conspiracy theories" related to the United The Right rally.  If

Mr. Gilmore himself was responsible for cultivating some of these connections in communications with media outlets, that information is relevant to the defense. It seems highly likely that he may have done so, given the fact that he has not yet even identified for the Plaintiffs what the allegedly defamatory implications are. Perhaps he clarified it for one of the journalists to whom he spoke.

Second, Mr. Gilmore's communications with media outlets may contain statements which tend to refute the allegations of damages and injury that Mr. Gilmore made in his complaint or provide information about how Mr. Gilmore intended to present himself to viewers of news related to the rally. Discovering such statements against interest are relevant to the defense.

The Court should compel Mr. Gilmore to respond to these requests. In the interest of further narrowing the dispute, Defendants consent to limiting the scope of their requests on this matter to non-public interviews or appearances between August 12, 2015 and the present.

### 3.3    Injury and Damages

Plaintiff's alleged damages are central to the resolution of this case. Plaintiff has vaguely alleged that he has suffered damage to his reputation, lost business opportunities, lost romantic partners, and suffered severe emotional distress as a result of the Defendants' actions. *See* Amended Complaint at ¶¶ 185, 187, 188, and 289. To that end, Defendants have propounded discovery requests seeking to obtain specific evidence of Plaintiff's injuries or damages. *See* **Exhibit 2** at FSS RPD Nos. 11, 12, & 18; **Exhibit 1** at FSS Ints. 2, 12, 19; **Exhibit 3** at IW RPDs 30, 31, 32, 33, 34, 35, 36, 37, 126, 131, & 132; and **Exhibit 4** at IW Ints. 8, 9, & 10.

Despite the clear relevance and necessity of the sought information, Plaintiff has refused to provide any specific instances of injury or damage to his reputation. FSS Int. 12, for instance, requested detailed instances of lost business opportunities as a result of Defendants' actions. Rather than providing any such instances, Mr. Gilmore's response sidesteps the question , stating that "he found himself in meetings and calls with potential contacts having to explain his background and why the defamatory statements made about him were untrue," and that "[p]otential partners of the company may well have hesitated to engage with him." *See* **Exhibit 1** at Response to Interrogatory No. 12. Mr. Gilmore provides no names, and no specific instances

of any actual lost business opportunities. *Id*. If he has evidence of it, he should produce it. If he does not, he should state that with specificity. Mr. Gilmore's generalized references to possible outcomes are not responsive to the request. Further, his responses strain his credibility. At present time, he has refused to state what was true or untrue. Yet, with specificity, "potential contacts" wanted to know why something was untrue – and Gilmore doesn't wish to disclose what was untrue, nor who asked if it was true or not? This can not be sustained.

IW RPDs 30-37 request documents evidencing damages caused by the Defendants' actions. Although Plaintiff states in response that he is producing such documents, Defendants have yet to locate any responsive documents in his production. If no such documents exist, Mr. Gilmore should simply state this fact. Otherwise, Mr. Gilmore must specifically identify the documents on which he intends to rely.

Additionally, Mr. Gilmore has refused to respond to IW RPD 126, which states:

**IW RPD 126:** Documents sufficient to evidence the loss of potential romantic partner(s) as a result of Defendants' allegedly defamatory statements.

On its face, this request seems strange. Who breaks up with someone over statements in the press? Defendant's objection to this request claims that it is not relevant to a claim or issue in this case. However Plaintiff himself pled that "*[a]t least one potential romantic partner cut off contact with Mr. Gilmore because of Defendants' statements*." *See* Amended Complaint at ¶ 185. If this was one "potential romantic partner" or more, and Mr. Gilmore is trying to claim that this is a consequence of the coverage, he should provide full details – and those "potential romantic partner(s)" should be deposed to determine if the one thing, the only thing, or even a major element of their lack of interest in Mr. Gilmore was the Defendants' statements regarding Gilmore . Meanwhile, Plaintiff refused to respond. *See* **Exhibit 3** at Response to Request No. 126. The request is proper, and Mr. Gilmore should be compelled to respond to it.

Finally, Plaintiff's responses to discovery concerning his mental health are insufficient and must be supplemented. In his complaint, Plaintiff pleads that as a result of the Defendants' actions, he has suffered "serious and severe emotional distress," "extensive personal suffering," and

"depression, anxiety, sleeplessness, inability to concentrate, irritability." Amended Complaint at ¶¶ 289-90. Plaintiff also pleads that he has developed an optical condition referred to as Central Serous Chorioretinopathy. *See* Amended Complaint at ¶ 291. Despite these serious allegations, the only discovery that Mr. Gilmore has produced to support these claims is a billing statement from a clinical psychologist. Plaintiff has produced no communications with third parties relating to his mental state. He has produced no diagnoses or treatment records. He has produced no information relating to treatments or prescribed medications.

Further, while Plaintiff's counsel represented that he would be producing mental health records, counsel indicated that Mr. Gilmore's production would be limited to records created after the rally, and only those that specifically relate to the effects of the alleged defamatory statements. Such a limitation is not acceptable, and Mr. Gilmore should be required to produce all records of mental health treatment from August 1, 2012, to the present. Establishing alleged emotional harm requires determining a baseline for Mr. Gilmore's mental state before the alleged conduct took place. Without such a baseline, evidence of injury occurring after the alleged conduct would not be probative of the full scope, or lack thereof, of the injury.

Defendants therefore request that this Court compel Mr. Gilmore to produce supplemental documentation.

Defendants additionally propounded IW RPD 179, which requested:

**IW RPD 179:** Any and all records setting forth your emotional state from August 1, 2012, to the present.

Plaintiff has refused to conduct any search or produce any documents responsive to this request. The request, however, is proper, and the subject matter is relevant. If Mr. Gilmore has indeed suffered mentally and emotionally to the degree he pleads in his complaint, it is likely that he would have communicated his struggles to third parties. These discoverable documents are relevant if they can be shown to exist. If, however, Mr. Gilmore had made statements against his interest in disclaiming such conditions, this information would also be relevant. Finally, if documents would show that much of Mr. Gilmore's complained-of conditions existed prior to

Defendants' acts as alleged in his complaint, this fact would also be relevant in reducing the Defendants' culpability.

Plaintiff's production regarding his claimed reputational damages, economic damages, and mental injuries was insufficient and incomplete. Plaintiff should be compelled to conduct a meaningful search and produce responsive documents.

### 3.4   Communications with Third Parties[1]

Defendants requested production of documents in Plaintiff's possession relating to his communication with third parties regarding central issues in this case. *See* **Exhibit 2** at FSS RPD Nos. 2, 3, 4, 5, 6, & 20; and **Exhibit 3** at IW RPDs 2, 24, 25, 26, 27, 63, 28, 102. While Plaintiff has produced some documents which are responsive to these requests, he has refused to produce documents in response to others.

By way of example, the IW RPDs requested:

**IW RPD 2:**   Any and all records of communications regarding the Unite the Right Rally.

**IW RPD 24:**   Any and all communications from Clean Virginia and/or its employees, officers, and/or directors regarding your appearance at the Unite the Right Rally, including, but not limited to, your video of the events of that rally and interview(s) you gave regarding the events of that rally.

**IW RPD 25:**   Any and all communications from James Madison University and/or its employees, administrators, faculty, and/or students regarding your appearance at the Unite the Right Rally, including, but not limited to, your video of the events of that rally and interview(s) you gave regarding the events of that rally.

**IW RPD 26:**   Any and all communications regarding the McAdoo video.

**IW RPD 27:**   Any and all communications regarding the Jones video.

---

[1] To the extent that the Court requested that the Parties further meet and confer on this topic, Plaintiff has not identified any categories of documents that may be responsive to these requests, and has not proposed meeting about its objections since the last discovery hearing on this matter. Because it is Plaintiff's objection, it is Plaintiff's responsibility to identify any claimed irrelevant categories. Having not done so, the Court should overrule Plaintiff's objections on these grounds alone.

In response to each of these requests, Plaintiff complains that the requests are too broad and thus refuses to respond – not even in what he thinks is a reasonably limited capacity. *See* **Exhibit 2** at Responses to FSS RPD Nos. 2, 3, 4, 5, 6, & 20; and **Exhibit 3** at Responses to IW RPDs 2, 24, 25, 26, 27, 63, 28, 102.

The requests are proper and concern relevant evidence, and Plaintiff should produce the documents pursuant to the request.

Communications made by Plaintiff in relation to the Unite the Right rally are discoverable and relevant for the same reasons discussed *supra* in relation to communications with media outlets – such requests may lead to the discovery of evidence that the Plaintiff made statements that contributed to or alternatively lead to the connections between Mr. Gilmore and certain "conspiracy theories", and that Plaintiff may have made statements against his interest in relation to his claimed injuries or damages.

Mr. Gilmore has produced some limited communications with third parties concerning the Unite the Right rally and statements attributed to the Defendants. However, Defendants are concerned that the produced communications are not exhaustive of the discoverable communications in Mr. Gilmore's possession. Therefore, Defendants request that Plaintiff produce a declaration certifying that fact and describing the methods employed to search for the responsive documents.

The Defendants' requests concerning Mr. Gilmore's communications with third parties are proper and he should be compelled produce responsive documents.

**4.0     Conclusion**

In light of the foregoing, Defendants request that this Court enter an order compelling Plaintiff to provide supplemental responses to the discovery requests referenced herein. Further, Plaintiffs should be taxed with the costs and fees expended in bringing this motion.

Dated: September 10, 2021.    Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel:  702-420-2001
Fax:  305-437-7662
ecf@randazza.com

Jay M. Wolman*, pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: 702-420-2001
Fax: 305-437-7662
ecf@randazza.com

Evan D. Mayo (VSB No. 89383)
Thomas E. Albro (VSB No. 12812)
TREMBLAY & SMITH, PLLC
105-109 East High Street
Charlottesville, Virginia 22902
Tel:  434-977-4455
Fax:  434-979-1221
evan.mayo@tremblaysmith.com
tom.albro@tremblaysmith.com

Attorneys for Defendants Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC

Case No. 3:18-cv-00017-NKM-JCH

## CERTIFICATE OF SERVICE

I hereby certify that, on this 10th day of September 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Marc J. Randazza
Marc J. Randazza