IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BRENNAN M. GILMORE, <br><br> Plaintiff, <br><br> v. <br><br> ALEXANDER E. (ALEX) JONES, et al., <br><br> Defendants. | No. 3:18-cv-00017-NKM-JCH |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY RESPONSES FROM PLAINTIFF BRENNAN M. GILMORE**

Plaintiff Brennan Gilmore ("Plaintiff") respectfully requests that the Court deny Defendants' Motion to Compel Discovery Responses from Plaintiff Brennan M. Gilmore ("Motion").[1] As explained below, Mr. Gilmore has complied with his discovery obligations with respect to each of the four disputes that Defendants raise.[2]

## ARGUMENT

**I.   MR. GILMORE FULLY ANSWERED INTERROGATORIES ASKING FOR DEFENDANTS' FALSE AND DEFAMATORY STATEMENTS**

Defendants allege that Mr. Gilmore's responses to Free Speech Systems, LLC's ("FSS") Interrogatory Nos. 5 to 10 are "vague, unresponsive, and incomplete". D.I. 447 at 4. Even the most casual review of Mr. Gilmore's responses to these five interrogatories, however, confirms that Defendants' allegations are wrong.

---

[1] Defendants Alex E. Jones, Infowars LLC, and Free Speech Systems, LLC (collectively, "Defendants").

[2] Defendants' Motion refers in its introduction to a fifth discovery dispute that is not, in fact, addressed anywhere else in the Motion. D.I. 447 at 2.

1

A. **Mr. Gilmore Identified Specific False Statements in the August 15 and August 21 Videos**

FSS propounded two interrogatories seeking identification of false statements in the disputed videos at issue in this case:

‣**Int. No. 5:** Identify with specificity what statements in the August 15 Video are false.

‣**Int. No. 7:** Identify with specificity what statements in the August 21 Video are false.

Mr. Gilmore responded fully to both interrogatories. As this Court has previously noted in this case, "false statements are those that 'contain a provably false factual connotation.'" D.I. 123 at 47 (quoting *Tronfeld v. Nationwide Mut. Ins. Co.*, 636 S.E.2d 447, 450 (Va. 2006)). In response to Interrogatory No. 5, Mr. Gilmore identified certain statements made in the August 15 video and conveyed some of the factual implications of those statements that are sufficient to identify them as false, including the implications that Mr. Gilmore "was involved in a plot to sponsor a coup in the United States to overthrow the President, related to the alleged U.S. coup in Ukraine; that [he] was working with others to execute that coup or otherwise 'settle for impeachment'; and that [in his role] 'with the State Department', [he] was working with conspirators to promote that coup by referring to Heather Heyer as a 'martyr'." D.I. 447-3 ("Responses") at 9-10.

In response to Interrogatory No. 7, Mr. Gilmore identified false statements in the August 21 video: "Plaintiff has never worked for the campaigns or offices of Barack Obama, Hillary Clinton, or John Podesta. Plaintiff has never been employed by the CIA. Plaintiff was not a 'cut-out' for the State Department or CIA in connection with the events of August 12, 2017. Plaintiff's name was not removed from the State Department website because 'the elites . . . [were] trying to cover their tracks.' Plaintiff never received a personal payment of $380,000 from George Soros." *Id.* at 12. Mr. Gilmore further identified a list of false factual implications that are derived from those statements: "Plaintiff was part of a wide-ranging State Department and CIA conspiracy to

stage the violence that took place in Charlottesville; that he was falsely presented as an 'accidental witness' to that violence; and that 'deep research' confirmed that Plaintiff was paid for his participation in the conspiracy." *Id.* at 12-13.

In response to both of these interrogatories, Mr. Gilmore identified the "provably false factual connotations" of the identified statements sufficient to identify them as false. He did not, however, list every false factual connotation of those statements. That is because Defendants' interrogatories only asked him to identify "what statements" are false, not to identify exhaustively every false connotation of those statements.

Moreover, none of Plaintiff's discovery responses should come as a surprise as they are a recitation of what Plaintiff alleged in his Amended Complaint. Defendants tried, and failed, to attack the sufficiency of Mr. Gilmore's allegations via a motion to dismiss more than two years ago. In denying that motion, the Court identified specific statements that Mr. Gilmore alleged in his pleadings to be false and defamatory, and judged those allegations to be adequately pled. *See* D.I. 123 at 55-61 (concluding that Plaintiff adequately alleged that specific statements in the August 15 and August 21 videos were both false and defamatory). "[O]nce a trial judge has determined that an allegedly defamatory statement is capable of being proved false, [it is] the ***jury's function*** . . . to evaluate the evidence presented and to determine whether the plaintiff has met [his] burden of proving that the allegedly defamatory statement is false." *Hyland v. Raytheon Tech. Servs. Co.*, 670 S.E.2d 746, 751 (Va. 2009) (emphasis added).

### B. Mr. Gilmore Identified With Specificity the Defamation in the August 15 and August 21 Videos

FSS propounded two interrogatories seeking identification of defamatory statements in the disputed videos:

‣**Int. No. 6:** Identify with specificity what statements in the August 15 Video are defamatory.

3

▸**Int. No. 8:** Identify with specificity what statements in the August 21 Video are defamatory.

As an initial matter, Defendants' complaint about the Responses in connection with these interrogatories conflate whether a statement is ***false*** with whether it is ***defamatory***. *See, e.g.*, Hr'g Tr. 11:8-9, Aug. 27, 2021 (Defendants' counsel arguing that Mr. Gilmore doesn't "want to tell us: [w]hat is the false statement of fact?"); D.I. 447 at 7 ("Plaintiff argues that he is excused from showing falsity because even the truthful statements alleged to have been made by Defendants are capable of being defamatory by implication, and thus he should not be required to parse the individual statements."). As explained above, Mr. Gilmore already identified false statements in the disputed videos in his answer to Interrogatory Nos. 5 and 7.

In his Responses to Interrogatory Nos. 6 and 8, however, Mr. Gilmore asserted that the entirety of the April 15 and April 21 videos are defamatory by virtue of their implication—that is, the statements in the video taken as a whole convey a defamatory implication.[3] That argument is consistent with precedent from the Fourth Circuit. Indeed, in *Chapin v. Knight-Ridder Inc.*, the Fourth Circuit reviewed the article at issue as a whole in determining defamation by implication and found it would be error if it had not done so:

> Notwithstanding the non-actionability, in isolation, of the various statements we discussed in Part III, *we would err if we did not consider the article as a whole*. A magnifying glass is no aid to appreciating a Seurat, and the pattern of a complex structure is often discernable only at some distance.

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1098 (4th Cir. 1993) (emphasis added). Although the Fourth Circuit ultimately held the article at issue was not actionable, there was no suggestion

---

[3] Mr. Gilmore has also alleged that some of the statements in the InfoWars publications are defamatory in isolation. *See* D.I. 29, Am. Compl. ¶¶ 83-124; 204-215; 241-69. Mr. Gilmore intends to supplement his Responses to include those statements in response to Interrogatory Nos. 6 and 8.

4

that a review of the publication as a whole to make that assessment was improper. Similarly, in *Spirito v. Peninsula Airport Comm'n*, 350 F. Supp. 3d 471 (E.D. Va. 2018), the defendant published and wrote about certain text messages. But the court declined to parse the individual lines in those messages, finding that "Plaintiff has alleged that the entire exchange has a defamatory implication" and that Defendants had not established that the entire exchange did not "convey[] the defamatory innuendo." *Id.* at 484.

In this case, Mr. Gilmore has asserted that the defamatory statements are coterminous with the entirety of the two videos. Defendants imply that Mr. Gilmore cannot play these videos to the jury and ask the jury to consider whether the broadcasts gave rise to a defamatory implication. But they cite **no** authority for that proposition, or for their apparent requirement that defamation by implication must be confined to statements less than the entire broadcast. Indeed, as explained above, Fourth Circuit precedent establishes that an assessment of the entire publication is required in determining defamation by implication. *See supra* 4-5. Similarly, Fourth Circuit precedent establishes that defamation by implication theories can encompass statements of any length. *See Chapin*, 993 F.2d at 1098; *Spirito*, 350 F. Supp. 3d at 484; *see also Hatfill v. New York Times Co.*, 416 F.3d 320, 328, 333 (4th Cir. 2005) (block quoting 30 paragraphs of text to describe allegedly defamatory publications before concluding that the "columns, taken together, are capable of defamatory meaning"); *Wells v. Liddy*, 186 F.3d 505, 523 (4th Cir. 1999) (block quoting multiple paragraphs of text to analyze whether the statements were capable of defamatory meaning).

Mr. Gilmore was asked to identify the defamatory statements at issue. He has done so. Indeed, his discovery responses provided even more than was asked by identifying some of the

5

defamatory implications arising from the videos taken as a whole.[4] There is no deficiency remaining.

### C. Mr. Gilmore Identified Specific Facts Proving the Falsity of the Statements Made the August 15 and August 21 Videos

FSS propounded two interrogatories seeking facts to support the falsity in the disputed videos:

- **Int. No. 9:** Identify with specificity all facts showing that the statements identified in response to Interrogatory 5 are false.

- **Int. No. 10:** Identify with specificity all facts showing that the statements identified in response to Interrogatory 7 are false.

Setting aside the fact that these interrogatories ask Mr. Gilmore to prove a negative, Defendants' assertion that Mr. Gilmore "declined to provide any substantive response" to Interrogatory Nos. 9 and 10 is incorrect. D.I. 447 at 4. Even a preliminary review confirms that Mr. Gilmore responded to Interrogatory No. 9 by explaining that "he was not and is not part of a conspiracy to commit a coup in the Ukraine. Nothing about the filming shown in the August 12, 2017 Twitter Post was planned as part of a coup to overthrow President Trump, or was related to Plaintiff's employment at the State Department in any way." D.I. 447-3 at 14. In response to Interrogatory No. 10, Mr. Gilmore reiterated the facts he described in response to Interrogatory No. 7, adding that his:

> protest attendance was entirely unrelated to any purported conspiracy; he was not involved with an effort designed to lead to President Trump's impeachment; his presence at the Unite the Right rally and filming of James Alex Fields, Jr.'s driving his Dodge Challenger into a crowd was not part of an effort to "smear Trump and his supporters" or "elect other elitists." [Mr. Gilmore's] witnessing of the Charlottesville attack was a tragic and traumatizing coincidence, and [his] employment with the State Department had absolutely nothing to do with his

---

[4] Of course, Mr. Gilmore was not required to list all the defamatory implications of Defendants' publications because Defendants' interrogatories did not ask for that.

presence in Charlottesville that day.

*Id.* at 16. It is not clear what more Defendants want, or could want, in response to these interrogatories.

## II. MR. GILMORE HAS ALREADY RESPONDED TO DEFENDANTS' DISCOVERY REQUESTS ON MEDIA COMMUNICATIONS

In the interests of narrowing their dispute, Defendants consented in their Motion to limit the scope of their various document requests and interrogatories concerning media communications to "non-public interviews or appearances between August 12, 2015 and the present." D.I. 447 at 8. Had Defendants conferred prior to seeking relief from the Court or tried in any way to clarify their request in advance, they would have learned that Mr. Gilmore has not been interviewed or made any appearances in that time period in a forum that is not publicly available. Given Defendants' narrowed request and Mr. Gilmore's representation, this dispute appears resolved.[5]

## III. MR. GILMORE HAS ALREADY RESPONDED TO DEFENDANTS' DISCOVERY REQUESTS ON INJURY AND DAMAGES

Defendants' third disputed category concerns interrogatory requests regarding job opportunities and the identity of his mental health care givers and their records (InfoWars Interrogatory Nos. 9-10 and FSS Interrogatory Nos. 12 and 19), as well as documents relating generally to damages (FSS Request for Production Nos. 11, 12, 18, 30-37, 126, 131, and 132).[6]

---

[5] Out of an abundance of caution, Mr. Gilmore also produced an interview published in a German magazine in 2018 because it was not clear whether that interview would be easily available via a public search engine, and thus characterized as potentially non-public. *See* OMM-BG-0036295-96.

[6] Defendants also identify as disputed InfoWars Interrogatory No. 8, which seeks the identification of "all person(s) whose opinion of you changed on account of each defendant's alleged defamatory statement(s), including in your identification, to the extent possible, the statement(s) that caused such change, and whether that change was in the positive or negative." This Interrogatory is vague

As an initial matter, Defendants claim that Mr. Gilmore has "refused to provide *any* specific instances of injury or damage to his reputation."  D.I. 447 at 8-9 (emphasis added).  That is incorrect.  In fact, Mr. Gilmore identified documents to Defendants in his meet-and-confer correspondence illustrating, e.g., his leave of absence from the State Department, his performance reviews before he was forced to extend that leave due to Defendants' defamatory statements, and threats that he (and his family) received.  *See, e.g.*, BG00000036; BG00000100; BG00000103; BG00000245-47; D.I. 447-10, Ltr. From A. Graves to M. Randazza, Aug. 23, 2021 (identifying these documents to Defendants).

For the other discovery categories at issue, Mr. Gilmore has similarly explained that he has no additional information to provide.  Defendants complain, for example, that Mr. Gilmore has failed to fully provide information about lost business opportunities as a result of Defendants' actions in response to FSS Interrogatory No. 12.  D.I. 447 at 8-9.  In fact, and as explained to the Court during the August 27 hearing, Plaintiff has already provided all the responsive information in his possession, custody, or control on this topic.  Hr'g Tr. 22:11-23:8.  Similarly, with respect to InfoWars' Request for Production No. 126 relating to romantic partners, there is nothing more to provide.  Defendants write in their Motion that "on its face, this request seems strange."  D.I. 447 at 9.  Mr. Gilmore agrees.  As explained to the Court during the same August 27 hearing, it is hardly surprising that details concerning one's romantic life are not typically transcribed.  Mr. Gilmore has produced all responsive documents in his custody, possession, or control in this regard.  Hr'g Tr. 24:25-25:13.

---

on its face and Mr. Gilmore requested a meet-and-confer as a result in his Responses in order to better understand what is being sought and how or if Mr. Gilmore can answer it.  Defendants did not reply before filing their Motion.  In their Motion, Defendants also mistakenly lump into this third damages category their FSS Interrogatory No. 2, which deals with media and is addressed in the prior section.

8

With respect to medical and mental health records, Defendants cite no authority for their contention that mental health records from as far back as August 1, 2012, *five years* before the Unite the Right Rally, are relevant.  At any rate, Mr. Gilmore's records extend only as far back as July 2017.  To the extent that Mr. Gilmore intends to maintain his claim for emotional damages as discovery proceeds, he has agreed to produce responsive records from that date forward.  In that event, however, Mr. Gilmore will request that these sensitive records be produced on an outside-counsel-eyes-only basis to the InfoWars Defendants only, and a protective order modification be entered by the Court to that effect.  Conduct by Mr. Jones in other litigations and his access to broadcast media warrants these special measures.[7,8]

### IV.   MR. GILMORE HAS ALREADY RESPONDED TO THE DOCUMENT REQUESTS CONCERNING THIRD-PARTY COMMUNICATIONS

In their final disputed category, Defendants identify fourteen requests for production—out of 224 served—that are at issue in this case.  D.I. 447 at 11.  Defendants focus on five specific requests in their Motion, although the requests at issue generally concern the disputed videos and

---

[7] In the Sandy Hook litigation, for example, the trial court found that "Jones accused plaintiffs' counsel of planting child pornography in his document production (an allegation that, notably, Jones retracted in a later broadcast), and that in the course of a 20-minute rant, Jones also threatened, harassed, or intimidated plaintiffs' counsel. The court also rejected Jones's contention that he was 'enraged' during the broadcast, stating that in the court's view, it was 'an intentional calculated act of rage for his viewing audience.'"  *See* Michael Roundy, *Court Sanctions Lead to Denial of Opportunity to Pursue Motion to Dismiss*, Am. Bar Ass'n, (July 31, 2019), https://www.americanbar.org/groups/litigation/committees/pretrial-practice-discovery/practice/2019/court-sanctions-lead-to-denial-of-opportunity-to-pursue-motion-to-dismiss/.

[8] Mr. Gilmore also notes that in this case, given the defamation at issue, damages would be presumed if he prevails on liability. A statement is considered to be defamatory per se under Virginia law and no proof of damages are required if, *inter alia*, the statement "impute[s] to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished", or "prejudice[s] such person in his or her profession or trade." *Via v. Communications Corp. of America, Inc.*, 311 F. Supp. 3d 812, 822 (W.D. Va. 2018).

third-party communications related to the events of the Unite the Right Rally. *See id*.

As an initial matter, Mr. Gilmore has sought to confer with Defendants in order to seek clarification on these broad requests and his objections to them since May 2021, which is when his responses were served. Accordingly, Defendants' assertion that Mr. Gilmore "has not proposed meeting about [his] objections since the last discovery hearing on this matter" is not well-taken. *Id.* at 11 n.1. Moreover, that is not what the law requires. Federal Rule of Civil Procedure 37(a) puts the burden on the movant to confer in good faith with the opposing party before moving to compel. Fed. R. Civ. P. 37(a)(1). The Court also encouraged the parties to meet and confer during the last hearing on this issue, noting that this "is something that you all can talk about a bit further, . . . and then [Defendants] can decide whether [the dispute] needs to be included in the motion." Hr'g Tr. 36:13-20.

Defendants did not do so. If they had, they would have learned that Mr. Gilmore has already produced responsive documents in his possession that resulted from using agreed-upon search terms relating to the disputed videos and the Unite the Right Rally. For example, Mr. Gilmore agreed to produce documents that relate to the Unite the Right Rally in response to FSS Request for Production Nos. 7-10 and InfoWars Request for Production Nos. 28-29 and 47-58.

Mr. Gilmore also asked to meet and confer with Defendants regarding ten additional Requests, including FSS Request for Production No. 2 and InfoWars Request for Production Nos. 1-2, 16-17, 24-27, and 102.[9] Several of these topics appeared objectionable on proportionality and relevance grounds. For the fourteen requests at issue in this fourth category of the Motion, Mr. Gilmore understood the intent to be a broad "catch-all" for documents relating to the videos or the

---

[9] Defendants never responded to any of Mr. Gilmore's good-faith efforts to meet and confer their Requests, and thus they have no basis for now complaining about the adequacy of Mr. Gilmore's responses.

10

events of the Unite the Rally. Indeed, InfoWars RFP No. 2 alone subsumes all of the fourteen requests at issue, as it is broadly worded to seek "all records of communications regarding the Unite the Right Rally." D.I. 477-5 at 6.

Defendants' counsel Mr. Wolman confirmed that these were catch-all requests during the August 27, 2021 hearing. Hr'g Tr. 37:5-9. Notwithstanding Defendants' failure to properly confer before filing their Motion, and in the interest of avoiding needless disputation, Mr. Gilmore will agree to undertake a re-review of documents in view of that understanding. If any additional responsive documents are uncovered as a result of that review, Mr. Gilmore will produce them.

## CONCLUSION

For the foregoing reasons, Plaintiff Brennan M. Gilmore respectfully requests that the Court deny Defendants' Motion to Compel.


Dated: September 24, 2021                                  Respectfully submitted,

By:   /s/ Anwar L. Graves
Jonathan Hacker, admitted *pro hac vice*
Anwar L. Graves, admitted *pro hac vice*
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC  20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
agraves@omm.com
jhacker@omm.com

Hassen A. Sayeed, admitted *pro hac vice*
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
hsayeed@omm.com

Aderson Francois, admitted *pro hac vice*
CIVIL RIGHTS CLINIC
GEORGETOWN UNIVERSITY LAW
CENTER

11

600 New Jersey Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 662-9065
Aderson.Francois@georgetown.edu

Elizabeth B. Wydra, admitted *pro hac vice*
Brianne J. Gorod, admitted *pro hac vice*
CONSTITUTIONAL
ACCOUNTABILITY
CENTER
1200 18th Street, N.W., Suite 501
Washington, D.C. 20036
Telephone: (202) 296-6889
elizabeth@theusconstitution.org
brianne@theusconstitution.org

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of September, 2021, a copy of the foregoing Opposition to Defendants' Motion to Compel was served on all parties via the Court's Electronic Case Filing system, and separately sent via electronic mail to Mr. Lee Stranahan and Mr. Scott Creighton.

*/s/ Anwar L. Graves*
Anwar L. Graves
