IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BRENNAN M. GILMORE, <br><br> Plaintiff, <br><br> v. <br><br> ALEXANDER E. (ALEX) JONES; *et al.*, <br><br> Defendants. | Case No. 3:18-cv-00017-NKM-JCH |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL
DISCOVERY RESPONSES FROM PLAINTIFF BRENNAN M. GILMORE**

Defendants Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC (collectively, "Defendants") reply in support of their Motion to Compel (Dkt. No. 447) and ask this Court to enter an order compelling Plaintiff Brennan M. Gilmore to supplement his responses to Defendants' discovery requests.[1]  Mr. Gilmore filed this action and has demanded extensive discovery from the Defendants, but he has thus far refused to provide meaningful discovery responses himself.  Accordingly, the Defendants must seek the Court's assistance in compelling those responses from the Plaintiff.

**1.0   Plaintiff's Identifications of False Statements are Insufficient**

Mr. Gilmore contends that the Defendants published false statements of fact concerning him, and he intends to plead his case for damages before a jury.  What false statements of fact does he plead?  That appears to be a question that the Plaintiff is resolved to leave unanswered.  Despite Mr. Gilmore's claims that his interrogatory responses relating to the alleged defamation were answered completely, Mr. Gilmore's own briefing admits that this is not the case.

---

[1] Plaintiff has abandoned his objection to Defendants' requests relating to media communications and has responded to those requests.  Accordingly, only three issues remain ripe for adjudication.

- 1 -

The wording and intention of Defendants' interrogatories to Mr. Gilmore are clear; they seek identification *with specificity* of the exact statements that Mr. Gilmore claims are false. The purpose of these interrogatories is not a mystery – the videos that Mr. Gilmore pleads contain defamatory statements contain include a multitude of statements that certainly no one could conclude are false, including statements that Mr. Gilmore was formerly employed by the State Department. Does Mr. Gilmore contend that these statements are false and defamatory? Again, the Defendants are at a loss, because Mr. Gilmore refuses to properly list the claimed defamatory statements in from the videos, despite Defendants' requests for *specific* identification of the false statements *with specificity*.

Although Mr. Gilmore claims that he has fully answered Defendants' interrogatories, his briefing tells the full story. Plaintiff notes in his opposition that he "identified **certain** statements made in the … video and conveyed *some* of the factual implications of those statements that are sufficient to identify them as false…". Dkt. No. 448 at 2 (emphasis added). Rather than *specifically* identifying the statements he claims are false, Mr. Gilmore instead responds with vague assertions and incomplete recitations from the video. Mr. Gilmore neither fully lists the alleged false statements over which he is suing Defendants nor does he explain the claimed defamatory connotations, which are required in response to Defendants' interrogatories. For example, the U.S. House of Representatives twice "settle[d] for impeachment", and proudly did so. Is he claiming that supporting the impeachment of Donald Trump is somehow defamatory, when a majority of Congress thought it laudatory?

Plaintiff asserts, again, that the complained-of videos may simply carry some sort of defamation liability *en toto*, and that Plaintiff is not required to make specific assertions of what specific comments are false or defamatory because the entire publication contains a defamatory implication. To support this argument, Mr. Gilmore points to a number of courts that have quoted from lengthy publications to determine the tenor of the publication as a whole. For support, Plaintiff cites to *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993), *Spirito v. Peninsula Airport Comm'n*, 350 F. Supp. 3d 471 (E.D. Va. 2018), *Hatfill v. New York Times Co.*, 416 F.3d

320 (4th Cir. 2005), and *Wells v. Liddy*, 186 F.3d 505 (4th Cir. 1999). While these opinions do contain excerpts of publications, they do not stand for the proposition that a plaintiff can solely rely on a recitation of an entire news broadcast without making specific findings of what statements are defamatory, and what defamatory connotations the plaintiff alleges are tied to those specific statements.

In *Chapin*, rather than assessing the article as a whole, the Fourth Circuit broke down the article into ten separate sections and explicitly parsed whether the statements were true or false. *Chapin*, 993 F.2d at 1093-98. In *Spirito*, the Court declined to parse individual statements, but only because the Court was ruling on a motion to dismiss, and the statements at issue had already been clearly defined. *See* Defendants' Motion to Compel, Dkt. No. 447, at 5-6. And, the *Spirito* Court does indeed continue to parse the individual lines in its analysis. *See id., citing Spirito*, 350 F. Supp. 3d at 482-83. In *Hatfill*, the Fourth Circuit makes findings only based upon defamatory connotations which were expressly defined and alleged by the plaintiff. *Hatfill*, 416 F.3d at 331-33. Finally, in *Wells*, the Fourth Circuit again recites merely a few sentences of the complained-of publication and discusses the clearly and unambiguously defined defamatory connotations. *Wells*, 186 F.3d at 523.

Plaintiff correctly notes, quoting *Hyland v. Raytheon Tech. Servs. Co.*, 670 S.E.2d 746, 751 (Va. 2009), that it is a jury's function to decide "whether the plaintiff has met [his] burden of proving that the allegedly defamatory statement is false." However, a jury can not decide what is true and what is false, let alone what is defamatory and what is not defamatory, without the plaintiff making specific allegations of truth or falsity, or in this case, allegations of defamatory connotation, without *identifying what those allegations are*. Defendants cannot be forced to wait for a jury to be impaneled to learn precisely what Plaintiff contends is false, what Plaintiff contends is defamatory, and what defamatory connotations are tied to those statements.

Of course, it would be easy for Mr. Gilmore to review the videos that he pleads contain false and defamatory statements and identify *with specificity* the allegedly false statements. But, Mr. Gilmore would prefer not to. Plaintiff bears the burden of establishing what it is that he claims

is defamatory, and the Federal Rules of Civil Procedure do not allow Mr. Gilmore to choose how he answers a proper, relevant interrogatory. This Court should require Mr. Gilmore to answer Defendants' interrogatories fully and completely.

## 2.0     Plaintiff's Responses Relating to Injury and Damages are Insufficient

Defendants propounded a number of requests aimed at clarifying what damages and injuries Mr. Gilmore claims to have suffered. Rather than answering Defendants' interrogatories relating to these injuries and damages, however, Plaintiff has responded vaguely with incomplete responses. Defendants seek specific information relating to Plaintiff's allegations of injury or damage to his reputation, lost business opportunities, lost romantic opportunities, and injuries to his mental health.

### 2.1     Business Opportunities

Mr. Gilmore's interrogatory responses lack any specific information relating to lost business opportunities aside from vague allegations and general speculation. Although Mr. Gilmore claims to have lost business opportunities, and that he has had to explain his background to potential business partners, he provides no names, no dates, and no specifics. Defendants' interrogatories require fuller responses, which require Mr. Gilmore to substantiate his claimed losses in detail.

### 2.2     Romantic Opportunities

Plaintiff plead lost romantic opportunities in his Complaint, which opened the door to Defendants' requests regarding those damages. Plaintiff's initial response to Defendants' request on this subject was a flat refusal to search for such documents, and now Plaintiff contends that no such documents exist, arguing that "details concerning one's romantic life are not typically transcribed." Opposition at 8. Such could be expected if this case was pending in the year 1965, but in today's world, relationships *do* take place in written media. Singles today use smartphone dating apps, and they exchange messages in written form. Plaintiff may not be able to identify who swiped left, but he also cannot then say they did so because of Defendants' statements. But, if Mr. Gilmore had a relationship (or a potential one) that was broken off over damage to his

reputation, it is conceivable that such an interaction might have been conducted in writing. Whether Mr. Gilmore preserved that information is another question, but the Plaintiff may not categorically refuse to provide any documentary evidence of damages he has claimed.

### 2.3 Mental Health

Mr. Gilmore's response relating to his mental health records is insufficient and concerning. First, Plaintiff claims to take issue with the temporal scope of the request for records, and then claims that his records only extend as far back as July 2017. Moreover, more than five months have lapsed since Defendants requested these mental health records, and they still have not been produced. And his opposition is silent as to his claimed ocular injury. Further, after extensive pre-motion communications, a telephone conference with the Court, and a Motion to Compel, the Plaintiff newly suggests that he intends to produce the records, but with a request to modify the protective order in this case. Fact discovery is soon coming to an end in this case, and Defendants are still unable to review these important records and determine whether further discovery is needed. These delays and gamesmanship are unhelpful, and Mr. Gilmore should be compelled to produce the records immediately.

### 3.0 Third-Party Communications

After extensive discussions over many months with Plaintiff's counsel concerning Mr. Gilmore's communications with third parties, Plaintiff has refused to budge from his objections. Now, Plaintiff claims to agree to re-review the documents in Mr. Gilmore's possession in order to ascertain whether additional responsive documents exist. While Defendants appreciate Mr. Gilmore's last-minute change of heart on this subject, Defendants remain concerned that responsive documents will not be produced with sufficient time to review them before the close of fact discovery. For the reasons stated in Defendants' Motion to Compel, Mr. Gilmore should be immediately compelled to produce these documents.

### 4.0 Conclusion

In light of the foregoing, Defendants ask that this Court enter an order compelling Mr. Gilmore to supplement his responses to Defendants' discovery requests.

Dated: October 1, 2021. Respectfully submitted,

/s/ Jay M. Wolman
Marc J. Randazza, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
Fax: 305-437-7662
ecf@randazza.com

Jay M. Wolman*, pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: 702-420-2001
Fax: 305-437-7662
ecf@randazza.com

Evan D. Mayo (VSB No. 89383)
Thomas E. Albro (VSB No. 12812)
TREMBLAY & SMITH, PLLC
105-109 East High Street
Charlottesville, Virginia 22902
Tel: 434-977-4455
Fax: 434-979-1221
evan.mayo@tremblaysmith.com
tom.albro@tremblaysmith.com

Attorneys for Defendants Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC

Case No. 3:18-cv-00017NKM-JCH

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 1st day of October 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Jay M. Wolman<br>Jay M. Wolman

- 7 -